**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In Re:

DAREN C. DALY,                                              Case No: 22-15694-SMG

      Debtor.                                              Chapter 11 (Sub V)

_____/

## MOTION TO DISMISS CHAPTER 11 CASE AND/OR IN THE ALTERNATIVE MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR TO MODIFY AUTOMATIC STAY

**Any interested party who fails to file and serve a written response to this Motion within 14 days after the date of service stated in the motion, pursuant to Local Rule 4001-(C), will be deemed to have consented to the entry of an Order granting the relief requested in the motion.**

Creditors/Movants, PATRICK DALY, ELIZABETH DALY, individually, and as the alleged majority owners and the only Directors on the Board of Directors of the Florida corporation ALL PAVING, INC., and ALL PAVING & SEALCOATING, LLC, by and through their undersigned counsel, hereby file their Motion to Dismiss the Chapter 11 Case of Debtor, DAREN C. DALY, and/or in the Alternative Motion for Relief from or to Modify the Automatic Stay, and in support thereof states the following grounds:

1.      DAREN C. DALY filed a Chapter 11 Bankruptcy in the United States Bankruptcy Court, Southern District of Florida, Fort Lauderdale Division on July 24, 2022.  The Debtor has filed an individual Chapter 11 Petition under Subchapter V of the Bankruptcy Code, but the documents filed in connection with this case by the Debtor make it transparent that he is seeking to reorganize two separate entities: ALL PAVING, INC. and RESURFACE INDUSTRIES, LLC.

2.      The Debtor states in his Chapter 11 Case Management Summary [D.E. 17] that the Debtor is the 100% owner of All PAVING, INC., and is the 100% owner of RESURFACE, INDUSTRIES, LLC.

3.     Movants vigorously dispute Debtor's alleged 100% ownership and control of the Florida corporation, ALL PAVING, INC., and assert that ELIZABETH DALY owns and holds 75% of the shares of ALL PAVING, INC., and that PATRICK DALY owns and holds 12.5% of the shares of ALL PAVING, INC., giving them a combined 87.5% of the shares of ALL PAVING, INC.; and that Debtor only owns and holds 12.5% of the shares of ALL PAVING, INC..

4.     Debtor has been involved in litigation with his parents, movants PATRICK DALY and ELIZABERH DALY, regarding the ownership of ALL PAVING, INC. for more than five (5) years, since 2017.

5.     The Debtor's characterization as the having 100% ownership interest in ALL PAVING, INC. is incorrect, false and violative of the 17th Judicial Circuit Court Order in the 2017 case attached to this Motion as Exhibit "1", issued in the case of *All Paving, Inc. All Paving & Sealcoating , LLC, Patrick Daly and Elizabeth Daly vs. Daren C. Daly and Jamie A. Schindler*, Case No: CACE 17-014794 (09).  Said Circuit Court Order, dated September 29. 2021, ruled that "All pleadings filed by counsel for the Defendants and counsel for Plaintiffs are dismissed without prejudice as to All Paving, Inc. only, because majority ownership of that entity has not yet been adjudicated."

6.     Debtor is further involved in the 2018 case styled *All Paving, Inc, vs. All Paving & Sealcoating, LLC., Patrick Daly, Elizabeth Daly, and Robert Holland*, filed as Case No: CACE 18-021093 (09).

7.     A copy of the Agreed Order on Third Party Defendant's Motion to Dismiss Third Party Complaint and Staying this Case Pending Adjudication of Majority Ownership of All Paving, Inc. in 2017 Case, dated December 6, 2021, is attached to this Motion as Exhibit "2".

8.      Said Agreed Order provided that: "In recognition that this Court entered an Order on September 29, 2021 in Case No. CACE 17-014794 (09) ("2017 Case"), which ruled that claims filed on behalf of ALL PAVING, INC. may not proceed until majority ownership of that entity has been adjudicated, this entire 2018 Case, including all pleadings filed herein by all parties, is hereby stayed without prejudice, pending resolution of the 2017 Case including an adjudication of majority ownership of ALL PAVING, INC., or pending further order of court."

9.      The parties to the 2017 and 2018 cases are further involved in the Case of *All Paving & Sealcoating, LLC, Patrick Daly and Elizabeth Daly, Appellants* v. *Daren C. Daly and Jamie A Schindler, Appellees,* pending in the Fourth District Court of Appeal as Case No. 4D22-1825.

10.     In that the ownership of the entity ALL PAVING, INC. has yet to be determined by the Broward Circuit Court in the inter-related cases, which is pending resolution of the 2017 Case including an adjudication of majority ownership of All Paving, Inc., Debtor DAREN C. DALY cannot validly make the conclusory statement to the Bankruptcy Court that he is the 100% owner and director of ALL PAVING, INC.

11.     Since the majority ownership of ALL PAVING, INC. is stayed subject to the Circuit Court's Orders attached hereto as Exhibits "1" and "2', the Debtor cannot validly claim that he constitutes the majority of the board of directors of ALL PAVING, INC.

12.     Based upon the Court's review of the filings of the Debtor, including but not limited to Debtor's Chapter 11 Case Management Summary [D.E. 17], the Debtor's Schedules [D.E. 23, items # 19 and 39], the Debtors Statement of Financial Affairs [D.E. 23, Page 38, Item #27], and the Debtor's Periodic Report Re: Value, Operations and Profitability of Entities in Which the Estate of the Debtor Holds a Substantial or Controlling Interest Filed by Debtor DAREN C. DALY. [D.E. 31] it should be manifestly evident to this Court that Debtor's Chapter 11,

Subchapter V Case was filed to reorganize ALL PAVING, INC., and to stay and avoid the rulings of the Broward County Circuit Court.

13.     The Broward County Circuit Court is in the best position to determine the proper ownership of the Florida corporation, ALL PAVING. INC., due to the protracted and vigorously litigated matter and issues which have taken place over the course of the past five years.  The Docket for the 2017 case lists 642 Docket Entries, and the 2017 Case is set for trial in November, 2022.

14.     As the determination of the majority ownership of All Paving, Inc. has been stayed by the actions of the Circuit Court, there is no valid Board of Directors of the corporation to issue a corporate resolution of ALL PAVING, INC. to be a part of a Chapter 11, Subchapter V Bankruptcy proceeding

15.     PATRICK DALY (12.5%) and ELIZABETH DALY (75%) assert a claim contrary to Debtor's claim of 100% ownership of ALL PAVING, INC.; and allege that combined they own and hold 87.5% of the shares of ALL PAVING, INC. and are the sole directors on the Board of Directors for ALL PAVING, INC., which has been yet to be determined by the 17th Judicial Circuit Court.

16.     The Florida corporation, ALL PAVING, INC. was first formed in 2013 but did not commence business operations until 2015, and its startup costs were completely funded by All Paving & Sealcoating, LLC., PATRICK DALY and ELIZABETH DALY, who signed the initial Personal Guaranties for almost all of the equipment purchased by the corporation.

17.     On September 18, 2015, the corporation opened a bank account with BankUnited, and executed a Beneficial Ownership Certificate to the bank under penalty of perjury stating that ELIZABETH DALY is the 75% owner of ALL PAVING, INC., PATRICK DALY is the 12.5%

owner of ALL PAVING, INC. and Daren Daly is the 12.5% owner of the corporation, ALL PAVING, INC.  The Beneficial Ownership Certificate signed by Elizabeth Daly as the President of the corporation provided to BankUnited was executed in the presence of, and with the approval of DAREN C. DALY and PATRICK DALY.  A copy of the Beneficial Ownership Certificate provided to Bank United is attached to this Motion as Exhibit "3".

18.    On September 20, 2015, Debtor, in his own handwriting, filled out a Credit Application to CAT Financial, stating that ELIZABETH DALY is the 75% owner of the corporation, PATRICK DALY is the 12.5 owner of the corporation, ALL PAVING, INC.  A copy of said Credit Application is attached to this Motion as Exhibit "4".   DAREN C. DALY'S sworn testimony on this Exhibit is attached hereto as Exhibit "9"

19.    An Action by Written Consent of a Majority of Owners/Shareholders of All Paving, Inc. describes the history of the corporation, and details the actions that Debtor took regarding filings with the Florida Department of State to first remove ELIZABETH DALY as the President of the corporation in December, 2016, and then to remove PATRICK DALY as Vice President of the corporation in June, 2017.  A copy of the Action by Written Consent of a Majority of Owners/Shareholders of All Paving, Inc. dated June 29, 2017, is attached hereto as Exhibit "5".

20.    Both Articles of Amendment filed by Debtor with the Florida Department of State in 2016 and 2017 violated Florida Statutes Sections 607.1006(5) and 607.0120(6)(b) because DAREN C. DALY misrepresented that shareholder or director approval was not required, and said filed Articles were unauthorized.

21.    The Exhibit "5" Action by Written Consent of a Majority of Owners/Shareholders of All Paving, Inc. further recites a that "After having an argument with his father on June 17. 2017, DAREN DALY filed Articles of Amendment to Article of Incorporation of ALL PAVING,

5

INC. which removed Patrick Daly as Vice President, and purportedly changed the name of the corporation to All Paving Incorpation [sic].   Said Articles of Amendment to the Articles of Incorporation similarly violated Florida Statutes Sections 607.1006(5) and 607.0120 (6)(b) because DAREN C. DALY misrepresented that shareholder or director approval was not required such that both filed Articles of Amendment were unauthorized.

22.     DAREN C. DALY was scheduled to turn over the QuickBooks records of ALL PAVING, INC. to Movants, and movant's Expert on July 11, 2022.  Previously, DAREN C. DALY began using an unauthorized online QuickBooks database, and had excluded the majority owners of ALL PAVING, INC., ELIZABETH DALY and PATRICK DALY, from having access to the QuickBooks records.

23.     A meeting had been scheduled for July 11, 2022 for the turnover of the QuickBooks records to movants.  DAREN C. DALY did not appear for the meeting, which was intended for the turnover of the QuickBooks records to PATRICK DALY and ELIZABETH DALY, such that the QuickBooks records were not made available to the shareholders/creditors or their Expert.

24.     Instead of turning over the QuickBooks records for ALL PAVING, INC., DAREN C. DALY filed this Chapter 11 Subchapter V Petition with the United States Bankruptcy Court, Southern District of Florida, under Case No: 22-15694-SMG on July 24, 2022.

25.     Pursuant to Official Form 426, the Periodic Report Reporting Value, Operations and Profitability of Entities in Which the Debtor's Estate holds a Substantial or Controlling Interest filed August 18, 2022, as D.E. 31, the Report reveals that the Debtor, filing for ALL PAVING, INC. is not insolvent.  Pursuant to D.E. 31, ALL PAVING, INC. owns and holds, as of July 21, 2022, assets with a total value of $1,609,457.01.  At the same time D.E. 31 reflects that ALL PAVING, INC. has total liabilities of $1,213,536.32, leaving Shareholders' Equity of $395,920.19.

The D.E. 31 Report reflects that All Paving, Inc. is not insolvent.  Thus, D.E. 31 proves Debtor is not insolvent and therefore does not qualify for Chapter 11, Subchapter V Bankruptcy Relief.

26.    Based upon Exhibit "3" and Exhibit "4" attached to this Motion, and the Action by Written Consent of a Majority of Owners/Shareholders of All Paving, Inc.., (Exbibit "5"), at most, Debtor, DAREN C. DALY, owns 12.5 % of the Florida corporation ALL PAVING, INC., such that DAREN C.  DALY did not have authority to file for ALL PAVING, INC. in his individual Chapter 11 Subchapter V Case.

27.    In addition to the foregoing, the 87.5% shareholders of ALL PAVING, INC., PATRICK DALY and ELIZABETH DALY do not consent and object to the Chapter 11 filing of DAREN C. DALY essentially involving ALL PAVING, INC., and assert that this Chapter 11 Bankruptcy case should be dismissed

## MEMORANDUM OF LAW SUPPORTING MOTION TO DISMISS

It is clear that pursuant to the Circuit Court's Order on Plaintiffs' Motion to Dismiss Amended Counterclaim filed by Defendant Daren C. Daly purportedly on behalf of Plaintiff, ALL PAVING, INC. (Exhibit "1" to this Motion) that all pleadings filed by counsel for Defendants [Daren C. Daly et al.] are dismissed with prejudice as to All Paving, Inc. only "because majority ownership of that entity has not yet been adjudicated."

Further pursuant to the Agreed Order on Third Party Defendant's Motion to Dismiss Third Party Complaint and Staying This Case Pending Adjudication of Majority Ownership of All Paving, Inc. in 2017 Case (Exhibit "2" to this Motion), the Circuit Court Order states that "[i]n recognition that this Court entered an Order on September 29, 2021, in Case No.: CACE 17-014794(09) ("2017 Case") which ruled that the claims filed on behalf of All Paving, Inc. may not proceed until majority ownership of that entity has been adjudicated, this entire 2018 case,

including all pleadings filed herein by all parties, is hereby stayed without prejudice, pending resolution of the 2017 case including an adjudication of majority ownership of ALL PAVING, INC., or pending further order of court."

This Bankruptcy Court should conclude from these two Orders that any action to be taken on behalf of ALL PAVING, INC. was stayed pending resolution of the majority ownership of ALL PAVING, INC.  Therefore, there being no determination as to the majority ownership of All Paving, Inc., the officers and directors of the corporation are not capable of being determined until further order of the circuit court.  It is clear that there were no authorized directors of the corporation on the date the Chapter 11 Petition was filed on July 24, 2022.  This conclusion merits the dismissal of the case because the filing of the Chapter 11 case including ALL PAVING, INC. through DAREN C. DALY was not authorized by the Board of Directors of ALL PAVING, INC.

The Chapter 11 Case Management Summary [D.E. 17] recites at paragraph 5 "Reasons for filing Chapter 11.  The Debtor is faced with mounting debts principally associated with his business operations and pending Litigation in Broward County and Fourth District Court of Appeal with the Debtor's father including *All Paving, Inc. v. Daren C. Daly et al.;* Case No. CACE 17-014794 (09), *All Paving, Inc. v. All Paving & Sealcoating, LLC et al.;* Case No. CACE 18-21093 (08) and *All Paving & Sealcoating, LLC v. Daren C. Daly et al.;* Appellate Case No. 4D22-1825.  The Debtor intends to reorganize his debts and resolve litigation claims in this Chapter 11 case."

These cases involve the issue of the majority ownership of the Florida corporation ALL PAVING, INC. and Movants submit that the Chapter 11 Bankruptcy case was filed solely to invoke the automatic stay as to the pending determination of the majority ownership of ALL PAVING, INC.  Furthermore, it is patently obvious that while the Debtor claims he is the 100% owner of ALL PAVING, INC. that the Debtor did not have the authority to file the Chapter 11

8

case for himself individually, reorganizing the business of ALL PAVING, INC.  This is especially true when the Court considers that the majority of ownership of ALL PAVING, INC. has not been determined by the Circuit Court, and is still pending.

It should also be clear to the Court from the Debtor's Schedules [D.E. 23] that the business creditors of ALL PAVING, INC. are substantially the same creditors listed on schedule D of DAREN C. DALY'S schedules.  As set forth within the Periodic Report Regarding Value, Operations, and Profitability of Entities in Which the Debtor's Estate Holds a Substantial or Controlling Interest [D.E. 31], the documents clearly show that it is the reorganization of ALL PAVING, INC., not the reorganization of entities alleged to be controlled by Debtor that is the proposed issue for resolution by this Court.

The caselaw in the Bankruptcy decisions for Bankruptcy Courts in the State of Florida have universally required that in order for a corporation to file a Bankruptcy Petition, the consent of that corporation's Board of Directors is required to authorize a resolution to file a Chapter 11 proceeding.

*In the Matter of Brandon Farmer's Market, Inc.,* 34 B.R. 148 (Bkrtcy. M.D. Fla 1983), there was a deadlock which developed between two directors concerning the management of the affairs of the debtor, and there was a pending state court litigation matter to resolve the controversy between the parties.  The Court ruled that pursuant to the applicable laws of Florida as set forth in Section 607.111(1) Florida Statutes, unless it is otherwise provided for in the charter or in the articles of incorporation, a management of the affairs of the corporation is under the control and supervision of the Board of Directors.  Judge Paskay ruled that "**it is obvious that it would be an abuse of the jurisdiction of this court to seek relief in this court for the sole purpose of achieving a purpose which is not a proper legitimate purpose to be achieved under any**

9

**provision of the bankruptcy code.**"  (Emphasis added) The court determined that the petition was not filed in good faith, was not an authorized filing, and therefore, should be dismissed.

The court of I*n the Matter of Brandon Farmer's Market, Inc.*  further observed that: "there is nothing in this record even to intimate that the institution of this Chapter 11 proceeding was done for any purpose but to evoke the automatic stay provision of the Court, Section 362 (a), in order to prevent a then pending State Court proceeding instituted by the Movants, which sought under the applicable local law, the liquidation of the corporation, injunction and appointment of a receiver pursuant to Chapter 607.274 of the Florida Statutes.  There is nothing in this record even to intimate that this is really a legitimate corporate reorganization case instituted to effectuate the intent of Congress, i.e., to enable a financially distressed corporation to obtain rehabilitation under this Chapter."  Due to the fact that there was no authorization by the board of directors the court ruled that there was no authority by the president of the corporation to file a Chapter 11 petition.

This proposition of law that the valid resolution from the Board of Directors is required to filed a Chapter 11 petition was further the basis for the ruling of the court in the case of *In re Bel-Aire Investments, Inc.* 97 B.R. 88 (Bkrtcy. M.D. Fla 1989).  In the *Bel-Aire Investments, Inc.* case, the president of the debtor filed a voluntary petition on behalf of the debtor.  In the case, there were two Board of Directors, but there was no resolution from the Board of Directors to authorize the president to file a petition for relief under Chapter 11.  The *Bel-Aire Investments, Inc.* Court observed that the Movants contended that the filing by the president of the corporation was totally unauthorized, and therefore the motion to dismiss should be granted.  The court found that it was well established that since the Bankruptcy Code itself does not establish the requisites for an initiation for a voluntary corporate bankruptcy case, the validity of all the individuals acting on

behalf of the corporation must be determined reference to the law of the state in which the corporation was chartered.  *See, In re Autumn Press, Inc.,* 20 B.R. 60 (Bkrtcy. D. Mass. 1982).

The *Bel-Aire* court stated that it was called upon to consider an identical factual situation encountered in *In the Matter of Brandon Farmer's Market, Inc.,* and concluded that a corporate president who was one of the corporation's two directors was not authorized to file a Chapter 11 reorganization petition on behalf of the corporation without the consent of the other director.  The court also pointed out that unlike *In the Matter of Brandon Farmer's Market, Inc.,* there was no evidence to show that this Chapter 11 case was instituted solely for the purpose of preventing a pending state court suit in which the Movants sought a dissolution and liquidation of the corporation and appointment of a receiver pursuant to Chapter 607.274 of the Florida Statutes. Even so, the *Bel-Aire* court dismissed the debtor's Chapter 11 case on the basis of lack of board of directors' approval.

Preventing a pending State Court action from proceeding appears to be the primary purpose for the filing by this Debtor of the instant Chapter 11 bankruptcy.  There are numerous Florida Bankruptcy Court rulings for the principle that a valid resolution of the board of directors is necessary in order to initiate a voluntary case for a corporate Debtor.  The court's ruling in the case of *In re Bel-Aire Investments, Inc*. cited to and was grounded upon the precedents established in *Al-Wyn Food Distributors, Inc.,* 8 B.R 42 (Bkrtcy. M.D. Fla 1980); *In Re American International Industries, Inc.* 10 B.R. 695 (Bkrtcy. S.D. Fla. 1981); *In Re Minor Emergency Center of Tamarac, Inc,* 45 B.R. 310 (Bkrtcy. S.D. Fla.1985).  The Bankruptcy Courts for the Southern District of Florida and Middle District of Florida universally held that the valid resolution of the board of directors is necessary in order to initiate a voluntary bankruptcy case for a corporate Debtor, and the president lacks authority to institute a case on his own.

In the instant case, it is clear that the issue of the corporate governance of ALL PAVING, INC. has been an issue for determination by the Circuit Court since 2017, and that there is no present Board of Directors of ALL PAVING, INC. to authorize the Chapter 11 filing.  Here, board ratification was necessary to initiate the voluntary bankruptcy proceeding for the ALL PAVING, INC., and that board ratification could not be obtained based on the status of the 17th Judicial Circuit Court cases.

It is further clear that assets and the equipment of ALL PAVING, INC were listed at Page 17 of 50 of D.E. 23, but the values of that equipment were not included on Schedule B of Debtor's Schedules.  This further illustrates that Debtor's filing is in reality the filing of ALL PAVING, INC.

*In re Minor Emergency Center of Tamarac, Inc.,* 45 B.R. 310 (Bkrtcy. S.D. Fla 1985) furthered the requirement that the authority of the board of directors is required to file a Chapter 11 bankruptcy involving a corporate debtor.  That court held that: "under Florida law the president of a corporation cannot file a Chapter 11 petition without authorization from its board of directors. The president, is, therefore, without authority to initiate a voluntary petition for the corporate debtor."  The end result in that case was that the motion to dismiss was granted, and the pending motion for relief from the automatic stay was determined to be moot.

The case of *In re mpX Technology, Inc.,* 310 B.R. 453 (Bkrtcy. M.D. Fla 2004) is instructive in the instant matter.  At the outset the court recognized that **"[t]he resolution of disputes involving corporate governance is generally not within the competence and jurisdiction of a bankruptcy court, even if the corporation is a debtor under Chapter 11 of the Bankruptcy Code."** *(*Emphasis added*) Citing to: In re Bush Terminal Co.,* 78 F.2d 662 (2d Cir. 1935); *In re The Lionel Corp.* 30 B.R. 327 (Bkrtcy. S.D.N.Y. 1983).  The *mpX Technology,*

12

*Inc.* Court described the dispute under consideration in the contested matter is not about the control of a corporation, but involves the authority of the president to file a Petition for Relief under Chapter 11 for the debtor.

In the instant case, the matter of governance of the Florida corporation ALL PAVING, INC. is the exact and direct subject matter of the state Circuit Court actions. The determination of the majority ownership interest of the corporation has been stayed and is not determined until further consideration by the Circuit Court. The corporate governance of ALL PAVING, INC. should be a determination made by the Circuit Court, which has lived with these parties and issues for five years; not the bankruptcy court.

The Court in case of *mpX Technology, Inc.* also cites to the case of *AT Engineering, Inc.* 142 B.R. 990 (Bkrtcy. M.D. Fla. 1992) for support. That case held that closely held corporations with 50/50 shareholders had no authority to file petition due to a total deadlock. The *AT Engineering, Inc.* court also observed that the burden of persuasion is on the party who signed the petition to establish under applicable law, he had the capacity to sign the petition. *See also, In re Zaragosa Properties, Inc.* 156 B.R. 310 (Bkrtcy. M.D. Fla. 1993).

The *mpX Technology, Inc.* Court concluded that: "filing a Chapter 11 petition for the purpose of resolving an inter-company dispute is not one of the goals which is to be achieved in a Chapter 11 case, and it is totally improper to use the bankruptcy court and the provisions of the Code for this purpose." In the instant case, the Debtor, DAREN C. DALY, without authority from the board of directors (because there is no current board of directors), filed this case under his own name, but in reality, the Bankruptcy stay and protection is sought for ALL PAVING, INC.

WHEREFORE, based upon the lack of a corporate resolution approved by ALL PAVING, INC.'s Board of Directors, the improper purpose of staying Circuit Court resolution of the issues of corporate ownership and governance of ALL PAVING, INC., and the fact that ALL PAVING, INC. and Debtor is not insolvent, this Chapter 11, Subchapter V matter should be dismissed.

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

This Motion for Relief from the Automatic Stay is sought in the alternative to the Motion to Dismiss Chapter 11 Case, *supra*.   This Motion is filed pursuant to 11 U.S.C. § 362 (d) for cause. 11 U.S.C. § 362 (d) provides that "On request of a party in interest, and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—for cause…"

The court in the case of *In re Guy,* 587 B.R. 475 (Bkrtcy. E.D. NC 2018) noted that a motion to lift the automatic stay is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(g).  The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334.  Per *In re Guy, b*ecause the bankruptcy code provides no definition of what constitutes "cause", courts must determine when such discretionary relief is appropriate on a case-by-case basis.

Similar to the instant case, the court in *In re Guy* cited with approval the case of *Robbins v. Robbins (In re Robbins),* 964 F.2d 342,345 (4ᵗʰ Cir. 1992), where the state court matter had been active for approximately five years before the Debtor's Petition was filed, and dealt with a matter within the expertise of the state court; equitable distribution

Debtor, DAREN C. DALY has been involved over more than the past five years in the case of *All Paving, Inc. All Paving & Sealcoating , LLC, Patrick Daly and Elizabeth Daly vs. Daren C. Daly and Jamie A. Schindler*, Case No: CACE 2017-014794 (09).  The parties are also involved in state court litigation in the case of *All Paving, Inc, vs. All Paving & Sealcoating, LLC., Patrick*

*Daly, Elizabeth Daly, and Robert Holland*, in Case No: CACE 18-021093 (09).  The same Judge, the Honorable Mily R. Powell, entered both Orders attached to this Motion as Exhibits "1" and "2" (Judge Jeffrey Levenson is now presiding over both the 2017 case and the 2018 case.).

The Broward County Circuit Court is the tribunal most familiar with the parties and the issues in both cases.  The Circuit Court has entered an Order on Plaintiffs' Motion to Dismiss Amended Counterclaim Filed by Defendant Daren C. Daly Purportedly on Behalf of Plaintiff All Paving, Inc.  in the 2017 case that "All pleadings filed by counsel for Defendants and counsel for Plaintiffs in this case, purportedly on behalf of ALL PAVING, INC., are dismissed without prejudice as to All Paving, Inc. only, because majority ownership of that entity has not yet been adjudicated." (See attached Exhibit 1).

The Circuit Court has ruled in the 2018 case, in an Agreed Order on Third Party Defendant's Motion to Dismiss Third Party Complaint and Staying this Case Pending Adjudication of Majority Ownership of All Paving, Inc. in 2017 Case.  Said Order provided that: "In recognition that this Court entered an Order on September 29, 2021, in Case No. CACE 17-014794 (09) ("2017 Case") which ruled that claims filed on behalf of All Paving, Inc. may not proceed until majority ownership of that entity has been adjudicated, this entire 2018 Case, including all pleadings filed herein by all parties, is hereby stayed without prejudice, pending resolution of the 2017 Case including and adjudication of majority ownership of All Paving, Inc., or pending further order of court."

The trial of the 2017 case is scheduled to be conducted on the November 7, 2022, trial docket.  A copy of the Circuit Court's trial order in Case No. 17-014794 (09), and a copy of the Circuit Court's Order Resetting Trial is attached to this Motion as Composite Exhibit "6".

The Circuit Court Docket in the 2017 case contains 642 docket entries.  The docket in the 2018 Circuit Court case contains 78 docket entries.  The circuit court has lived with the 2017 case for more than five years, and lived with the 2018 case for more than four years.  In addition, the 2017 case and the 2022 Fourth District Court of Appeal case involves a party, Jamie A. Schindler, over whom the Bankruptcy Court does not have jurisdiction.

The Debtor has stated in the Chapter 11 Case Management Summary [D.E. 17], at paragraph 5, that the purpose for the bankruptcy was to stay the state court proceedings. The Debtor states that "[t]he Debtor is faced with mounting debts principally associated with his business operations (for ALL PAVING, INC) and pending Litigation in Broward County and Fourth District Court of Appeal with the Debtor's father including *All Paving, Inc. v. Daren C. Daly et al.;* Case No. CACE 17-014794 (09), *All Paving, Inc. v. All Paving & Sealcoating, LLC et al.;* Case No. CACE 18-21093 (08) and *All Paving & Sealcoating, LLC v. Daren C. Daly et al.;* Appellate Case No. 4D22-1825.  The Debtor intends to reorganize his debts and resolve litigation claims in this Chapter 11 case."

The case of *In re American Spectrum Realty, Inc.* 540 B.R. 730 (Bkrtcy. C.D. Cal. 2015) held that cause existed to lift the automatic stay to allow the state court litigation that had been pending against the Chapter 11 debtor for more than two years to proceed before the court that was very familiar with the issues and parties.  The *In re American Spectrum Realty, Inc. C*ourt held that: "Granting relief from the stay would allow the Texas state court to proceed to judgment and resolution of all of the issues presently pending in the Texas Action."  The *In re American Spectrum Realty, Inc.* Court also held that "The Texas court is best suited to adjudicate these causes of action which arose under Texas law."  The court reasoned that as a result of the Texas court's

jurisdiction of the case, and the case potentially to be decided in bankruptcy court, "there is a risk of inconsistent determinations between the two court systems."

The *In re American Spectrum Realty, Inc.* Court ruled that there are twelve non-exclusive factors that court's weigh to determine whether cause exists to grant relief to allow an entity to continue pending litigation against a debtor in a non-bankruptcy forum:

1. Whether the relief will result in a partial or complete resolution of the issues;

2. The lack of any connection with or interference with the bankruptcy case;

3. Whether the foreign proceeding involves the debtor as a fiduciary;

4. Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;

5. Whether the debtor's insurance carrier has assumed full financial responsibility for defendant the litigation;

6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;

8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);

9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties;

11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and

12. The impact of the stay on the parties and the "balance of hurt."

The *American Spectrum Realty* court observed that not all the factors will be relevant, and some will carry more weight than others.

17

Another case, *In re Tricare Rehabilitation Systems, Inc.*181 B.R. 569 (Bkrtcy. N.D. Ala. 1994) added four more factors. It first added: "[w]hether judicial economy favors the continuation of the action in the tribunal in which it was commenced, to fix and liquidate the claim which then may be made against the debtor's estate, and to avoid a multiplicity of suits and proceedings involving the same subject matter. The *Tricare* court next added: "[w]hether the state court litigation has progressed to trial-readiness, with the likelihood that investment of resources in trial preparation would be wasted if trial is deferred. The third factor added by the *Tricare* court is "[w]hether the issues presented are governed solely by state law, or should be adjudicated by a specialized tribunal with expertise in their subject matter.' The final added factor expressed by the *Tricare* court is "[w]hether the litigation involves other parties over whom the bankruptcy court lacks jurisdiction and whether full relief may be accorded to all such nondebtor parties without the debtor's presence in the lawsuit." *Citing to, In re Johnson,* 115 B.R. 634 (Bkrtcy. D. Minn. 1989).

Applying the additional *Tricare* factors in the instant case, judicial economy favors the adjudication of the issues regarding corporate ownership and governance of ALL PAVING, INC. in the state court proceeding. The state court matter is set for trial in November, 2022, and is at trial readiness. The docket in the 2017 includes 642 docket entries, which efforts would be wasted if stay relief is denied. The issues in the pending state court action are governed by Florida law, Chapter 607 Florida Statutes. Finally, the state court litigation involves a party over whom the bankruptcy Court lacks jurisdiction, all factors favoring relief from the automatic stay, so the matter can be tried in the 17th Judicial Circuit Court.

Utilizing the *American Spectrum Realty* factors, the most saliant of the factors is the interest of judicial economy and the expeditious and economical determination of the litigation for the parties. Furthermore, the determination by the Circuit Court as to the majority ownership of ALL

18

PAVING, INC. will result in the complete resolution of that issue. The Circuit Court litigation involves a third-party, DAREN C. DALY's fiancée, Jamie A. Schindler, a non-party in this case over whom the Bankruptcy Court lacks jurisdiction.

Movants also point out to the court that Debtor DAREN C. DALY has admitted in sworn testimony in the Circuit Court that he signed a corporate resolution submitted to Bank United authorizing the opening of an ALL PAVING, INC. bank account, and the Beneficial Ownership Certification was simultaneously signed under penalty of perjury by the President (ELIZABETH DALY) and submitted to BankUnited in DAREN C. DALY's presence showing ELIZABETH DALY as the 75% shareholder, and PATRICK DALY as the 12.5% shareholder, and DAREN C. DALY as the 12.5% shareholder of ALL PAVING, INC. (See Exhibit "7" attached to this Motion.)

Movants also point to DAREN C. DALY's sworn testimony before the Circuit Court that it is his handwriting on Exhibit "4" provided to CAT Financial stating that ELIZABETH DALY is the 75% shareholder, and that PATRICK DALY is the 12.5% shareholder of ALL PAVING, INC. (See Exhibit "8" attached to this Motion.)

DAREN C. DALY has also admitted in sworn testimony before the Circuit Court that he forged documents, including signing PATRICK DALY's name on checks and documents, and forged ELIZABETH DALY's signature on applications and other documents. DAREN C. DALY also submitted documents to the Florida Department of State changing the management of ALL PAVING, INC. without notice or the authorization of his parents. (See Exhibit "9" attached to this Motion). DAREN C. DALY should not be rewarded for such conduct.

The court in *American Spectrum Realty, Inc.* reasoned that judicial economy will be served by allowing the Texas state court to continue proceed to trial in the Texas Action, which has been pending before the Texas court for two years and has an extensive docket.

In the instant case, the 2017 case has been pending for more than five years and has a 642 item docket, and the 2018 case has been pending for more than four years, and there is an 78 item docket. In addition, the 2017 case is set for trial in November, 2022. A copy of the Circuit Court's Orders, including an Order Resetting Trial for November, 2022 is attached hereto as Composite Exhibit "6".

In the case of *In re Bison Resources, Inc.,* 230 B.R. 611 (Bkrtcy. N.D. Ok 1999) the matter in state court had been scheduled to commence on November 16, 1998. The debtor Bison Resources, Inc. filed its Chapter 11 petition on November 10, 1998 to stay the state court action.

In Debtor's Status Conference Report Pursuant to 11 U.S.C. §1184(C) [D.E. 36], DAREN C. DALY specifically states that the stay of these cases was his primary purpose for filing the Chapter 11. Similar to the *In re Bison Resources, Inc.* case and the *American Spectrum Realty, Inc.* case, cause was established to grant relief from the automatic stay to enable the state court to hear issues that it was best familiar with. The state court proceedings in the *In re Bison Resources, Inc.* case had been pending for more than two and half years. The state court was in the best position with a trial pending, which finding supported the granting of the relief requested by movants on the grounds that such issues are best left to the state court.

The Fourth Circuit Court of Appeals affirmed the North Carolina's bankruptcy court's decision to lift the automatic stay to allow the debtor's ex-wife to continue with an equitable distribution proceeding in Florida that had been active for approximately five years prior to the

debtor's petition. *Robbins v. Robbins,* 964 F.2d 342, 345 (4th Cir. 1992). The court in *Robbins* first noted that equitable distribution falls within the expertise of the state courts to which Federal courts owed deference; that judicial economy warranted lifting the stay to conclude the state court action, because otherwise, the North Carolina bankruptcy court would need to spend significant time familiarizing itself with the long history of the proceeding, as well as with Florida's domestic property laws.

In the instant case, the determination of corporate ownership which is pending before the state Circuit Court is an issue within the province of the 17th Judicial Circuit Court, and involves issues on Florida corporate law. The case has been proceeding for more than five years, is set for trial in November, 2022 and the state court is the tribunal most familiar with the issues and the parties. The rationale in the *Robbins* case is applicable to the instant matter.

In the case of *In re Chana Taub,* 413 B.R. 55 (Bkrtcy. E.D. NY 2009) the court held that permitting the state court to determine issues including rights of parties in separate or marital property would resolve significant open issues and assist in plan confirmation, so that factor favored finding cause for relief from stay. Secondly the *Taub* court determined that the state court had significant expertise in domestic relations matters and was well qualified to determine property entitlements and obligations, so that factor weighed in favor of finding cause for relief from stay. Finally, the *Taub* court held that creditors' rights could be protected by granting limited relief from stay to permit the divorce action to proceed only up to entry of judgment, and so that factor weighed in favor of finding cause for relief from stay.

In the instant case, the Circuit Court is familiar with the issues and the parties, and has been involved with it for more than five years. The huge docket in the state Court proceeding would be a burden on the Bankruptcy Court, and stay relief would promote judicial economy. The issues of

corporate governance and the majority ownership of the corporation has been litigated for more than five years before the 17th Judicial Circuit Court, which weighs in favor of finding cause for relief from stay.  Finally, the creditors' rights could be protected by granting a limited relief from stay to permit the Circuit Court action to proceed up to entry of judgment, subject to further evaluation by the bankruptcy court as to the decision rendered by the Circuit Court.

Attached hereto as Exhibit "10" is the Second Amended Complaint and Exhibits filed in the 2017 Circuit Court case, which fully illustrates the Movants' causes of actions against the Debtor, and demonstrates that the 17th Judicial Circuit Court is in the best position and is the appropriate tribunal to resolve the corporate governance issues of ALL PAVING, INC., which promotes judicial economy, such that Movants' Motion for Relief from or to Modify the Automatic Stay should be granted.

WHEREFORE Movants, PATRICK DALY, ELIZABETH DALY, individually, and as the alleged majority owners and the only Directors on the Board of Directors of the Florida corporation ALL PAVING, INC.,  and ALL PAVING & SEALCOATING, LLC respectfully request that the Court Dismiss the Debtor's Chapter 11 (Subchapter V) Bankruptcy Case, or in the Alternative, Modify or Grant Relief from the Automatic Stay, and enter such other and further relief as the Court deems just and proper under the grounds set forth herein.

I HEREBY CERTIFY that on September 6, 2022, I electronically filed the following document with the Clerk using CM/ECF, and that a true and correct copy of the Motion to Dismiss Chapter 11 Case and/or in the Alternative Motion for Relief from the Automatic Stay, or to Modify Automatic Stay was furnished via CM/ECF to Monique D. Hayes, Esq., monique@dgimlaw.com , and Isaac M. Marcushamer, Esq. isaac@dgimlaw.com  both with DGIM LAW, PLLC.

C. DAVID TANGORA, P.A.
Attorney for Creditors/Movants,
Patrick & Elizabeth Daly,
and All Paving
& Sealcoating, LLC
200 S.E. 18th Court
Ft. Lauderdale, FL 33316
(954) 779-1005-Phone
(954) 764-4502-Facsimile
tangoralaw@bellsouth.net

By/s/ C. David Tangora
    C. David Tangora, Esq.
    Florida Bar No: 522104

**IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

CASE NO.  <u>CACE17014794</u>   DIVISION  <u>09</u>   JUDGE  <u>Mily R Powell</u>

**All Paving Inc , et al**

Plaintiff(s) / Petitioner(s)

v.

**Daren C Daly, et al**

Defendant(s) / Respondent(s)

_____/

## <u>ORDER ON PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIM FILED BY DEFENDANT DAREN DALY PURPORTEDLY ON BEHALF OF PLAINTIFF ALL PAVING, INC.</u>

THIS CAUSE came before the Court for a hearing on September 27, 2021 at 2:30 p.m. on: (1) Plaintiffs' Motion to Dismiss Amended Counterclaim filed by Defendant Daren Daly Purportedly on Behalf of Plaintiff All Paving, Inc., and (2) Plaintiffs' Motion to Compel John P. Kelly, Esq. to Vouch for Authority and for Entry of An Order Striking All Pleadings Purportedly Filed by Said Attorney on Behalf of All Paving, Inc., and the Court having reviewed said Motions and the other materials uploaded to CMS including the responses filed by Defendants, having heard argument of counsel, and being fully advised in the premises, it is hereby

ORDERED and ADJUDGED as follows:

1.       Said Motions are hereby granted as follows.

2.       All pleadings filed by counsel for Defendants and counsel for Plaintiffs in this case, purportedly on behalf of All Paving, Inc., are dismissed without prejudice as to All Paving, Inc. only, because majority ownership of that entity has not yet been adjudicated.

3.       Accordingly, the Second Amended Complaint filed by counsel for Plaintiffs, and the Amended Counterclaim filed by counsel for Defendants, shall otherwise remain pending, except that all claims asserted on behalf of All Paving, Inc. have been dismissed without

EXHIBIT

**1**

CaseNo: CACE17014794
Page 2 of 2

prejudice.

      4.      Counterdefendant PATRICK DALY shall file an Answer to the Amended Counterclaim as to the only remaining Counts, i.e. Counts I and II as asserted by Counterplaintiff DAREN DALY only, within 20 days of the date hereof.

**DONE** and **ORDERED** in Chambers, at Broward County, Florida on <u>09-29-2021</u>.

<u>CACE17014794 09-29-2021 2:20 PM</u>
Hon. Mily R Powell
**CIRCUIT JUDGE**
Electronically Signed by Mily R Powell

**Copies Furnished To:**
Andrew V Cobbe , E-mail : eservice@sotolawgroup.com
Andrew V Cobbe , E-mail : rebecca@sotolawgroup.com
Andrew V Cobbe , E-mail : andrew@sotolawgroup.com
Bruce A Goodman , E-mail : bruce@bgoodmanlaw.com
Bruce A Goodman , E-mail : melissa@bgoodmanlaw.com
Bruce A Goodman , E-mail : bruceagoodman@bellsouth.net
John P Kelly , E-mail : jkelly@businesslitigation.com
John P Kelly , E-mail : rebecca@sotolawgroup.com
John P Kelly , E-mail : john@sotolawgroup.com
Senen Garcia , E-mail : claims@sgarcialaw.com
Senen Garcia , E-mail : office@sgarcialaw.com
Senen Garcia , E-mail : senen@sgarcialaw.com
Stanford Blake , E-mail : lisa@stanfordblakemediation.com
Stanford Blake , E-mail : stan@stanfordblakemediation.com

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.  <u>CACE18021093</u>  DIVISION  <u>09</u>  JUDGE  <u>Mily R Powell</u>

**All Paving Inc**
Plaintiff(s) / Petitioner(s)

v.

**All Paving & Sealcoating LLC , et al**
Defendant(s) / Respondent(s)

_____/

## AGREED ORDER ON THIRD PARTY DEFENDANT'S MOTION TO DISMISS THIRD PARTY COMPLAINT AND STAYING THIS CASE PENDING ADJUDICATION OF MAJORITY OWNERSHIP OF ALL PAVING INC. IN 2017 CASE

THIS CAUSE came before the Court upon the Motion to Dismiss Third Party Complaint filed by Third Party Defendant DAREN C. DALY, and the Court having been advised of an agreement of counsel regarding entry of this Agreed Order, and otherwise being advised in the premises, it is hereby

ORDERED and ADJUDGED as follows:

In recognition that this Court entered an Order on September 29, 2021 in Case No. CACE 17-014794(09) ("2017 Case") which ruled that claims filed on behalf of ALL PAVING INC. may not proceed until majority ownership of that entity has been adjudicated, this entire 2018 Case, including all pleadings filed herein by all parties, is hereby stayed without prejudice, pending resolution of the 2017 Case including an adjudication of majority ownership of ALL PAVING INC., or pending further order of court.

**EXHIBIT**

**2**

CaseNo: CACE18021093
Page 2 of 2

**DONE** and **ORDERED** in Chambers, at Broward County, Florida on <u>12-06-2021</u>.

<u>CACE18021093 12-06-2021 4:12 PM</u>

Hon. Mily R Powell

**CIRCUIT JUDGE**

Electronically Signed by Mily R Powell

**Copies Furnished To:**

All Paving, Inc. c/o Daren Daly , E-mail : daren@allpaving.com

Andrew V Cobbe , E-mail : eservice@sotolawgroup.com

Andrew V Cobbe , E-mail : rebecca@sotolawgroup.com

Andrew V Cobbe , E-mail : andrew@sotolawgroup.com

Bruce A Goodman , E-mail : bruce@bgoodmanlaw.com

Bruce A Goodman , E-mail : melissa@bgoodmanlaw.com

Bruce A Goodman , E-mail : bruceagoodman@bellsouth.net

Bruce E. Loren , E-mail : receptionist@lorenkeanlaw.com

Bruce E. Loren , E-mail : clucht@lorenkeanlaw.com

Glenn N Smith , E-mail : glenn.smith@gmlaw.com

Glenn N Smith , E-mail : jacqueline.kerr@gmlaw.com

Glenn N Smith , E-mail : clemencia.corzo@gmlaw.com

John P Kelly , E-mail : jkelly@businesslitigation.com

John P Kelly , E-mail : rebecca@sotolawgroup.com

John P Kelly , E-mail : john@sotolawgroup.com

Kyle W Ohlenschlaeger , E-mail : awhite@lorenkeanlaw.com

Kyle W Ohlenschlaeger , E-mail : kohlenschlaeger@lorenkeanlaw.com

Kyle W Ohlenschlaeger , E-mail : clucht@lorenkeanlaw.com

Stephen R Verbit Esq , E-mail : sverbit@verbitlawfl.com

Stephen R Verbit Esq , E-mail : lwyrnluv@gmail.com

 **BankUnited**

## BENEFICIAL OWNERSHIP CERTIFICATION

This Certification of the Beneficial Owner(s) of ALL PAVING, INC. _____ (the

"Depositor"), a business entity organized under the laws of FLORIDA_____, is made as of

09/18/2015_____. For purposes of this Certification, the term Beneficial Owner will be deemed to

mean an individual (a natural person), either directly or indirectly, with a 10% or greater ownership

interest in the Depositor. I, being the duly authorized officer of the Depositor, hereby certify to

BankUnited, N.A. (the "Bank") under penalties of perjury that:

1.  The true and complete name, Social Security number, date of birth, country of citizenship, street
    address (including city and country) and ownership interest of each Beneficial Owner is as
    follows*:

| | | % Ownership |
|---|---|---|
| Name: ELIZABETH DALY   SSN: ▮▮▮ | | 75 |
| Date of Birth: ▮▮ 1967   Citizenship: US | ☑ Direct | |
| Address: 8919 NW 20TH MANOR  CORAL SPRINGS, FL 33071 | ☐ Indirect | |
| | | |
| Name: DAREN DALY   SSN: ▮▮▮ | | 12.5 |
| Date of Birth: ▮▮ 1986   Citizenship: US | ☑ Direct | |
| Address: 8919 NW 20TH MANOR  CORAL SPRINGS, FL 33071 | ☐ Indirect | |
| | | |
| Name: PATRICK DALY   SSN: ▮▮▮ | | 12.5 |
| Date of Birth: ▮▮ 1986   Citizenship: US | ☑ Direct | |
| Address: 8919 NW 20TH MANOR  CORAL SPRINGS, FL 33071 | ☐ Indirect | |
| | | |
| Name: _____   SSN: _____ | | _____ |
| Date of Birth: _____ Citizenship: _____ | ☐ Direct | |
| Address: _____ | ☐ Indirect | |
| | | |
| Name: _____   SSN: _____ | | _____ |
| Date of Birth: _____ Citizenship: _____ | ☐ Direct | |
| Address: _____ | ☐ Indirect | |

(Rev. 10/14)

**EXHIBIT**

**3**



2. No other individual has an undisclosed ownership interest of 10% or more in the Depositor.

3. Written notice of any change in the beneficial ownership of the Depositor will be immediately sent to the Bank to its office where the Depositor's account is maintained. This notice will be signed by a duly authorized officer of the Depositor as reflected in the Bank's records.

4. The undersigned accept full responsibility that the foregoing information is true, accurate and complete.

   * Include attachments of organizational charts and/or related information in support of identifying the ultimate beneficial owner, if applicable.

**IN WITNESS WHEREOF,** the duly authorized officer of the Depositor has executed this Beneficial Ownership Certification as of the date first written above.

☐ Check here if there are no Beneficial Owners (natural persons), either directly or indirectly, with a 10% or greater ownership interest in the Depositor.

_____          ELIZABETH DALY, President          09/18/2015
(Signature)                        (Print Name, Title)                      (Date)



**CAT Financial**

## CREDIT APPLICATION
Caterpillar Financial Services Corporation
Caterpillar Financial Commercial Account Corporation
Phone: (800) 651-0567    Fax: (615) 341-5925
Email: Credit.Department@cat.com

**Check all that apply. I am financing:**
☑ Equipment from a Cat Dealer
☐ Equipment from another party or refinance
☐ Parts, service, attachments or renting equipment from a Cat Dealer with Commercial Account

**I have previously applied with Cat Financial for:**
☑ Equipment Financing
☑ Commercial Account to pay for parts, service, attachments or to rent equipment from a Cat Dealer
☐ N/A

### SECTIONS 1-3 ARE REQUIRED FOR ALL CUSTOMERS

### ① CUSTOMER

Exact Business Name **All Paving Inc.** DBA (if any) _____

Type of Business ☑ Corporation ☐ Limited Liability Co ☐ General Partnership ☐ Limited Partnership ☐ Sole Proprietor ☐ Municipality ☐ Trust ☐ Other

Description of Business **Asphalt Paving**

Primary Contact Name **Elizabeth Daly** Title **Owner** Phone **1-855-735-ROAD** **Elizabeth@allpaving.com**

Physical Address **5121 Ehrlich Rd** City **Tampa** County **Hillsborough** State/Zip **FL, 33624**

Billing Address (if different) **5121 Ehrlich Rd** City **Tampa** County **Hillsborough** State/Zip **FL, 33624**

Phone # **1-855-735-ROAD** Fax # **—** Business Start Date **2012** Years as Owner of this Business **5**

Federal Tax ID Number _____ State Incorporated **FL** Sales Tax Exempt ☐ Yes (please attach certificate) ☐ No

Machine Fleet Size **15**

Prior bankruptcy? ☑ No ☐ Personal ☐ Current Business ☐ Prior Business

Active liens or judgments? ☑ No ☐ Liens ☐ Judgments

### ② OWNERSHIP: Provide copy of government issued ID for all owners completing this section

1) Name **Elizabeth Daly** Date of Birth ▓▓ **1967** SSN ▓▓▓▓ % of Ownership **75** % Net Worth _____

Address **8819 NW 50th Manor** City **Coral Springs** State/Zip **FL, 33071** Annual Income **52,000**

2) Name **Patrick Daly** Date of Birth ▓▓ **1966** SSN ▓▓▓▓ % of Ownership **12.5** % Net Worth _____

Address **8819 NW 50th Manor** City **Coral Springs** State/Zip **FL, 33071** Annual Income **86,000**

*For more than 2 owners, complete OWNERSHIP section and sign an additional Credit Application.*

### ③ REFERENCES

| | Phone # | Contact Name | Account # | Average Balance |
|---|---|---|---|---|
| **Primary Bank (Checking Account Specific)** | | | | |
| BB&T | 1-800-726-5778 | Sonia Kroyo | | |
| **Additional (Bank/Trade/Equipment Rental/Bonding)** | | | | |
| 1) Berger Construction | 1-800-269-9402 | Karen | | |
| 2) Sunbelt Rentals | 1-800-667-9328 | | | |
| 3) Hertz | 1-888-777-2700 | | | |

### ④ COMPLETE if you are financing PARTS, SERVICE, ATTACHMENTS or RENTING equipment from a Cat Dealer with Commercial Account

Requesting a revolving credit limit range of (select ONE): ☐ $_____ ☐ $25,000 or less ☐ $25,000-$75,000 ☐ $75,000 or more (see FINANCIAL section below)

Billing preference (select ONE or statement billing will apply):

☐ **STATEMENT BILLING:** Receive one statement monthly that covers all transactions made during that period. A minimum payment of 10% (revolving) of the account balance plus interest is due each payment cycle, or pay in full without interest charges. Rental charges are due in full by the due date. As with all statement billing methods payments are applied to the oldest outstanding balance.

☐ **INVOICE BILLING:** Immediately receive a separate invoice Bill that mirrors the dealer invoice for each transaction you make, plus receive a monthly summary of all paid and open invoices. The full payment of the invoice is due on the stated terms.

Name(s) of individual(s) authorized to charge on account: 1) Name _____ 2) Name _____

*Contact Credit.Department@cat.com to request additional authorized users.*

### FINANCIAL: Attach the following if financing exceeds $350,000 for equipment purchases or is over $75,000 for a Commercial Account

Financial statements for the last 2 fiscal year-ends, latest interim statements and comparable interims from prior year (if fiscal year-end is over 120 days), and a detailed list of work on hand
*Additional financial information may be required.*

REVISED 2013

**EXHIBIT 4**

## INDUSTRY SPECIFICS

**FORESTRY** – Attach a list of equipment owned with make, model, year, s/n, lender and balance owing.

1. Number of crews _____ 2. Avg. monthly revenues $_____ 3. Avg. monthly expenses $_____
4. Do you own the timber you normally harvest? ☐ Yes  ☐ No
5. Primary Customer Names

| a. _____ | Length of Relationship _____ | Is there a contract? ☐ Yes ☐ No |
| b. _____ | _____ | ☐ Yes ☐ No |

**ENGINE / GENERATOR SET** (select ONE):
☐ Mobile and mounted on vehicle or trailer.
  - Assignment of title to Cat Financial will be required.
  - Attach copy of title if you own trailer.
☐ Fixed and fastened to land/building.
  - Attach a completed engine utilization form.
☐ Pallet/skid/pad mounted (not fixed to the property)

## VOCATIONAL TRUCKS

1. Products Hauled _____ 2. Fleet size? _____
3. Years Operating _____ Years Owning _____
4. Primary Customer Names

| a. _____ | Length of Relationship _____ | Is there a contract? ☐ Yes ☐ No |
| b. _____ | _____ | ☐ Yes ☐ No |

**HAZMAT** – COMPLETE this section and sign below for EVERY truck transaction.
Do you haul HAZMAT? ☐ Yes*  ☐ No
*If hauling HAZMAT, attach a completed HAZMAT questionnaire and proof of insurance. Minimum environmental liability coverage required from an acceptable insurer.

## NOTICES

**Definitions:** The terms "you" and "your" will refer to the person applying for financing, each Guarantor and each Signatory signing this credit application. The terms "we", "us" or "our" will refer to Caterpillar Financial Services Corporation ("CFSC") and/or Caterpillar Financial Commercial Account Corporation ("CFCAC" and, together with CFSC, the "Cat Financial Companies", each individually or collectively, as applicable. Collectively, the Cat Financial Companies, Caterpillar Inc. and their affiliates and subsidiaries are referred to herein as the "Caterpillar Companies".

**Representations and warranties:** You represent that the information provided by you in this credit application (i) is true, correct and complete and (ii) is provided for the purpose of you obtaining credit from us.

**Privacy Notice:** You authorize us, or our designee, to investigate or obtain from other Caterpillar Companies, sellers of Caterpillar products (each a "Dealer"), banks, consumer reporting agencies, financial institutions, merchants, customers or any other person or entity any personal or business information related to you that we may deem appropriate, including but not limited to consumer reports and credit histories, for the use described herein. You authorize and instruct each such person or entity to furnish, share or otherwise make accessible to us any such information in their possession. We may use and rely upon such information, and any information provided in this credit application, (a) to make a credit decision to extend credit now or in the future pursuant to a subsequent application or request, (b) to continue any previously provided credit, (c) to review your account, (d) to assist in any collection activity, (e) to otherwise investigate your credit, (f) to improve or market Caterpillar products and services, and (g) to share such information with any other person or entity, including but not limited to the Caterpillar Companies, Dealers, consumer reporting agencies, financial institutions, and merchants.

This application for credit is solely from us. A decision to grant or deny business credit by CFSC will be made by CFSC, and a decision to grant or deny credit by CFCAC will be made by CFCAC. We may, in our sole discretion, refuse to extend business credit, goods, or services to you and may terminate any such credit extended at any time. Any references to a requested amount of credit in this credit application will not be deemed a limitation of liability by you. You understand and agree that any credit granted by us to you will be governed by the provisions and conditions set forth in CFCAC's Customer Agreement (or similarly titled) between us where granted by CFCAC or the applicable agreements between us where granted by CFSC.

You acknowledge that this credit application is for business customers only (including sole proprietorships) and credit provided by us in connection with this credit application may not be used to acquire equipment or services for personal, household or family purposes. You acknowledge that you have read and fully understand the terms and conditions contained in this credit application.

The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning these creditors is the FTC Regional Office for the region in which the Cat Financial Companies operate or the Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.

If your application for business credit is denied, you have the right to a written statement of the specific reasons for the denial. To obtain the statement, contact us at the applicable address below within 60 days from the date you are notified of our decision. We will send you a written statement of the reasons for the denial within 30 days from receiving your request for the statement.

Caterpillar Financial Services Corporation, Attn: Credit Manager, 2120 West End Ave., P.O. Box 340001, Nashville, TN 37203

## SIGNATURES

Required signatures: If you are a legal entity (e.g., corporation, limited liability company or limited liability partnership), an authorized person must sign below on your behalf in addition to each owner listed in this credit application. If you are a partnership or a sole proprietorship, each owner must sign below.

Authorized Signature _*Elizabeth Day*_ Date _9/20/2015_
Printed Name _Elizabeth Day_ Title _Owner_

**Ownership** (To be completed by every owner identified in the OWNERSHIP Section of this Application; ID required)

1) Signature _*Elizabeth Day*_ Printed Name _Elizabeth Day_ Date _9/20/2015_
2) Signature _*Patrick Day*_ Printed Name _Patrick Day_ Date _9/20/2015_

## TO BE COMPLETED BY A CATERPILLAR REPRESENTATIVE OR CAT DEALER

Identity verified for all signatories listed above ☐ Yes ☐ No     Identification attached, if applying with Cat Financial Commercial Account ☐ Yes ☐ No

VOCATIONAL TRUCK / ENGINE / GEN SET: application number required for every transaction _____. Attach truck and body build sheets for vocational trucks.

## ACTION BY WRITTEN CONSENT OF A MAJORITY OF
## OWNERS/SHAREHOLDERS OF ALL PAVING, INC.

The undersigned, Patrick Daly and Elizabeth Daly, husband and wife, together constituting a majority of the owners/shareholders of ALL PAVING, INC., a Florida corporation, Document Number P13000077541 filed with the Florida Department of State, FEI/EIN Number 46-3704275 (hereinafter, the "Corporation"), do hereby consent to and take the following action without a meeting pursuant to Florida Statutes Section 607.0704:

WHEREAS, Patrick Daly has been in the paving business since 1988 on a full time basis;

WHEREAS, on January 23, 2012, Patrick Daly formed All Paving & Sealcoating LLC, a Florida limited liability company, Document Number L12000010329 filed with the Florida Department of State, to engage in the paving business. Patrick Daly was the sole owner/member of that entity at that time and he and Elizabeth Daly provided all the startup funds;

WHEREAS, the 2015 tax return for All Paving & Sealcoating LLC reflects that Elizabeth Daly owns 51%, Patrick Daly owns 34%, and Robert Holland owns 15% of the interests in All Paving & Sealcoating LLC;

WHEREAS, in 2013, All Paving & Sealcoating LLC began employing Daren Daly on a part time basis. Daren Daly is a son of Patrick Daly and Elizabeth Daly;

WHEREAS, in 2013, Electronic Articles of Incorporation for the Corporation were filed by Daren Daly, in which he listed his fiancé Jamie Schindler as President, his father Patrick Daly as Vice President, and Daren Daly as Vice President;

WHEREAS, in 2014, Daren Daly filed the 2014 Annual Report for the Corporation with the Florida Department of State, stating by his electronic signature under oath that the three Officers of the Corporation were himself as President, Patrick Daly as Vice President, and Elizabeth Daly as Vice President;

Page 1 of 6

| EXHIBIT |
| 5 |

WHEREAS, the Corporation did not transact any business in 2013 and 2014;

WHEREAS, on April 23, 2015, Daren Daly filed the 2015 Annual Report for the Corporation with the Florida Department of State, stating by his electronic signature under oath that the three Officers of the Corporation were himself as President, Patrick Daly as Vice President, and Elizabeth Daly as Vice President;

WHEREAS, in September 2015, Patrick Daly and Daren Daly had discussions regarding the utilization of the Corporation (which had not yet begun operations) to expand the paving business using the "All Paving" name, with Daren Daly being given a 15% interest in the Corporation, and with Patrick Daly and Elizabeth Daly owning the remaining 85% of the Corporation, with the understanding that All Paving & Sealcoating LLC and Corporation will have equal rights to the All Paving name and the allpaving.com domain name;

WHEREAS, the Corporation did not begin actual operations until late 2015 and its startup costs were completely funded by All Paving & Sealcoating LLC, and Patrick Daly and Elizabeth Daly signed personal guaranties for most of the equipment purchased by Corporation;

WHEREAS, on September 18, 2015, the Corporation opened bank accounts with BankUnited and executed a Beneficial Ownership Certification to the bank under penalties of perjury, stating that Elizabeth Daly is the 75% owner of the Corporation, Patrick Daly is the 12.5% owner of the Corporation, and Daren Daly is the 12.5% owner of the Corporation. Elizabeth Daly signed the Beneficial Ownership Certification as President of the Corporation in the presence of and with the approval of Daren Daly and Patrick Daly. Pursuant to other documents signed the same day by Elizabeth Daly, Patrick Daly and Daren Daly, all three were designated as authorized signers for the Corporation's BankUnited bank accounts;

WHEREAS, on September 20, 2015, Daren Daly in his handwriting filled out all information on a credit application which was submitted to CAT Financial, including the representation that Elizabeth Daly is the 75% owner of the Corporation and Patrick Daly is the 12.5% owner of the Corporation. Elizabeth Daly and Patrick Daly signed said credit application filled out by Daren Daly below their representation that the information is true, correct and complete.

WHEREAS, on November 4, 2015, Elizabeth Daly, through the electronic signature of Elizabeth Daly on behalf of the Corporation and All Paving & Sealcoating LLC, registered the fictitious name "All Paving" with the Florida Department of State, and listed two owners of that fictitious name: the Corporation and All Paving & Sealcoating LLC;

WHEREAS, on January 15, 2016, Daren Daly filed the 2016 Annual Report for the Corporation with the Florida Department of State, stating by his electronic signature under oath that the three Officers of the Corporation were himself as President, Patrick Daly as Vice President, and Elizabeth Daly as Vice President;

WHEREAS, after having an argument with his mother, on December 12, 2016 Daren Daly filed Articles of Amendment to Articles of Incorporation of the Corporation which purported to remove Elizabeth Daly as President of the Corporation. Said Articles of Amendment violated Florida Statutes Sections 607.1006(5) and 607.0120(6)(b) because Daren Daly misrepresented that shareholder or director approval was not required, and said Articles of Amendment were otherwise unauthorized;

WHEREAS, on February 14, 2017, Daren Daly signed a Credit Application for Construction Equipment on behalf of the Corporation on a Wells Fargo Equipment Finance form, purporting to state that Daren Daly owns 50% of the Corporation, and that Patrick Daly owns 50% of the Corporation. Daren Daly signed this form; however, Daren Daly forged the signature of Patrick

Daly. This document is not only illegitimate because Patrick Daly's signature was forged, but also because it inaccurately states that Daren Daly owns 50% of the Corporation when in fact at no time has he held more than a minority interest;

WHEREAS, on March 8, 2017, Daren Daly filed the 2017 Annual Report for the Corporation with the Florida Department of State, stating by his electronic signature under oath that the two Officers of the Corporation were himself as President, and Patrick Daly as Vice President;

WHEREAS, after having an argument with his father, on June 12, 2017 Daren Daly filed Articles of Amendment to Articles of Incorporation of the Corporation which purported to remove Patrick Daly as Vice President of the Corporation, and purported to change the name of the Corporation to "All Paving Incorpation (sic)". Said Articles of Amendment violated Florida Statutes Sections 607.1006(5) and 607.0120(6)(b) because Daren Daly misrepresented that shareholder or director approval was not required, and said Articles of Amendment were otherwise unauthorized;

WHEREAS, beginning in December 2016, Daren Daly took several actions adverse to the Corporation including:

a.      He misappropriated funds of the Corporation in the BankUnited bank accounts which led to BankUnited terminating its relationship with the Corporation in April 2017.

b.      He opened one or more new bank accounts in the name of the Corporation with SunTrust Bank and did not include the majority owners of the Corporation, Elizabeth Daly and Patrick Daly, as authorized signers, and has used those accounts to transact business of the Corporation without the approval of its majority owners.

c.      He began using a new unauthorized online QuickBooks database for the Corporation and has excluded the majority owners of the Corporation, Elizabeth Daly and Patrick Daly, from having access.

       d.      Beginning in March 2017, he has misappropriated the domain name, website, and all email of allpaving.com including email addresses used by Elizabeth Daly and Patrick Daly, and has blocked All Paving & Sealcoating LLC, Patrick Daly and Elizabeth Daly from having access to their email, website, and domain name, which has seriously harmed the business of All Paving & Sealcoating LLC notwithstanding the fact the Corporation shares ownership of the All Paving name with All Paving & Sealcoating LLC including the allpaving.com domain, website and email. Daren Daly also misappropriated the allpavingandsealcoating.com domain.

       e.      He removed Elizabeth Daly and Patrick Daly from the Florida Department of State corporate records as officers of the Corporation and changed the name of the Corporation to "All Paving Incorpation (sic)" through the unauthorized Articles of Amendment of Articles of Corporation filed on December 12, 2016 and June 12, 2017.

       f.      He has asserted that All Paving & Sealcoating LLC is not authorized to use the All Paving name even though they are joint owners of the fictitious name registered with the Florida Department of State.

NOW, THEREFORE, in view of the above, the Board of Directors by a majority vote, take the following action:

1.      All WHEREAS clauses stated above are incorporated herein.

2.      The Undersigned representing the majority of the owners/shareholders of the Corporation, by their undersigned written consent and action hereby elect Patrick Daly and Elizabeth Daly the sole Directors of the Corporation and remove any other Directors who may have purported to assume such role including, without limitation, Daren Daly and Jamie Schindler.

3.      Articles of Amendment of the Articles of Corporation shall be executed and filed by the Corporation changing its name back to All Paving, Inc. (in order to counteract the unauthorized

Articles of Amendment to Articles of Incorporation filed by Daren Daly on June 16, 2017). Said

Articles of Amendment to be filed shall properly reflect Patrick Daly as Director and President of

the Corporation, and Elizabeth Daly as Director, Vice President, Secretary and Treasurer of the

Corporation.

_____          _____
Elizabeth Daly, 75% Shareholder           Patrick Daly, 12.5% Shareholder

_____          _____
   6/29/17                                     6-29-17
Date                                      Date

**IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

CASE NO.: __CACE17014794_____    DIVISION: ___09___    JUDGE: __Powell, Mily R. (09)__

**All Paving Inc , et al**
,

         **UNIFORM TRIAL ORDER**
         **Seventeenth Judicial Circuit**

         **ORDER FOR MANDATORY
CALENDAR CALL**

      Plaintiff(s) / Petitioner(s),

v.

  **Daren C Daly, et al**
,
      Defendant(s) / Respondent (s).

_____/

## <u>UNIFORM TRIAL ORDER</u>

**THE UNIFORM TRIAL DATE LISTED HEREIN IS A FIRM TRIAL DATE AND DEADLINES WILL BE STRICTLY ENFORCED BY THE COURT. STRICT COMPLIANCE MEANS NO CONTINUANCES OR EXTENSIONS WILL BE GRANTED WITHOUT COURT ORDER UPON WRITTEN MOTION SETTING FORTH GOOD CAUSE, PURSUANT TO AOSC20-23, AMENDMENT 13 (May 6, 2021), AND FLA. R. GEN. PRAC. & JUD. ADMIN. 2.545(e).**

    **FAILURE TO ATTEND CALENDAR CALL MAY RESULT IN EITHER
THIS CASE BEING DISMISSED OR A DEFAULT BEING ENTERED.**

**TRIAL PERIOD COMMENCING:** __09-06-2022  to  09-23-2022__. This is a ( __3__ ) week calendar.

**CALENDAR CALL:** ____08-26-2022 at 9:00 AM_____.

    __15__ DAYS        __X__ JURY        _____ NON-JURY

1

**COMPOSITE EXHIBIT
6**

I. **ORDER OF TRIALS:**
The order of trials set during this Trial Period will be determined at Calendar Call. Parties are subject to being called to commence trial during any portion of the above noted Trial Period.

II. **TRIAL DATE:**
The Court has determined this case is ready for trial pursuant to Florida Rule of Civil Procedure 1.440. This case is set for trial before the undersigned Judge in Courtroom

_____**15155 or Zoom: https://17thflcourts.zoom.us/j/109129436**_____,Broward County Courthouse, 201 S.E. 6th Street, Fort Lauderdale, Florida, 33301, as stated above. The trial date is a firm trial date pursuant to AOSC20-23, Amendment 13 (May 6, 2021).

III. **CIVIL TRIAL POOL:**
Parties are advised that this case may be placed into the Seventeenth Judicial Circuit Court's "Civil Trial Pool" and is subject to being called for trial before any judge. If placed in the Civil Trial Pool, **parties must be prepared to proceed to trial if called**. Only the Division Judge or the Administrative Judge of the Seventeenth Judicial Circuit Court's Civil Division may grant a continuance of any case placed in the Civil Trial Pool.

IV. **WITNESS LISTS:**
   A. **NO LATER THAN ONE HUNDRED & TWENTY (120) DAYS PRIOR TO CALENDAR CALL:**
   Fact Witnesses: Parties must file and serve a list of names and addresses of all fact witnesses who are expected to testify at trial. Each party's fact witness list must include a brief description of the substance and scope of the testimony to be elicited from such witness. Both sides must cooperate in the scheduling of such witness depositions.

   B. **NO LATER THAN NINETY (90) DAYS PRIOR TO CALENDAR CALL:**
   Expert Witnesses:
       i.    At the time of disclosure of all expert witnesses, the parties shall file and serve the names and addresses of all expert witnesses to be called at trial, including their complete and updated curriculum vitae, and all information regarding expert testimony that is required by Fla. R. Civ. P. 1.28(b)(5). Parties shall furnish opposing counsel with two (2) alternative dates of availability of all expert witnesses for the purpose of taking their deposition. Both parties shall cooperate in the scheduling of expert depositions.
       ii.    The parties shall also provide answers to standard form expert interrogatories pursuant to Fla.R.Civ.P. 1.280(b)(5). All reports or other data compiled by each disclosed expert which is intended to be used by the expert and/or referred to during his/her deposition testimony shall be provided electronically to the opposing party at least 72 hours prior to the date of the scheduled deposition.

   C. **NO LATER THAN SIXTY (60) DAYS PRIOR TO CALENDAR CALL:**
   Rebuttal Witnesses: Parties must file and serve a list of names and addresses of any rebuttal witnesses within sixty (60) days.

V. **COMPULSORY MEDICAL EVALUATIONS ("CME"):**
   A. **NO LATER THAN NINETY (90) DAYS PRIOR TO CALENDAR CALL:**
   All CME and other examinations pursuant to Florida Rule of Civil Procedure 1.360 must be completed no later than ninety (90) days prior to Calendar Call.

2

**VI.  DISCOVERY DEADLINES:**

    **A.  NO LATER THAN SIXTY-FIVE (65) DAYS PRIOR TO CALENDAR CALL:**
All final discovery must have been initiated at least sixty-five (65) days prior to Calendar Call.

    **B.  NO LATER THAN THIRTY (30) DAYS PRIOR TO CALENDAR CALL:**
Parties must complete all discovery, including expert discovery in accordance with Florida Rule of Civil Procedure 1.280(b)(5), at least thirty (30) days prior to Calendar Call. Discovery conducted after this time period is strongly disfavored and will only be permitted by order of the Court under exceptional circumstances.

    **C.  ELECTRONICALLY STORED INFORMATION (ESI) DISCOVERY:** ESI discovery procedures are governed by Seventeenth Judicial Circuit Administrative Order 2021-20-Gen, a copy of which is available on the Circuit's webpage (www.17th.flcourts.org).

**VII.  MOTIONS:**

    **A.  NO LATER THAN SEVENTY-FIVE (75) DAYS PRIOR TO CALENDAR CALL:**
1.  Motions to add a party or parties or to amend pleadings shall be filed and set for hearing no later than seventy-five (75) days before Calendar Call absent good cause shown. The deadline shall not conflict with Florida Rule of Civil Procedure 1.190(e), and the motion may be denied if there has been undue delay, bad faith, prejudice to the opposing side, dilatory motive on the part of the moving party or when the amendment would be futile.

    **B.  NO LATER THAN FORTY-FIVE (45) DAYS PRIOR TO CALENDAR CALL:**
1.  <u>Dispositive Motions</u>: must be filed and heard no later than forty-five (45) days before Calendar Call.
2.  <u>Deposition Objections</u>: objections raised in depositions expected to be introduced at trial must be filed and heard no later than forty-five (45) days before Calendar Call.
3.  <u>Expert Challenges</u>: motions challenging an expert witness ("Expert Challenges"), must be filed and heard no later than forty-five (45) days before Calendar Call.

    **C.  NO LATER THAN THIRTY (30) DAYS PRIOR TO CALENDAR CALL:**
1.  <u>Motions in Limine</u>: must be filed and heard no later than thirty (30) days prior to Calendar Call.
2.  All motions, other than motions in limine, not heard before Calendar Call will be deemed abandoned.

    **D.  PRIOR TO CALENDAR CALL:**
1.  <u>Motions for Summary Judgment</u>: must be filed and heard prior to Calendar Call. Motions for summary judgment will not be heard at Calendar Call.

**VIII.  JOINT PRETRIAL STIPULATION:**

    **A.  NO LATER THAN TEN (10) DAYS PRIOR TO CALENDAR CALL:**
1.  The Joint Pretrial Stipulation contemplates a single document that must be filed and served, **with a courtesy copy served on the undersigned judge**, no later than ten (10) days prior to Calendar Call.
2.  The Joint Pretrial Stipulation requires that all agreed matters be fully identified and any disputed matters be specifically delineated with respect to each party.

3. At the time of the above noticed Calendar Call, all parties must be prepared to discuss all items set forth in Florida Rule of Civil Procedure 1.200(b).

**B. The Joint Pretrial Stipulation must contain the following in separately numbered paragraphs:**

1. <u>Statement of the Facts</u>: A concise, impartial statement of the facts of the case.

2. <u>Stipulated Facts</u>: A list of those facts that can be stipulated and require no proof at trial.

3. <u>Statement of Disputed Law & Fact</u>: A concise, impartial statement of those issues of law and fact that are to be tried.

4. <u>Exhibit Lists</u>: Each party must separately list all exhibits they intend to introduce into evidence. Each item must be listed by number and description on a separate schedule attached to the Joint Pretrial Stipulation. Each exhibit must be specifically described. **Generic descriptions of exhibits are subject to being stricken.** If any party objects to the introduction of any such exhibit, such objection **must be stated in the Joint Pretrial Stipulation**, setting forth the grounds with specificity. All exhibits must have been made available to all parties for examination. Parties must initial each other's exhibit lists and exhibits. **At trial, only those exhibits properly listed and initialed may be offered into evidence**.

5. <u>Demonstrative Exhibits</u>: all demonstrative exhibits (e.g., charts, graphs, enlargements of exhibits, etc.) intended to be used at a jury trial must be displayed to all parties at least ten (10) days before trial.

6. <u>Witness Lists</u>: Parties must furnish a written list containing the names and addresses of all witnesses intended to be called at trial in alphabetical order. Such list must designate the type of witness ("expert," "rebuttal," "impeachment," or otherwise) and must be attached to the Joint Pretrial Stipulation. All fact witness lists must include a brief description of **the substance and scope of the testimony** to be elicited from such witness. All expert witness lists must **designate the expert's specialties**. If any party objects to any witness, such objection must be stated in the Joint Pretrial Stipulation, setting forth the grounds with specificity. **At trial, only those witnesses properly and timely disclosed will be permitted to testify**.

7. <u>Jury Instructions</u>: If the trial is a jury trial, the parties must identify all agreed upon standard instructions and all special instructions. Copies of all agreed upon jury instructions and disputed jury instructions must be attached to the Joint Pretrial Stipulation identifying the party that proposed the instruction, along with copies of supporting statutory citations and/or case law.

8. <u>Verdict Forms</u>: If the trial is a jury trial, the jury verdict form must be designated as "agreed to" or "disputed" and must be attached to the Joint Pretrial Stipulation.

9. <u>Peremptory Challenges</u>: If the trial is a jury trial, the number of peremptory challenges for each party must be stated and attached to the Joint Pretrial Stipulation.

10. <u>Pending Motions</u>: Parties must set forth a list of all pending motions with copies attached to the Joint Pretrial Stipulation.

11. <u>Trial Estimate</u>: Each party must provide an estimate of the number of trial days required for presenting its side of the case.

12. <u>Expert Challenges</u>: All expert related issues involving any requests for hearings on related evidence must be noticed and heard—or agreed to by the parties—no later than forty-five (45) days prior to Calendar Call. FAILURE TO DO SO MAY

CONSTITUTE A WAIVER OF ANY EXPERT RELATED EVIDENCE ISSUE(S). It is within the discretion of the Court to remove any case with pending expert issues.

IX.  **COURT POLICIES:**

A.  Parties must do all things reasonable and necessary to assure the availability of witnesses for the entire Trial Period or to otherwise preserve witness testimony for trial as provided by the Florida Rules of Civil Procedure.  *See* Fla. R. Civ. P. 1.300 & 1.460; *see also* Fla. R. Gen. Prac. & Jud. Admin. 2.545.

B.  The requirements of this Uniform Trial Order cannot be waived by stipulation **absent prior approval from the Court** pursuant to written agreement between the parties.

C.  This Uniform Trial Order may be tailored by the assigned Division Judge to conform to the particular requirements of the residential foreclosure and complex litigation divisions.

D.  At trial, there will only be one (1) official record transcribed by one (1) court reporter. Plaintiff is responsible for arranging for a court reporter unless otherwise agreed. If a conflict exists, the parties must resolve it among themselves prior to Calendar Call.

X.  **CONTINUANCES:**

**No continuances will be granted without Court Order upon written motion setting forth good cause pursuant to AOSC20-23, Amendment 13 (May 6, 2021), and  Fla. R. Gen. Prac. & Jud. Admin. 2.545(e).  All motions seeking a continuance must comply with Fla. R. Civ. P. 1.460 and Fla. R. Gen. Prac. & Jud. Adm. 2.545. Continuances requested for reasons relating to failure to follow this Order will not be granted.**

A.  CONTINUANCES will only be considered upon written motion filed with the Clerk of Court and served on the undersigned judge prior to the above noticed Calendar Call.

B.  NO CONTINUANCES will be granted for reasons that should have been readily apparent to the parties when this Uniform Trial Order was issued.

C.  NO CONTINUANCES will be granted if expert witnesses are unavailable because testimony may be preserved by deposition.

D.  NO CONTINUANCES will be granted for reasons relating to the failure to follow this Uniform Trial Order.

XI.  **MANDATORY MEDIATION:**

Mediation must commence no later than sixty (60) days prior to Calendar Call.  The parties must comply with Florida Rules of Civil Procedure 1.700, 1.710, 1.720, and 1.730 as to the conduct of mediation.  Plaintiff's counsel is appointed lead counsel to facilitate and schedule the settlement conference with the mediator and all parties.  The Court appoints:

**GLENN J. WALDMAN**
**757 SE 17TH STREET #361 FORT LAUDERDALE**
gwaldman@waldmanlawfirm.com
954-937-4537

as Mediator, unless, within thirty (30) days of this Uniform Trial Order, the parties choose a different Mediator, and file notice of that choice and the name of the substitute mediator with the Clerk of Court. Failure to attend mediation may result in sanctions.

XII.  **SANCTIONS:**

A.  All parties should be familiar with Florida Rule of Civil Procedure 1.380 entitled "Failure to Make Discovery; Sanctions" and section 57.105, Florida Statutes, entitled "Attorney's

fee; sanctions for raising unsupported claims or defenses; exceptions; service of motions; damages for delay of litigation."

**B.** FAILURE TO APPEAR, FAILURE TO FOLLOW TIME REQUIREMENTS, OR FAILURE TO FILE DOCUMENTS REQUIRED BY THIS COURT MAY RESULT IN THE DISMISSAL OF THE ACTION OR THE IMPOSITION OF SANCTIONS INCLUDING THE STRIKING OF PLEADINGS.

**XIII.** <u>**SETTLEMENT NOTIFICATION:**</u>

Parties must immediately notify the Court in the event of settlement and submit a stipulation for an Order of Dismissal. Parties shall also cancel any and all pending hearings as a result of the settlement.

**Pursuant to Florida Rule of General Practice and Judicial Administration 2.516(h)(1), counsel must file this Uniform Trial Order with the Clerk of Court, serve any self-represented parties with this Uniform Trial Order, and file a "Certificate of Service" with the Clerk of Court, in compliance with Florida Rule of General Practice and Judicial Administration 2.516(f), certifying the self-represented party was served with this Uniform Trial Order.**

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida on _____**12-15-2021**_____.

CACE17014794 12-15-2021 5:34 PM

<u>CACE17014794 12-15-2021 5:34 PM</u>

Circuit Court Judge

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 20140, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less Page 2 of 2 than 7 days. If you have a hearing or voice disability you can contact the court through the Florida Relay Service by calling 711.**

CC:    Andrew V Cobbe, Email : eservice@sotolawgroup.com
       Andrew V Cobbe, Email : rebecca@sotolawgroup.com
       Andrew V Cobbe, Email : andrew@sotolawgroup.com
       Bruce A Goodman, Email : bruce@bgoodmanlaw.com
       Bruce A Goodman, Email : melissa@bgoodmanlaw.com
       Bruce A Goodman, Email : bruceagoodman@bellsouth.net
       Daren C. Daly, Email : daren@allpaving.com
       GLENN J. WALDMAN, Email : gwaldman@waldmanlawfirm.com
       Jamie A. Schindler, Email : jamieaschindler@aol.com
       John P Kelly, Email : jkelly@businesslitigation.com
       John P Kelly, Email : rebecca@sotolawgroup.com
       John P Kelly, Email : john@sotolawgroup.com
       Stanford Blake, Email : lisa@stanfordblakemediation.com
       Stanford Blake, Email : stan@stanfordblakemediation.com

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.: **CACE17014794**

JUDGE: **Levenson, Jeffrey R. (09)**

**All Paving Inc , et al**

    Plaintiff(s)

vs.

**ORDER RESETTING TRIAL**

**Daren C Daly, et al**

    Defendant(s)

_____ /

THIS CAUSE having come before this Court on the following Motion:

[ ]   1.   Plaintiff Motion for Continuance of the trial.

[ ]   2.   Defendant Motion for Continuance of the trial.

[ **X** ]   3.   Pursuant to the agreement of the parties, this matter is rolled over to the
      **10-21-2022 at 9:00 AM**  docket.

[ ]   4.   Court's sua sponte motion to rollover trial since it was not reached on the
      Trial Calendar, and the Court finds a resetting to be appropriate.  It is:

ORDERED AND ADJUDGED that this cause is hereby stricken from the current Trial Calendar and

shall be reset on the Jury/Non-Jury calendar commencing  **11-07-2022 to 11-18-2022** .

Calendar Call will be  **10-21-2022 9:00 AM**   in Courtroom **16160 or Zoom:**

**https://17thflcourts.zoom.us/j/109129436** of the Broward County Courthouse, located at 201 S.E. 6th Street, Fort

Lauderdale, Florida.  Attorneys record and unrepresented parties in this Cause are required to appear at this

Calendar Call.  Check Court Procedures to determine Court or Zoom.

**The pretrial procedures contained in the original trial order shall remain in effect.**

**DONE and ORDERED** in Chambers, Fort Lauderdale, Broward County, Florida this  **04-27-2022** .

CACE17014794 04-27-2022 6:01 PM

**CACE17014794 04-27-2022 6:01 PM**

_____

CIRCUIT COURT JUDGE

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 20140, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less Page 2 of 2 than 7 days. If you have a hearing or voice disability you can contact the court through the Florida Relay Service by calling 711.**

Copies Furnished to:

**Andrew V Cobbe, Email : eservice@sotolawgroup.com**
**Andrew V Cobbe, Email : rebecca@sotolawgroup.com**
**Andrew V Cobbe, Email : andrew@sotolawgroup.com**
**Bruce A Goodman, Email : bruce@bgoodmanlaw.com**
**Bruce A Goodman, Email : melissa@bgoodmanlaw.com**
**Bruce A Goodman, Email : bruceagoodman@bellsouth.net**
**Dan Helm, Email : camachoj@ctllawyers.com**
**Dan Helm, Email : courtneyc@ctllawyers.com**
**Dan Helm, Email : helmd@ctllawyers.com**
**Daren Daly, Email : daren@allpaving.com**
**Georgiana Boss, Email : dasilvak@ctllawyers.com**
**Georgiana Boss, Email : bossg@ctllawyers.com**
**Jamie A Schindler, Email : jamieaschindler@aol.com**
**Jamie A. Schindler, Email : jamieaschindler@aol.com**
**John P Kelly, Email : jkelly@businesslitigation.com**
**John P Kelly, Email : john@sotolawgroup.com**
**Stanford Blake, Email : lisa@stanfordblakemediation.com**
**Stanford Blake, Email : stan@stanfordblakemediation.com**
**William R Clayton, Email : service@ctllawyers.com**
**William R Clayton, Email : rosr@ctllawyers.com**
**William R Clayton, Email : claytonw@ctllawyers.com**

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.  CACE 17-014794 (07)

ALL PAVING, INC., a Florida corporation;
ALL PAVING & SEALCOATING LLC, a
Florida limited liability company; PATRICK
DALY and ELIZABETH DALY,

   Plaintiffs,

vs.

DAREN  C.  DALY  and  JAMIE  A.
SCHINDLER,

   Defendants.

_____/

### PLAINTIFFS' NOTICE OF FILING EXCERPTS OF DEFENDANT DAREN C. DALY'S TESTIMONY ON SEPTEMBER 15, 2020 AT TRIAL REGARDING THE OPENING OF ALL PAVING INC.'S FIRST BANK ACCOUNT AND EXECUTION OF A CORPORATE RESOLUTION AND BENEFICIAL OWNERSHIP CERTIFICATION ON SEPTEMBER 18, 2015

   Plaintiffs ALL PAVING, INC., ALL PAVING & SEALCOATING LLC, PATRICK DALY

and ELIZABETH DALY hereby notice they have filed the attached excerpts of Defendant DAREN

C. DALY's trial testimony on September 15, 2020 with applicable trial exhibits regarding the

opening of ALL PAVING INC.'s first bank account and execution of a Corporate Resolution and

Beneficial Ownership Certification upon commencement of operations on September 18, 2015.

### CERTIFICATE OF SERVICE

   I HEREBY CERTIFY that a true and correct copy of the foregoing was served via Email

through the Florida Courts E-Filing Portal to John P. Kelly, Esq., (john@sotolawgroup.com,

jkelly@businesslitigation.com), Soto Law Group, P.A., Coastal Tower, 2400 E. Commercial Blvd.,

<div align="center">1</div>

BRUCE A. GOODMAN, P.A.

**EXHIBIT**

**7**

Suite 400, Fort Lauderdale, FL 33308, and   Jeffrey E. Streitfeld, Special Magistrate (jstreitfeld@gmail.com), 101 NE Third Ave., Suite 1500, Fort Lauderdale, FL 33301, this 13th day of October, 2020.

Respectfully submitted,

BRUCE A. GOODMAN, P.A.
Attorney for Plaintiffs
5531 N. University Drive
Suite 101
Coral Springs, Florida 33067
Tel: (954) 919-6000; Fax: (754) 222-5122
Email: bruce@bgoodmanlaw.com

By: **/s/ Bruce A. Goodman**, **Esq.**
     Florida Bar No. 602302

Page 1

1        IN THE CIRCUIT COURT FOR THE 17TH JUDICIAL CIRCUIT
              IN AND FOR BROWARD COUNTY, FLORIDA

2
                 CASE NO.  CACE 17-014794 (03)

3

4   ALL PAVING, INC., a Florida corporation;
    ALL PAVING & SEALCOATING, LLC, a Florida

5   limited liability company; PATRICK
    DALY and ELIZABETH DALY,

6

7        Plaintiffs,

    vs.

8

    DAREN C. DALY and JAMIE A. SCHINDLER,

9

              Defendants.

10   _____/

11

12

13

                              Zoom Meeting

14                            Tuesday, 9:30 a.m.-3:30 p.m.
                              September 15, 2020

15

16

17              TRANSCRIPT OF TRIAL, DAY 2

18

19        Heard before the Honorable Nicholas R. Lopane

20        on behalf of the Plaintiffs; taken by Lisa

21        Gerlach, Court Reporter, Notary Public in and

22        for the State of Florida at Large, pursuant

23        to Notice of Hearing in the above cause.

24

25

Page 2

```
 1        Appearances by Zoom:
 2        Counsel for the Plaintiffs:
 3        BRUCE A. GOODMAN, ESQUIRE
          Bruce A. Goodman, PA
 4        5531 North University Drive
          Suite 101
 5        Coral Springs, FL 33067
          954-919-6000
 6        bruce@bgoodmanlaw.com
 7
          Counsel for the Defendant:
 8
          JOHN P. KELLY, ESQUIRE
 9        Soto Law Group
          2400 East Commercial Boulevard
10        Suite 400
          Fort Lauderdale, FL 33308-4026
11        954-567-1776
          john@sotolawgroup.com
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 6

1   proposal went out and the date it was signed.  So the

2   proposal might have gone out for All Paving &

3   Sealcoating, but it was really All Paving, Inc. that

4   actually did the project.

5           MR. GOODMAN:  Your Honor, I would move

6      into evidence Plaintiffs' Exhibit 66.

7         THE COURT:  Any objection?

8         MR. KELLY:  No objection.

9         (Plaintiffs' Exhibit 66 was moved into

10     evidence.)

11  BY MR. GOODMAN:

12     Q.  Daren, as you can see, Plaintiffs' Exhibit 66

13  is dated September 17, 2015.

14         I'm now going to move over to Plaintiffs'

15  Exhibit 67, which is a corporate resolution, dated

16  September 18, 2015.

17         Do you see that?

18     A.  Yes, I see that.

19     Q.  Can you identify your signature on the

20  line -- on page 3 of 3?  Adjacent to the name, Daren

21  Daly, with the title of vice-president and a

22  signature, is that your signature?

23     A.  That's my signature.  That was the wrong

24  title, but, yes, that's my signature.

25     Q.  Okay.  I have a few questions for you about

1    this.

2        You also recognize the signature of your mom,

3    Elizabeth Daly, adjacent to her name -- again, on

4    page 3 -- title of president and there's her

5    signature.  Do you recognize that?

6        A.  Yes, I do recognize her signature.

7        Q.  Do you recognize the signature of your

8    father, Patrick Daly, adjacent to the title of

9    vice-president and the typed-in name of Patrick Daly?

10       A.  Yes, I recognize his signature.

11       Q.  Do you recognize his signature at the bottom

12   of this corporate resolution, page 3 of 3, which

13   indicates he is secretary of All Paving, Inc.?  Do you

14   see that?

15       A.  Yeah -- I never saw this until you introduced

16   this to me.  Patrick never signed this and was never

17   at the bank any time that I was, so he never signed

18   this.  He's never been appointed the secretary of All

19   Paving, Inc.  I think it's a templated document.  It

20   says the title of secretary.

21       Q.  Did your mom sign at the same time that you

22   did, Daren?

23       A.  I don't know if Elizabeth signed.  Elizabeth

24   met me at the bank.  I know we spoke about this

25   before.  Obviously, the judge, this is the first time

Page 8

1    he's hearing about it.

2          Elizabeth met me at the bank.  I signed to

3    open up the account and then I left.  Elizabeth was

4    still there.  And then Patrick came -- from the

5    e-mails, Patrick came three days later and signed his

6    name on the account.

7          Q.  So is it your testimony that you were there

8    first and then your mom came and left you there?

9          A.  No.  I think we walked in at the same time,

10   or maybe she got there right before.  I can't tell you

11   exactly, but right around the same time I got there.

12   I had to run to a meeting afterwards, so I left

13   before.

14          THE COURT:  Just scroll up on this.  I

15       want to read this entire document again.

16          MR. GOODMAN:  Yes, your Honor.

17          THE COURT:  Okay.  Scroll down to

18       "further resolve that."  Okay.  That's it.

19          MR. GOODMAN:  Okay.

20   BY MR. GOODMAN:

21          Q.  All right.  So, Daren, is this the day that

22   All Paving, Inc. opened its first bank account?

23          A.  Yes.  This is the date the company opened a

24   bank account.

25          Q.  And who made the arrangements with the bank

Page 9

1    that day to open up the account?

2           A.   What do you mean?

3           Q.   You made the arrangements, Daren, did you

4    not, to open up the account at BankUnited in the name

5    of All Paving, Inc.?

6           A.   When you say "made the arrangements," I

7    thought BankUnited was a local bank that was close by

8    there, so I thought that would be a good bank to open

9    up the thing.   I did a little research online of the

10   different rates and different accounts they had.

11           I told my mom to meet me over there and she

12   met me over there.

13           Q.   You understand that your mom recalls that you

14   picked her up from her home and you drove to the bank

15   together with her.   You were there the entire time

16   with her together.   Then you drove your mom back.

17           You're aware that that's what she stated

18   under oath; right?

19           A.   Actually, she stated more than that.   She

20   stated all the things you just mentioned, but she also

21   stated that Patrick -- and you stated on the verified

22   thing that Patrick was present with us, which she

23   later changed in her deposition.   And the bank officer

24   said that Patrick was never there and I was never

25   there with Patrick.

Page 10

1          This bank resolution --

2      Q.  Daren, I think you've gone way beyond.  This

3  shouldn't become a narrative.  Let me just go ahead

4  and guide you with the questions.  I'm entitled to

5  lead, as you know -- you've been to law school -- I'm

6  entitled to lead you because you're an adverse

7  witness.

8          You understand that; right?

9      A.  I do now that you just told me.

10     Q.  So let me go ahead and ask the questions,

11  please, and I'm going to lead you.  It shouldn't

12  become a narrative.  Thank you.

13          So you acknowledge that you're sitting there

14  with the bank officer at the bank you chose, opening

15  up a bank account together.  You and your mom are

16  sitting there with the bank officer; correct?

17     A.  My mom met me over there and she sat next to

18  me for probably 20 minutes, 25 minutes.  Then I signed

19  any documents I needed to sign.  I signed the

20  documents and then I left.

21     Q.  Okay.  So you signed this corporate

22  resolution here as vice-president; correct?

23     A.  I did sign that, and I don't think I read the

24  first page, because the first page says that there was

25  a bank resolution in 2013, which, obviously, there

1    wasn't a meeting where Patrick even knew about the

2    company or Elizabeth knew about the company.  They

3    already testified that they didn't even know about the

4    company in 2013.

5            I don't know how they're swearing that this

6    meeting happened in 2013, when there was no meeting in

7    2013 with Patrick and Elizabeth Daly.

8        Q.  Below your signature is language that says

9    that the board of directors of the corporation has,

10   and at the time of the adoption of this resolution,

11   had full power and authority to adopt the forgoing

12   resolutions and to confer the powers granted herein,

13   and that there is no provision in the charter or

14   bylaws of this corporation limiting the power of the

15   board of directors to past and forgoing resolutions.

16           You see that; right?

17       A.  Like I just said, I didn't sign below that,

18   so I didn't read the writing below it because I didn't

19   have to sign the area below it.  There was no

20   signature on the area below it.

21       Q.  When you were in law school, do you recall

22   learning that, if you sign a document, you're bound by

23   the document and you're responsible for everything

24   stated in the document?

25       A.  I don't think that's what they say in law

1  school, but, yeah, I know what you're trying to say.

2  The document has wording on it.

3          But you're asking did I certify it.  This

4  says, "I further certify."  The only person that says

5  that's certifying this is Patrick.  Can you scroll

6  down?  I can't see the whole screen right now.  It

7  says that Patrick is certifying this.  It doesn't say

8  I'm certifying it.

9      Q.  When you signed this document, the typed-in

10  language was already there; correct?

11      A.  Yes.  I don't know why it has vice-president,

12  because the documents the bank had on file that day

13  stated myself as the president, because they had the

14  actual documents.

15      Q.  I'm not sure what you meant by that.

16          Do you mean the articles of incorporation?

17      A.  Correct.

18      Q.  Okay.  And you understand that articles of

19  incorporation do not indicate ownership; correct?

20      A.  No.  I know you're stating that, but what I'm

21  saying is, the bank had -- they pull up the articles

22  of incorporation, and that's why I don't know where

23  they came up with the titles that they typed there.

24      Q.  Well, let's see.  You chose the bank.  Your

25  testimony is that you met your mom at the bank.  The

Page 13

1    bank had certain information, did it not, from its

2    customer, All Paving, Inc., such that it typed in

3    these titles.  Correct?

4         A.  Bruce, those -- everything you're saying

5    about typed-in -- the guy who testified to this, the

6    bank officer, Henry Mendez, who was previously

7    deposed, I think he'll speak to every --

8         Q.  No, no.  Daren, please just answer my

9    question --

10         A.  I didn't type --

11         Q.  It's improper -- please.  Please don't

12    testify to what you believe other people have

13    testified to or might testify to that's not in

14    evidence.  My question --

15         A.  He will answer that question.

16         Q.  Okay.  Daren, please.  Let me -- I'm entitled

17    to lead you.  Let me go ahead and ask you these

18    questions.

19              True or false, you signed this document as

20    vice-president of All Paving, Inc.?

21         A.  I did sign my name there, yes.

22         Q.  True or false, your mom signed this document

23    as president of All Paving, Inc.?

24         A.  That's true.  The title is an excerpt.  She

25    was not president of the company.

Page 14

1        Q.   And you signed your name below where your mom

2   did sign indicating that she is president of the

3   corporation; correct?

4        A.   No.   I signed the document before my mom

5   signed it, I believe.

6        Q.   Are you sure about that?

7        A.   I'm not 100 percent sure, but I know that the

8   document that I needed to sign -- I said to Henry,

9   when we were sitting there, "Hey, I gotta run

10  somewhere.  Can you just pull up the documents that I

11  need to sign right here?"

12       Q.   And you also signed the same page that your

13  dad was to sign as secretary of the corporation;

14  correct?

15       A.   No.  I signed on the same pages.  I didn't

16  see it said Patrick Daly.  He wasn't signing as a

17  secretary.  That's a templated document.  They didn't

18  type in secretary.

19       Q.   Well, if you read "in witness whereof" right

20  above his signature, on page 3 of 3, it states, "I

21  have subscribed my name as secretary of the

22  corporation."

23            Do you see that?

24       A.   I see that, but what I'm saying to you is --

25  the guys at the bank don't type this document out for

1    each person that comes in.  They just have a templated

2    document.  Patrick also signed a bank resolution that

3    will come into this case.  Are we going to say that

4    one is true too?  He wasn't appointed as secretary.  I

5    don't know.

6            THE COURT:  All right.

7            MR. GOODMAN:  Your Honor, I would offer

8        into evidence Plaintiffs' Exhibit 67.

9            THE COURT:  Any objection?

10           MR. KELLY:  No objection, Judge.

11           (Plaintiffs' Exhibit 67 was moved into

12       evidence.)

13           MR. GOODMAN:  Daren, can you silence your

14       phone, please?

15           THE WITNESS:  Yes.  That's what I'm going

16       to do right now.  Sorry about that.

17           THE CLERK:  I'm so sorry.  There was a

18       short period where I got cut out yesterday

19       with some technical issue.  The last reported

20       piece of evidence I have from yesterday is

21       64.  You started with 66 this morning.

22           Did we address 65?

23           MR. GOODMAN:  Correct.  Maria, my

24       suggestion would be to just make a note that

25       there is no Plaintiffs' Exhibit 65.  I'm

```
1        going to try to -- I may end up skipping some
2        exhibits so we can get done with Daren today.
3             THE CLERK:  Thank you.
4             MR. GOODMAN:  Thank you.
5             Your Honor, I'm going to move over now to
6        Plaintiffs' Exhibit 68.
7             THE COURT:  Okay.
8   BY MR. GOODMAN:
9        Q.  This is the beneficial ownership
10  certification submitted to BankUnited.
11           Daren, do you recognize this document?
12       A.  I do.  You actually --
13       Q.  That's -- Daren, I'm trying to get through
14  this.  I'm trying to finish you today.  So this was a
15  simple yes or no.  Please just -- you know -- you're
16  allowed to explain.  Okay?  But to tell me that I
17  provided you with this document is not a simple --
18  it's just a simple yes or no.
19           Have you seen this document before?
20       A.  Yes, I have.
21       Q.  Okay.  And it indicates it's a beneficial
22  ownership certification signed by your mom, as
23  president, on the same day that the bank account was
24  opened on September 18, 2015.  It's stating that
25  Elizabeth Daly is the 75 percent owner of All Paving,
```

Page 17

1    Inc., Daren Daly is the 12.5 percent owner of All

2    Paving, Inc., and Patrick Daly is the 12.5 percent

3    owner of All Paving, Inc.

4           Correct?  That's what it says; correct?

5        A.  That's what the document says, yes.

6        Q.  And you see that Elizabeth Daly, on the same

7    day that the bank account was opened, while you were

8    also there at the bank on September 18, 2015, she

9    certified to BankUnited, under penalties of perjury,

10   that the ownership -- direct ownership percentages of

11   All Paving, Inc. are as indicated on Plaintiffs'

12   Exhibit 68; correct?

13       A.  That is what she signed, yes.  I think this

14   says that the ownership of the bank account is in

15   these percentages.

16       Q.  So are you trying to state now in your

17   testimony that this document only applies to ownership

18   of the bank account?

19       A.  No.  I testified the entire time that I've

20   never seen this document until you presented it to me

21   and I never signed this document.  I was never given

22   -- I don't know when Elizabeth signed this document.

23       Q.  All right.  Daren, we met -- the first time

24   we met in person was on July 11, 2017; right?

25       A.  Yes.

Page 18

1          Q.   In fact, you saw this document no later than
2    December of 2016; right?
3          A.   December of 2016?
4          Q.   Through some e-mails that were exchanged with
5    Brenda Greenberg at BankUnited; right?
6          A.   I think that might be correct, yeah.
7    December, yeah.
8                MR. GOODMAN:   Okay.  Your Honor, I would
9          offer into evidence Plaintiffs' Exhibit 68.
10                THE COURT:   Any objection?
11                MR. KELLY:   No objection, your Honor.
12                THE COURT:   Okay.
13                (Plaintiffs' Exhibit 68 was moved into
14          evidence.)
15    BY MR. GOODMAN:
16          Q.   Plaintiffs' 69 is the signature card, is it
17    not, signed on September 18, 2015, with you, your mom,
18    and your dad, all as signatories of the BankUnited
19    account opened September 18, 2015; correct?
20          A.   Yes.  I signed this on September 18th.
21    Again, my dad was not there.  He did not sign it on
22    September 18th.
23                MR. GOODMAN:   Your Honor, I offer into
24          evidence Plaintiffs' Exhibit 69.
25                THE COURT:   Any objection?

Page 19

1              MR. KELLY:  No objection, your Honor.

2              THE COURT:  Okay.

3              (Plaintiffs' Exhibit 69 was moved into

4         evidence.)

5    BY MR. GOODMAN:

6         Q.  Daren, all three of these exhibits, 67, 68,

7    and 69, that were signed to open up the bank account

8    of All Paving, Inc. at BankUnited was while you were

9    an employee of All Paving & Sealcoating, LLC?

10        A.  Yes.  I worked for All Paving & Sealcoating

11   while I owned All Paving, Inc.  I created the company

12   in 2013.  So, obviously, I worked for Sealcoating for

13   a significant amount of time while this company

14   existed.

15        Q.  Okay.  All Paving, Inc., the company that

16   just opened up the bank account with BankUnited on

17   September 18, 2015, is the same entity that you

18   referenced in Plaintiffs' Exhibit 61, this e-mail of

19   July 30, 2015.

20             The first paragraph of your e-mail says,

21   "All Paving & Sealcoating, LLC is the legal name.  We

22   are the owners of All Paving, Inc. also, but we have

23   not moved to that company name officially yet because

24   we have to move all the insurance and paperwork over."

25             My question now simply is, is All Paving,

**Plaintiffs' Exhibit 67**

All Paving, Inc. et al. v. Daren C. Daly et al.

**Case No. 17-014794 (03)**



# BankUnited



## CORPORATE RESOLUTION

The undersigned, Secretary of ALL PAVING INC _____,
a corporation organized and existing under the laws of the State of FLORIDA_____, with its principal
place of business located at 8919 NW 20TH MANOR _____
(referred to herein as the "Corporation"), hereby certifies to BANKUNITED, N.A. (referred to herein as
"BANK") that I am the duly elected and qualified secretary of the Corporation, and that at a meeting of the
Board of Directors of the Corporation duly called and held on 09/19/2013_____, at which a quorum
was present, the following resolutions were adopted and are now in full force and effect.

**RESOLVED, THAT** BANK be and is hereby designated a depository of this Corporation.

**FURTHER RESOLVED, THAT** BANK is authorized to receive and accept any and all checks, drafts,
notes, orders or other instruments for the payment of money payable to the Corporation, or to its order,
when bearing the apparent endorsement of this Corporation, which endorsement, if any, may be in writing,
by stamp, or otherwise affixed, with or without the designation or signature of any person purporting to be
an officer, agent or authorized signer of this Corporation (collectively referred to herein as "Authorized
Signer(s)"). BANK may receive any and all such checks, drafts, notes, orders or other instruments for the
payment of money, and BANK may conclusively assume, without inquiry, that all such deposits, and all
withdrawals, of the proceeds thereof, represent the exclusive property of this Corporation, and this
Corporation hereby ratifies, confirms, and approves any and all acts of BANK in receiving for deposit such
checks, notes, drafts, or other instruments for the payment of money for deposit from this Corporation and
permitting withdrawal of the proceeds thereof.

**FURTHER RESOLVED, THAT** any Authorized Signer(s) of this Corporation is hereby authorized to
endorse the name of this Corporation on any and all checks, drafts, notes, orders or other instruments for
the payment of money payable to the Corporation, which endorsement, if any, may be in writing, by stamp,
by facsimile, or otherwise affixed with or without the designation or signature of any person purporting to
be an Authorized Signer(s) of this Corporation, it being understood that all prior endorsements on such
items are guaranteed by this Corporation, regardless of the lack of an express guarantee in the endorsement
of this Corporation.

**FURTHER RESOLVED, THAT** BANK be and is hereby directed to honor, pay and charge to the
accounts of this Corporation, without inquiry as to the circumstances of the issuance or application of the
proceeds of checks, drafts, notes, orders or other instruments for the payment of money drawn against any
accounts of this Corporation with BANK when signed, whether by signature or facsimile thereof, on behalf
of the Corporation by any 1___ **[insert number required to sign]** Authorized Signer(s), or their successors
in office, even if payable to, endorsed or negotiated by or for the credit of any person signing such item or
any other officer or agent of this Corporation when signed by any of the Authorized Signer(s) of this
Corporation or such other person rendered in payment of such signer's individual obligation.

**FURTHER RESOLVED, THAT** any Authorized Signer(s) of this Corporation is authorized to enter into
a written lease for the purpose of renting, maintaining, or accessing a safe deposit box with BANK, and is
further authorized to terminate any said lease and surrendering any box leased to this Corporation by
BANK.
\*\*For Internal use only  \*104\*  Account Number: ███████

(Rev02/12)

**FURTHER RESOLVED, THAT** any Authorized Signer(s) of this Corporation is authorized to implement treasury management and other general banking services, including, but not limited to, online banking, wire transfer, cash management and electronic services, and to enter into agreements with BANK relating to such services.

**FURTHER RESOLVED, THAT** this Corporation acknowledges and agrees that BANK may furnish, at its discretion, automated access devices (i.e. ATM/debit cards, check cards, credit cards) to any Authorized Signer(s) of this Corporation to facilitate the powers authorized by this Resolution.

**FURTHER RESOLVED, THAT** this Corporation does hereby grant to BANK a continuing lien for the amount of any and all liabilities and obligations of the Corporation to BANK and claims of every nature and description of BANK against the Corporation whether now existing or hereafter incurred, upon any and all money, securities and any and all property of the Corporation and the proceeds thereof now or hereafter actually or constructively held or received by or in transit, in any manner to or from BANK, its correspondents or agents, from or for this Corporation, whether for safekeeping, custody, pledge, transmission, collection or otherwise coming into possession of BANK in any way or placed in any safe deposit box leased by BANK to the Corporation. BANK is also hereby granted a continuing lien and right of setoff for the amount of said liabilities and obligations upon any and all deposits and credits of the Corporation with, and any and all claims of this Corporation against BANK at any time existing and BANK is hereby authorized at any time or times without notice to apply such deposits or credits or any part thereof to such liabilities or obligations and in such amounts as BANK may elect although such liabilities or obligations may be contingent or unmatured and whether any collateral therefor is deemed adequate or not.

**FURTHER RESOLVED, THAT** each of the foregoing Resolutions and the authority conferred thereby shall remain in full force and effect until revoked or modified by written notice actually received by BANK at its office where the account of the Corporation is maintained and signed by one purporting to be the Secretary or Assistant Secretary of the Corporation. The Secretary, Assistant Secretary or any other officer of this Corporation be and is authorized and directed to furnish BANK with a certified copy of these resolutions, the names and specimen signatures of the person(s) named herein, and such persons from time to time holding the positions named herein.

**FURTHER RESOLVED, THAT** this Corporation agrees to be bound by all rules and regulations set forth in BANK'S applicable disclosure statements, agreements and schedules of fees, as same may be amended from time to time, or other agreement received by this Corporation from BANK with the same force and effect as if each and every term thereof were set forth in full herein and made a part hereof.

**FURTHER RESOLVED, THAT** this Corporation agrees to indemnify and hold Bank and its officers, directors, employees, parents, subsidiaries, affiliates and their respective successors and assigns harmless from and against any and all claims, demands, losses, charges, expenses, legal fees, costs and liabilities of whatever kind or description, and lawsuits or legal proceedings, including, without limitation, fees and disbursements of legal counsel incurred by Bank in any action or proceeding, without regard to the merit or lack of merit thereof, arising out of or related in any way to the matters set forth in this Resolution.

**FURTHER RESOLVED, THAT** BANK is authorized to deduct from the accounts of this Corporation any and all applicable and then current fees and charges for any and all services rendered to this Corporation by BANK.

**For Internal use only   *104*   Account Number: ▮▮▮▮▮▮

(Rev02/12)

I further certify that the following are the names and specimen signatures of the Authorized Signer(s) and that each presently holds the title or designation indicated and has full authority for all acts noted herein.

| Name | Title | Signature |
|---|---|---|
| ELIZABETH DALY | PRESIDENT | |
| DAREN DALY | VICE PRESIDENT | |
| PATRICK DALY | VICE PRESIDENT | |
| | | |
| | | |

I further certify that the Board of Directors of the Corporation has, and at the time of adoption of this Resolution had, full power and authority to adopt the foregoing Resolutions and to confer the powers granted herein and that there is no provision in the charter or by-laws of this Corporation limiting the power of the Board of Directors to pass the foregoing resolutions and that the same are in conformity with the provision of said charter and by-laws.

**IN WITNESS WHEREOF,** I have subscribed my name as Secretary of the Corporation and affixed the seal of said Corporation hereto this 18 day of SEPTEMBE, 20 15, and I do further acknowledge on behalf of the Corporation that the foregoing resolutions constitute an agreement by the Corporation with BANK in respect to the matters set forth herein.

Seal:

Name PATRICK DALY

Title (Secretary or Assistant Secretary)

**For Internal use only  *104*  Account Number:

(Rev02/12)

**Plaintiffs' Exhibit 68**

All Paving, Inc. et al. v. Daren C. Daly et al.

**Case No. 17-014794 (03)**

 **BankUnited**

## BENEFICIAL OWNERSHIP CERTIFICATION

This Certification of the Beneficial Owner(s) of <u>ALL PAVING, INC.</u> _____ (the

"Depositor"), a business entity organized under the laws of <u>FLORIDA</u> _____, is made as of

<u>09/18/2015</u>____. For purposes of this Certification, the term Beneficial Owner will be deemed to

mean an individual (a natural person), either directly or indirectly, with a 10% or greater ownership

interest in the Depositor. I, being the duly authorized officer of the Depositor, hereby certify to

BankUnited, N.A. (the "Bank") under penalties of perjury that:

1. The true and complete name, Social Security number, date of birth, country of citizenship, street
   address (including city and country) and ownership interest of each Beneficial Owner is as
   follows*:

% Ownership

Name: <u>ELIZABETH DALY</u> _____    SSL: ██████    <u>75</u>

Date of Birth: ██ <u>1967</u> _____    Citizenship: <u>US</u> _____    ☑ Direct

Address: <u>8919 NW 20TH MANOR  CORAL SPRINGS, FL 33071</u>    ☐ Indirect

Name: <u>DAREN DALY</u> _____    SSN: ██████    <u>12.5</u>

Date of Birth: ██ <u>1986</u> _____    Citizenship: <u>US</u> _____    ☑ Direct

Address: <u>8919 NW 20TH MANOR  CORAL SPRINGS, FL 33071</u>    ☐ Indirect

Name: <u>PATRICK DALY</u> _____    SSN: ██████    <u>12.5</u>

Date of Birth: ██ <u>1966</u> _____    Citizenship: <u>US</u> _____    ☑ Direct

Address: <u>8919 NW 20TH MANOR  CORAL SPRINGS, FL 33071</u>    ☐ Indirect

Name: _____    SSN: _____

Date of Birth: _____    Citizenship: _____    ☐ Direct

Address: _____    ☐ Indirect

Name: _____    SSN: _____

Date of Birth: _____    Citizenship: _____    ☐ Direct

Address: _____    ☐ Indirect

(Rev. 10/14)





2. No other individual has an undisclosed ownership interest of 10% or more in the Depositor.

3. Written notice of any change in the beneficial ownership of the Depositor will be immediately sent to the Bank to its office where the Depositor's account is maintained. This notice will be signed by a duly authorized officer of the Depositor as reflected in the Bank's records.

4. The undersigned accept full responsibility that the foregoing information is true, accurate and complete.

   * Include attachments of organizational charts and/or related information in support of identifying the ultimate beneficial owner, if applicable.

**IN WITNESS WHEREOF,** the duly authorized officer of the Depositor has executed this Beneficial Ownership Certification as of the date first written above.

☐ Check here if there are no Beneficial Owners (natural persons), either directly or indirectly, with a 10% or greater ownership interest in the Depositor.

_____        ELIZABETH DALY, President        09/18/2015
(Signature)                                    (Print Name, Title)                                            (Date)



**Plaintiffs' Exhibit 69**

All Paving, Inc. et al. v. Daren C. Daly et al.

**Case No. 17-014794 (03)**

 **BankUnited**

## BUSINESS SIGNATURE CARD

**IMPORTANT ACCOUNT OPENING INFORMATION:** Federal law requires us to obtain sufficient information to verify your identity. You may be asked several questions and to provide one or more forms of identification to fulfill this requirement. In some instances we may use outside sources to confirm the information. The information you provide is protected by our privacy policy and federal law.

Select One: ☑ New Acct: ☐ Update    Update Reason:

Revision Date:
Revised By:

### Account Number & Title

Account Number: ▇▇▇▇
Account Title: ALL PAVING, INC.

Open Date: 09/18/2015
Opening Agent: HENRY MENDEZ
Opening Br: CORAL SPRINGS

### Ownership & Product Type

Account Ownership: CORPORATION FOR PROFIT
Initial Deposit Amount: 0.00

Product Type: BUSINESS EXPRESS CHECKG
Source of Funds: BANK

### Business Entity Information:

Type of Entity (check one):

| | | |
|---|---|---|
| ☑ Corporation | ☐ Partnership | ☐ LLC    ☐ LLP    ☐ LP    ☐ PA |
| ☐ Sole Proprietorship | ☐ Municipality/Public Agency | ☐ General Partnership |
| ☐ Unincorporated Association | ☐ Not For Profit Corporation | ☐ Trust    ☐ Other |

Business Name: ALL PAVING, INC.

Address: 8919 NW 20TH MANOR

City, State, Zip CORAL SPRINGS, FL 33071

TIN #: ▇▇▇▇4275
Phone: ▇▇▇▇6381
Organization Date: 09/19/2013
State: FLORIDA

### *Authorized Signers*

| Authorized Signer 1 | | Authorized Signer 2 | |
|---|---|---|---|
| Name: | ELIZABETH DALY | Name: | DAREN DALY |
| Social Security Number: | | Social Security Number: | |
| Primary ID Type, Number | FLDL: ▇▇▇▇8860 | Primary ID Type, Number | FLDL: ▇▇▇▇0830 |
| | Issue: 09/16/2012 Exp. 10/26/2020 | | Issue: 03/30/2014 Exp. 03/03/2022 |
| Secondary ID Type, Number | | Secondary ID Type, Number | |
| | Issue:        Exp. | | Issue:        Exp. |
| **Authorized Signer 3** | | **Authorized Signer 4** | |
| Name: | PATRICK DALY | Name: | |
| Social Security Number: | | Social Security Number: | |
| Primary ID Type, Number | FLDL: ▇▇▇▇2500 | Primary ID Type, Number | |
| | Issue: 05/26/2014 Exp. 07/10/2022 | | Issue:        Exp. |
| Secondary ID Type, Number | | Secondary ID Type, Number | |
| | Issue:        Exp. | | Issue:        Exp. |
| **Authorized Signer 5** | | **Authorized Signer 6** | |
| Name: | | Name: | |
| Social Security Number: | | Social Security Number: | |
| Primary ID Type, Number | | Primary ID Type, Number | |
| | Issue:        Exp. | | Issue:        Exp. |
| Secondary ID Type, Number | | Secondary ID Type, Number | |
| | Issue:        Exp. | | Issue:        Exp. |
| **Authorized Signer 7** | | **Authorized Signer 8** | |
| Name: | | Name: | |
| Social Security Number: | | Social Security Number: | |
| Primary ID Type, Number | | Primary ID Type, Number | |
| | Issue:        Exp. | | Issue:        Exp. |
| Secondary ID Type, Number | | Secondary ID Type, Number | |
| | Issue:        Exp. | | Issue:        Exp. |



Page 1 of 2
Member FDIC

Rev. 12/09/2014

The Bank may recognize any \_\_\_1\_\_\_* signature(s) written below in payment of funds of the transaction of any business for this account.
*Note: If this is left blank, we will assume that any (1) signer may act alone.

## Facsimile Signature(s) Allowed: ☐ Yes ☑ No

Signature: _____
Name: (Authorized Signer 1) ELIZABETH DALY
Title: OTHER AUTHORIZED SIGNER
Facsimile Stamp

Signature: _____
Name: (Authorized Signer 2) DAREN DALY
Title: OTHER AUTHORIZED SIGNER
Facsimile Stamp

Signature: _____
Name: (Authorized Signer 3) PATRICK DALY
Title: OTHER AUTHORIZED SIGNER
Facsimile Stamp

Signature: _____
Name: (Authorized Signer 4)
Title:
Facsimile Stamp

Signature: _____
Name: (Authorized Signer 5)
Title:
Facsimile Stamp

Signature: _____
Name: (Authorized Signer 6)
Title:
Facsimile Stamp

Signature: _____
Name: (Authorized Signer 7)
Title:
Facsimile Stamp

Signature: _____
Name: (Authorized Signer 8)
Title:
Facsimile Stamp

By my (our) signatures above, I/we apply for an account on behalf of the business entity referenced above (the "Company") with BankUnited, N.A. (the "Bank"). On behalf of the Company, I/we agree that the account will be subject to the terms and conditions set forth in the Bank's applicable disclosure statements and agreements and schedule of fees governing such accounts, as amended from time to time ("Rules"). On behalf of the Company, I/we acknowledge receipt of a copy of the applicable Rules. I/we agree that the Bank may investigate my/our credit and employment history and obtain a credit report at any time in connection with this account in accordance with applicable law. I/we also acknowledge that the Bank will verify the creditworthiness of the Company. I/we further certify that the Taxpayer Identification Number Certification below is true and correct.

### TAXPAYER IDENTIFICATION NUMBER CERTIFICATION

Under the penalties of perjury, I certify that: 46-3704275
1. The number shown above is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and,
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (including a U.S. resident alien)
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

Exempt payee code (if any) _____ Exemption from FATCA reporting code (if any) _____

You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

☐ Check this box and cross out items 1-3 above if none of the account owners are U.S. citizens or U.S. resident aliens. Backup withholding will apply unless each account holder provides either an IRS Form W-8 or a TIN.

Signature: (Authorized Signer) _____     Date: 09/18/2015
Name (Authorized Signer): ELIZABETH DALY

Account Number:

Rev. 12/09/2014

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.  CACE 17-014794 (07)

ALL PAVING, INC., a Florida corporation;
ALL PAVING & SEALCOATING LLC, a
Florida limited liability company; PATRICK
DALY and ELIZABETH DALY,

      Plaintiffs,

vs.

DAREN  C.  DALY  and  JAMIE  A.
SCHINDLER,

      Defendants.

_____/

## PLAINTIFFS' NOTICE OF FILING EXCERPTS OF DEFENDANT DAREN C. DALY'S TESTIMONY ON SEPTEMBER 14-16, 2020 AT TRIAL ADMITTING TO HIS FORGERIES OF SIGNATURES OF PATRICK DALY AND ELIZABETH DALY, INCLUDING ON CREDIT APPLICATIONS WHICH STATE THAT ELIZABETH DALY IS THE OWNER OF ALL PAVING, INC.

Plaintiffs ALL PAVING, INC., ALL PAVING & SEALCOATING LLC, PATRICK DALY

and ELIZABETH DALY hereby notice they have filed the attached excerpts of Defendant DAREN

C. DALY's trial testimony on September 14-16, 2020 with applicable trial exhibits wherein he

admitted to forging his parents' signatures, including on credit applications stating that ELIZABETH

DALY is owner of ALL PAVING, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via Email

through the Florida Courts E-Filing Portal to John P. Kelly, Esq., (john@sotolawgroup.com,

jkelly@businesslitigation.com), Soto Law Group, P.A., Coastal Tower, 2400 E. Commercial Blvd.,

1

BRUCE A. GOODMAN, P.A.



EXHIBIT

**8**

Suite 400, Fort Lauderdale, FL 33308, and   Jeffrey E. Streitfeld, Special Magistrate (jstreitfeld@gmail.com), 101 NE Third Ave., Suite 1500, Fort Lauderdale, FL 33301, this 13th day of October, 2020.

Respectfully submitted,

BRUCE A. GOODMAN, P.A.
Attorney for Plaintiffs
5531 N. University Drive
Suite 101
Coral Springs, Florida 33067
Tel: (954) 919-6000; Fax: (754) 222-5122
Email: bruce@bgoodmanlaw.com

By: **/s/ Bruce A. Goodman**, **Esq.**
    Florida Bar No. 602302

2
BRUCE A. GOODMAN, P.A.

Page 1

1        IN THE CIRCUIT COURT FOR THE 17TH JUDICIAL CIRCUIT
                IN AND FOR BROWARD COUNTY, FLORIDA
2
                   CASE NO.  CACE 17-014794 (03)
3
4    ALL PAVING, INC., a Florida corporation;
     ALL PAVING & SEALCOATING, LLC, a Florida
5    limited liability company; PATRICK
     DALY and ELIZABETH DALY,
6
          Plaintiffs,
7
     vs.
8
     DAREN C. DALY and JAMIE A. SCHINDLER,
9
             Defendants.
10   _____/
11
12
13
                         Zoom Meeting
14                       Monday, 9:30 a.m.-5:00 p.m.
                         September 14, 2020
15
16
17                   TRANSCRIPT OF TRIAL
18
19       Heard before the Honorable Nicholas R. Lopane
20       on behalf of the Plaintiffs; taken by Lisa
21       Gerlach, Court Reporter, Notary Public in and
22       for the State of Florida at Large, pursuant
23       to Notice of Hearing in the above cause.
24
25

Page 2

1        Appearances by Zoom:
2        Counsel for the Plaintiffs:
3        BRUCE A. GOODMAN, ESQUIRE
         Bruce A. Goodman, PA
4        5531 North University Drive
         Suite 101
5        Coral Springs, FL 33067
         954-919-6000
6        bruce@bgoodmanlaw.com
7
         Counsel for the Defendant:
8
         JOHN P. KELLY, ESQUIRE
9        Soto Law Group
         2400 East Commercial Boulevard
10       Suite 400
         Fort Lauderdale, FL 33308-4026
11       954-567-1776
         john@sotolawgroup.com
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1          had a brief power surge.  He says he's

2          getting right back on.

3                THE COURT:  Okay.

4                MR. KELLY:  I'm back on, your Honor.  I

5          had a power failure.  It went out for, like,

6          ten seconds.

7                MR. GOODMAN:  John, we left off with -- I

8          don't know if you heard it -- I was offering

9          into evidence Plaintiffs' Exhibit 17.

10               MR. KELLY:  The only question I have is,

11         I thought I saw that one of these checks

12         wasn't written to Daren Daly.  Is that

13         correct?

14               MR. GOODMAN:  I think one was written to

15         cash, but --

16               MR. KELLY:  There was another name.  It

17         was Geoff Kenyon.

18               MR. GOODMAN:  I'll ask your client that

19         question.

20    BY MR. GOODMAN:

21         Q.  Daren, who is Geoff Kenyon?

22         A.  I think that's really a question for All

23    Paving & Sealcoating, isn't it?

24         Q.  I'm asking you.  You're the only person on

25    the stand right now, Daren.

Page 140

1        A.   Geoff Kenyon was a guy that used to do some
2   SEO work for All Paving & Sealcoating in 2014.
3        Q.   That's your signature signing Patrick's name;
4   isn't it?
5        A.   That is my signature, yeah.
6        Q.   That's your signature signing Patrick's name;
7   isn't it?
8        A.   That is my signature, yes.
9        Q.   Let's see.   That is your signature signing
10   Patrick's name; is it not?
11        A.   It is.
12        Q.   Okay.   Check number 1504, dated March 5,
13   2014, payable to Daren Daly in the amount of $2,200,
14   it says "website."   All of this handwriting on check
15   number 1504 is your handwriting, including the
16   signature that purports to be signed by Patrick Daly;
17   correct?
18        A.   Correct.   That's my -- I signed my dad's name
19   on that one.   That was with regards to work I had done
20   in February.   That was basically the payment towards
21   me, because I wasn't an employee of him at that time.
22   So that was me being paid for that month of work.
23        Q.   And this payment was never reported on your
24   2014 tax return?
25        A.   No.   You pointed it out -- and I think 2018

Page 141

1   maybe.  And there were actually a few checks from
2   here, plus a check from the Dolphins, that were 1099s,
3   that -- I did not get a 1099 from All Paving &
4   Sealcoating, and the Dolphins had sent me a 1099 that
5   did not end up on my tax return.
6        Q.  All of this handwriting here is your dad's,
7   correct?  On check number 1163, the check payable to
8   you on March 17, 2013, for 500, indicating "Logo, All
9   Paving," all your dad's handwriting; right?
10       A.  That was what I was just testifying to
11   before.  Matt Mitchell-Camp is the guy who created the
12   original logo, the guy with the roller for All Paving
13   & Sealcoating.  This was probably two weeks after he
14   brought on Bob Holland, right after I got done taking
15   the bar.  That was with regards to Matt Mitchell-Camp,
16   the guy who designed the logo.
17       Q.  Daren, this next check, 1188, March 21, 2013,
18   for $2,000, also all your dad's handwriting and
19   signature; correct?
20       A.  Yeah.  He wrote that for me for developing,
21   on Bold Array, All Paving & Sealcoating's website.  I
22   don't know if you have it in one of your exhibits, but
23   I've seen it before as one of your exhibits.  That was
24   the month we created -- February, March 2013 is when
25   we created All Paving & Sealcoating's website.

1    start off with the $2,500 check to George Day, Promo

2    Sample, the domain purchase that we previously

3    discussed, and then we have additional items here

4    where we find that you've laid out some money.  This

5    Matthew Mitchell, we previously discussed him.  He had

6    something to do with, I think, the logo.  We see that

7    you --

8         A.  All Paving & Sealcoating's logo.

9         Q.  Okay.  We see $350 times two?

10        A.  Yes.

11        Q.  A total of $700?

12        A.  Yes.  Bruce, when you brought this up the

13   last time, not one of these reimbursements -- you'll

14   see that not one of them is for the domain name and

15   not one even references the domain name.

16        Q.  Okay.  This one references "website."  This

17   is your handwriting; right?

18        A.  Right.

19        Q.  This is the check we previously discussed.

20   You agree that it was written 13 days after your

21   February 20, 2014 check to George Day, Promo Sample,

22   in the amount of $2,500; correct?

23        A.  Correct.  This was, again, in reference to

24   the work I did in February for the company, and he

25   just categorized their website for their factor of

1    trying to put in their expenses.

2            But this check, if you look at your records,

3    you'll see that I never got paid in February, March,

4    or even April from All Paving & Sealcoating for the

5    work that I was helping with.

6        Q.  And you admitted to forging your father's

7    name to this check number 1504; correct?

8        A.  Yes.

9        Q.  Okay.  Is that your signature as endorsed --

10   did you endorse this check?  Is that your signature?

11       A.  Sorry.  It's turned sideways.  I think that

12   is.  I don't know what that says.

13       Q.  Now, can you turn upside down, because this

14   seems to say "cash."  It says "CSH."

15           Did you cash this check, go to the bank and

16   walk out with some 20s or hundreds?

17       A.  I don't know if that says cash, but my

18   records would say what it was.

19       Q.  If it actually went through your bank

20   account, it would; right?

21       A.  Yeah.  I don't deposit checks at any

22   check-cashing stores.  I only go to the bank.  All my

23   financial records for 2014 have already been admitted.

24   I don't go to any check-cashing stores to cash checks.

25   I deposit them in my bank.

1      Q.  As we've seen before, you laid out this March

2   27, 2014 $400 on your Bill Me Later.

3          Go to the next page.

4      A.  When you say "lay out," yes, those are

5   payments I made from buying the domain.  I wasn't

6   laying it out for anybody else.

7      Q.  Okay.  Let me get back to where I was.  We're

8   going through -- this is a reimbursement check,

9   April 4, 2014, in the amount of $2,500?

10     A.  It's not a reimbursement check.  We went over

11  this.  This is what he was paying me for work I did in

12  March.  Like I told you, I wasn't on All Paving &

13  Sealcoating's payroll.  I wasn't working for free.

14  This was him paying me.

15     Q.  Not reported on your 2014 taxes; right?

16     A.  Again, like I mentioned, I did not get a 1099

17  and I missed out on one 1099 that I did receive from

18  the Dolphins from 2014.

19          As I sit here today, I'll tell you that I got

20  paid from All Paving & Sealcoating and I didn't get a

21  1099.  So I wasn't not getting paid.  This doesn't

22  make any sense.

23     Q.  So it doesn't make any sense to file a

24  Schedule C as an independent contractor, indicating

25  your alleged income that you received from All Paving

Page 166

1    & Sealcoating in order --

2         A.  No.  What I'm --

3         Q.  Let me finish -- even though you did not

4    receive a 1099.  Is that your testimony?

5         A.  Looking back -- I filed these things on

6    TurboTax.  Looking back now, whatever documents --

7    whether it's a W-2 I get in the mail or if I got a

8    1099 from the Dolphins, I would have turned around and

9    entered them all in the way TurboTax walks you through

10   every step.  It says, "Here's your W-2s, upload your

11   1099s."

12           I did not receive one.  That's why it didn't

13   get uploaded.  But you're 100 percent right, the IRS

14   is owed amounts that I got paid that didn't show up

15   there as 1099s.

16        Q.  The amounts you received in 2014, you're

17   claiming were not reimbursements; right?

18        A.  I took these checks and I brought them to the

19   attention -- with the one from the Dolphins -- to my

20   accountant to turn around and get it corrected.

21        Q.  It hasn't been corrected yet, has it?

22        A.  No, it has not been refiled.  I've done my

23   portion.

24        Q.  All right.  Furthermore, we have tracked out

25   some more expenses, because you did produce your bank

Page 183

1                THE COURT:  Any objection?

2                MR. KELLY:  No objection, your Honor.

3                THE COURT:  Okay.

4                (Plaintiffs' Exhibit 33 was moved into

5           evidence.)

6     BY MR. GOODMAN:

7           Q.  Plaintiffs' Exhibit 34 is your e-mail, Daren,

8     on March 13, 2014, to Sonya Knox.

9                Do you recall who Sonya Knox is?

10          A.  Sonya Knox is a lady that worked at BB&T.

11          Q.  And were you providing her with insurance

12    information for the carrier for All Paving &

13    Sealcoating, LLC, WF Roemer Insurance Agency?

14          A.  I think I was providing our address and phone

15    number to her.

16          Q.  You said, "Please find the attached letter."

17    And the attached letter that you attached is this

18    letter here.

19                Do you see that?

20          A.  Yes.

21          Q.  It says, "Dear BB&T:  This letter dated

22    March 11, 2014 is in regards to a request for

23    confirmation from BB&T in regards to the ownership of

24    All Paving & Sealcoating, LLC.  As reflected on the

25    2012 K-1 tax returns, Elizabeth Daly owns 99 percent

1    of the company, with Patrick Daly owning the remaining

2    1 percent."

3              You sent that letter to Sonya Knox at BB&T;

4    correct?

5         A.   Yes.

6         Q.   And that's your signature there for your mom?

7         A.   Yes.

8         Q.   And that's your signature there for your

9    father?

10        A.   Yes.

11        Q.   So you admit then, do you not, that your mom,

12   Elizabeth Daly, was the 99 percent owner of All Paving

13   & Sealcoating, LLC at some point in time?  Well, the

14   2012 -- as of 2012, as reflected on the 2012 tax

15   return, she owned 99 percent of All Paving &

16   Sealcoating, LLC, and your dad owned 1 percent.

17   Right?

18        A.   No.  What I'm admitting is, this is what they

19   stated on their 2012 K-1 tax return.  You have to ask

20   Patrick Daly and Elizabeth Daly and their accountant

21   why they filed the ownership that way.  I'm just

22   saying what their ownership says on the actual

23   document, on their tax return in 2012.

24             MR. GOODMAN:  Your Honor, I'd offer

25        Plaintiffs' Exhibit 34 into evidence.

Date: *July 2, 2018*          *Branch Banking and Trust*          *Page 2 of 4*

Reference: 20000192359545:20000192359545:20000144937546





| Date | 20140306 | Account Number | |
|------|----------|----------------|---|
| Amount | 220000 | CR-DR | D |
| Serial Number | 0000001504 | Transaction Link | 0103202306553789106 |

| Routing | Sequence # | Paid Date | Amount | Account | Serial | Capture Source |
|---------|-----------|-----------|--------|---------|--------|----------------|
| 6310751 | 8528934770 | 02262014 | $2500.00 | ▮▮▮▮▮▮ | 1044 | 00007227 |

**DAREN C DALY**                                                    **1044**
                                                                    83-643/670
                                                                    BRANCH 00536

                                               2/20/2014
                                                          Date

Pay to the
order of    George Day — Promo Sayde          | $    2500.00

Two thousand five hundred dollars.        Dollars

**WACHOVIA**
Wachovia Bank, N.A.
wachovia.com

For   Domain Purchase                        Jim B                 MP

⑆067006432⑆ ▮▮▮▮▮▮▮▮▮▮▮    1044



PLAINTIFF'S
EXHIBIT NO. ___
FOR IDENTIFICATION
DATE: 3-10-18   RPTR: 56

*Date: July 2, 2018*        *Branch Banking and Trust*        *Page 1 of 2*

*Reference: 20000192359605:20000192359605:20000144937606*





| | | | |
|---|---|---|---|
| **Date** | 20140502 | **Account Number** | |
| **Amount** | 150800 | **CR-DR** | D |
| **Serial Number** | 0000001582 | **Transaction Link** | 010994230450573102 |

**Plaintiffs' Exhibit 34**

All Paving, Inc. et al. v. Daren C. Daly et al.

**Case No. 17-014794 (03)**

| | |
|---|---|
| **From:** | daren@allpavingandsealcoating.com on behalf of Daren Daly |
| **To:** | Knox, Sonia |
| **Subject:** | Letter |
| **Date:** | Thursday, March 13, 2014 1:52:12 PM |
| **Attachments:** | bbt.pdf |

Sonia,

Please find the attached letter.

Also I have attached our insurance companies information below.  I have already informed them to give you whatever you need.


W.F.Roemer Insurance Agency, Inc.

## Office Address

4752 W Commercial Blvd
Ft Lauderdale, FL 33319

## Contact Info

Phone: (954) 731-5566



Daren



Dear BB&T,

This letter dated March 11, 2014 is in regards to a request for confirmation from BB&T in regards to the ownership of All Paving and Sealcoating LLC.  As reflected on the 2012 K1 tax returns, Elizabeth Daly owns 99 percent of the company with Patrick Daly owning the remaining 1 percent.

For further information please view tax returns.

Respectfully,

Date: _____ 3/11/2014 _____

Signature: ___ Elizabeth Daly ___

Elizabeth Daly

Date: _____

Signature: _____

Patrick Daly

Page 1

1       IN THE CIRCUIT COURT FOR THE 17TH JUDICIAL CIRCUIT
                IN AND FOR BROWARD COUNTY, FLORIDA

2
                  CASE NO.  CACE 17-014794 (03)

3

4   ALL PAVING, INC., a Florida corporation;
    ALL PAVING & SEALCOATING, LLC, a Florida

5   limited liability company; PATRICK
    DALY and ELIZABETH DALY,

6

7          Plaintiffs,

8   vs.

9   DAREN C. DALY and JAMIE A. SCHINDLER,

10          Defendants.
    _____/

11

12

13

                              Zoom Meeting
14                            Tuesday, 9:30 a.m.-3:30 p.m.
                              September 15, 2020

15

16

17              TRANSCRIPT OF TRIAL, DAY 2

18

19       Heard before the Honorable Nicholas R. Lopane
20       on behalf of the Plaintiffs; taken by Lisa
21       Gerlach, Court Reporter, Notary Public in and
22       for the State of Florida at Large, pursuant
23       to Notice of Hearing in the above cause.

24

25

Page 2

```
 1        Appearances by Zoom:
 2        Counsel for the Plaintiffs:
 3        BRUCE A. GOODMAN, ESQUIRE
          Bruce A. Goodman, PA
 4        5531 North University Drive
          Suite 101
 5        Coral Springs, FL 33067
          954-919-6000
 6        bruce@bgoodmanlaw.com
 7
          Counsel for the Defendant:
 8
          JOHN P. KELLY, ESQUIRE
 9        Soto Law Group
          2400 East Commercial Boulevard
10        Suite 400
          Fort Lauderdale, FL 33308-4026
11        954-567-1776
          john@sotolawgroup.com
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1      evidence Plaintiffs' Exhibit 81.

2             THE COURT:  Any objection?

3             MR. KELLY:  No objection.

4             (Plaintiffs' Exhibit 81 was moved into

5      evidence.)

6    BY MR. GOODMAN:

7             Q.  With respect to Plaintiffs' Exhibit 82, were

8      you involved in the purchase of a piece of equipment

9      financed by Komatsu Financial?  And it looks like it

10     is a -- this is the hydraulic excavator, is it not --

11     the same one we were just referring to?

12            A.  You're scrolling very fast.  Can you go back

13     up?

14            Q.  Absolutely.

15            A.  Yeah, it looks like it's for the excavator.

16            Q.  The October 29, 2015 e-mail that's at the top

17     is you, Daren, submitting to Nestor Campbell with H&E

18     Equipment, the signed documentation for the purchase

19     and financing of the excavator; correct?

20            A.  Yes.  I think I'm on the chain there.  I

21     don't know if I submitted it, but it says I'm on the

22     chain there.

23            Q.  Well, does this not indicate that you have

24     attached the paperwork?

25            A.  Yeah.  It says that, yeah.

1    Q.  And did you attach this security agreement,

2  conditional sales contract with respect to that

3  purchase signed, as we see at the bottom of this page,

4  with the effective contract date of November 3, 2015?

5    A.  Say that one more time.

6    Q.  Did you submit this page with the signatures

7  that are on the screen right now in part of this

8  Exhibit Number 82?

9    A.  Yes, I did.  This is another one of the

10  pieces of equipment we spoke about that my mom

11  assisted in financing.  That actually ended up on All

12  Paving & Sealcoating's records.

13    Q.  And did you sign your mother's name to this

14  form?

15    A.  I did sign my mom's name to the form.

16    Q.  Did you print your mom's title as being

17  owner?

18    A.  It looks like my handwriting.

19    Q.  Did you sign your father's name to this form?

20    A.  That looks like my handwriting.

21    Q.  Did you print the word "president" next to

22  your father's name on this form?

23    A.  That looks like my handwriting.  There's no

24  secret.  I haven't tried to hide the ball about

25  anything.  I've spoken to you several times.  There

Page 47

1    are documents that were filled out and signed that

2    were supposed to be titled in All Paving, Inc. and

3    ended up on Sealcoating's tax return.  I'm not trying

4    to hide the ball about that.  She was assisting me in

5    getting some of the equipment financed.

6         Q.  I brought up one of my demonstrative

7    exhibits.  Is it on your screen at this point?

8         A.  Yes.  It's the same document.

9         Q.  Okay.  So, as you can see, we've indicated

10   that it was signed -- forged -- by you, as you just

11   testified to; correct?

12        A.  Are you -- I don't know the definition

13   between forged and you saying -- if you're saying I

14   forged it, I did it against their consent, then I'm

15   not signing on behalf of -- I'm not sure what you mean

16   by forged.  You mean, they consented to it or they

17   didn't consent to it?

18        Q.  You signed their names?

19        A.  Yeah, I signed their names.

20            MR. GOODMAN:  Okay.  Your Honor, I offer

21        into evidence Plaintiffs' Exhibit 82.

22            MR. KELLY:  No objection, your Honor.

23            THE COURT:  Okay.

24            (Plaintiffs' Exhibit 82 was moved into

25        evidence.)

Page 110

```
 1              MR. GOODMAN:  Okay.  All right, Judge.
 2         I'd like to share my screen again.
 3              THE COURT:  Go right ahead.
 4              MR. GOODMAN:  Thank you.
 5    BY MR. GOODMAN:
 6         Q.  Okay, Daren.  I brought up Plaintiffs'
 7    Exhibit 118.
 8         A.  Yes.
 9         Q.  Are you familiar with this document and your
10    submission on June 22, 2016, to Irvin Jock of certain
11    documents in connection with the purchase of a piece
12    of equipment?
13         A.  That's not a piece of equipment.  That's
14    opening a vendor account.
15         Q.  Did you submit this application for business
16    credit and agreement to Irvin Jock of Titan America?
17         A.  Yeah.  This is an All Paving & Sealcoating
18    application.  And I know you're referencing the EIN
19    number, but Steven must have put this down wrong.  He
20    also put down the Social Security wrong.  That's my
21    Social Security number right there.  That's not
22    Elizabeth's Social Security number.  That's mine.
23              And I have a separate account with the same
24    vendor that I introduced into exhibits, so you'll see
25    what my account is.  Obviously, All Paving &
```

Page 111

1    Sealcoating still remain -- still have this account,

2    I'm guessing, with Titan.

3         Q.  So the FEI number that ends in 4275 is for

4    All Paving, Inc., correct?

5         A.  Yeah.

6         Q.  And you've signed the name Elizabeth Daly and

7    you printed, "owner" and you printed "Elizabeth Daly,"

8    and you printed the date of June 22, 2016 to this

9    credit application; correct?

10        A.  Can you zoom out a little bit, please?  Yes,

11   I did sign it, but I did not fill out this

12   application.  Obviously, there's several reasons you

13   can see why I didn't fill it out.

14             One being the Social Security number.  I know

15   my own Social Security number is not Elizabeth's

16   Social Security number.  Two, if you see these

17   questions on one, two, three -- have you or any

18   officers of the company -- what does it say -- if

19   you've ever done any business -- you keep moving the

20   document.  I'm sorry.  I can't --

21        Q.  Where do you want me to go?

22        A.  Right below.

23        Q.  Okay.

24        A.  Have you or any of the officers of the

25   company ever done business with Titan before?  Have

Page 112

1   you ever done business under a different company name?

2        Those are inaccurate.  All Paving &

3   Sealcoating does do business with Titan.  So I would

4   not have said that All Paving & Sealcoating did not do

5   business with them.

6        Q.  Did you forge the signature of your mother on

7   that document?

8        A.  I signed my name on that vendor account for

9   All Paving & Sealing, yes.

10        Q.  Did you sign the name Elizabeth Daly at the

11   bottom of the form?

12        A.  Yes, I signed Elizabeth Daly's name for that

13   vendor account.

14        Q.  As an owner of an entity called All Paving,

15   Inc., with the EIN of All Paving, Inc?

16        A.  That document doesn't say "All Paving, Inc."

17   It says "All Paving" at the top.  It doesn't say "All

18   Paving, Inc."

19        MR. GOODMAN:  Your Honor, I'd offer this

20        document into evidence as Plaintiffs'

21        Exhibit 118.

22        THE COURT:  Mr. Kelly, unless you have an

23        objection --

24        MR. KELLY:  No objection.

25        THE COURT:  As soon as Mr. Goodman offers

1    Q.   147, Daren, is this credit application for

2    construction equipment that was -- it has two

3    signatures on it -- both dated February 14th, 2017.

4         Bottom left, is that your signature?

5    A.   That is my signature, yeah.

6    Q.   Bottom right, is that your signature?

7    A.   I think that is myself signing for Patrick.

8    Q.   Okay.  So you did forge your father's

9    signature on this credit application to Wells Fargo,

10   dated February 14th, 2017; right?

11   A.   No.  Patrick knew about this.  He was on the

12   e-mail.

13   Q.   Did you sign his name to this?

14   A.   I signed on behalf of him.  I don't think he

15   was in the office, so I signed on behalf of him for

16   this piece of equipment.  But he was on the e-mail.

17   Q.   You asserted in this credit application that

18   All Paving, Inc., at this point in time, was owned

19   50 percent by you and 50 percent by your father,

20   Patrick Daly; correct?

21   A.   Yeah.  See, the timeline on this, Bruce, is

22   that Patrick and I now had discussions, where Patrick

23   had informed me in January and February, that Bob

24   wanted to get out of All Paving & Sealcoating.  Our

25   discussions, we were talking about trying to go forth

Plaintiffs' Exhibit 82

All Paving, Inc. et al. v. Daren C. Daly et al.

Case No. 17-014794 (03)

-----Original Message-----
From: Daren Daly [mailto:daren@allpaving.com]
Sent: Thursday, October 29, 2015 4:33 PM
To: 'Nestor Campbell'
Subject: RE: All Paving, Inc. Finance Docs

attached

-----Original Message-----
From: Nestor Campbell [mailto:nocampbell@he-equipment.com]
Sent: Thursday, October 29, 2015 2:26 PM
To: keith@allpaving.com
Cc: Daren@allpaving.com; Patrick Daly <patrick@allpavingandsealcoating.com>
Subject: Fwd: All Paving, Inc. Finance Docs

Attached are the Finance Documents for you to sign, please read the instructions bellow and send it back to me asap.

Thanks

Nestor Campbell
Territory Manager
H&E Equipment Services
1021 NW 12th Terrace
Pompano Beach, Fl 33069
Office:954-781-3099
Fax:954-781-3966
Cell 954-882-5351
Email: Nocampbell@he-equipment.com<mailto:Nocampbell@he-equipment.com>
Website:http://www/he-equipment.com<http://he-equipment.com>
" Se Habla Espanol"

Begin forwarded message:

From: "Brittany M. Hooper"
<bhooper@he-equipment.com<mailto:bhooper@he-equipment.com>>
Date: October 29, 2015 at 2:20:39 PM EDT
To: Nestor Campbell
<nocampbell@he-equipment.com<mailto:nocampbell@he-equipment.com>>
Cc: Blake Dupuy <bdupuy@he-equipment.com<mailto:bdupuy@he-equipment.com>>
Subject: All Paving, Inc. Finance Docs

The finance docs for All Paving, Inc. are attached. Have them signed per the instructions below and then email a copy of the docs to me for review before sending the originals.


.    Please have the customer initial each page of the Security

1



EXHIBIT
513

Agreement and sign his name on Page 2.  Please be sure to have the customer sign and initial page 2 of the agreement.

    .    Sign your name under "Salesman's Signature" on page 2 of 5 of the
Security Agreement.

    *  Please have the Continuing Guaranty signed where indicated.  Salesman
to sign as Witness on the line below the customer signature.  Provide Branch address for Witness
address.
    *  Correct Titles to use:
    *  Corporation :  official corporate title such as President, VP, CFO,
etc.

    *  If the customer chooses to sign up for automatic payments please have
them complete and sign the autopay form and provide a copy of a voided check.
    *  The customer will need to provide proof of physical damage insurance
on the equipment.   The full equipment description (including the serial #)
and value must be listed on the certificate; Komatsu Financial listed as Loss Payee.

Loss payee info:
Komatsu Financial Limited Partnership
1701 W. Golf Rd., Ste 300
Rolling Meadows, IL  60004
Phone - (847) 437-3330 or (888) 500-6001 Fax - (847) 437-3699

Contact myself or Blake with any questions.

Thanks,
Brittany Hooper
Retail Finance Coordinator
7500 Pecue Lane
Baton Rouge, LA 70809
Office: 225/298-5288
Fax: 225/298-5340
Email: bhooper@he-equipment.com<mailto:bhooper@he-equipment.com>
Website: http://www.he-equipment.com<http://www.he-equipment.com/>

**KOMATSU FINANCIAL**

## SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO. _____

| Insurance Coverage | Buyer Place of Business and Other Buyer Information |
|---|---|
| **LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.**<br><br>Physical Damage Insurance Covering The Property Is Required.<br>BUYER HAS OBTAINED INSURANCE THROUGH THE INSURANCE AGENCY LISTED BELOW OR ON FORM KF543R, SUBMITTED WITH THIS CONTRACT.<br>Insurance Agency<br><br><br>Contact:<br>Phone# | IF BUYER'S ACTUAL CHIEF PLACE OF BUSINESS (CHIEF EXECUTIVE OFFICE IF MORE THAN ONE PLACE OF BUSINESS) IS IN A STATE OTHER THAN STATE WHERE THE PROPERTY IS LOCATED (AS SET FORTH ON PAGE 1), SPECIFY ACTUAL CHIEF PLACE OF BUSINESS.<br>Physical Location:<br><br><br>BUYER DOES NOT HAVE PLACES OF BUSINESS IN MORE THAN ONE COUNTY IN THE STATE WHERE PROPERTY IS LOCATED.<br>THIS SALE IS CONTINGENT UPON FINANCING ON TERMS WHICH ARE SATISFACTORY TO THE PARTIES.<br>IF DATE OF DELIVERY IS DIFFERENT THAN EFFECTIVE DATE SHOWN BELOW, SHOW ACTUAL DELIVERY DATE: |

| Partner Names and Addresses (if applicable) | | |
|---|---|---|
| Name | Address | Tax ID |

**Delinquency Charge:** After maturity, each installment shall bear charges at the highest rate permitted by law, but not to exceed 1.5% per month. Buyer also agrees to pay all expenses, including reasonable attorneys' fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this contract.

**Security Interest:** In order to secure payment of the indebtedness contained herein or incurred hereunder, Seller hereby retains, and Buyer hereby grants, a purchase money security interest under the Uniform Commercial Code in and to the above described property sold hereunder, together with all replacements, substitutions, additions, attachments, repairs, accessions and proceeds, including amounts payable under any insurance policies with respect thereto. Buyer hereby authorizes Seller to file one or more financing statements and/or a carbon or reproduction of this contract as a financing statement. Buyer hereby authorizes Seller or its agent or assigns to sign and execute on its behalf any and all necessary UCC-1 forms to perfect the security interest herein granted to Seller.

**Location of Property:** Buyer and Seller agree that regardless of the manner of affixation, the property shall remain personal property and not become part of the real estate. Except as permitted by Paragraph 7, Buyer agrees to keep the property at the location set forth herein, and will notify Seller promptly in writing of any change in the location of the property within such State, but will not remove the property from such State without the prior written consent of Seller (except that in the State of Pennsylvania, the property will not be moved from the above location without such prior written consent).

**ENTIRE AGREEMENT:** BUYER agrees that this contract including the ADDITIONAL TERMS AND CONDITIONS PRINTED ON Page 3-5 hereof, which he has read and to which he agrees, contains the entire agreement relating to the conditional sale of the property and supersedes all previous contracts and agreements between Buyer and Seller relating to the order or sale of the property. This contract is not binding upon Seller, unless signed by the manager of Seller or owner.

**NOTICE TO BUYER: 1. Do not sign this contract before you read it or if it contains blank spaces. 2. You are entitled to an exact and completely filled-in copy of the contract you sign. 3. Under law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; and (c) to require, under certain conditions, a resale of the property if repossessed. 4. If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request. 5. Keep this contract to protect your legal rights.**

BUYER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT SIGNED BY SELLER

| | |
|---|---|
| **Buyer:** ALL PAVING, INC. | **Effective Contract Date:** 11/03/2015 |
| By: _Elizabeth R_    Title: _Owner_ | **Salesman's Signature:** |
| **Co-Signer:** | **Signature For Seller Approval:** |
| By: _____    Title: _President_ | |

**KOMATSU FINANCIAL**

## SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

Subject to the Terms and Conditions herein contained, the Seller hereby agrees to sell, and the Buyer having been quoted and offered both a cash sale price, payable immediately or within a limited number of days, and a contract time price which permits the Buyer to purchase the property now but pay in installments over an extended period of time, hereby agrees to buy, the following described property ("property") on a contract time price basis set forth below. The Contract time price is more than the cash sale price because it includes charges by the Seller to compensate the Seller for having to wait a period of time before collecting its full purchase price and for taking a risk in waiting such period of time. The property is to be used only for commercial or business purposes, includes all accessories and attachments, and shall, except as permitted by Paragraph 7 on page 4 hereof, be located at Buyer's Address set forth immediately below.

| Seller's Information | H & E EQUIPMENT SERVICES, INC.<br>7500 PECUE LANE<br>BATON ROUGE, LA 70809 | Quote No. | 68097 |
|---|---|---|---|

**Buyer's Information**
ALL PAVING, INC.
8919 NW 20th Manor
CORAL SPRINGS, FL 33071

Physical Location: 8919 NW 20th Manor
CORAL SPRINGS, FL 33071

County:
County: State Charter Number:
Telephone:  9549332053    State of Registration: P13000077541
Tax ID:    FL

### Property Description

| Make | Model | Type | Description | Serial No. | Price |
|---|---|---|---|---|---|
| Takeuchi | TB175 | Hydraulic Excavator | | 175301457 | $43,500.00 |

### Trade-In Description

| Year | Make | Model | Type | Description | Serial No. | Allowance | Amt. Owed | Net Trade |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| Schedule of Payments | | | | Statement of Transaction | | |
|---|---|---|---|---|---|---|
| BUYER AGREES TO PAY SELLER, OR IF THIS CONTRACT IS ASSIGNED,TO ASSIGNEE OF SELLER, THE 'TOTAL OF PAYMENTS' (ITEM 10) IN ACCORDANCE WITH THE FOLLOWING SCHEDULE. PAYMENTS IN NUMBER AND AMOUNT ARE DUE EACH SUCCESSIVE MONTH ON THE SAME DAY AS THE STARTING DATE, OR AS INDICATED BELOW. | | | | 1. Sales Price | | $43,500.00 |
| | | | | 2. Delivery, Installation, Repair (or other Service Charges) | $0.00 | |
| | | | | 3. Sales Tax | $2,610.00 | |
| | | | | 4. Cash Price (1+2+3) | | $46,110.00 |
| Payments | Start Date | End Date | Payment | Total | 5. a. Cash Down Payment | $0.00 | |
| 48 | 12/03/2015 | 11/03/2019 | $1,094.42 | $52,532.16 | b. Net Trade In | $0.00 | |
| 48 | | | | $52,532.16 | c. Less Insurance | $0.00 | |
| | | | | Total Down Payment (5a+5b-5c) | | $0.00 |
| | | | | 6. Net Cash Price (4-5) | | $46,110.00 |
| | | | | 7. a. Lien & Filing Fees | $0.00 | |
| | | | | b. Other Fees | $500.00 | |
| | | | | Total Other Charges | | $500.00 |
| | | | | 8. Amount Finenced (6 + 7) | | $46,610.00 |
| | | | | 9. Finance Charge (5.99%) | | $5,922.16 |
| | | | | 10. Total of Payments (8 + 9) | | $52,532.16 |
| | | | | 11. Total Time Price (4 + 7 + 9) | | $52,532.16 |

Date finance charge begins to accrue (if different than contract date)

ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)    Buyer's Initials _ED_

**KOMATSU
FINANCIAL**

## SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO. _____

**Conditional Terms and Conditions:**

**1. Assignment by Seller; Waiver of Defenses Against Assignee Holder:**
Seller may hold this contract or it may assign it for value to Komatsu Financial Limited Partnership (hereinafter referred to as "KF"). If Seller does in fact assign this contract to KF then after such assignment: a) KF as assignee, shall have all the rights and remedies of Seller hereunder and all of Buyer's agreements, representations and warranties shall be deemed to have been made to KF with the same force and effect as if KF were an original party hereto; b) Seller shall not be KF's agent for any purposes; c) Seller shall not have any power or authority to change or modify this contract or any related document or instrument in any way (except any relevant warranty or service agreement which is exclusively between Seller and Buyer and shall not bind KF or affect any of Buyer's or KF's rights or obligations under this contract); d) Buyer will settle all claims, defenses, set-offs and counterclaims of any nature, it may have against Seller, including but not limited to delivery of property, defects in the property and the like, directly with Seller, and not set up any such claim, defense, set-off or counterclaim against KF. Seller hereby agreeing to remain responsible therefor.

**2. Waiver of Defenses Acknowledgment; Place of Payment:**
Buyer acknowledges that: KF has no knowledge or information as to the condition or suitability for Buyer's purposes of the property, and KF's decision to purchase this contract from Seller, if so offered, will be made in reliance on Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against KF any claims, defenses, set-offs or counterclaims it may now or in the future have against Seller named on page 1 hereof. If this contract is assigned to KF then after assignment to KF, Buyer will make all payments directly to KF at such places as KF may from time to time designate in writing to Buyer.

**3. Buyer's Warranties and Representations:**
Buyer warrants, represents and covenants; a) that Buyer is justly indebted to Seller for the full amount of the foregoing indebtedness; b) that except for the security interest granted hereby the property is free from and will be kept free from all liens, claims, security interests and encumbrances; c) that no financing statement covering the property or any proceeds is on file in favor of anyone other than Seller but if such other financing statement is on file, it will be terminated or subordinated; d) that all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this contract with respect to this transaction are and shall be true, correct, valid and genuine; e) Buyer has full authority to enter into this contract and in so doing it is not violating any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this contract binding upon it: f) No director, officer or employee of the Company is or has been identified on any of the following documents: (i) the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") list of "Specially Designated Nationals and Blocked Persons" ("SDNs"); (ii) the United States Department of Commerce, Bureau of Industry and Security of "Denied Persons List", "Entity List" or "Unverified List"; (iii) the Directorate of Defense Trade Controls of the United States Department of State "List of Statutorily Debarred Parties" or "List of Administratively Debarred Parties"; (iv) the United Kingdom's "Consolidated List of Financial Sanctions Targets" as maintained by HM Treasury; (v) Canada's "Listed Entities" pursuant to the Anti-Terrorism Act, 2001; (vi) the Australian Department of Foreign Affairs and Trade "Consolidated List" (pursuant to the Charter of the United Nations Act 1945 and Charter of the United Nations Terrorism and Dealings with Assets) Regulations 2002, as amended; (vii) the United Nations Security Council "Consolidated List" established and maintained by the 1267 Committee; or (viii) European Union Commission "Consolidated list of persons, groups and entities subject to EU financial sanctions". The Company is not and has not been involved in business arrangements or transactions with or involving countries subject to economic or trade sanctions imposed by the United States Government, or with or involving SDNs, in violation of the regulations maintained by OFAC.

**4. Events of Default; Acceleration:**
A very important element of this contract is that Buyer make all its payments promptly as agreed upon. Also essential is that the property continue to be in good condition and adequate security for the indebtedness. The following are events of default under this contract which will allow Seller to take such action under this Paragraph and under Paragraph 5 as it deems necessary:

(a)  any of Buyer's obligations to Seller under any agreement with Seller is not paid promptly when due;
(b)  Buyer breaches any warranty or provision hereof, or of any other instrument or agreement delivered by Buyer to Seller in connection with this or any other transaction;
(c)  Buyer dies, becomes insolvent or ceases to do business as a going concern;
(d)  it is determined Buyer has given Seller false information of a substantial nature regarding its financial condition;
(e)  any of the property is lost or destroyed;
(f)  a petition in bankruptcy or for arrangement or reorganization be filed by or against Buyer or Buyer admits its inability to pay its debts as they mature;
(g)  property of Buyer be attached or a receiver be appointed for Buyer;
(h)  whenever Seller in good faith believes the prospect of payment or performance is impaired or in good faith believes the property is insecure;
(i)  any guarantor, surety or endorser for Buyer defaults in any obligation or liability to Seller or any guaranty obtained in connection with this transaction is terminated or breached.

**If Buyer shall be in default hereunder, the indebtedness herein described and all other debts then owing by Buyer to Seller under this or any other present or future agreement shall, if Seller shall so elect, become immediately due and payable.**

This acceleration of all indebtedness, if elected by Seller, shall be subject to all applicable laws, including laws as to rebates and refunds of unearned charges.

**KOMATSU FINANCIAL**

## SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

**5. Seller's Remedies After Default; Consent to Enter Premises:**

So long as any obligations are owed by Buyer to Seller hereunder, Seller shall have all the rights and remedies provided by this contract and provided a secured party under the Uniform Commercial Code and any other applicable law. After default by Buyer, Seller's rights and remedies include but are not limited to a number of choices. Buyer acknowledges that if it defaults Seller is justly entitled to do whatever the law allows to avoid loss to itself and also to obtain for itself the benefit of the bargain under this contract.

Consequently, Buyer agrees that Seller, among its other rights and remedies, may itself or through its agent enter the premises or upon the land where the property is located and without removing the property render any equipment which is part of the property unusable and/or take possession of the property without notice to anyone or without judicial process of any kind, provided such self-help is done without breach of the peace (meaning actual or threatened violence to a person at the time of repossession). In order to afford itself of these and related remedies, Seller must be able to enter the premises or land in or upon which the property is located.

**Buyer therefore agrees that Seller by itself or through its agent may without notice to any person and without judicial process of any kind, enter into any premises or upon any land (including access roads and rights of way) owned, leased or otherwise under the real or apparent control of Buyer or any agent of Buyer where the property may be or where Seller believes the property may be, and using any reasonable force with respect to the property and any property connected to the property, disassemble, render unusable, disconnect and separate all property from any other property and/or repossess and remove all or any item of the property.**

Buyer will not hinder or delay Seller or its agent in any way and will, if requested, assist Seller or its agent in disassembling and/or removing the property. Seller may require Buyer to assemble the property and return it to Seller at a place to be designated by Seller which is reasonably convenient to both parties. Buyer expressly waives all further rights to possession of the property after default and all claims for damages related to such removal, disassembling, entering and/or repossession. The security interest granted hereby shall continue effective irrespective of any retaking and redelivery of the property to Buyer until all amounts secured hereby are fully paid in money.

Unless Buyer otherwise agrees in writing after default and unless the property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Seller will give Buyer reasonable notice of the time and place of any public sale of the property or reasonable notice of the time after which any private sale or other intended disposition thereof is to be made. Unless otherwise provided by law, the requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of Buyer shown herein at least ten days before the time of the sale or disposition. Expenses of retaking, holding, preparing for sale, selling and the like shall include reasonable attorneys' fees and other legal expenses. Buyer understands that Seller's rights are cumulative and not alternative and that Buyer will remain fully liable for any deficiency remaining after disposition of the property.

**6. Waiver of Defaults; Exclusive Agreement:**

Seller may in its sole discretion waive a default or cure a default at Buyer's expense. Any such waiver in a particular instance or of a particular default shall not be a waiver of other defaults or the same kind of default at another time. No modification or change in this contract shall bind Seller (after assignment, "Seller", as stated above means "KF") unless in writing signed by Seller. No oral agreement shall be binding.

**7. Buyer's Agreements:**

Buyer agrees; a) to defend at Buyer's own cost any action, proceeding or claim affecting the property; b) to pay reasonable attorneys' fees and other expenses incurred by Seller in enforcing its rights after Buyer's default: c) to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the property or this contract and this obligation shall survive the termination of this contract; d) that if a certificate of title be required or permitted by law, Buyer shall obtain such certificate with respect to the property, showing the security interest of Seller thereon, and in any event do everything necessary or expedient to preserve or perfect the security interest of Seller; e) that Buyer will not misuse, fail to keep in good repair, secrete, or, except as provided in the remaining sentences of this Paragraph 7, without the prior written consent of Seller, and notwithstanding Seller's claim to proceeds, sell, rent, lend, encumber or transfer any of the property; f) that Seller may enter upon Buyer's premises or wherever the property may be located at any reasonable time to inspect the property. Buyer may lease the property in the ordinary course of Buyer's business and, in each instance, only on an arms-length basis upon the terms hereinafter set forth. In the event that Buyer leases the property to an affiliate of Buyer, the lease agreement between Buyer and such affiliate shall provide that such lease agreement is subordinate to this Contract.

To further secure payment of the indebtedness contained herein or incurred thereinafter, Buyer agrees to assign and hereby pledges, assigns and grants to Seller a security interest in the following collateral (collectively called "Additional Collateral"); all leases of the Property ("Leases"), other chattel paper, accounts, contract rights, documents, instruments and general intangibles, including all guaranties thereof, now existing or hereafter arising with respect to the Property (collectively with the Leases called the "Documents"); all rental payments and other amounts due or to become due under the Documents and all other cash and non-cash proceeds of the Property and the Documents (collectively called "Revenues"); all rights under and benefits of the terms, covenants and provisions of the Documents; and all legal and other remedies available for enforcement of the terms, covenants and provisions of the Documents. No Lease shall relieve Buyer of any of its obligations to Seller under Contract, and the aforesaid assignment of and security interest granted in the Documents and other Additional Collateral shall not be construed as authorizing Buyer to do anything with the Property other than to lease the same in accordance with the terms of this Contract. Buyer agrees that Seller does not, by this Contract or otherwise, assume any of the obligations of Buyer under any Lease or other Documents. Buyer agrees, upon the request of Seller, from time to time (a) to deliver to Seller any or all Documents and (b) to execute and deliver to Seller any and all further instruments and documents, including, without limitation, separate assignments and financing statements, which Seller deems necessary or desirable to obtain the full benefits of the assignment, rights, interests and powers herein granted.

Buyer hereby grants to Seller the right (in Buyer's name or otherwise, and without affecting Buyer's obligations to Seller) during the continuance of an event of default under Paragraph 4: to demand, receive, compromise, extend the time of payment of, or give discharge for, any and all Revenues; to endorse any checks or other instruments or orders in connection with the Revenues; and to file any claims or take such actions or institute such proceedings as Seller may deem necessary or advisable to protect Seller's interest. Buyer shall have no authority during the continuance of an event of default under Paragraph 4 to, and will not, during such period of time without Seller's prior written consent, accept collections, repossess, substitute or consent to the return of the Property or modify the terms or provisions of the Documents.



**KOMATSU FINANCIAL**

## SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

Buyer agrees, upon the request of Seller, during the continuance of an event of default under Paragraph 4 (i) to notify all obligors under the Documents of the interest of Seller or its assigns, and (ii) to direct all obligors under the Documents to pay all Revenues directly to Seller. Buyer further agrees, upon request of Seller, to forward promptly to Seller all notices received by Buyer from any of the obligors under the Documents. Buyer agrees and warrants that: if required by Seller, all Leases shall provide that obligors under the Documents shall waive all rights to any defenses, set-offs and counterclaims as against Seller; if required by Seller, each lessee shall acknowledge and agree (or the Lease shall provide) that lessee's rights to the Property are subject and subordinate to all of the terms of this Contract, including, without limitation, Seller's right to possession of the property after the occurrence of an event of default under this Contract; there are and will be no purchase option or rights of third persons in or to the property or the Additional Collateral, except as approved by Seller in writing; the property is and will remain personal property; and the property and the Additional Collateral are and will be free from all liens and encumbrances other than Seller's. Buyer further agrees that it will notify Seller upon learning of any material damage to or destruction of any of the property. Buyer will not remove the property or permit any lessee of the property to remove the property from those states where Seller has agreed in writing the property may be located. Buyer's chief executive office and principal place of business are at Buyer's address as set forth on pages 1 and/or 2 of this Contract unless otherwise set forth herein, and Buyer agrees to notify Seller promptly of any change of such address(es). Buyer shall cause each lessee of property to permit Seller to visit and inspect the property on such lessee's premises or on any other premises where such lessee has control. Buyer warrants, represents and covenants that (i) Buyer's true and correct legal name is as set forth on page 1 of this Contract and (ii) Buyer will not do any of the following without prior written notice to Seller: change its legal name, merge or consolidate with or into any other entity, change its type of business organization or change the jurisdiction of its organization.

**8. Insurance and Risk of Loss: Liability insurance coverage for bodily and property damage caused to others is NOT included herein.**

All risk of loss of, damage to or destruction of the property shall at all times be on Buyer. Buyer will procure forthwith and maintain fire and theft insurance with extended or combined additional coverage on the property for the full insurable value thereof for the life of this contract plus such other insurance as Seller may specify, and promptly deliver each policy to Seller with a standard long form endorsement attached showing loss payable to Seller or assigns as respective interests may appear. Seller's acceptance of policies in lesser amounts of risks shall not be a waiver of Buyer's foregoing obligation. In the event that the property damage insurance required hereby shall be issued through the Agency as provided in the Insurance Coverage section on the second page of this Contract (such insurance obtained through the Agency, the "Insurance") and any portion of the cash down payment and trade-in equipment allowance set forth in the Trade-In Equipment Description section of the second page of this Contract shall be allocated to the payment of the premium for the Insurance indicated in section 5c of the first page of this Contract. Seller agrees that the portion of the Cash and Trade-In allowance to be allocated to the payment of the premium on the Insurance shall constitute monies to be paid by Seller on behalf of Buyer to pay such premium. Buyer directs that such portion of such cash down payment and allowance be used by Seller to promptly pay on behalf of Buyer the premium on the Insurance. Buyer acknowledges that (i) Buyer has the option of furnishing the insurance required by this Section 8 through an agent or insurer of Buyer's choice and (ii) Seller merely informed Buyer of an insurance agent which dealt with insurance of the type required by this Contract and aided Buyer in completing the application form for the Insurance. Buyer agrees that Seller may from time to time communicate directly with the Agency and the insurer with respect to the Insurance. As additional security for the payment of the indebtedness owing by Buyer under this Contract, Buyer hereby grants to Seller a first priority security interest in the Insurance and all rights of Buyer with respect to the Insurance (including, without limitation, the right to cancel the Insurance and all rights to Buyer relating to unearned premiums and dividends which may be payable on or in respect of the Insurance).

Buyer represents, warrants and agrees that it has not heretofore assigned or transferred and will not assign or transfer any or all of its interest in the Insurance, except in favor of Seller. In addition to any and all other rights and remedies available to Seller under this Contract, applicable law or otherwise, upon and after the occurrence of an event of default under this Contract, Buyer agrees that Seller may cancel the Insurance and receive on behalf of Buyer the unearned insurance premium and dividends thereon. Such unearned insurance premium and dividends shall be applied by Seller to the payment of the amounts owing by Buyer to Seller under this Contract (and Buyer so directs that Seller make such application). Buyer hereby constitutes and appoints Seller as Buyer's attorney-in-fact with full authority upon and after the occurrence of an event of default under this Contract to cancel the Insurance, to receive (and give receipt for) monies payable with respect to the Insurance as a result of such cancellation and to endorse Buyer's name on any check, draft, or other form of payment for all monies that may become due from the insurer with respect to any such cancellation.

The foregoing power of attorney, being coupled with an interest, is irrevocable until all obligations of Buyer under this Contract have been paid in full. Buyer hereby releases Seller of any liabilities, claims, demands, obligations, costs and expenses now or hereafter incurred by Buyer in any way relating to the Insurance, except for the failure of Seller to make the payment on the insurance premium with respect to the Insurance as provided above and except for the gross negligence or willful misconduct of Seller. Seller assumes no liability as an insurer. Buyer acknowledges and agrees that the insurer and the Agency may conclusively rely on the agreements made by the Buyer in this Contract (including, without limitation, the direction of Buyer for Seller to pay on behalf of Buyer all or a portion of the insurance premium on the Insurance, the right of Seller to communicate from time to time directly with the Agency and insurer and the power of attorney herein provided in favor of Seller in order to cancel the Insurance) and shall have no liability to Buyer for relying on this Contract (including, without limitation, with respect to such power of attorney). Buyer acknowledges that neither the insurer nor the Agency shall be required to determine whether an event of default exists under this Contract in order to honor such power of attorney and the insurer and the Agency may conclusively rely on any statement given by Seller with respect to any such cancellation.

**9. Miscellaneous:**

Buyer waives all exemptions. Seller may correct patent errors herein and fill in such blanks as serial numbers, date of first payment and the like. Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. Buyer acknowledges receipt of a true copy and waives acceptance hereof. "Buyer" and "Seller" as used in this contract also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors or assigns to those parties. If more than one Buyer executes this contract, their obligations under this contract shall be joint and several. Buyer acknowledges and agrees that the original contract shall not be returned to Buyer upon payment in full of all amounts owing under this contract, except as required by applicable law or as agreed to by Seller in its discretion.

## CONTINUING GUARANTY

**KOMATSU
FINANCIAL**

**TO:KOMATSU FINANCIAL LIMITED PARTNERSHIP**

For value received, and in consideration of credit and financial accommodations extended, to be extended or continued to or for the account of the Debtor (as hereinafter defined), the Undersigned hereby absolutely and unconditionally agrees to and does hereby guaranty the prompt and punctual payment and satisfaction of any and all indebtedness and other obligations for which ALL PAVING, INC. of 8919 NW 20th ManorState of FL ("Debtor") is or may hereafter become indebted or liable to Komatsu Financial Limited Partnership ("KF"), whether such indebtedness and other obligations are direct or indirect,absolute or contingent, liquidated or unliquidated, due or to become due, secured or unsecured, by way of assignment or now existing or hereafter arising. Such indebtedness and other obligations are hereinafter individually and collectively referred to as the "Obligations". This Guaranty is a continuing guaranty of payment.

This Guaranty may be revoked by the Undersigned at any time by giving KF ten (10) days prior written notice of such intention to revoke, provided that such revocation shall not in any way affect the Undersigned's obligations or liabilities or KF's rights or remedies under this Guaranty, or any other terms or conditions herein, as to any of the Indebtedness created or incurred before the effective date of such revocation. If this Guaranty is executed by more than one (1) person or entity, such revocation will only be effective as to the person or entity from whom it is received.

The Undersigned waives (i) notice of the acceptance of this Guaranty by KF; (ii) all notices of the Obligations which is now existing or which may hereafter exist; (iii) all presentments and demands for performance or payment, notices of default, protests and notices of protest, notices of dishonor, notices of intent to accelerate and acceleration and any other notices or other formalities of any kind whatsoever with respect to the Obligations; (iv) any obligation (should any exist) of KF to provide the Undersigned during the existence of this Guaranty with financial or any other information pertaining to Debtor or any other person or entity, including, without limitation, any change in the business structure of Debtor; and (v) any lack of diligence or errors or omissions in the collection, administration or realization of the Obligations or collateral directly or indirectly securing the Obligations (except willful errors or omissions).

KF may, at its sole option and discretion, at any time and from time-to-time, without the consent of or notice to the Undersigned, and without impairing, releasing or otherwise affecting the obligations of the Undersigned herein, modify, supplement, amend, terminate, alter, renew, compromise, extend, accelerate, exchange or otherwise change the time of performance or any of the other terms of any of the Obligations, take or accept any other security or guaranty for any of the Obligations, discharge, substitute, release or otherwise deal with in any manner and order any party who is or may be liable to KF for any of the Obligations, including, without limitation, any one or more of the Undersigned, or sell, exchange, substitute, release, surrender, waive, realize upon or otherwise deal with in any manner and in any order any collateral directly or indirectly securing any of the Obligations, or impair any of such collateral, including, without limitation, failing to perfect a security interest in such collateral.

Prior to KF's exercise of any right arising under this Guaranty, KF shall not be required to (i) attempt to collect or satisfy any of the Obligations from Debtor or from any other guarantor, surety or third party, whether through the filing of a suit or otherwise, (ii) attempt to exercise any rights or proceed against any security for any of the Obligations or any security for the performance of this Guaranty, whether through the filing of an appropriate foreclosure action or otherwise, (iii) include Debtor or any other party as an additional defendant in any action against the Undersigned or (iv) pursue any other remedy in KF's power whatsoever; and, with respect to all of the foregoing, the Undersigned hereby waives any law, rule, regulation or other requirement to the contrary. Any failure or cessation of liability of Debtor to KF with respect to any of the Obligations for any reason other than full payment or any impairment or suspension of KF's remedies or rights against Debtor to collect any of the Obligations (whether by reason of defense, set-off or counter-claim of Debtor, the lack of validity or enforceability of any of the Obligations or any agreement or instrument relating thereto or otherwise), shall not in any manner affect the liability of the Undersigned hereunder and the Undersigned hereby waives any right to assert against KF in any manner whatsoever any such failure, cessation, impairment or suspension.

The Undersigned hereby irrevocably waives all rights it has or may have under any agreement or at law or in equity (including, without limitation, any subrogation rights against Debtor with respect to the Obligations) to claim or seek contribution, indemnification, or any other form of reimbursement from Debtor or any other guarantor or other person now or hereafter primarily or secondarily liable for any of the Obligations, for any disbursement made or obligation incurred by the Undersigned under or in connection with this Guaranty or otherwise. The Undersigned also waives any rights of recourse to or with respect to any asset of Debtor.

The Undersigned's obligations and liabilities under this Guaranty shall not be affected by the following events and this Guaranty shall continue in full force and effect, notwithstanding the occurrence of such events: the liquidation or dissolution of Debtor, any sale, lease or transfer of all or substantially all of Debtor's assets, any insolvency of Debtor, any act of bankruptcy by Debtor or any bankruptcy, reorganization, debt arrangement or any other proceeding instituted by, against or on behalf of Debtor under any bankruptcy, or insolvency or similar law, the execution by Debtor of an assignment for the benefit of creditors, or the discharge in any bankruptcy or similar proceedings of Debtor or any of the Obligations.

KF560R

Page 1 of 3

IN WITNESS WHEREOF, the Undersigned have executed this Guaranty as of this 03rd day of November 2015.

**Post Office Address of Guarantor**

8919 NW 20TH MNR
CORAL SPRINGS, FL 33071
Tax ID or SSN of Guarantor: 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

**Signature of Guarantor:**

DALY, ELIZABETH

**Post Office Address of Witness**

**Post Office Address of Guarantor**

8919 20TH MNR
CORAL SPRINGS, FL 33071
Tax ID or SSN of Guarantor: 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

**Signature of Guarantor:**

DALY, PATRICK

**Post Office Address of Witness**

900 NE 14th St. Apt 8
Ft. Lauderdale, FL 33504

KF500R

This Guaranty shall continue to be effective and/or shall be automatically and retroactively reinstated with respect to any of the Obligations on which a payment has been received and later is rescinded or must be restored or returned pursuant to any insolvency, bankruptcy, reorganization, receivership, or any other debtor relief granted to Debtor or any other party liable for any of the Obligations or upon or as a result of the appointment of a custodian, receiver, intervenor, conservator, trustee or similar officer for Debtor or such other party or any of the property of Debtor or such other party, or otherwise, all as though such payment shall not have been made.

The Undersigned warrants to KF that the Undersigned is and shall at all times during the existence of this Guaranty be fully informed of the financial and other conditions of Debtor, any other person or entity primarily or secondarily liable with respect to the Obligations and any collateral or other assets directly or indirectly securing the Obligations.

KF may, without notice to or the consent of the Undersigned, sell, assign or transfer all or any part of the Obligations (and any collateral securing such Obligations), and in such event, each and every immediate and successive purchaser, assignee or transferee of all or any part of the Obligations shall have the right to enforce this Guaranty, by suit or otherwise, for the benefit of such purchaser, assignee or transferee with respect to such portion of the Obligations, as fully as though such purchaser, assignee or transferee were herein by name given all rights, powers and benefits with respect to such portion, provided that KF shall have the unimpaired right, prior and superior to that of any such purchaser, assignee or transferee, to enforce this Guaranty for KF's benefit as to the portion of the Obligations that has not been sold, assigned or transferred.

This Guaranty shall be effective and shall be deemed to be unconditionally delivered to and accepted by KF upon its execution by the Undersigned. The execution of this Guaranty by the Undersigned shall make liability absolute and unqualified and such liability shall not be subject to any condition precedent. Notwithstanding such execution, KF has no obligation to extend any credit, now or hereafter, to Debtor.

This Guaranty shall be binding on the Undersigned, jointly and severally, and upon their respective heirs, legatees, devises, legal representatives, successors and assigns. References herein to the singular are references to the plural and vice versa, unless the context clearly requires otherwise. In any event, if this Guaranty is executed by more than one (1) person or entity, references herein to the "Undersigned" are references to all of such persons and entities and their liability shall be joint and several.

The rights and remedies granted to KF under this Guaranty shall inure to the benefit of KF's successors and assigns, as well as to any and all subsequent holders of any of the Obligations subject to this Guaranty. This Guaranty shall be governed and construed in accordance with the laws of the State of Illinois. If any provision of this Guaranty is determined to be void, invalid or unenforceable by a court or other body of competent jurisdiction and last resort, such determination shall not affect the remainder of this Guaranty, which shall remain in full force and effect. No amendment, modification, consent or waiver of any provision of this Guaranty shall be effective unless the same shall be in writing and signed by a duly authorized representative of KF, and then shall be effective only as to the specific instance and for the specific purpose for which given.

The Undersigned agrees to pay reasonable attorneys' fees and all costs incurred in attempting to collect or in collecting any sums owed by the Undersigned as a result of or in connection with this Guaranty.

This Guaranty is the complete and exclusive statement of the entire agreement of the Undersigned with respect to the subject matter herein and supersedes all prior agreements or understandings with respect to such subject matter. No course of dealing, course of performance or trade usage, and no parol evidence of any nature shall be used to supplement or modify the terms herein. In executing this Guaranty, the Undersigned are not relying upon any thing or matter not set forth herein.

KF560R

## KOMATSU FINANCIAL

### AUTHORIZATION AGREEMENT FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP AUTOPAY

The undersigned hereby authorize(s) KOMATSU FINANCIAL LIMITED PARTNERSHIP to draw monthly checks or prepare or initiate debits, by paper or electronic entry, covering payments due by the undersigned to KOMATSU FINANCIAL LIMITED PARTNERSHIP for contract/lease monthly installments per the payment schedule on the contract covering the financing of a

| Takeuchi | TB175 | 175301457 |
|----------|-------|-----------|
| Make | Model | Serial Number |

due on the 3rd day of each month.

I (we) hereby authorize and request KOMATSU FINANCIAL LIMITED PARTNERSHIP to initiate electronic debit entries or effect a charge by any other commercially accepted practice to my (our) account indicated below in the financial institution named below (BANK), and I (we) authorize and request BANK to honor the debit entries initiated by KOMATSU FINANCIAL LIMITED PARTNERSHIP and debit the same to such account. BANK'S treatment of each debit shall be the same as if the undersigned has personally directed BANK to pay as indicated and to charge the amount specific to the account of the undersigned. The authority pertains to my (our) KOMATSU FINANCIAL LIMITED PARTNERSHIP account number and the schedule of payments described in the related contract. This authority is to remain in force and effect until the schedule of payments is complete or until KOMATSU FINANCIAL LIMITED PARTNERSHIP and BANK have received written notification from me (or either of us) of its termination in such time and such manner as to afford KOMATSU FINANCIAL LIMITED PARTNERSHIP and BANK a reasonable opportunity to act on it. If a payment is due on a weekend or holiday, KOMATSU FINANCIAL LIMITED PARTNERSHIP will create or initiate a debit entry on the next business day.

**PLEASE COMPLETE THIS FORM THOROUGHLY.**
Return the signed agreement to Komatsu Financial with a sample check, marked VOID, from the account to be debited or your check from the account to be debited covering the next payment.

**MAIL TO:** Komatsu Financial, P.O. Box 5050, Rolling Meadows, IL 60008. You will receive an acknowledgement when your authorization has been processed. Thank you.

| 1. Todays Date 11/03/2015 | 7. Account Holder (primary) Elizabeth Daly |
|---|---|
| 2. Customer Name ALL PAVING, INC. | 8. Signature Elizabeth Daly |
| 3. Bank Account Number | 9. Title Treasurer Owner |
| 4. Bank Name BB&T | 10. Additional Account Holder Name (if applicable) |
| 5. Bank Branch | 11. Signature |
| 6. Bank Address 1999 N. University Dr; Coral Springs FL | 12. Title |

(FOR KOMATSU FINANCIAL USE ONLY)

1701 W. GOLF ROAD - SUITE 300 • P.O. BOX 5050 • ROLLING MEADOWS, IL 60008
Phone - (847) 437-3330 or (888) 500-6001
Fax - (847) 437-3699

KF558R

Page 1 of 1

**KOMATSU
FINANCIAL**

**SELLER'S ASSIGNMENT**

TO:   KOMATSU FINANCIAL LIMITED PARTNERSHIP
Re:   Security Agreement/Contract between ALL PAVING, INC. ("Buyer") and undersigned ("Assignor"),
      dated 11/03/2015 having a present unpaid balance of $52,532.16 covering TB175S/N
      175301457 (hereinafter referred to as "Agreement").

For value received Assignor hereby sells and assigns to Komatsu Financial Limited Partnership, its successors and assigns ("Assignee"), the Agreement, together with all of Assignor's right, title and interest in the property covered by and described in the Agreement ("Property"), and all of Assignor's rights and remedies thereunder and under any guaranty or endorsement thereof, including the right to collect any and all installments due and to become due on the Agreement and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take.

Assignor agrees that Assignee may audit its books and records relating to all paper assigned to Assignee and may in Assignor's name endorse all accompanying notes and all remittances received, and Assignor gives express permission to Assignee to release, on terms satisfactory to Assignee, by operation of law or otherwise, or to compromise or adjust any and all rights against and grant extensions of time of payment to the Buyer or any other persons obligated on the Agreement or on any accompanying note or guaranty, without notice to Assignor and without affecting Assignor's liability hereunder. Assignor waives presentment and demand for payment, protest and notice of non-payment and protest as to all paper heretofore, now or hereafter endorsed or assigned to Assignee and Assignor subordinates to any rights Assignee may now or hereafter have against the Buyer any rights Assignor may now or hereafter have.

Assignor shall have no authority to and, will not, without Assignee's prior written consent, accept collections, repossess or consent to the return of the Property described in the Agreement or modify the terms of the agreement or of any accompanying note or guaranty. Assignee's knowledge at any time of any breach of or noncompliance with any of the foregoing shall not constitute any waiver by Assignee. Assignor waives notice of acceptance hereof.

As part of the foregoing instrument, the Assignor's obligations in addition to those stated in the preceding paragraphs are governed by paragraph 1, 2, 3 or 4 as indicated by the box marked X below.

**X**   **1. WITHOUT RECOURSE**
      Assignor further agrees to assign the Agreement without recourse as to the financial ability of the Buyer to pay.

      **2. WITH RECOURSE**
      Subject to the terms and provisions of any applicable underlying agreement between Assignor and Assignee, Assignor further agrees to guaranty the payment promptly when due of the amount of each and every installment payable under the Agreement and the payment on demand of the entire unpaid balance at the date of default in the event of any default by Buyer under the Agreement, without first requiring Assignee to proceed against Buyer or any other person or any security.

      **3. LIMITED REPURCHASE AGREEMENT**
      Assignor further agrees that if the Buyer fails to pay the first installments of his obligation within 15 days of scheduled maturity as set forth in the Agreement hereby assigned and if any of said installments are not paid within the 15 days and Assignee repossesses the Property described in said Agreement, Assignor will purchase from Assignee the Property for the then unpaid balance in its then condition and location.

      **4. PARTIAL REPURCHASE AGREEMENT**
      Assignor further agrees that if Assignee repossesses the Property described in said Agreement the undersigned upon demand will pay to Assignee NaN or purchase the Property from Assignee for the then unpaid balance in its then condition and location.

                              H & E EQUIPMENT SERVICES, INC.
                              _____
                                        (Assignor)

                    By: _____

11/03/2015                    _____
(executed)

                              Blake Dupuy
                              Director of Retail Finance

The above assignment is made subject to the terms and conditions of the financing agreement presently in effect between Assignor and the Assignee, which specifically sets forth all of the rights and obligations of the Assignor and the Assignee with respect to retail contracts, and incorporates without limitation, the representations and warranties made by Assignor to Assignee with respect to retail contracts, any accompanying notes, guaranty or other documents relating thereto. Assignor represents to Assignee that (i) the present unpaid balance under the Agreement is correct and (ii) Assignor will comply with all its obligations under the Agreement.

KF521R                                                                      Page 1 of 1

Plaintiffs' Exhibit 118

All Paving, Inc. et al. v. Daren C. Daly et al.

Case No. 17-014794 (03)

**From:** Daren Daly [mailto:daren@allpaving.com]
**Sent:** Wednesday, June 22, 2016 10:59 AM
**To:** 'Irvin Jock'
**Subject:** RE: Contact Info and Job Info

Attached documents

**From:** Irvin Jock [mailto:JIrvin@titanamerica.com]
**Sent:** Wednesday, June 22, 2016 10:34 AM
**To:** Daren Daly <daren@allpaving.com>
**Subject:** RE: Contact Info and Job Info

That works…

**Titan Florida, LLC**
John E. Irvin Jr., CCSP
Concrete Products Sales Representative
South Coast Florida
Telephone: 561.718.3172
jirvin@titanamerica.com



**From:** Daren Daly [mailto:daren@allpaving.com]
**Sent:** Wednesday, June 22, 2016 10:31 AM
**To:** Irvin Jock <JIrvin@titanamerica.com>
**Subject:** RE: Contact Info and Job Info

Jock,

We don't haven't gotten our audited financials for this year or taxes done yet.

I can send you larger references that we buy a few hundred thousand dollars of materials each month like Ranger.

Daren

**From:** Irvin Jock [mailto:JIrvin@titanamerica.com]
**Sent:** Wednesday, June 22, 2016 9:38 AM
**To:** Daren Daly <daren@allpaving.com>
**Subject:** RE: Contact Info and Job Info

Working on it, find attached our credit application…



1

**Titan Florida, LLC**
John E. Irvin Jr., CCSP
Concrete Products Sales Representative
South Coast Florida
Telephone: 561.718.3172
jirvin@titanamerica.com



**From:** Daren Daly [mailto:daren@allpaving.com]
**Sent:** Wednesday, June 22, 2016 8:33 AM
**To:** Irvin Jock <JIrvin@titanamerica.com>
**Subject:** Contact Info and Job Info

Jock,

Please send me over the paperwork when you have a chance.

We are looking for 6 yards of 3000 psi curb mix.  For a project between 11 and 12 today.   Job location is 21700 Boca Falls Drive, Boca Raton, FL 33428.

Can you let me know if you could get a truck there.

Daren

2



**Daren Daly**
**Chief Operating Officer**

AllPaving.com
Corporate Office:
6700 NW 20th Avenue, Suite C
Fort Lauderdale, Florida 33309
Toll Free: 1-855-735-ROAD
Daren@AllPaving.com



Confidentiality Notice: This message including files attached to it, may contain confidential information that is intended only for use of the Addressee(s) names above. If you are not an intended recipient any dissemination or copying of the information contained in this message or the taking of any action in reliance upon the information is strictly prohibited. If you have received this message in error, please notify the sender immediately by return Email or by phone and delete the original transmission and any attachments without reading or saving in any manner. Thank you.

Confidentiality Notice: This message including files attached to it, may contain confidential information that is intended only for use of the Addressee(s) names above. If you are not an intended recipient any dissemination or copying of the information contained in this message or the taking of any action in reliance upon the information is strictly prohibited. If you have received this message in error, please notify the sender immediately by return Email or by phone and delete the original transmission and any attachments without reading or saving in any manner. Thank you.



**TITAN**
**AMERICA**

Titan Florida, LLC
455 Fairway Drive, Suite 200
Deerfield Beach, FL 33441
(954) 481-2800 or Fax (954) 421-0296

## APPLICATION FOR BUSINESS CREDIT AND AGREEMENT
(ORIGINAL DOCUMENT MUST BE MAILED — FAXED COPIES MAY WARRANT DENIAL OF CREDIT)

**Section I**   Date: 6/22/2016                    | Your Sales Representative, if Known:   Jock Irvin

**Note: Failure to sign or fill out the application completely will cause delays.**

Legal business name (Applicant)
**All Paving**

Business street address (No P.O. Boxes please)
6700 NW 20th Ave  Suite C

Business mailing address
P.O. Box 669105  Pompano Beach, FL 33066

| City | State | Zip | Years in business |
|---|---|---|---|
| Fort Lauderdale , FL | FL | 33309 | 5 |

| Phone | Mobile Phone | Fax No. | Contact email address |
|---|---|---|---|
| ( 954 )  933-2053 | ( | ( 954 )  933-1380 | Elizabeth@allpaving.com |

Check one   ☐ Individual   ☐ Partnership (State of organization) _____   ☒ Corporation (State of organization) __Florida__

| Purchase Orders Required? | Are you tax-exempt? | If YES, Attach Tax Exemption Certificate Card | Federal ID No. |
|---|---|---|---|
| ☒ Yes  ☐ No | ☐ Yes  ☒ No | | 9853564094 |

| Principal Bank | Branch | Phone No. | Account No. |
|---|---|---|---|
| Bank United | Coral Springs | ( 954-757-0729 | 9853564094 |

Attach a current, audited financial statement. If self-employed 3 years or less include 2 years of Federal Income Tax 1040 Forms.

### Section II — Owners or Officers

| Name | Title | Social Security No. |
|---|---|---|
| Elizabeth Daly | Owner/ Tresurer | |

Home address (No P.O. Boxes)
8919 NW 20th Manor  Coral Springs, FL

| No. of Years | Home phone |
|---|---|
| 5 | ( 954,755-5946 |

| Name | Title | Social Security No. |
|---|---|---|
| | | |

Home address (No P.O. Boxes) | No. of Years | Home phone
| | ( )

### Section III

**Trade references: Please provide at least four building material references covering the number of years stated in business.**

| Name | City, State | Phone No. | Fax No. |
|---|---|---|---|
| Ranger Construction | West Palm Beach, FL | 561-784-3489 | 561-753-1650 |
| Bob's Barricades | West Palm Beach, FL | 954-525-6736 | 954-473-8737 |
| Barreiro Concrete | Miami, FL | 305-258-7004 | 305-258-1030 |
| | | ( ) | ( ) |

1. Have you or any officers of this company ever done business under another name or in a different store? If so, name and address   ☐ Yes   ☒ No
2. Have you or any officers of this company ever filed personal or corporate bankruptcy in the last 7 years? If so, when and where?   ☐ Yes   ☒ No
3. Have you or any of the officers of the company ever done business with Titan before? When and under what name?   ☐ Yes   ☒ No

The person(s) signing below (must be Owner or Officer) warrants and represents that he/she has the authority to enter into this Agreement on behalf of the Applicant has read and hereby agrees that the Agreement is subject to the terms and conditions listed on the reverse side, including the personal guaranty, which are incorporated, and an integral part of this Agreement. The signature(s) below constitute the acknowledgment of receipt of the terms and conditions, and that Applicant is bound to same even if such is not returned to Titan with the signed Agreement. **Applicant agrees that a facsimile or electronic copy of the signature below shall have the same legal effect as an original signature.**

| Applicants Signature (1) | Applicants Signature (2) |
|---|---|
| | |
| Title   Owner | Title |
| Printed Name of signer   Elizabeth Daly | Printed Name of signer |
| Date of signature   6/22/2016 | Date of signature |

## AGREEMENT

**TERMS AND CONDITIONS**

1. **BINDING AGREEMENT –** The Agreement shall be between Applicant and Titan Florida LLC, which includes ALL subsidiary and affiliated corporations, companies, partnerships, and joint ventures (hereinafter Titan). In the event of litigation, suit will be brought against Applicant by the Titan entity from which purchases were made. This Agreement shall inure to the benefit of the successors and assigns of Titan, and shall be binding upon Applicant's heirs, legatees, devisees, personal representatives, successors and assigns. As used herein, the term "Applicant" shall include the guarantors, such that the person(s) signing on the face hereof agrees to personally see payment of the debt as provided in paragraph 11 below, and all other terms and conditions contained herein.

2. **AUTHORIZATION FOR CREDIT REVIEW –** Applicant hereby authorizes Titan to obtain any and all information it deems necessary from any and all sources or references listed on this Credit Application, and from any other credit bureaus, creditors of Applicant, trade references, banks or other financial institutions to supply Titan such information as Titan deems necessary to assist it in its consideration of the Credit Application.

3. **PAYMENT TERMS –** If this Credit Application is accepted by Titan, Applicant agrees to pay in full the invoice price of all purchases now or hereafter made from Titan promptly when due according to the terms set forth on each invoice. If the total invoice price is not paid in full on or before the due date, Applicant agrees to pay a late payment charge on the unpaid balance, including amounts post judgment, which will prevail over the statutory rate, calculated at the rate of the lesser of: (a) one and one-half percent (1½%) per month, or (b) the highest rate allowed by law. If Applicant should fail to fulfill any of its obligation under this Agreement, or if Titan, in good faith deems itself insecure because the prospect of payment is impaired, or the prospect of performance of any provision of the Agreement is impaired, or if a default occurs for any other reason provided in this Agreement then Titan, at its option and without notice, may declare the entire unpaid balance owed by Applicant to be immediately due and payable, or terminate the credit privileges of Applicant under this Agreement, including refusing to sell further materials to Applicant unless the unpaid balance is paid in full or both. Should it become necessary to place this account for collection, suit or other legal proceedings, Applicant agrees to pay all costs and expenses of collection suit or other legal action, including reasonable attorney fees, and if necessary appellate attorney fees. Applicant hereby waives any and all privileges and rights Applicant may have under Chapter 47, Florida Statutes relating to venue, as they now exist or may hereafter be amended and waive the right to trial by jury, and further, Applicant agrees that any legal action brought for collection of past-due accounts and/or action arising from this Agreement, may be brought in the court of competent jurisdiction in Broward County, Palm Beach County, Sarasota County, Hillsborough County or Orange County, Florida. The choice of venue in the five counties shall be in the sole discretion of Titan.

4. **DEFAULT –** The occurrence of any of the following events shall constitute a default under this Agreement: (a) Applicant fails to fulfill any obligation of this Agreement or to perform the breach of, any warranty, agreement, or other undertaking by Applicant; (b) Applicant or any guarantor of Applicant's indebtedness under this Agreement, dies, terminates existence, abandons its business, becomes insolvent, bankrupt, becomes the subject of bankruptcy, receivership, insolvency, or similar proceedings, or makes an assignment for the benefit of creditors; (c) Any information or other representation now or hereafter made or furnished to Titan by Applicant's request or instruction is, or is believed in good faith by Titan to be inaccurate, incomplete, or false in any material respect; (d) Applicant violates or breaches any provision of this Agreement; (e) Any collateral that is security for Applicant's indebtedness under this Agreement is lost, damaged or destroyed, is levied upon or becomes subject to a receivership, or cannot be located within five days after demand by Titan to inspect the same; (f) Any other event which causes Titan, in good faith, to deem itself insecure or to believe that the prospect of performance of any provision of the Agreement by Applicant is impaired.

5. **WAIVER –** Titan may, at its option, permit Applicant to remedy any default under this Agreement without waiving the default so remedied or any other subsequent or prior default by Applicant. Applicant waives notice of default of this Agreement and waives presentment, demand, protest, and notice of dishonor as to this Agreement or any other instrument.

6. **ACCURACY OF INFORMATION –** Applicant certifies that any and all information now or hereafter supplied to Titan by Applicant, or at Applicant's request or instruction, is both accurate and complete, and Applicant will, upon request, establish the accuracy and completeness of any such information. Applicant shall promptly notify Titan of any change in such information supplied, and of any change in Applicant's residence, primary place of business or mailing address. Applicant shall promptly notify Titan by certified mail if he/she should incorporate Applicant's business at any time subsequent to the date of this application.

7. **PROVISION OF INFORMATION –** Applicant is required to provide Titan, upon request, information regarding bonding companies, general contractors, or owners, for the purpose of serving preliminary notices, claims on payment bonds, or construction liens pursuant to Chapter 713, Florida Statutes.

8. **CORPORATE AUTHORITY AND LIABILITY –** Applicant warrants and represents that it has authority to enter into this Agreement and that any person signing this Agreement has been duly authorized to execute this Agreement for and on behalf of Applicant. If Applicant is not yet a legally organized corporation, or limited liability company, Applicant acknowledges that Titan is relying upon the creditworthiness and financial ability of the owner or owners of the Applicant to discharge any and all obligations of Applicant to Titan. If Applicant, subsequent to this Application, incorporates its business, or contributes it to any other limited liability entity, the owner or owners and the entity shall be jointly and severally liable to Titan for any and all indebtedness to Titan, whether existing prior to formation or subsequently incurred. Nothing contained herein shall vitiate the personal guaranty provided in paragraph 11 hereof.

9. **ADDITIONAL PROVISIONS –** if, at the request of the Applicant, whether prior to or subsequent to the entry of this Credit Application, Titan enters into a written agreement, purchase order, shipping release or any other agreement with the Applicant to furnish materials to or on behalf of the Applicant, such "Sales Contract", as consideration for Titan extending credit on account to Applicant for such materials furnished, all of the terms and conditions set forth herein shall be deemed to be part of and incorporated by reference into such Sales Contract and, if there is a conflict with terms and/or provisions of Sales Contract the terms contained within this Credit Application shall prevail, control and be determinative. No terms or conditions which conflict with those stated herein, whether or not contained within a Sales Contract and no written or oral agreement that purport to vary these terms and conditions shall be binding upon Titan unless hereafter set forth in a writing signed by Titan's Director of Credit. The rights and remedies of Titan stated in this Agreement are cumulative and are in addition to any other rights or remedies provided by law.

10. **PRODUCT CLAIMS – THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE HEREOF. ALL OTHER WARRANTIES ARE EXCLUDED, WHETHER EXPRESSED OR IMPLIED BY OPERATION OF LAW OR OTHERWISE, INCLUDING ALL IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. TITAN SHALL NOT BE LIABLE (DIRECTLY OR INDIRECTLY) UNDER ANY CIRCUMSTANCES FOR CONSEQUENTIAL, INCIDENTAL, SPECIAL OR ANY OTHER TYPE OF DAMAGES ARISING OR RESULTING FROM A BREACH OF WARRANTY, OR BREACH OF CONTRACT OR ANY OTHER CLAIMS RELATING TO THE SALE, HANDLING, OR USE OF THE GOODS SOLD. TITAN'S LIABILITY HEREUNDER, AND APPLICANT'S AND/OR GUARANTOR'S SOLE AND EXCLUSIVE REMEDY HEREUNDER, EITHER FOR BREACH OF WARRANTY, BREACH OF CONTRACT, FOR NEGLIGENCE, OR FOR ANY OTHER CLAIM, IS EXPRESSLY LIMITED TO THE GIVING OF CREDIT FOR REPLACEMENT MATERIALS ONLY TO THE EXTENT OF THE PURCHASE PRICE FOR THE MATERIALS. TITAN MUST BE GIVEN WRITTEN NOTICE, IDENTIFYING THE DEFECTIVE GOODS AND SPECIFYING THE DEFECT WITHIN TEN (10) DAYS AFTER RECEIPT OF THE GOODS BY BUYER. TITAN MUST ALSO BE GIVEN THE OPPORTUNITY TO INSPECT THE ALLEGEDLY DEFECTIVE GOODS, AND IF REQUESTED BY TITAN, THE ALLEGEDLY DEFECTIVE GOODS MUST BE RETURNED TO TITAN. FAILURE TO GIVE THE REQUIRED NOTICE WITHIN THE TIME PROVIDED OR FAILURE TO RETURN AN ALLEGEDLY DEFECTIVE GOOD TO TITAN UPON REQUEST CONSTITUTES A WAIVER OF A CLAIM FOR CREDIT OR REPLACEMENT. NO CREDIT FOR GOODS RETURNED BY APPLICANT AND/OR GUARANTOR SHALL BE GIVEN WITHOUT TITAN'S WRITTEN AUTHORIZATION.**

11. **PERSONAL GUARANTY –** In consideration of Titan extending credit for value received, I (we), by signing on the front page hereof, jointly and severally, in an individual capacity, and not as an agent for the Applicant described hereinabove, hereby personally and unconditionally guaranty the payment of any balance that may become due Titan, including all attorney's fees and court costs, elaborated in the terms and conditions hereinabove, and hereby incorporate by reference, all of the above terms and conditions. (I) (We), the undersigned, hereby specifically agree that Titan may initiate a lawsuit against the undersigned in (my) (our) individual capacity, without joining or contemporaneously suing the entity named on the first page hereof described above. This is a continuing guaranty, unless terminated in writing, via certified mail, received at the Regional Office of Titan in Deerfield Beach. It is understood that said termination shall be prospective in effect only, and that this guaranty shall remain in effect with regard to any balances incurred prior to the date of termination. It is also understood that revocation of the guaranty may, in Titan's sole discretion, result in termination of further credit privileges.



**ALL Paving**

9 6700 NW 20th Ave, Suite C | Fort Lauderdale, FL 33309 | 📞 1-855-735-ROAD | Fax: (954) 933 -1380

## Credit References:

**Bob's Barricades, Inc.**        Customer#: ALL104
921 Shotgun Road; Sunrise, FL 33071
Terms:  Net 30
Contact: Brandy Vallee  Tel: 954-423-2627  Ext. 132  Fax: 954-736-1562
Email:  BVallee@BobsBarricades.com

**H&E Equipment, Inc.**        Customer#: 1045675
1021 NW 12th Terrace; Pompano Beach, FL 33069
Terms:  Net 30
Contact: Nestor Campbell  Tel: 954-781-3099  Fax: 954-781-3966
Email:  NoCampbell@HE-Equipment.com

**United Rentals, Inc.**        Customer#: 1304460
1803 NW 9th Avenue;Ft. Lauderdale, FL 33311
Terms:  Net 30
Contact:  Phyllis Sergent  Tel:  888-481-2660 Ext. 1  Fax: 866-362-8413
Email:  PSergent@UR.com

**Ranger Construction Industries, Inc.**      Account#: 47658
PO Box 15065; West Palm Beach, FL 33411
Terms:  Net 30
Contact: Cyndi Steadman  Tel:  561-793-9400  Fax: 561-753-1650
Email:  cynthia.steadman@rangerconstruction.com

Plaintiffs' Exhibit 147
All Paving, Inc. et al. v. Daren C. Daly et al.
Case No. 17-014794 (03)

# Credit Application for Construction Equipment

**WELLS FARGO**

*Wells Fargo Equipment Finance | Construction Group | 2700 S. Price Rd. 3rd Floor | MAC S3928-034 | Chandler, AZ 85286 | Phone: 877-248-7007*

Send completed applications to Chintan Patel by fax to 877-248-6955  or email chintan.patel4@wellsfargo.com

| Dealer/Vendor Name (Equipment Supplier) | | Dealer/Vendor Contact Name | Dealer/Vendor Phone # |
|---|---|---|---|
| Dealer/Vendor Address: | | | Dealer/Vendor Fax # |

| Applicant Legal Name: All Paving Inc. | | Tax ID No. (required) 4275 | Phone # 2053 |
|---|---|---|---|
| Physical Address: 10394 W. Sample Rd. STE 201 Coral Springs, FL  33065 | | | Fax # 1380 |
| Billing Address: P.O. Box 669105 Pompano Beach FL  33066 | | | |
| Email Address lPaving.com | Website www.AllPaving.com | Years in Business: 4 | State of Organization Florida |

| ☐ Corporation | ☒ LLC | ☐ Partnership | ☐ Sole Proprietorship | ☐ Individual | Date of Birth | Country of Citizenship | Non-U.S.: Passport # |
|---|---|---|---|---|---|---|---|

| Year of Management Change: | # of Employees: 15 | Annual Revenue: $  6 Million | Backlog: $  2 Million |
|---|---|---|---|
| Describe the nature of your business Mill and pave, concrete work | | Insurance Company Name FCCI Insurance /WF Roemer Agency | Phone # 5566 |

Will the Equipment be domiciled or travel within 100 miles of Mexico more than 25% of the annual miles?  ☒ No  ☐ Yes

Will the Equipment be used outside of the United States? ☒ No  ☐ Yes
If yes, list all countries and complete Cross Border Activity Questionnaire:

Will payments originate from non-U.S. locations? ☒ No  ☐ Yes
If yes, list the countries from which the payments will originate:

Please list all countries in which the applicant, its affiliates, and subsidiaries conduct activities or have assets located:   USA

| Need for Equipment: ☒ Growth | ☐ Replacement | ☐ Refinance | Approx. Delivery Date: | |
|---|---|---|---|---|
| Equipment Description (Quantity, Year, Make, Model, Serial #, Price): 2017 Weiler/Caterpillar P385 Commercail Paver  $177,000.00 | | | Total Equipment Price: | $ |
| | | | Tax: | $ |
| | | | Less Down/Trade: | $ |
| | | | Doc Fees: | $ |
| *If lease, provide equipment location | | | Finance Amount: | $ |

| Type of Financing Desired (choose one): ☒ Loan  ☐ Lease* ($1.00)  ☐ Lease* (Fair Market Value)  ☐ Other | Lease/Loan Term (months): ☐ 36  ☐ 48  ☐ 60  ☐ 72  ☐ 84  ☐ Other |
|---|---|

| Top Customer Name #1 Ranger Construction | | Location (City, State) West Palm Beach, FL | | % of Annual Sales 10% |
|---|---|---|---|---|
| Top Customer Name #2 Rose Paving | | Location (City, State) Bridgeview, IL | | % of Annual Sales 10% |
| Owner/Guarantor #1 Name Patrick Daly | Cell Phone # 9502 | Email Address Paving.com | Social Security # | % of Ownership 50% |
| Residence Address: 8919 NW 20th Manor Coral Springs FL  33071 | | Country of Citizenship USA | Residence Phone # 9502 | Date of Birth 966 |
| Owner/Guarantor #2 Name Daren Daly | Cell Phone # 8381 | Email Address lPaving.com | Social Security # | % of Ownership 50% |
| Residence Address: 10248 NW 62nd Court Parkland FL  33076 | | Country of Citizenship USA | Residence Phone # 8381 | Date of Birth 1986 |

Has the Applicant, Guarantor(s), or Principal(s) of the Applicant ever been convicted of a Felony? ☒ No  ☐ Yes  If yes, please explain:

Has the Applicant, Guarantor(s), or Principal(s) of the Applicant ever filed for bankruptcy? ☒ No  ☐ Yes
If yes, date filed and please explain:

**Financial References:**

| Bank or Equipment Finance Company Bank United | Account # | Contact Name Brenda Greenberg | Phone # 0729 | Fax # 1302 |
|---|---|---|---|---|
| Bank or Equipment Finance Company Ally Financial | Account # | Contact Name | Phone # 2559 | Fax # |

**Certification.** The undersigned certify to Wells Fargo Equipment Finance, Inc., its parent, and affiliates (collectively, "WFEF") that the information stated in this application is true and correct. The undersigned understand that WFEF will retain this application whether or not it is approved. WFEF and/or entities to whom WFEF refers this application (each a "WFEF Party") are authorized to check the credit and employment history of the undersigned (including criminal background checks), obtain insurance information, and to answer questions about their credit experience with the undersigned. The undersigned authorize each WFEF Party to contact any creditors of the undersigned and authorize any creditor so contacted to release to such WFEF Party such information as such WFEF Party may request. The undersigned further authorize each WFEF Party to share this application and each guarantor's information, including credit bureau reports and credit references, with potential purchasers or assignees of transactions that result from this application. **Notice to Applicants and Guarantors:** To help the government fight the funding of terrorism, narcotics trafficking, trans-national organized crime, and money laundering activities, U.S. Federal law requires financial institutions to obtain, verify, and record information that identifies each person (individuals or businesses) who opens an account. What this means for you: When you open an account or add any additional service, we will ask you for your name, address, and taxpayer identification number that will allow us to identify you. We may also ask to see other identifying documents and information relating to beneficial owners and we may verify compliance by you and other beneficial owners with requirements of U.S. Federal laws.

| Applicant Signature: | | Applicant Signature: | |
|---|---|---|---|
| Print name: Daly | Date: 2/14/2017 | Print name: Patrick Daly | Date: 2/14/2017 |

© 2015 Wells Fargo , N.A. All rights reserved. All transactions subject to credit approval. Some restrictions may apply. Wells Fargo Equipment Finance is the trade for certain equipme  asing and finance businesses of Wells Fargo Bank, N.A. and its subsidiaries. Credit App for Construction Equipment – 07/2016

Exhibit 34

Page 1

1      IN THE CIRCUIT COURT FOR THE 17TH JUDICIAL CIRCUIT
              IN AND FOR BROWARD COUNTY, FLORIDA

2
                CASE NO.  CACE 17-014794 (03)

3

4    ALL PAVING, INC., a Florida corporation;
     ALL PAVING & SEALCOATING, LLC, a Florida

5    limited liability company; PATRICK
     DALY and ELIZABETH DALY,

6
         Plaintiffs,

7
     vs.

8
     DAREN C. DALY and JAMIE A. SCHINDLER,

9
             Defendants.

10   _____/

11

12

13
                          Zoom Meeting

14                        Wednesday, 9:30 a.m.-3:10 p.m.
                          September 16, 2020

15

16

17                 TRANSCRIPT OF TRIAL, DAY 3

18

19      Heard before the Honorable Nicholas R. Lopane

20      on behalf of the Plaintiffs; taken by Lisa

21      Gerlach, Court Reporter, Notary Public in and

22      for the State of Florida at Large, pursuant

23      to Notice of Hearing in the above cause.

24

25

Page 2

1       Appearances by Zoom:
2       Counsel for the Plaintiffs:
3       BRUCE A. GOODMAN, ESQUIRE
        Bruce A. Goodman, PA
4       5531 North University Drive
        Suite 101
5       Coral Springs, FL 33067
        954-919-6000
6       bruce@bgoodmanlaw.com
7
        Counsel for the Defendant:
8
        JOHN P. KELLY, ESQUIRE
9       Soto Law Group
        2400 East Commercial Boulevard
10      Suite 400
        Fort Lauderdale, FL 33308-4026
11      954-567-1776
        john@sotolawgroup.com
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 160

1    not have ended up there.  I did say that, yes.

2        Q.  Well, that help capitalized All Paving, Inc.;

3    didn't it?

4        A.  No.  The difference of those amounts was not

5    that significant.  That's not what capitalized All

6    Paving, Inc.  All Paving, Inc. went out and performed

7    projects and got deposits from customers on new

8    projects and gradually and organically built.

9            And Patrick and Elizabeth are completely

10   separate from All Paving & Sealcoating.

11       Q.  And you acknowledge that All Paving &

12   Sealcoating paid the initial and incorporation fee and

13   annual report fees for All Paving, Inc. from 2013 to

14   2016, as we saw from Elizabeth Daly's LLC credit card

15   statements; correct?

16       A.  You did inform me and show me a link where

17   LLC's credit card got charged.  I don't know how that

18   happened.  I can't explain how that one got charged on

19   there.  That was a credit card that was in the office.

20       Q.  Elizabeth Daly, while she, for a period of

21   time, had other employment, you admit that she came in

22   on Fridays to the office and performed bookkeeping

23   services and handled the Quickbooks; correct?

24       A.  She very rarely came in -- very rarely.

25   Maybe once a month.  Most of her activity was in

Page 161

1  regards to following up on credit cards for All Paving

2  & Sealcoating because some of those credit cards were

3  in her name.

4          All Paving, Inc. had somebody working for

5  them that did the bookkeeping and All Paving &

6  Sealcoating had an employee doing bookkeeping.  I

7  don't know what you're saying that Elizabeth was

8  doing.

9      Q.  On cross-examination, you testified to your

10  mom cosigning on certain purchases of equipment

11  purchased by All Paving, Inc., including guaranties.

12          Are you including your forgeries of her

13  signatures in your assertion that she cosigned?

14      A.  I don't even -- say that one more time.

15      Q.  You admitted to several forgeries of her

16  signature on loan documents; correct?

17      A.  Yes.  Several loan documents, she didn't

18  actually sign.

19      Q.  You signed her name to those loan documents;

20  right?

21      A.  I admitted that earlier.  I signed her name

22  on several of the documents.

23      Q.  When you testified during cross-examination

24  that, oh, she just cosigned for certain equipment,

25  that she's not really the owner, are you including

Page 172

1   it shows the cash money.  And I brought in this

2   statement showing Keith's credit card amount.  Okay?

3           Number two, every single one of these checks,

4   not one -- not one of your made-up chart references

5   the domain name.  You're just trying to accumulate any

6   checks and say, oh, it had to be towards the domain

7   name, when all these purchases down below, your

8   records even show they're for items not even related

9   to the domain name.  You're trying to mix apples and

10  oranges like you do every time.

11      Q.  Last two questions.  This references your

12  check number 1044, dated February 20, 2014, to George

13  Day, Promo Sample, in the amount of $2,500, that

14  reflects a domain name purchase.

15          That's the second page of Exhibit 25; right?

16      A.  Correct.

17      Q.  Okay.  And if we go to the next page --

18  actually, two pages later -- is a check number, 1504,

19  drawn by All Paving & Sealcoating, LLC, 13 days after

20  your $2,500 check.  This one being in the amount of

21  $2,200.  It says "website."  It reflects that it was

22  cashed at a teller of a bank, and all the handwriting

23  on it is your handwriting, Daren, including the

24  signature that you forged of your father's name on a

25  company check; right?

Page 173

1      A.  All of that handwriting is my handwriting.

2  And I told you before that this was in regards to a

3  joint website that was getting built.  And your

4  e-mails that you introduced from Josh Nolan, it's in

5  regards to building a project of a joint website.  Not

6  a domain.  A website.  Okay?  You're missing two

7  different things.

8          You brought in the e-mail showing Josh Nolan

9  and this project, that a new website was being built

10  that was going to be for the brand for both companies.

11      Q.  And this is another one of your forgeries,

12  dated May 2, 2014, in the amount of $1,508, drawn on

13  All Paving & Sealcoating's account, upon which you

14  were not a signer.  You went ahead and forged your

15  father's signature.  Right?

16      A.  I did sign my dad's signature and it says for

17  work.  He knew that I did work.  I wasn't on the

18  payroll.  He was paying me for work that I had done

19  there at All Paving & Sealcoating.

20          Do you think I was doing all of this work and

21  I wasn't being paid?  One of the e-mails you brought

22  in from the mortgage company asked what I did between

23  getting on the payroll of All Paving & Sealcoating in

24  May and being done with the Dolphins in the middle of

25  January.  That's one of the questions.

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.  CACE 17-014794 (07)

ALL PAVING, INC., a Florida corporation;
ALL PAVING & SEALCOATING LLC, a
Florida limited liability company; PATRICK
DALY and ELIZABETH DALY,

       Plaintiffs,

vs.

DAREN  C.  DALY  and  JAMIE  A.
SCHINDLER,

       Defendants.

_____/

## PLAINTIFFS' NOTICE OF FILING EXCERPT OF DEFENDANT DAREN C. DALY'S SEPTEMBER 15, 2020 TRIAL TESTIMONY ADMITTING HE HANDWROTE AND SUBMITTED A CREDIT APPLICATION DATED SEPTEMBER 20, 2015 TO CAT FINANCIAL REFLECTING THAT ELIZABETH DALY IS THE 75% OWNER, AND PATRICK DALY IS THE 12.5% OWNER OF ALL PAVING INC.

       Plaintiffs ALL PAVING, INC., ALL PAVING & SEALCOATING LLC, PATRICK DALY

and ELIZABETH DALY hereby notice they have filed the attached excerpt of Defendant DAREN

C. DALY's trial testimony on September 15, 2020 with Plaintiffs' Exhibit 72 attached, wherein

DAREN C. DALY admitted to submitting a credit application dated September 20, 2015 to Cat

Financial in his handwriting which reflects that ELIZABETH DALY is the 75% owner, and

PATRICK DALY is the 12.5% owner of ALL PAVING INC.

## CERTIFICATE OF SERVICE

       I HEREBY CERTIFY that a true and correct copy of the foregoing was served via Email

through the Florida Courts E-Filing Portal to John P. Kelly, Esq., (john@sotolawgroup.com,

<div align="center">1</div>

BRUCE A. GOODMAN, P.A.



EXHIBIT
**9**

jkelly@businesslitigation.com), Soto Law Group, P.A., Coastal Tower, 2400 E. Commercial Blvd.,

Suite 400, Fort Lauderdale, FL 33308, and   Jeffrey E. Streitfeld, Special Magistrate

(jstreitfeld@gmail.com), 101 NE Third Ave., Suite 1500, Fort Lauderdale, FL 33301, this 15th day

of October, 2020.

Respectfully submitted,

BRUCE A. GOODMAN, P.A.
Attorney for Plaintiffs
5531 N. University Drive
Suite 101
Coral Springs, Florida 33067
Tel: (954) 919-6000; Fax: (754) 222-5122
Email: bruce@bgoodmanlaw.com

By: **/s/ Bruce A. Goodman**, **Esq.**
    Florida Bar No. 602302

Page 1

1     IN THE CIRCUIT COURT FOR THE 17TH JUDICIAL CIRCUIT
          IN AND FOR BROWARD COUNTY, FLORIDA

2
         CASE NO.  CACE 17-014794 (03)

3

4  ALL PAVING, INC., a Florida corporation;
   ALL PAVING & SEALCOATING, LLC, a Florida

5  limited liability company; PATRICK
   DALY and ELIZABETH DALY,

6

7      Plaintiffs,

 vs.

8

 DAREN C. DALY and JAMIE A. SCHINDLER,

9

      Defendants.

10 _____/

11

12

13

               Zoom Meeting

14             Tuesday, 9:30 a.m.-3:30 p.m.
              September 15, 2020

15

16

17        TRANSCRIPT OF TRIAL, DAY 2

18

19    Heard before the Honorable Nicholas R. Lopane

20    on behalf of the Plaintiffs; taken by Lisa

21    Gerlach, Court Reporter, Notary Public in and

22    for the State of Florida at Large, pursuant

23    to Notice of Hearing in the above cause.

24

25

Page 2

1        Appearances by Zoom:
2        Counsel for the Plaintiffs:
3        BRUCE A. GOODMAN, ESQUIRE
         Bruce A. Goodman, PA
4        5531 North University Drive
         Suite 101
5        Coral Springs, FL 33067
         954-919-6000
6        bruce@bgoodmanlaw.com
7
         Counsel for the Defendant:
8
         JOHN P. KELLY, ESQUIRE
9        Soto Law Group
         2400 East Commercial Boulevard
10       Suite 400
         Fort Lauderdale, FL 33308-4026
11       954-567-1776
         john@sotolawgroup.com
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

1                              INDEX

2                                               PAGE

3   DAREN DALY

4        Direct (continued) by Mr. Goodman          4

5   Certificate of Reporter                       213

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 22

1        A.  Yes.

2        Q.  Right?  Okay.

3            MR. GOODMAN:  Your Honor, I would offer

4        into evidence Plaintiffs' Exhibit 70.

5            THE COURT:  Any objection?

6            MR. KELLY:  No objection, your Honor.

7            (Plaintiffs' Exhibit 70 was moved into

8        evidence.)

9            MR. GOODMAN:  Thank you.

10       BY MR. GOODMAN:

11           Q.  Plaintiffs' Exhibit 71 seems to be the same

12       thing, so I'll skip that.

13               Plaintiffs' Exhibit 72 is an e-mail from your

14       dad to you, Daren, dated September 20, 2015, which

15       attaches a CAT Financial credit application.

16               Are you familiar with this e-mail and the

17       attached CAT Financial credit application?

18           A.  The e-mail, I'd have to go back and look up,

19       but I've seen the CAT application before, yes.

20           Q.  Do you see the e-mail right now on your

21       screen?  I shared it as Plaintiffs' Exhibit 72.

22           A.  I see it.  I don't remember it, but I see it.

23           Q.  Okay.  Do you recall filling out this CAT

24       Financial credit application in your handwriting and

25       asking your parents to sign?

1        A.  I know your Honor hasn't heard this before,

2    but I testified to this, saying that I have filled out

3    portions of this document and portions I have not

4    filled out.  And I testified that it was filled out

5    with All Paving & Sealcoating's information and we

6    both actually spoke about this on the record with you,

7    Bruce.

8        Q.  So, Daren, this is your handwriting here, is

9    it not?

10       A.  That's my handwriting, yes.

11       Q.  You acknowledge that this is two days after

12   the BankUnited bank account -- the first bank

13   account -- was opened for All Paving, Inc., right?

14       A.  That was -- yes -- 9/20/2015.

15       Q.  Okay.  So you wrote -- where it says "exact

16   business name," you wrote "All Paving, Inc."  Right?

17       A.  Yes.  This piece of equipment was to be

18   titled in All Paving, Inc.'s name.

19       Q.  And you checked this box where it refers to a

20   corporation; right?

21       A.  Yes, I believe so.

22       Q.  And you did not check the box that says

23   "limited liability company."  Right?

24       A.  No.  Again, as I previously testified, this

25   piece of equipment was to be titled in All Paving,

Page 24

1    Inc.'s name.

2         Q.   You handwrote where it says that the primary

3    contact name is Elizabeth Daly; right?

4         A.   Yes, I did.

5         Q.   And you handwrote the title owner; correct?

6         A.   Yes, I did.

7         Q.   And you handwrote a phone number and her

8    e-mail address; right?

9         A.   I can't see the rest of that phone number.

10   It looks like there's a phone number in the e-mail.

11   Yes, that looks correct.  Elizabeth Daly was assisting

12   me in getting this piece of equipment.

13        Q.   And then you handwrote "Elizabeth Daly" under

14   Section 2 where it says "ownership."  Right?

15        A.   Can you scroll up a little bit, please?

16        Q.   Sure.

17        A.   Okay.  There's a few things -- this is where

18   I'm saying there's a difference.  See where there was

19   a business start date?  2012 is All Paving &

20   Sealcoating's information, the years as the owner of

21   the businesses.  All Paving & Sealcoating had been in

22   business in 2012, not All Paving, Inc.

23             So there's going to be information of All

24   Paving & Sealcoating on this document, as I mentioned

25   before, and we all discussed on the record before.

```
 1   BY MR. GOODMAN:
 2        Q.   Daren, so over here at date of birth, you
 3   wrote down 10, no day, 1967.  Right?
 4        A.   I did, yes.
 5        Q.   You weren't sure of your mom's exact day of
 6   October that she was born?
 7        A.   I think she was born on the 25th or 26th of
 8   October.
 9        Q.   It says here, "Percent of ownership,
10   75 percent."  Right?
11        A.   Yeah.
12        Q.   Okay.
13        A.   Can I finish that?  You asked me about this.
14   I did not write her Social Security number, and I've
15   testified to this before.  I don't think I wrote that
16   "75."  If you actually zoom in on the "75," you can
17   actually see the five and the seven are nothing like
18   any other handwriting on this document.  The five has
19   a hook that comes upwards, right?
20           On here, the only person who has that is
21   Elizabeth Daly, right here, where she writes Patrick
22   Daly's Social Security number.
23           If you look at any five on the rest of this
24   document, there's no hook anywhere.  And the seven
25   doesn't look like any seven.  Here's a seven on the
```

Page 28

1    date of birth over here.  That does not look like the

2    same seven.

3            So, I've testified before, I don't think I

4    wrote those sections.

5        Q.  Under "Patrick Daly," is this your

6    handwriting?  This indicates his date of birth as July

7    10, 1966.

8        A.  That looks like my handwriting.

9        Q.  Okay.  So you filled out the names of the

10   owners, Elizabeth Daly and Patrick Daly.  That's your

11   handwriting, both of those names; right?

12       A.  Yes.  Bruce, this was, again, not for All

13   Paving, Inc.  This was to be titled in All Paving,

14   Inc., but all of the information on this document is

15   All Paving & Sealcoating's.  It was established in

16   2012.

17           The vendors down below -- you're kind of

18   zooming all over the place.  The vendors down below

19   are All Paving & Sealcoating's vendors.  It says

20   "fleet size."  They were the only ones who had a

21   fleet.  I didn't have a vehicle yet.

22           And the actual -- this thing actually

23   appeared on All Paving & Sealcoating's tax return as

24   an asset.

25       Q.  So this was done two days after the bank

Page 29

1    account was opened; right?

2        A.   This piece of equipment was purchased, yes.

3    It's no secret that Elizabeth Daly --

4        Q.   And it was purchased in the name of All

5    Paving, Inc., right?

6        A.   It was to be titled in All Paving, Inc., yes.

7        Q.   And it was in fact purchased in the name of

8    All Paving, Inc., right?

9        A.   Yes, it is in All Paving's name.

10        Q.   Okay.  Very good.  Very good.  And your name

11    is not listed anywhere in this document as an owner of

12    All Paving, Inc., correct?

13        A.   No, it is not.  Because, as I previously

14    said, we were using All Paving & Sealcoating's credit

15    and what they had been doing to get this piece of

16    equipment.  All Paving, Inc. didn't have credit.

17            The same way my mom had cosigned on my credit

18    cards and on my first car, she was assisting me to get

19    a piece of equipment qualified.

20            At this time -- you have to look at the

21    time -- date.  This is 9/20/2015.  Just like we were

22    discussing earlier, I was in the process of trying to

23    buy a home at the time, so I could not also be able to

24    finance other pieces of equipment, so she just

25    assisted me in financing equipment.

Page 30

1          Q.  Is this your mom's signature on the CAT
2    Financial credit app?
3          A.  That is my mom's signature.
4          Q.  Did you print her name there under her
5    signature?
6          A.  That looks like my handwriting, yes.
7          Q.  Is this your handwriting that says "owner"
8    adjacent to the word "title"?
9          A.  That is my handwriting.
10              MR. GOODMAN:  Your Honor, I would offer
11          into evidence Plaintiffs' Exhibit 72.
12              THE COURT:  Any objection?
13              MR. KELLY:  No objection, your Honor.
14          (Plaintiffs' Exhibit 72 was moved into
15          evidence.)
16    BY MR. GOODMAN:
17          Q.  Did you submit this credit application to CAT
18    Financial?
19          A.  That credit application did get submitted to
20    CAT Financial.  I think my mom signed those documents
21    electronically.  But, yes, the application got
22    submitted, the physical application.  The real
23    documents, I think, were electronic documents.
24              MR. GOODMAN:  Exhibit 73 is the identical
25          document that includes Exhibit 16, which is

**Plaintiffs' Exhibit 72**

All Paving, Inc. et al. v. Daren C. Daly et al.

**Case No. 17-014794 (03)**

| | |
|---|---|
| **From:** | Patrick Daly |
| **To:** | daren@allpaving.com |
| **Subject:** | Paper work |
| **Date:** | Sunday, September 20, 2015 7:55:35 PM |
| **Attachments:** | Scan0116.pdf |

EXHIBIT DD

P6

6-M-19   SG

**CAT Financial**

**CREDIT APPLICATION**
Caterpillar Financial Services Corporation
Caterpillar Financial Commercial Account Corporation
Phone: (800) 651-0567    Fax (615) 341-5925
Email: Credit.Department@cat.com

Check all that apply. I am financing:
☑ Equipment from a Cat Dealer
☐ Equipment from another party or refinance
☐ Parts, service, attachments or renting equipment from a Cat Dealer with Commercial Account

I have previously applied with Cat Financial for:
☑ Equipment Financing
☑ Commercial Account to pay for parts, service, attachments or to rent equipment from a Cat Dealer
☐ N/A

SECTIONS 1-3 ARE REQUIRED FOR ALL CUSTOMERS

## ① CUSTOMER

Exact Business Name __All Paving Inc__    DBA (if any) _____

Type of Business  ☑ Corporation  ☐ Limited Liability Co  ☐ General Partnership  ☐ Limited Partnership  ☐ Sole Proprietor  ☐ Municipality  ☐ Trust  ☐ Other

Description of Business __Asphalt Paving__

Primary Contact Name __Elizabeth Daly__  Title __Owner__  Phone # __1-855-735-ROAD__  E-Mail __Elizabethe@paving.com__

Physical Address __5121 Ehrlich Rd__  City __Tampa__  County __Hillsborough__  State/Zip __FL__ / __33624__

Billing Address (if different) __5121 Ehrlich Rd__  City __Tampa__  County __Hillsborough__  State/Zip __FL__ / __33624__

Phone # __1-855-735-ROAD__  Fax # __—__  Business Start Date __2012__  Years as Owner of this Business __3__

Federal Tax ID Number _____  State Incorporated __FL__  Sales Tax Exempt ☐ Yes (please attach certificate)  ☐ No

Machine Fleet Size __15__

Prior bankruptcy?  ☑ No  ☐ Personal  ☐ Current Business  ☐ Prior Business

Active liens or judgments?  ☑ No  ☐ Liens  ☐ Judgments

## ② OWNERSHIP: Provide copy of government issued ID for all owners completing this section

1) Name __Elizabeth Daly__  Date of Birth ▓▓▓ 1967  SSN ▓▓▓▓  % of Ownership __75__ %  Net Worth _____
Address __8417 NW ___ Manor__  City __Coral Spring__  State/Zip __FL__ / ▓▓▓  Annual Income __52,000__

2) Name __Patrick Daly__  Date of Birth ▓▓▓ 1966  SSN ▓▓▓▓  % of Ownership __13.4__ %  Net Worth _____
Address __8417 NW 20th Manor__  City __Coral Springs__  State/Zip __FL__ / __33___  Annual Income __85,000__

*For more than 2 owners, complete OWNERSHIP section and sign an additional Credit Application.*

## ③ REFERENCES

| | Phone # | Contact Name | Account # | Average Balance |
|---|---|---|---|---|
| Primary Bank (Checking Account Specific) | | | | |
| BB&T | 1-800-226-5228 | Sonia Kroys | | |
| Additional (Bank/Trade/Equipment Rental/Bonding) | | | | |
| 1) Berger Construction | 1-800-969-9402 | Keen | | |
| 2) Sunbelt Rentals | 1-800-667-9328 | | | |
| 3) Hertz | 1-888-777-2700 | | | |

## ④ COMPLETE if you are financing PARTS, SERVICE, ATTACHMENTS or RENTING equipment from a Cat Dealer with Commercial Account

Requesting a revolving credit limit range of (select ONE):  ☐ $ _____  ☐ $25,000 or less  ☐ $25,000-$75,000  ☐ $75,000 or more (see FINANCIAL section below)

Billing preference (select ONE or statement billing will apply):

☐ **STATEMENT BILLING:** Receive one statement monthly that covers all transactions made during that period. A minimum payment of 10% (revolving) of the account balance plus interest is due each payment cycle, or pay in full without interest charges. Rental charges are due in full by the due date. As with all statement billing methods payments are applied to the oldest outstanding balance.

☐ **INVOICE BILLING:** Immediately receive a separate invoice Bill that mirrors the dealer invoice for each transaction you make, plus receive a monthly summary of all paid and open invoices. The full payment of the invoice is due on the stated terms.

Name(s) of individual(s) authorized to charge on account: 1) Name _____  2) Name _____

*Contact Credit.Department@cat.com to request additional authorized users.*

## FINANCIAL: Attach the following if financing exceeds $350,000 for equipment purchases or is over $75,000 for a Commercial Account

Financial statements for the last 2 fiscal year-ends, latest interim statements and comparable interims from prior year (if fiscal year-end is over 120 days), and a detailed list of work on hand *Additional financial information may be required.*

REVISED 2013

## INDUSTRY SPECIFICS

**FORESTRY - Attach a list of equipment owned with make, model, year, s/n, lender and balance owing.**

1. Number of crews _____  2. Avg. monthly revenues $ _____  3. Avg. monthly expenses $ _____
4. Do you own the timber you normally harvest? ☐ Yes  ☐ No
5. Primary Customer Names | Length of Relationship | Is there a contract?
a. _____ | _____ | ☐ Yes  ☐ No
b. _____ | _____ | ☐ Yes  ☐ No

**ENGINE / GENERATOR SET (select ONE):**

☐ Mobile and mounted on vehicle or trailer.
    Assignment of title to Cat Financial will be required.
    - Attach copy of title if you own trailer.
☐ Fixed and fastened to land/building.
    - Attach a completed engine utilization form.
☐ Pallet/skid/pad mounted (not fixed to the property)

## VOCATIONAL TRUCKS

1. Products Hauled _____  2. Fleet size? _____
3. Years Operating _____  Years Owning _____
4. Primary Customer Names | Length of Relationship | Is there a contract?
a. _____ | _____ | ☐ Yes  ☐ No
b. _____ | _____ | ☐ Yes  ☐ No

**HAZMAT – COMPLETE** this section and sign below for EVERY truck transaction.

Do you haul HAZMAT?  ☐ Yes*  ☐ No
*If hauling HAZMAT, attach a completed HAZMAT questionnaire and proof of insurance. Minimum environmental liability coverage required from an acceptable insurer.

## NOTICES

**Definitions:** The terms "you" and "your" will refer to the person applying for financing, each Guarantor and each Signatory signing this credit application. The terms "we", "us" or "our" will refer to Caterpillar Financial Services Corporation ("CFSC") and/or Caterpillar Financial Commercial Account Corporation ("CFCAC" and, together with CFSC, the "Cat Financial Companies"), either individually or collectively, as applicable. Collectively, the Cat Financial Companies, Caterpillar Inc. and their affiliates and subsidiaries are referred to herein as the "Caterpillar Companies".

**Representations and warranties:** You represent that the information provided by you in this credit application (i) is true, correct and complete and (ii) is provided for the purpose of you obtaining credit from us.

**Privacy Notice:** You authorize us, or our designee, to investigate or obtain from other Caterpillar Companies, sellers of Caterpillar products (each a "Dealer"), banks, consumer reporting agencies, financial institutions, merchants, customers or any other person or entity any personal or business information related to you that we may deem appropriate, including but not limited to consumer reports and credit histories, for the use described herein. You authorize and instruct each such person or entity to furnish, share or otherwise make accessible to us any such information in their possession. We may use and rely upon such information, and any information provided in this credit application, (a) to make a credit decision to extend credit now or in the future pursuant to a subsequent application or request, (b) to continue any previously provided credit, (c) to review your account, (d) to assist in any collection activity, (e) to otherwise investigate your credit, (f) to improve or market Caterpillar products and services, and (g) to share such information with any other person or entity, including but not limited to the Caterpillar Companies, Dealers, consumer reporting agencies, financial institutions, and merchants.

This application for credit is solely from us. A decision to grant or deny business credit by CFSC will be made by CFSC, and a decision to grant or deny credit by CFCAC will be made by CFCAC. We may, in our sole discretion, refuse to extend business credit, goods, or services to you and may terminate any such credit extended at any time. Any references to a requested amount of credit in this credit application will not be deemed a limitation of liability by you. You understand and agree that any credit granted by us to you will be governed by the provisions and conditions set forth in CFCAC's Customer Agreement (or similarly titled) between us where granted by CFCAC or the applicable agreements between us where granted by CFSC.

**You acknowledge that this credit application is for business customers only (including sole proprietorships) and credit provided by us in connection with this credit application may not be used to acquire equipment or services for personal, household or family purposes. You acknowledge that you have read and fully understand the terms and conditions contained in this credit application.**

The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning these creditors is the FTC Regional Office for the region in which the Cat Financial Companies operate or the Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.

If your application for business credit is denied, you have the right to a written statement of the specific reasons for the denial. To obtain the statement, contact us at the applicable address below within 60 days from the date you are notified of our decision. We will send you a written statement of the reasons for the denial within 30 days from receiving your request for the statement.

Caterpillar Financial Services Corporation, Attn: Credit Manager, 2120 West End Ave., P.O. Box 340001, Nashville, TN 37203

## SIGNATURES

**Required signatures:** If you are a legal entity (e.g., corporation, limited liability company or limited liability partnership), an authorized person must sign below on your behalf in addition to each owner listed in this credit application. If you are a partnership or a sole proprietorship, each owner must sign below.

Authorized Signature _Elizabeth Daly_  Date _9/20/2015_
Printed Name _Elizabeth Daly_  Title _Owner_

**Ownership** (To be completed by every owner identified in the OWNERSHIP Section of this Application; ID required)

1) Signature _Elizabeth Daly_  Printed Name _Elizabeth Daly_  Date _9/20/2015_
2) Signature _Patrick Daly_  Printed Name _Patrick Daly_  Date _9/20/2015_

### TO BE COMPLETED BY A CATERPILLAR REPRESENTATIVE OR CAT DEALER

Identity verified for all signatories listed above  ☐ Yes  ☐ No     Identification attached, if applying with Cat Financial Commercial Account  ☐ Yes  ☐ No

VOCATIONAL TRUCK / ENGINE / GEN SET: application number required for every transaction _____. Attach truck and body build sheets for vocational trucks.





IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.  CACE 17-014794 (09)

ALL PAVING, INC., a Florida corporation;
ALL PAVING & SEALCOATING LLC, a
Florida limited liability company; PATRICK
DALY and ELIZABETH DALY,

       Plaintiffs,

vs.

DAREN C. DALY and JAMIE A. SCHINDLER,

       Defendants.

_____/

## SECOND AMENDED COMPLAINT

    Plaintiffs ALL PAVING, INC. ("ALL PAVING INC."), ALL PAVING & SEALCOATING

LLC ("ALL PAVING LLC"), PATRICK DALY ("PATRICK") and ELIZABETH DALY

("ELIZABETH") sue Defendants DAREN C. DALY ("DAREN") and JAMIE A. SCHINDLER

("JAMIE"), and allege:

    1.     This is an action for injunctive relief and damages in excess of $30,000.00 within the

jurisdiction of this Court.

    2.     Plaintiff ALL PAVING INC. is a Florida corporation with its principal place of

business in Broward County, Florida.

    3.     Plaintiff ALL PAVING LLC is a Florida limited liability company with its principal

place of business in Broward County, Florida.

    4.     Plaintiff PATRICK and his wife Plaintiff ELIZABETH are residents of Broward

County, Florida.

EXHIBIT
**10**

1

BRUCE A. GOODMAN, P.A.

5.      PATRICK and ELIZABETH were married in 1986 in their home country of Ireland. In 1988, they moved their family to Florida and have become United States Citizens.  PATRICK and ELIZABETH have resided in the same home in Coral Springs since 1999, and have three adult children, Keith Daly ("Keith") (age 36), Sinead Daly (age 31), and Defendant DAREN C. DALY ("DAREN") (age 34).

6.      Defendant DAREN and his fiancé Defendant JAMIE are residents of Broward County, Florida.

7.      PATRICK's experience in the paving business dates back to 1988.  During 1993 - 2011, PATRICK worked at Atlantic Southern Paving in Broward County and left that business in 2012 to start his own paving business, ALL PAVING LLC.

8.      At the time ALL PAVING LLC began operations, DAREN was in law school and was not involved in the paving business.

9.      ALL PAVING LLC has been successful since its inception in 2012 and is expanding.

10.     In 2012, PATRICK purchased and registered the domain name AllPavingAndSealcoating.com with GoDaddy, an internet domain name registrar.  At all times material hereto, the AllPavingAndSealCoating.com domain name was held in PATRICK's GoDaddy account number 49951435.

11.      In 2012, DAREN was in law school.  DAREN had been a place kicker in college, and his plan in 2012 was to start a sports agency with his law school friend, Joseph D. Fahrendorf, Esq. ("Fahrendorf").   Becoming a licensed Florida attorney was a necessary step for DAREN to open a sports agency/law firm with Fahrendorf.

12.     As of August 2013, ELIZABETH held an 84% ownership interest in ALL PAVING LLC, and PATRICK held a 1% ownership interest in ALL PAVING LLC.  The remaining 15% was

2

owned by Robert Holland who focused on marketing for the paving business.  During 2015-2018, the ownership structure of ALL PAVING LLC changed such that ELIZABETH held a 51% ownership interest in ALL PAVING LLC, PATRICK held a 34% ownership interest in ALL PAVING LLC, and Robert Holland held a 15% ownership interest in ALL PAVING LLC.  In January 2019, Robert Holland sold his 15% ownership in ALL PAVING LLC, and at present ELIZABETH owns 51% of ALL PAVING LLC, and PATRICK owns 49% of ALL PAVING LLC.

13.     Ownership of ALL PAVING LLC is not an issue in this case — Defendants do not claim they ever had ownership interests in ALL PAVING LLC.

14.     DAREN has a Masters Degree in Finance and Real Estate and a Masters Degree in Sports Administration.  DAREN also attended Nova Southeastern University Law School and graduated in 2012.  While DAREN has a Juris Doctor degree, he is not a licensed attorney having failed The Florida Bar Examination in February 2013 and again in July 2013.

15.     During the summer of 2013, DAREN held a part time position with ALL PAVING LLC in order to assist his parents in marketing the paving business.  He also performed some "legal" work for his parents, having prepared a "Limited Liability Partnership Agreement of All Paving and Sealcoating" which DAREN emailed to PATRICK on August 13, 2013, which was signed by PATRICK and Robert Holland on August 19, 2013.  While the "Limited Liability Partnership Agreement of All Paving and Sealcoating" prepared by DAREN was in a form not applicable to a limited liability company and contains additional factual and legal errors, it nevertheless formed the basis of Robert Holland's 15% interest in ALL PAVING LLC during August 2013 - January 2019.

16.     During the summer of 2013, DAREN's friend Fahrendorf, who was at that time and still is a licensed Florida attorney, was also employed by ALL PAVING LLC on a part time basis, and worked with DAREN at ALL PAVING LLC, with a focus on marketing and promoting

3

PATRICK and ELIZABETH's paving business.  During the time Fahrendorf was employed by ALL PAVING LLC, he did some legal work for the Daly family and their entities.  Fahrendorf's signature appears on the "Limited Liability Partnership Agreement of All Paving and Sealcoating" prepared by DAREN as a witness to PATRICK's signature.

17.     On September 19, 2013, while still employed by ALL PAVING LLC, Fahrendorf drafted and filed Articles of Incorporation for ALL PAVING INC., a copy of which is attached hereto as Exhibit 1. At that time, DAREN held a part time position at ALL PAVING LLC, focusing on marketing his parents' paving business.

18.     Although DAREN instructed Fahrendorf to indicate in the Articles an officer title for himself, his fiancé JAMIE, and his father PATRICK, it was Fahrendorf's understanding based on his communications with the Daly family that PATRICK and ELIZABETH were the owners of ALL PAVING INC., just like they were the owners of ALL PAVING LLC.  Fahrendorf is not aware of any valid basis for DAREN to claim a majority interest in ALL PAVING INC.  See Affidavit of Joseph D. Fahrendorf attached hereto as Exhibit 2.

19.     At the time ALL PAVING INC.'s Articles of Incorporation were filed, on September 19, 2013, DAREN and Fahrendorf did not intend to remain involved with ALL PAVING LLC or ALL PAVING INC.  Instead, they intended to start a sports agency / law firm after DAREN was admitted to The Florida Bar.

20.     On September 23, 2013, the Florida Board of Bar Examiners released the results of the July 2013 Florida Bar Examination.  DAREN did not pass.  DAREN's failure to become an attorney ultimately caused him to abandon opening a sports agency / law firm with Fahrendorf, and instead DAREN shifted his focus on becoming an assistant coach in the National Football League.

21.     For the remainder of 2013, DAREN worked full time for the Miami Dolphins football team as an assistant coach during the 2013 football season. His position with the Miami Dolphins did not continue after the 2013 season. Thereafter, DAREN's parents welcomed him back to their paving business, and ALL PAVING LLC agreed to hire DAREN as a full time employee in early 2014.

22.     Even though DAREN came back to work for his parents' paving company after the Miami Dolphins terminated his services, DAREN did not want to remain in the paving business, and his goal was to be hired as an assistant coach on another NFL football team. In February 2014 DAREN drafted a resume touting his experience in the National Football League and College Football, and stated as his objective: "To achieve competitive excellence in football with a top tier NFL Organization committed to winning." In early 2014, DAREN transmitted his resume to NFL football teams' head coaches.

23.     In early 2014, while DAREN worked full time for ALL PAVING LLC focusing on marketing, DAREN suggested to his parents that the AllPavingAndSealcoating.com domain name used by ALL PAVING LLC be shortened to AllPaving.com, and that ALL PAVING LLC market itself simply as "ALL PAVING".

24.     In late February 2014 / early March 2014, the AllPaving.com Domain Name was purchased by ALL PAVING LLC with funds initially advanced by PATRICK and ELIZABETH's sons, Keith and DAREN. The All Paving -Domain Name Purchase Agreement used for the purchase of the AllPaving.com Domain Name (the "Domain Name Purchase Agreement") is attached hereto as Exhibit 3. The Domain Name Purchase Agreement is the only writing setting forth the agreed terms of the purchase of the AllPaving.com Domain Name and the parties thereto fully performed under same. The Domain Name Purchase Agreement states that the Purchaser Company is "All

Paving and Sealcoating," which refers to ALL PAVING LLC and not ALL PAVING INC., since "and Sealcoating" is only in ALL PAVING LLC's name and not also in ALL PAVING INC.'s name. ALL PAVING INC. had not even begun operations when the AllPaving.com Domain Name was purchased which is further proof that the AllPaving.com Domain Name was purchased by ALL PAVING LLC, as reflected by the Domain Name Purchase Agreement, Exhibit 3 hereof.

25. DAREN was completely reimbursed by ALL PAVING LLC for all funds he advanced for the purchase of the AllPaving.com Domain Name, including through ALL PAVING LLC's check number 1504 dated March 5, 2014 in the amount of $2,200, which bears only DAREN's handwriting including the maker's signature which is DAREN's <u>forgery</u> of PATRICK's signature, a copy of which is attached hereto as Exhibit 4. DAREN admitted to said forgery during his Court testimony on September 14, 2020. Said check, and the other reimbursements paid to DAREN by ALL PAVING LLC, were <u>not</u> reported on DAREN's income tax returns, which is consistent with the fact said funds were received by DAREN as reimbursements of expenses laid out by DAREN on behalf of ALL PAVING LLC; otherwise DAREN should have reported said payments as income. (See Exhibit 5 hereof which calculates amounts advanced by DAREN and reimbursed to DAREN by ALL PAVING LLC during 2014.) The fact that ALL PAVING LLC reimbursed DAREN for the entire purchase price of the AllPaving.com Domain Name is further proof that ALL PAVING LLC is the owner of the AllPaving.com Domain Name.

26. Consistent with the fact the AllPaving.com Domain Name was acquired for Plaintiffs' paving business, the AllPaving.com Domain Name was placed in PATRICK's GoDaddy account number 49951435 in early March 2014. In fact, during March 5, 2014 through March 23, 2017, the AllPaving.com Domain Name was held in PATRICK's GoDaddy account, and according to the records of GoDaddy and the Internet Corporation for Assigned Names and Numbers ("ICANN")

during said time period, the AllPaving.com Registrant Name was "Patrick Day" (i.e., Plaintiff PATRICK DALY misspelled), and the Registrant Organization was "All Paving."  Also, ICANN records show that the Registrant Street, Registrant City, and Registrant State and Registrant Postal Code of the AllPaving.com Domain Name during said time period all corresponded to the home address of PATRICK and ELIZABETH.

27.    The AllPaving.com website and the ALL PAVING branding including its logo was developed and paid for by ALL PAVING LLC during 2014 - 2015.  Attached hereto as Exhibit 6 are screenshots of the AllPaving.com website published by ALL PAVING LLC during the 2014 - 2016 time period.  These screenshots also show ALL PAVING LLC's use of the ALL PAVING tradename, trademark and logo, including as depicted below:



28.    Beginning in early 2014, the AllPaving.com Domain Name was used by Plaintiffs to send and receive email including through PATRICK's email address Patrick@AllPaving.com, ELIZABETH's email address Elizabeth@AllPaving.com, and email addresses of other employees of Plaintiffs, until DAREN accessed PATRICK's GoDaddy and other internet accounts in March 2017 without Plaintiffs' authorization and made changes that locked Plaintiffs out of their GoDaddy domain registration account.  Such actions by DAREN has caused significant harm to Plaintiffs' businesses.

29.    Although ALL PAVING INC. was incorporated in 2013, it had not begun operations as of late summer 2015.  ALL PAVING INC. was a dormant corporation with ALL PAVING LLC having paid all fees for the incorporation of ALL PAVING INC. and annual reports.  PATRICK and

ELIZABETH then had discussions regarding the utilization of ALL PAVING INC. to expand the paving business with DAREN being allocated a 15% interest in ALL PAVING INC., and with PATRICK and ELIZABETH being allocated a combined 85% ownership of ALL PAVING INC., with the understanding that ALL PAVING INC. and ALL PAVING LLC will have equal rights to, and ownership of, the "ALL PAVING" name, logo, and the AllPaving.com Domain Name and website.  This arrangement was an attempt to resolve conflicts that had arisen between DAREN and Robert Holland within ALL PAVING LLC, and would allow Robert Holland and DAREN to separately track and be rewarded for their sales generated for ALL PAVING LLC and ALL PAVING, INC. respectively, with Robert Holland generating sales for ALL PAVING LLC in exchange for his 15% interest in ALL PAVING LLC, and DAREN generating sales for ALL PAVING INC. in exchange for a 15% interest in ALL PAVING INC.

30.    Consistent with the foregoing, on September 18, 2015, ALL PAVING INC. opened its first bank account.  DAREN made the arrangements with BankUnited and drove ELIZABETH to BankUnited on September 18, 2015 so the bank account may be opened.

31.    On September 18, 2015, ALL PAVING INC. opened its first bank account, and in connection therewith PATRICK, ELIZABETH and DAREN signed a Corporate Resolution dated September 18, 2015, a copy of which is attached hereto as Exhibit 7 (hereinafter, the "September 18, 2015 Corporate Resolution").

32.    The September 18, 2015 Corporate Resolution memorializes the existence and action of the Board of Directors ALL PAVING INC., and states that ALL PAVING INC. is a "corporation organized and existing under the laws of the State of FLORIDA, with its principal place of business located at [PATRICK and ELIZABETH's home address]."

BRUCE A. GOODMAN, P.A.

33.     The September 18, 2015 Corporate Resolution states that at a meeting of the Board of Directors at which a quorum was present, the Board of Directors adopted resolutions, including the designation of BankUnited as a depository of ALL PAVING INC.

34.     The language of the September 18, 2015 Corporate Resolution immediately below the signatures of ELIZABETH as President, DAREN as Vice President, and PATRICK as Vice President states: "I further certify that the Board of Directors of the Corporation has, and at the time of adoption of this Resolution had, full power and authority to adopt the foregoing Resolutions ...."

35.     Florida Statutes Section 607.0801 required ALL PAVING INC. to have a Board of Directors upon opening the BankUnited bank account on September 18, 2015.  The September 18, 2015 Corporate Resolution establishes that ALL PAVING INC. was organized and had a Board of Directors and Officers as of September 18, 2015.

36.     By operation of Florida Statutes Sections 607.01401(65),  607.08401(2) (which requires board of directors action to appoint officers) and 607.0801, the four signatures on the September 18, 2015 Corporate Resolution signed by DAREN as Vice President, ELIZABETH as President, and PATRICK as Vice President and Secretary, establish as a matter of law that ALL PAVING INC. had a Board of Directors as of September 18, 2015; otherwise, ALL PAVING INC. could not have had any Officers including a Secretary, President, and two Vice Presidents, since those officers are only appointed by the Board of Directors pursuant to Florida Statutes Sections 607.01401(65) and  607.08401(2), and ALL PAVING INC. could not have legally opened a bank account or conducted business in the State of Florida since the year 2015 pursuant to Florida Statutes Section 607.0801 if it did not have a Board of Directors.  Defendants are bound by DAREN's signature on the September 18, 2015 Corporate Resolution which specially states that ALL PAVING INC. was "organized" and had a Board of Directors and Officers.

BRUCE A. GOODMAN, P.A.

37.    Additionally, DAREN's signature on the September 18, 2015 Corporate Resolution as Vice President above PATRICK's signature as Secretary further establishes that ALL PAVING INC. had a Board of Directors in view of the fact Florida Statutes Section 607.01401(65) provides that the Secretary is "the corporate officer to whom the board of directors has delegated responsibility under s. 607.08401 to maintain the minutes of the meetings of the board of directors and of the shareholders and for authenticating records of the corporation."  Furthermore, Florida Statutes Section 607.0205(2) provides:

> Action required or permitted by this act to be taken by incorporators or directors at an organizational meeting **may be taken without a meeting** if the action taken is evidenced by one or more written consents describing the action taken and signed by each incorporator or director.

The September 18, 2015 Corporate Resolution is signed by all three directors and officers, as well as the incorporator of ALL PAVING INC. (i.e., ELIZABETH, PATRICK, and DAREN), and establishes as a matter of law that ALL PAVING INC. had been organized as of September 18, 2015.

38.    Pursuant to the arrangements made by DAREN with BankUnited, a Beneficial Ownership Certification was prepared by the Bank and executed by ALL PAVING INC. under penalties of perjury, stating and establishing that ELIZABETH is the 75% owner of ALL PAVING INC., PATRICK is the 12.5% owner of ALL PAVING INC., and DAREN is the 12.5% owner of ALL PAVING INC.  A copy of said Beneficial Ownership Certification is attached hereto as Exhibit 8.  ELIZABETH signed the Beneficial Ownership Certification as President of ALL PAVING INC. in the presence of and with the approval of DAREN.  PATRICK also approved the signing of the Beneficial Ownership Certification.  Based on the arrangements made by DAREN with BankUnited, the bank he selected, the Beneficial Ownership Certification states that DAREN owns 12.5% in ALL PAVING INC. instead of 15% as previously discussed.

39.     Prior to the filing of this litigation in August 2017, ALL PAVING INC. had not issued stock certificates. A corporation is not required to issue stock certificates.  Fla. Stat. §§ 607.0621, 607.0626.   The parties' ownership of ALL PAVING INC. was established on September 18, 2015 pursuant to the documents executed at BankUnited (i.e., the September 18, 2015 Corporate Resolution and the Beneficial Ownership Certification) with ELIZABETH owning 75% of ALL PAVING INC., PATRICK owning 12.5% of ALL PAVING INC., and DAREN owning 12.5% owner of ALL PAVING INC.

40.     Two days after the bank account at BankUnited was opened pursuant to arrangements made by DAREN, on September 20, 2015, **DAREN in his handwriting** filled out all information on a credit application which was submitted to CAT Financial, which included the representation that ELIZABETH is the 75% owner of ALL PAVING INC. and PATRICK is the 12.5% owner of ALL PAVING INC., which is consistent with the percentages reflected on the Beneficial Ownership Certification submitted to BankUnited two days earlier based on arrangements made by DAREN with BankUnited.  A copy of said CAT Financial Credit Application is attached hereto as Exhibit 9. ELIZABETH and PATRICK signed said credit application filled out by DAREN below their representation that the information is true, correct and complete.

41.     On October 29, 2015, DAREN transmitted finance documents including a Komatsu Financial Security Agreement with an effective date of November 3, 2015 signed by ALL PAVING INC. by "ELIZABETH DALY Owner" and "PATRICK DALY President".  (See Exhibit 10 hereof.) However, ELIZABETH and PATRICK did not sign the Komatsu Financial Security Agreement nor did they handwrite the words "owner" and "president" — DAREN did, and DAREN's forgery of his mother's signature with the designation she is the owner of ALL PAVING INC. is DAREN's admission of same.  In fact, during DAREN's September 15, 2020 testimony before the Court in this

11

BRUCE A. GOODMAN, P.A.

case, DAREN admitted to signing ELIZABETH's name and printing the title "Owner" next to his forgery of her signature, and DAREN also admitted to forging PATRICK's name and printing the title "President" on the same agreement with said finance company.

42.    DAREN's admitted forgeries of his parents' signatures in 2015, and his admission that he handwrote the title "Owner" next to his forgery of ELIZABETH's signature, constitutes DAREN's admission that ELIZABETH is the Owner of ALL PAVING INC., and proves the falsity of Defendants' assertion in this litigation that ELIZABETH was never an owner of ALL PAVING INC.

43.    On November 4, 2015, ELIZABETH registered the fictitious name "ALL PAVING" with the Florida Department of State, and listed two owners of that fictitious name: ALL PAVING INC. and ALL PAVING LLC, a copy of which is attached hereto as Exhibit 11.

44.    PATRICK and ELIZABETH signed personal guaranties for most of the equipment purchased by ALL PAVING INC. in 2015 and 2016.

45.    ALL PAVING INC.'s BankUnited bank account received as seed money, during the last quarter of 2015, certain revenues of ALL PAVING LLC (approximately $190,000) reflected on the Transaction Reports attached hereto as Exhibit 12.

46.    ALL PAVING INC. received several other deposits of revenues generated by ALL PAVING LLC's contracts including from the Bay Colony project.  The agreement for the Bay Colony project, which generated approximately $1,000,000 in revenue during 2016, was signed and bonded in the name of ALL PAVING LLC (see Performance and Payment Bonds for said project in the name of ALL PAVING LLC attached hereto as Exhibit 13).

47.    On December 22, 2015, Defendants DAREN and JAMIE submitted Uniform Residential Loan Applications to SunTrust Mortgage for the purchase of a home (FNMA Form

12

BRUCE A. GOODMAN, P.A.

1003). Both Defendants represented to SunTrust that "the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability ... and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq." They signed below language that states "I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq." DAREN stated in his December 22, 2015 Loan Application that he had been employed by ALL PAVING LLC as COO for 1.6 years and that he was a coach employed by the Miami Dolphins from September 1, 2013 to February 15, 2014. JAMIE stated in her December 22, 2015 Loan Application that she was employed as a General Attorney for the IRS for 1 year. Neither DAREN nor JAMIE listed any ownership of or an interest in ALL PAVING INC. or any of its stock, even though page 3 of the form required them to state the "Net worth of business(es) owned", "Stocks and Bonds" and "Other Assets". At the time DAREN and JAMIE signed and submitted their Loan Applications on December 22, 2015, ALL PAVING INC. was operating and had $190,000 in deposits during the last quarter of 2015, and had $100,000 in its operating account. Also, DAREN and JAMIE submitted a letter to SunTrust in connection with their loan application, on All Paving stationery, stating: "Please note that Mr. Daren Daly has zero (0) ownership percentage in All Paving and Sealcoating, LLC. Mr. Daly has been employed here for over a year and is a valued member of the All Paving team, however he is not an owner in any part of the business." Defendants' assertions of ownership in this case are contradicted by their Uniform Residential Loan Applications submitted to SunTrust.

48.     On January 15, 2016, DAREN electronically signed and filed the 2015 Florida Profit Corporation and Annual Report with the Florida Secretary of State, stating that ELIZABETH is the President, and PATRICK and DAREN are Vice Presidents of ALL PAVING INC., a copy of which is attached hereto as Exhibit 14.  In a December 5, 2016 email to Tyler Smith of Ranger Construction Industries, Inc., DAREN forwarded said annual report with a subject line: "ALL PAVING INC. (Formerly All Paving & Sealcoating, LLC)."

49.     In February 2016, DAREN was shifted from the ALL PAVING LLC payroll onto the ALL PAVING INC. payroll with appropriate withholding for employee payroll taxes.  Later in 2016, PATRICK and ELIZABETH also start receiving money from ALL PAVING INC. but only in the form of owner distributions without withholding for employee payroll taxes.

50.     On May 20, 2016, DAREN informed an employee of Plaintiffs in a text message that "My dad doesn't own All Paving.  My mom does."  See Exhibit 15 hereof.  DAREN's admission in this text message that ELIZABETH is the Owner of ALL PAVING INC. proves the falsity of Defendants' assertions in this litigation that ELIZABETH was never an owner of ALL PAVING INC.

51.     On June 22, 2016, DAREN transmitted an Application for Business Credit and Agreement to Titan America signed by ALL PAVING INC. by "ELIZABETH DALY Owner." (See Exhibit 16 hereof.)  On September 15, 2020, DAREN admitted to the Court during his testimony in this case, that he signed ELIZABETH's name and printed the title "Owner" next to her name on said credit application.  DAREN's admitted forgery of his mother signature and his admission that he handwrote the title "Owner" next to his forgery of ELIZABETH's signature, constitutes DAREN's admission that ELIZABETH is the Owner of ALL PAVING INC., and proves the falsity of Defendants' assertion that ELIZABETH was never an owner of ALL PAVING INC.

52.    On or about June 27, 2016, DAREN transmitted a Sales Contract & Purchase Order to Flagler Construction Equipment signed by ALL PAVING INC. by "ELIZABETH DALY Owner/Treasurer" (see Exhibit 17 hereof).  DAREN signed ELIZABETH's name and printed the title "Owner/Treasurer" next to her name.  DAREN's forgery of his mother signature and his handwriting the title "Owner" next to his forgery of ELIZABETH's signature, constitutes DAREN's admission that ELIZABETH is the Owner of ALL PAVING INC., and proves the falsity of Defendants' assertion that ELIZABETH was never an owner of ALL PAVING INC.

53.    On December 12, 2016, after having an argument with his mother ELIZABETH during the 2016 Thanksgiving holiday, DAREN filed Articles of Amendment to Articles of Incorporation of ALL PAVING INC. which purported to remove ELIZABETH as President of ALL PAVING INC. (see attached Exhibit 18).  Said Articles of Amendment violated Florida Statutes Sections 607.1006(5) and 607.0120(6)(b) because DAREN misrepresented that shareholder or director approval was not required, and said Articles of Amendment were otherwise unauthorized.

54.    On December 16, 2016, DAREN wire transferred $500,000 from the ALL PAVING INC. BankUnited operating account to a personal bank account in DAREN's name causing the ALL PAVING INC. operating account to incur overdrafts (see attached Exhibit 19).  Six days later, DAREN returned $450,000 to the ALL PAVING INC. Bank United operating account but retained $50,000 for himself and has never returned those funds.

55.    In January 2017, PATRICK and DAREN had a meeting wherein PATRICK offered to increase DAREN's percentage ownership of ALL PAVING INC. to 35%.  It was PATRICK's understanding that DAREN verbally agreed to the 35% interest.  However, DAREN thereafter disputed a verbal agreement and asserted he intended only to agree to a 65/35 split of profits and not also ownership.  Therefore, it is Plaintiffs' position that the original ownership percentages

established on September 18, 2015 in accordance with the documents executed at BankUnited, i.e.,

the Beneficial Ownership Certification and the September 18, 2015 Corporate Resolution, continue

to apply through the current date, with ELIZABETH owning 75%, PATRICK owning 12.5%, and

DAREN owning 12.5% of ALL PAVING INC.

56.     On January 6, 2017, DAREN caused a CNA Surety Fast Track Bond Application to

be completed and signed by ALL PAVING INC., PATRICK, ELIZABETH, and DAREN, a copy

of which is attached hereto as Exhibit 20.  The Bond Application form required disclosure of all

owners of ALL PAVING INC., including marital status and "% of Business Ownership," and

required the use of an additional sheet if necessary.  DAREN provided the office manager of ALL

PAVING LLC and ALL PAVING INC. with the information to type into the Bond Application,

including ownership percentages in ALL PAVING INC.  DAREN instructed the office manager to

indicate he holds a 35% ownership interest in ALL PAVING INC., as reflected on Exhibit 20, the

form signed by DAREN.  However, as stated above, DAREN later asserted he did not agree to a 35%

ownership interest, and therefore the original ownership percentages continue to apply, with DAREN

having a 12.5% ownership interest in ALL PAVING INC., PATRICK having a 12.5% ownership

interest in ALL PAVING INC., and ELIZABETH having a 75% ownership interest in ALL PAVING

INC.

57.     On February 14, 2017, DAREN submitted a Wells Fargo Credit Application for

Construction Equipment on behalf of ALL PAVING INC., purporting to state that DAREN owns

50% of ALL PAVING INC., and that PATRICK owns 50% of ALL PAVING INC.  DAREN signed

this form; however, DAREN admittedly forged the signature of his father PATRICK on said

Application (see Exhibit 21 attached hereto — on September 15, 2020, DAREN testified in a Court

proceeding in this case and admitted to signing PATRICK's name to said Wells Fargo Credit

Application).  This document is not only illegitimate because PATRICK's signature was forged by DAREN and unauthorized, but also because it inaccurately states that DAREN owns 50% of ALL PAVING INC. when in fact at no time has DAREN held more than a minority interest.

58.    On March 8, 2017, DAREN filed the 2017 Annual Report for ALL PAVING INC. with the Florida Department of State, stating by his electronic signature under oath that the two Officers of ALL PAVING INC. were himself as President, and PATRICK as Vice President (see attached Exhibit 22).  Said March 8, 2017 Annual Report <u>filed by DAREN</u> admits that he and PATRICK were officers of ALL PAVING INC., and this is an admission by Defendants that ALL PAVING INC. had been organized with a Board of Directors, because Florida Statutes Section 607.08401(2) provides that only the board of directors appoints officers. As stated above, the September 18, 2015 Corporate Resolution is signed by PATRICK, ELIZABETH and DAREN, reflects actions by ALL PAVING INC.'s Board of Directors, and is signed by the three members of the Board of Directors.

59.    On March 13, 2017, DAREN sent PATRICK a text advising that he told the tax accountant "to caluculate (sic) 65 percent of the profits of last year on your taxes.  I made an agreement with you ...."  However, as stated above, DAREN later asserted he did not agree to a 65/35 ownership split, and therefore the original ownership percentages continue to apply with DAREN owning a 12.5% interest of ALL PAVING INC., PATRICK owning a 12.5% ownership interest in ALL PAVING INC., and ELIZABETH owning a 75% ownership interest in ALL PAVING INC., consistent with the documents executed at BankUnited, i.e., the Beneficial Ownership Certification and the September 18, 2015 Corporate Resolution.

60.    In March 2017, DAREN illegally and without authorization gained access to <u>PATRICK's</u> GoDaddy account (GoDaddy is an internet domain name registrar) in which the

AllPaving.com Domain Name was registered (which Domain Name was used by Plaintiffs for their website and email addresses). From March 2017 to present, DAREN has misappropriated the AllPaving.com Domain Name, the AllPaving.com website, and all email of AllPaving.com. DAREN has also locked PATRICK out of his GoDaddy account, and DAREN has fraudulently changed the Registrant Name of the AllPaving.com Domain Name. DAREN has been intercepting all email coming into said Domain Name and has gained access to and has been using to his benefit and to the detriment of Plaintiffs their previously stored emails, and new AllPaving.com email, including emails directed to Plaintiffs from their customers, vendors, etc. The emails intercepted by DAREN include emails intended for PATRICK and ELIZABETH (Patrick@AllPaving.com and Elizabeth@AllPaving.com), as well as emails intended for Plaintiffs' several employees.

61.    After DAREN seized control of PATRICK's GoDaddy account, PATRICK and ELIZABETH attempted to move the AllPaving.com Domain Name to a new account; however, DAREN blocked that effort and seized control of the AllPaving.com Domain Name by falsely stating to GoDaddy in an email that a mistake was made. The email chain reflects that GoDaddy advised Daren as follows: "the right to control a domain name is determined by the individual or entity listed as registrant, not by who pays for the registration, or by which account the domain name(s) is located in. A registrant is the person/company that has the legal rights and responsibilities of/to the domain name for the period of time the person/company as it registered. Since there was a company listed, the company takes precedence over any individual that might have been listed." Thereafter, DAREN ultimately convinced GoDaddy to move the AllPaving.com Domain Name back to the original GoDaddy account number 49951435 (which he previously seized control of without Patrick's authorization), by transmitting to GoDaddy the Domain Name Purchase Agreement, which Daren fraudulently ALTERED by changing the Purchaser Company Name from "All Paving and

Sealcoating" (which can only refer to All Paving LLC since the word "Sealcoating" is only in All Paving LLC's name, to "All Paving Inc.")  The proof of the alteration is shown by metadata in the Domain Name Purchase Agreement PDF file Daren transmitted to GoDaddy on March 17, 2017, which reflects it was created on March 17, 2017, even though the Domain Name Purchase Agreement was executed in 2014.  However, the Microsoft Word document located on the company computer shows metadata dated February 20, 2014, consistent with the time period when the Domain Name Purchase Agreement was executed, and reflects that the company which purchased the AllPaving.com Domain Name was "All Paving and Sealcoating" i.e., ALL PAVING LLC, not ALL PAVING INC.  Furthermore, ALL PAVING INC. was not even operating in 2014 when the AllPaving.com Domain Name was purchased (ALL PAVING INC. first began operations in late 2015).  The AllPaving.com Domain Name was used by All Paving LLC for its email and website until DAREN seized control of the Domain Name in 2017, which has caused a major disruption in the business of all Plaintiffs.

62.    Because of DAREN's actions described above, in March 2017 ALL PAVING LLC acquired the 3-DPaving.com domain name in order to re-establish business email addresses and a website, due to the fact DAREN locked Plaintiffs out of the AllPaving.com Domain Name and blocked their email.  This transition has harmed Plaintiffs' business and has caused customer confusion.

63.    On March 16, 2017, DAREN fraudulently opened new ALL PAVING INC. bank accounts at BankUnited, and moved funds from the original ALL PAVING INC. BankUnited accounts, for which PATRICK, ELIZABETH and DAREN were all signatories, to new accounts at BankUnited which DAREN unilaterally opened with himself as sole signatory.  Because Plaintiffs were tipped off by an employee of ALL PAVING that DAREN was traveling to BankUnited to open

19

BRUCE A. GOODMAN, P.A.

the unauthorized accounts on March 16, 2017, ELIZABETH and Keith Daly traveled to the Coral Springs branch of BankUnited in an effort to stop DAREN's unauthorized actions.  It was then and there in the parking lot of BankUnited that DAREN threatened ELIZABETH with physical violence and called his mother an unspeakable name.  Keith Daly stepped in between his brother and mother to prevent DAREN from carrying out his threat to ELIZABETH.

64.     Because of the actions of DAREN, BankUnited froze all ALL PAVING INC. funds on the same day DAREN opened the unauthorized accounts, and BankUnited sent a letter dated March 16, 2017 advising that the Bank will interplead the frozen funds in Court unless it received a joint instruction on their disposition.

65.     In order to avoid BankUnited's interpleader action and the great harm and possible complete destruction of Plaintiffs' businesses, a joint instruction was issued to BankUnited, in April 2017, wherein PATRICK, ELIZABETH and DAREN jointly instructed BankUnited to disburse funds in the BankUnited accounts to several accounts at other financial institutions (including accounts held by ALL PAVING LLC) so that vendors, employees and creditors would be paid arrearages and brought current.  In order to avoid BankUnited's interpleader action, and in the interest of maintaining a good relationship with their vendors, and employees, Plaintiffs had no choice but to allow the remaining funds in the BankUnited ALL PAVING INC. accounts to be disbursed to accounts secretly established by DAREN in the name of ALL PAVING INC. at SunTrust.  PATRICK and ELIZABETH are not signatories on the SunTrust accounts, and DAREN is apparently the sole signatory.  On June 5, 2017, DAREN secretly moved $175,000.00 from ALL PAVING INC.'s SunTrust bank account to DAREN's personal bank account at Wells Fargo and has never returned same.

66.    As further acts of interference with Plaintiffs' businesses, in or about April 2017 DAREN removed the server from Plaintiffs' office for several days and shut down the telephone and emails of Robert Holland (i.e., a 15% owner and employee of ALL PAVING LLC at that time) and changed the locks to the office.  While the server was missing, Plaintiffs did not have the computer files and data needed to contact customers or transact business using QuickBooks.  When DAREN returned the server several days later, computer files were rearranged and missing.

67.    DAREN was a very difficult person to work with and created hostility in Plaintiffs' office.  DAREN had frequent conflict with Robert Holland, a man 30 years older than DAREN.  In 2016 and then again in 2017, DAREN verbally threatened to "beat" Mr. Holland's "ass."  In the 2016 incident, DAREN reached to grab Mr. Holland's throat and PATRICK stepped in between them to intervene.  DAREN's hostility toward employees continued into 2017.  He verbally abused employees bringing them to tears, and threatened physical violence against at least 2 employees.  DAREN's actions were continuing and created a hostile work environment.  In May 2017, Robert Holland advised he could no longer work in the same office with DAREN, and at the end of May 2017, Plaintiffs opened a separate office to escape from DAREN and his hostilities.

68.    Plaintiffs' moving to a new office on May 22, 2017 was in furtherance of Plaintiffs' effort to separate from DAREN because he was impossible to work with, had caused the freezing of bank accounts and the shutting down of email and telephones, and had created a hostile work environment.  The separation from DAREN was not in furtherance of an agreement to give away the company to DAREN; in fact, PATRICK and ELIZABETH have maintained to the present day they own a combined 87.5% interest in ALL PAVING INC.  However, subsequent to the 2017 events described above, Plaintiffs have not had control of ALL PAVING INC. because of DAREN's wrongful and fraudulent actions, because of DAREN's breaches of his fiduciary duties as an officer

and director of ALL PAVING INC., and because of DAREN's lies, forgeries, and alteration of documents, including as described herein.

69.    On June 5, 2017, DAREN submitted a letter to Broward County, Florida in support of his Application for Certificate of Competency to become licensed as a paving contractor.  Said letter submitted by DAREN to Broward County asserts that he worked for ALL PAVING LLC from February 28, 2013 through the end of 2015.  DAREN stated in said letter that since the end of 2015 he has been working for ALL PAVING INC. and further stated that "my father is minority owner in ALL PAVING INC."  What DAREN did not inform Broward County is that his mother ELIZABETH is the majority owner of ALL PAVING INC — in fact he completely failed to mention ELIZABETH's ownership interest in ALL PAVING INC., notwithstanding his admissions through his forgeries of his mother's signatures on the documents referenced above and attached hereto, which state that ELIZABETH is the "Owner" of ALL PAVING INC., and notwithstanding DAREN's text message to an employee attached hereto as Exhibit 15, admitting that his mom owns ALL PAVING INC.

70.    Furthermore, DAREN's admission in his June 5, 2017 letter to Broward County, that PATRICK is a minority owner of ALL PAVING INC., contradicts Defendants' false assertion in this litigation that DAREN allegedly had an oral agreement in place with his parents since April or May 2017 pursuant to which he supposedly became the 100% owner of ALL PAVING INC.

71.    In fact, no such agreement existed as admitted by Defendant JAMIE in her text to PATRICK and ELIZABETH on June 6, 2017 at 3:13 p.m., confirming the ongoing ownership dispute, wherein she stated: "I don't think we accomplished much on the phone call but I hope that you understood that I really don't care who gets what percentage of all paving and who's fault this situation is. No one will agree on who was right and who was wrong."  This text shows that

22

BRUCE A. GOODMAN, P.A.

Plaintiffs and Defendants had not resolved their dispute over ownership of ALL PAVING INC. as of June 6, 2017.

72.    On June 12, 2017, DAREN filed Articles of Amendment to Articles of Incorporation of ALL PAVING INC. which purported to remove PATRICK as Vice President of ALL PAVING INC., and purported to change the name of ALL PAVING INC. to "All Paving Incorpation (sic)" (see attached Exhibit 23).  Said Articles of Amendment violated Florida Statutes Sections 607.1006(5) and 607.0120(6)(b) because DAREN misrepresented that shareholder or director approval was not required, and said Articles of Amendment were otherwise unauthorized.

73.    On June 29, 2017, PATRICK and ELIZABETH executed an Action by Written Consent of a Majority of Owners/Shareholders Without a Meeting (see attached Exhibit 24) which elected PATRICK and ELIZABETH the sole Directors of ALL PAVING INC., and removed any other Directors who may have purported to assume such role including, without limitation, DAREN and JAMIE (fiancé of DAREN who may be claiming to have an interest in ALL PAVING INC.). Said Action also stated that Articles of Amendment of the Articles of ALL PAVING INC. shall be executed and filed by ALL PAVING INC. changing its name back to All Paving, Inc. (in order to counteract the unauthorized Articles of Amendment to Articles of Incorporation filed by DAREN on June 12, 2017).  Said Action also stated that the Articles of Amendment to be filed shall properly reflect PATRICK as Director and President of ALL PAVING INC., and ELIZABETH as Director, Vice President, Secretary and Treasurer of ALL PAVING INC.

74.    On June 29, 2017, PATRICK and ELIZABETH executed an Action By Written Consent of the Board of Directors of ALL PAVING INC. (see attached Exhibit 25) which appointed PATRICK as President, ELIZABETH as Vice President, Secretary and Treasurer, and removed all other persons who have purported to assume the role of Officers of ALL PAVING INC. including,

without limitation, DAREN and JAMIE. Said action also stated that "Daren Daly is hereby immediately TERMINATED as an employee, agent, independent contractor, or representative of the Corporation in any capacity, and he shall immediately remove himself from all premises of the Corporation, and turn over to its President, Patrick Daly, all property of the Corporation including all keys, personal property, equipment, documents, checkbooks, bank statements, emails, customer lists and contact information, vendor lists and contact information, contracts, project files, bonding documents, equipment financing documents, bills of sale and equipment ownership documents, ledgers, computers, computer data, software, media, etc., and all login information (including user names and passwords for all online access associated with the Corporation including with banks, QuickBooks, domain registrars, webhosts, email and all other services). Daren Daly shall also execute any paperwork needed or requested by vendors, banks, QuickBooks, lenders, registrars, webhosts, and other parties, to confirm that he is no longer an employee, officer, agent, or other representative of the Corporation, and to transfer all access and authority to Patrick Daly and Elizabeth Daly. Such paperwork shall include documents and online authorizations to transfer the domain names allpaving.com and allpavingandsealcoating.com to a GoDaddy account controlled by Patrick Daly or Elizabeth Daly (or turning over to them the GoDaddy account in which said domains are currently registered by providing Patrick Daly and Elizabeth Daly with the login information)." Said Action also stated that "Articles of Amendment of the Articles of Corporation shall be executed and filed by the Corporation changing its name back to All Paving, Inc. (in order to counteract the unauthorized Articles of Amendment to Articles of Incorporation filed by Daren Daly on June 16, 2017 with the Florida Department of State, which purported to change the name of the Corporation to "All Paving Incorpation (sic)"). Said Articles of Amendment to be filed shall properly reflect Patrick Daly as Director and President of the Corporation, and Elizabeth Daly as Director, Vice

BRUCE A. GOODMAN, P.A.

President, Secretary and Treasurer of the Corporation." Finally, said Action stated that "Bruce A. Goodman, Esq. of Bruce A. Goodman, P.A. has been engaged by the Corporation, through the authority of the undersigned sole Directors, who are also the majority shareholders/owners of the Corporation, to file a lawsuit in the name of the Corporation seeking injunctive relief and other available remedies against Daren Daly including damages, in the event he fails to immediately comply with this Action."

75.    On June 29, 2017, ELIZABETH as Shareholder and Director, and PATRICK as Shareholder and Director, served DAREN with Notice of Action by Written Consent of Owners/Shareholders of All Paving, Inc. and Notice of Action by Written Consent of the Board of Directors, of All Paving, Inc., a copy of which is attached hereto as Exhibit 26, which Notice included a copy of June 29, 2017 corporate actions attached hereto as Exhibits 24 and 25 (hereinafter, collectively, the "June 29, 2017 Corporate Actions").

76.    DAREN has failed and refused to abide by the June 29, 2017 Corporate Actions and he has maintained wrongful possession of ALL PAVING INC.'s assets and continues to interfere with Plaintiffs' ability to conduct business and their business relationships.

77.    On August 4, 2017, ALL PAVING INC., ALL PAVING LLC, PATRICK and ELIZABETH filed the Verified Complaint for Injunctive Relief and Damages against DAREN and JAMIE herein.

78.    On August 31, 2017, DAREN sent an email to a large local contractor, Ranger Construction Industries, Inc., falsely stating that he is "the owner and president of All Paving Inc." He also falsely stated: "I have been the owner and president since incorporation" which is an assertion that contradicts Defendants' fabricated assertions in this litigation that JAMIE allegedly

owned 80% of ALL PAVING INC. until January 2016 when she supposedly orally assigned that interest to DAREN.

79.    This case has been heavily litigated since it was filed in August 2017, and DAREN continues to wrongfully assert ownership and control over ALL PAVING INC. to the present day.

80.    In fact, DAREN has been misappropriating funds from the bank accounts of ALL PAVING INC. well into the seven figures as discussed above and below.  The following is only a partial list of DAREN's misappropriations:

a.    On June 9, 2017, DAREN withdrew $175,000.00 from ALL PAVING INC. through a wire transfer to his personal bank account.  While QuickBooks reflects a $175,000.00 "Wire Transfer Outgoing" on that date, the payee name was left blank demonstrating an intent to conceal.  This transfer to DAREN was discovered through a subpoena to SunTrust Bank.

b.    During 2017, QuickBooks reflects an additional $443,516.16 was paid to DAREN, $370,750.00 of which was characterized as "Contractors/Consulting."

c.    During 2018, QuickBooks reflects an additional $146,600.00 was paid to DAREN, $145,000.00 of which was for "Indemnification of Legal Fees."

d.    During 2019, DAREN paid himself an exorbitant annual salary in the amount of $248,587.50.

e.    DAREN pays himself an exorbitant salary and distributions in addition to the foregoing, all of which are without the authorization of majority owners PATRICK and ELIZABETH.

81.    Additionally, DAREN has wrongful possession of equipment titled in the name of ALL PAVING INC. including, without limitation:

a.    2015 Flatbed Trailer
b.    50 Ton - Lowboy Gooseneck Trailer

26

BRUCE A. GOODMAN, P.A.

      c.      Milling Head - CAT WT903
      d.      2017 Bomag Vibratory Tandem Roller
      e.      2017 BigTex 14TL-20
      f.      2017 Bomag Roller BW120SL-5
      g.      Seal Coat Tank
      h.      2017 F-550 SD XLT & Babco Gooseneck Fifth Wheel
      i.      2017 Ford Super Duty
      j.      2018 Kenworth T880
      k.      2015 LeeBoy L Paver
      l.      2014 LeeBoy Tackwagon
      m.      2012 Caterpillar 242B Skid Steer
      n.      2016 Isuzu NQR
      o.      Mini Excavator
      p.      Sealcoat Truck
      q.      2017 HINO
      r.      CAT Skid Steer Loader
      s.      Milling Machine - Wirtgen W200i

82.     DAREN's fiancé JAMIE, an attorney employed by the federal government who is also a Certified Public Accountant, has aided and abetted DAREN with regard to his misappropriation of PATRICK and ELIZABETH's ownership interests in ALL PAVING INC. JAMIE has falsely asserted that she originally owned 80% of ALL PAVING INC. until she allegedly orally assigned that interest in January 2016 and then she signed fraudulent documents purporting to transfer the fictional ownership interest to DAREN after this lawsuit was filed. JAMIE has also received the benefit of misappropriated ALL PAVING INC. revenues and profits, because they have been received into DAREN and JAMIE's joint household, including through the payoff of their joint mortgage on their jointly owned home in Parkland, Florida in 2020, discussed below.

83.     JAMIE participated in the fabrication of false and fraudulent "evidence" in this case as follows:

     a.     Twenty-three (23) months after this lawsuit was filed, in July 2019, DAREN and JAMIE fabricated and backdated and signed false ALL PAVING INC. stock certificates and a

27

BRUCE A. GOODMAN, P.A.

false stock transfer ledger after testifying in 2018 that ALL PAVING INC. never issued stock certificates.

   b.    This fraudulent action followed JAMIE's signing a fabricated and backdated "Assignment Separate From Stock Certificate" in October 2017 (after this litigation was filed), backdated to January 15, 2016.  Said false document was signed by JAMIE and submitted as false evidence to support Defendants' fictional assertion that JAMIE owned 80% of the stock at ALL PAVING INC.'s inception until she supposed orally assigned same to DAREN in January 2016.  In fact, JAMIE was never an owner of ALL PAVING INC., was never even a signatory on an ALL PAVING INC. bank account, and had no involvement in the paving business other than to assist DAREN in concocting the false claim of ownership being asserted in this litigation.

   84.    Defendants' fabrication of non-existent evidence does not change the fact that JAMIE has never been a shareholder of ALL PAVING INC., and DAREN has never held more than a minority interest.  Said non-existent documents, fabricated and backdated by Defendants after this litigation was filed, were attached to pleadings previously filed by Defendants, and are a fraud on this Court.

   85.    On April 5, 2020, DAREN submitted a Paycheck Protection Program Application on behalf of ALL PAVING INC. falsely stating he owns 100% of ALL PAVING INC.  Said Application included a worksheet in DAREN's handwriting stating that he was paid the exorbitant annual salary in the amount of $248,587.50 (apparently during the year 2019).  In addition to the exorbitant salary, DAREN also receives "owner" distributions from ALL PAVING INC., all of which are misappropriations of corporate funds not authorized by ALL PAVING INC.'s majority owners.

   86.    On April 21, 2020, a Release of Mortgage was recorded in the Official Records of Broward County, Florida, attached hereto as Exhibit 27, reflecting the complete payoff of the

Mortgage in the amount of $417,000.00 obtained by DAREN and JAMIE in 2015. The payoff of

said mortgage was from ALL PAVING INC. funds wrongfully obtained by DAREN and JAMIE.

DAREN and JAMIE continue to receive the benefit of additional funds generated by ALL PAVING

INC., without the authorization of its majority owners PATRICK and ELIZABETH.

87.    At all times material hereto, JAMIE assisted and conspired with DAREN to

misappropriate the business and assets of ALL PAVING INC., including by providing DAREN with

"legal" advise and services including through the fabrication of documents manufactured after this

case was filed, and by signing her name to said fraudulently, backdated documents including the

phony Assignment and stock certificates and stock transfer ledger described above. JAMIE

personally benefitted from these wrongful acts because she lives in the same household with

DAREN, and personally benefitted from the payoff of the mortgage she co-signed with DAREN on

the home owned by both JAMIE and DAREN using funds wrongfully obtained from ALL PAVING

INC. Therefore, JAMIE is jointly and severally liable with DAREN for the causes of action set forth

herein.

88.    From March 2017 to present, Defendants have maintained wrongful control of the

business of ALL PAVING INC. including PATRICK and ELIZABETH's business interests therein,

by their actions described above.

89.    The acts, omissions, and other illegal conduct of Defendants upon which Plaintiffs

predicate their causes of action, were made, performed, and caused by DAREN and JAMIE, and

each of them, for their own individual and collective financial and economic gain, and in active

concert and conspiracy with one another to accomplish the common scheme and purpose of causing

substantial damage to Plaintiffs by: (i) misappropriating PATRICK and ELIZABETH's majority

business ownership interests in ALL PAVING INC. and (2) misappropriating Plaintiffs' ownership interests in the AllPaving.com Domain Name and the ALL PAVING tradename, trademark and logo.

90.     DAREN and JAMIE, and each of them, had actual and constructive knowledge of the acts, omissions, representations, and other illegal conduct, as more fully set forth in this Second Amended Complaint, and each agreed with, acquiesced in, and ratified this illegal conduct, thereby each directly participating in and becoming directly liable for the acts, omissions, representations, and illegal conduct of the other, all in furtherance of the conspiracy to injure Plaintiffs' legal rights and economic interests.

91.     All conditions precedent to this action were performed, waived, or have occurred.

<u>**Count I (Conversion of Business Interests in ALL PAVING INC.<br>against both Defendants)**</u>

92.     This is an action for damages in excess of $30,000.00 within the jurisdiction of this Court.

93.     Plaintiffs PATRICK and ELIZABETH reassert the allegations in paragraphs 2 through 91 above as if fully set forth herein.

94.     From March 2017 to present, Defendants by their actions alleged above have wrongfully asserted and taken dominion and wrongful control of the business of ALL PAVING INC. including PATRICK and ELIZABETH's business interests therein, notwithstanding the fact PATRICK and ELIZABETH are the majority owners of ALL PAVING INC.

95.     This intentional misconduct by Defendants DAREN and JAMIE is inconsistent with PATRICK and ELIZABETH's valuable property rights, and constitutes a conversion of PATRICK and ELIZABETH's business ownership interests in ALL PAVING INC.

96.     As a direct and proximate result of this malicious, intentional, and tortious conduct by DAREN and JAMIE, Plaintiffs PATRICK and ELIZABETH have sustained substantial damages,

including, without limitation, the value of their ownership interests in ALL PAVING INC. converted by Defendants to their own use, together with lost profits.

WHEREFORE, Plaintiffs PATRICK DALY and ELIZABETH DALY demand judgment against Defendants DAREN C. DALY and JAMIE A. SCHINDLER, jointly and severally, for damages including, without limitation, the value of PATRICK DALY and ELIZABETH DALY's ownership interests in ALL PAVING INC. converted by Defendants, together with lost profits, plus interest, costs, and such other and further relief the Court deems just and proper.

### Count II (Conspiracy - Conversion of Business Interests in ALL PAVING INC. against both Defendants)

97.    This is an action for damages in excess of $30,000.00 within the jurisdiction of this Court.

98.    Plaintiffs PATRICK and ELIZABETH reassert the allegations in paragraphs 2 through 91, 94 and 95 above as if fully set forth herein.

99.    This is an action by PATRICK and ELIZABETH against DAREN and JAMIE, jointly and severally, for conspiracy to convert PATRICK and ELIZABETH's majority ownership interests in ALL PAVING INC.

100.    The facts alleged above show that DAREN and JAMIE agreed and endeavored in active concert and conspiracy with one another to convert PATRICK and ELIZABETH's ownership interests in ALL PAVING INC.

101.    As a direct and proximate result of this malicious, intentional, and tortious conduct by DAREN and JAMIE, acting as co-conspirators, Plaintiffs PATRICK and ELIZABETH have sustained substantial damages, including without limitation the value of their ownership interests in ALL PAVING INC. converted by Defendants to their own use, together with lost profits.

BRUCE A. GOODMAN, P.A.

WHEREFORE, Plaintiffs PATRICK DALY and ELIZABETH DALY demand judgment against Defendants DAREN C. DALY and JAMIE A. SCHINDLER, jointly and severally, for damages including, without limitation, the value of PATRICK DALY and ELIZABETH DALY's ownership interests in ALL PAVING INC. converted by Defendants, together with lost profits, plus interest, costs, and such other and further relief the Court deems just and proper.

### Count III (Aiding and Abetting - Conversion of Business Interests in ALL PAVING INC. against both Defendants)

102.    This is an action for damages in excess of $30,000.00 within the jurisdiction of this Court.

103.    Plaintiffs PATRICK and ELIZABETH reassert the allegations in paragraphs 2 through 91, 94 and 95 above as if fully set forth herein.

104.    The facts alleged above show that DAREN and JAMIE provided substantial assistance to one another in converting PATRICK and ELIZABETH's ownership interests in ALL PAVING INC.

105.    As a direct and proximate result of this malicious, intentional, and tortious conduct by DAREN and JAMIE, Plaintiffs PATRICK and ELIZABETH have sustained substantial damages, including without limitation the value of their ownership interests in ALL PAVING INC. converted by Defendants to their own use, together with lost profits.

WHEREFORE, Plaintiffs PATRICK DALY and ELIZABETH DALY demand judgment against Defendants DAREN C. DALY and JAMIE A. SCHINDLER, jointly and severally, for damages including, without limitation, the value of PATRICK DALY and ELIZABETH DALY's ownership interests in ALL PAVING INC. converted by Defendants, together with lost profits, plus interest, costs, and such other and further relief the Court deems just and proper.

32

BRUCE A. GOODMAN, P.A.

**Count IV (Conversion of the "ALL PAVING" Tradename, Trademark, Logo  and the AllPaving.com Domain Name  against both Defendants)**

106.    This is an action for damages in excess of $30,000.00 within the jurisdiction of this Court.

107.    Plaintiffs ALL PAVING INC. and  ALL PAVING LLC reassert the allegations in paragraphs 2 through 91 above as if fully set forth herein.

108.    From March 2017 to present, Defendants by their actions alleged above have wrongfully asserted and taken dominion and wrongful control of the "ALL PAVING" Tradename, Trademark, Logo, and the AllPaving.com Domain Name, inconsistent with and notwithstanding ALL PAVING INC. and ALL PAVING LLC's ownership thereof.

109.    This intentional misconduct by Defendants DAREN and JAMIE is inconsistent with ALL PAVING INC. and ALL PAVING LLC's valuable property rights, and constitutes a conversion of ALL PAVING INC. and ALL PAVING LLC's ownership of the "ALL PAVING" Tradename, Trademark, Logo, and the AllPaving.com Domain Name.

110.    As a direct and proximate result of this malicious, intentional, and tortious conduct by DAREN and JAMIE, Plaintiffs ALL PAVING INC. and ALL PAVING LLC have sustained substantial damages, including without limitation the value of the "ALL PAVING" Tradename, Trademark, Logo, and the AllPaving.com Domain Name.  Furthermore, Defendants are liable to Plaintiffs for disgorgement of their ill-gotten profits, distributions, reimbursements and salaries wrongfully received from ALL PAVING INC.

WHEREFORE, Plaintiffs ALL PAVING, INC. and ALL PAVING & SEALCOATING LLC demand judgment against Defendants DAREN C. DALY and JAMIE A. SCHINDLER, jointly and severally, for damages including, without limitation, the value of the "ALL PAVING" Tradename, Trademark, Logo, and the AllPaving.com Domain Name converted by Defendants, together with lost

33

BRUCE A. GOODMAN, P.A.

profits and disgorgement damages, plus interest, costs, and such other and further relief the Court deems just and proper.

**Count V (Conspiracy - Conversion of the "ALL PAVING" Tradename, Trademark, Logo and the AllPaving.com Domain Name against both Defendants)**

111.    This is an action for damages in excess of $30,000.00 within the jurisdiction of this Court.

112.    Plaintiffs ALL PAVING INC. and  ALL PAVING LLC reassert the allegations in paragraphs 2 through 91, 108 and 109 above as if fully set forth herein.

113.    This is an action by ALL PAVING INC. and ALL PAVING LLC against DAREN and JAMIE, jointly and severally, for conspiracy to convert the "ALL PAVING" Tradename, Trademark, Logo and the AllPaving.com Domain Name.

114.    The facts alleged above show that DAREN and JAMIE agreed and endeavored in active concert and conspiracy with one another to convert ALL PAVING INC. and ALL PAVING LLC's ownership of the "ALL PAVING" Tradename, Trademark, Logo and the AllPaving.com Domain Name.

115.    As a direct and proximate result of this malicious, intentional, and tortious conduct by DAREN and JAMIE, Plaintiffs ALL PAVING INC. and ALL PAVING LLC have sustained substantial damages, including without limitation the value of the "ALL PAVING" Tradename, Trademark, Logo, and the AllPaving.com Domain Name.  Furthermore, Defendants are liable to Plaintiffs for disgorgement of their ill-gotten profits, distributions, reimbursements and salaries wrongfully received from ALL PAVING INC.

WHEREFORE, Plaintiffs ALL PAVING, INC. and ALL PAVING & SEALCOATING LLC demand judgment against Defendants DAREN C. DALY and JAMIE A. SCHINDLER, jointly and severally, for damages including, without limitation, the value of the "ALL PAVING" Tradename,

Trademark, Logo, and the AllPaving.com Domain Name converted by Defendants, together with lost profits and disgorgement damages, plus interest, costs, and such other and further relief the Court deems just and proper.

### Count VI (Aiding and Abetting Conversion of the "ALL PAVING" Tradename, Trademark, Logo and the AllPaving.com Domain Name against both Defendants)

116.    This is an action for damages in excess of $30,000.00 within the jurisdiction of this Court.

117.    Plaintiffs ALL PAVING INC. and  ALL PAVING LLC reassert the allegations in paragraphs 2 through 91, 108 and 109 above as if fully set forth herein.

118.    The facts alleged above show that DAREN and JAMIE provided substantial assistance to one another in converting ALL PAVING INC. and ALL PAVING LLC's ownership of the "ALL PAVING" Tradename, Trademark, Logo and the AllPaving.com Domain Name.

119.    As a direct and proximate result of this malicious, intentional, and tortious conduct by DAREN and JAMIE, Plaintiffs ALL PAVING INC. and ALL PAVING LLC have sustained substantial damages, including without limitation the value of the "ALL PAVING" Tradename, Trademark, Logo, and the AllPaving.com Domain Name.  Furthermore, Defendants are liable to Plaintiffs for disgorgement of their ill-gotten profits, distributions, reimbursements and salaries wrongfully received from ALL PAVING INC.

WHEREFORE, Plaintiffs ALL PAVING, INC. and ALL PAVING & SEALCOATING LLC demand judgment against Defendants DAREN C. DALY and JAMIE A. SCHINDLER, jointly and severally, for damages including, without limitation, the value of the "ALL PAVING" Tradename, Trademark, Logo, and the AllPaving.com Domain Name converted by Defendants, together with lost profits and disgorgement damages, plus interest, costs, and such other and further relief the Court deems just and proper.

BRUCE A. GOODMAN, P.A.

**Count VII (Breach of Fiduciary Duties against Defendant Daren C. Daly)**

120.    This is an action for damages in excess of $30,000.00 within the jurisdiction of this Court.

121.    Plaintiffs ALL PAVING INC., PATRICK and ELIZABETH reassert the allegations in paragraphs 2 through 91 above as if fully set forth herein.

122.    At all times material hereto, DAREN has purported to act as a director and officer of ALL PAVING INC. and as such owed fiduciary duties including to act in good faith and with loyalty to ALL PAVING INC. and its majority owners PATRICK and ELIZABETH.

123.    Plaintiffs reposed trust and confidence in DAREN, including because he is PATRICK and ELIZABETH's son, and because he attended and graduated law school with the expectation he would become a member of The Florida Bar and act legally and ethically, and therefore in addition to his statutory duties, DAREN owed fiduciary duties to his parents PATRICK and ELIZABETH and their business ALL PAVING INC., including the duty of loyalty.

124.    From March 2017 to present, DAREN, by his actions alleged above, has wrongfully asserted and taken dominion and wrongful control of the business of ALL PAVING INC. including PATRICK and ELIZABETH's ownership interests therein, inconsistent with and notwithstanding Plaintiffs' corporate actions which instructed DAREN to cease and desist from seizing control of ALL PAVING INC.

125.    This intentional misconduct by DAREN was inconsistent with PATRICK and ELIZABETH's majority ownership of ALL PAVING INC.

126.    DAREN has also violated Florida Statutes Section 607.0831 because he derived improper personal benefit from ALL PAVING INC. in view of the fact he is not the majority owner of ALL PAVING INC.; DAREN has also caused ALL PAVING INC. to pay himself unlawful

BRUCE A. GOODMAN, P.A.

distributions and other remuneration in violation of Florida Statutes Section 607.0834 because they were not authorized by majority owners PATRICK and ELIZABETH, who have issued corporate actions barring DAREN from acting as an officer, director, or employee of ALL PAVING INC., which DAREN has ignored.

127.    At all times material hereto, DAREN has with conscious disregard for the best interest of the corporation and its majority owners and, and with willful and intentional misconduct, acted in bad faith and with malicious purpose and in a manner exhibiting willful and wanton disregard of the rights of ALL PAVING INC., PATRICK and ELIZABETH in breach of DAREN's fiduciary duties.

128.    As a direct and proximate result of this malicious, intentional, and tortious conduct by DAREN, Plaintiffs ALL PAVING INC., PATRICK and ELIZABETH have sustained substantial damages, and DAREN should be required to disgorge all amounts he received from ALL PAVING INC. for salary, distributions, reimbursements and any and all other remuneration.

WHEREFORE, Plaintiffs ALL PAVING INC., PATRICK DALY and ELIZABETH DALY demand judgment against Defendant DAREN C. DALY for damages including disgorgement damages, plus interest, costs, and such other and further relief the Court deems just and proper.

### Count VIII (Conspiracy - Breach of Fiduciary Duties against both Defendants)

129.    This is an action for damages in excess of $30,000.00 within the jurisdiction of this Court.

130.    Plaintiffs ALL PAVING INC., PATRICK and ELIZABETH  reassert the allegations in paragraphs 2 through 91, and 122-127 above as if fully set forth herein.

37

BRUCE A. GOODMAN, P.A.

131.    This is an action by ALL PAVING INC., PATRICK and ELIZABETH against DAREN and JAMIE, jointly and severally, for conspiracy to breach DAREN's fiduciary duties to ALL PAVING INC., PATRICK and ELIZABETH.

132.    The facts alleged above show that DAREN and JAMIE agreed and endeavored in active concert and conspiracy with one another to seize control over ALL PAVING INC. in breach of DAREN's fiduciary duties.

133.    As a direct and proximate result of this malicious, intentional, and tortious conduct by DAREN, Plaintiffs ALL PAVING INC., PATRICK and ELIZABETH have sustained substantial damages, and DAREN should be required to disgorge all amounts he received from ALL PAVING INC. for salary, distributions, reimbursements and any and all other remuneration.

WHEREFORE, Plaintiffs ALL PAVING INC., PATRICK DALY and ELIZABETH DALY demand judgment against Defendants DAREN C. DALY and JAMIE A. SCHINDLER, jointly and severally, for damages including disgorgement damages, plus interest, costs, and such other and further relief the Court deems just and proper.

**Count IX (Aiding and Abetting - Breach of Fiduciary Duties against both Defendants)**

134.    This is an action for damages in excess of $30,000.00 within the jurisdiction of this Court.

135.    Plaintiffs ALL PAVING INC., PATRICK and ELIZABETH reassert the allegations in paragraphs 2 through 91, and 122-127 above as if fully set forth herein.

136.    This is an action by ALL PAVING INC., PATRICK and ELIZABETH against DAREN and JAMIE, jointly and severally, for aiding and abetting DAREN's breach of fiduciary duties to ALL PAVING INC., PATRICK and ELIZABETH.

BRUCE A. GOODMAN, P.A.

137.    The facts alleged above show that DAREN and JAMIE provided substantial assistance to one another in connection with DAREN's breach of fiduciary duties owed to ALL PAVING INC., PATRICK and ELIZABETH.

138.    As a direct and proximate result of this malicious, intentional, and tortious conduct by DAREN, Plaintiffs ALL PAVING INC., PATRICK and ELIZABETH have sustained substantial damages, and DAREN should be required to disgorge all amounts he received from ALL PAVING INC. for salary, distributions, reimbursements and any and all other remuneration.

WHEREFORE, Plaintiffs ALL PAVING INC., PATRICK DALY and ELIZABETH DALY demand judgment against Defendants DAREN C. DALY and JAMIE A. SCHINDLER, jointly and severally, for damages including disgorgement damages, plus interest, costs, and such other and further relief the Court deems just and proper.

## Count X (Tortious Interference Against both Defendants)

139.    Plaintiffs ALL PAVING INC. and ALL PAVING LLC reassert the allegations in paragraphs 1 through 91 above as if fully set forth herein.

140.    ALL PAVING INC. and ALL PAVING LLC have advantageous business relationships with their customers and prospective customers.

141.    DAREN has failed and refused to abide by the June 29, 2017 Corporate Actions and continues to maintain wrongful possession of assets of ALL PAVING INC. and ALL PAVING LLC including ALL PAVING INC.'s corporate funds in bank accounts, the AllPaving.com and AllPavingAndSealcoating.com domain names, the AllPaving.com website, the AllPaving.com and AllPavingAndSealcoating.com emails and email accounts, and ALL PAVING INC.'s personal property, equipment, keys, documents, checkbooks, bank statements, customer lists, vendor lists, contracts, project files, bond documents, equipment financing documents, bills of sale and equipment

ownership documents, ledgers, computers, computer data, software, media, etc., as well as user names and passwords for online access to banks, QuickBooks, domain name registrars, webhosts, email and other online services, etc. (collectively, the "Assets").

142.    DAREN has been intentionally and unjustifiably interfering with ALL PAVING INC. and ALL PAVING LLC's business activities and their customers and prospective customers by his misappropriation of the Assets and his continuing to act as if he is authorized to represent ALL PAVING INC., notwithstanding the June 29, 2017 Corporate Actions which removed him from any position of authority.

143.    Furthermore, DAREN has intentionally and unjustifiably interfered with ALL PAVING LLC's business activities and advantageous business relationships with its customers and prospective customers by misappropriating its domain names, email, and trademarks, and by advising customers that ALL PAVING LLC has no connection with the ALL PAVING tradename, trademark, and the AllPaving.com Domain Name, notwithstanding its ownership rights in said intellectual property.

144.    DAREN, by his actions described above, and his continued wrongful possession of the Assets, is tortiously interfering with ALL PAVING INC. and ALL PAVING LLC's ability to conduct business and is interfering with Plaintiffs' advantageous business relationships with customers and prospective customers.  Therefore, ALL PAVING INC. and ALL PAVING LLC do not have an adequate remedy at law.

145.    ALL PAVING INC. and ALL PAVING LLC have suffered and will continue to suffer immediate and continuing irreparable harm including to their goodwill and business reputation and relationships with their customers and prospective customers unless an injunction is immediately entered against DAREN requiring him to cease and desist from using their Assets and holding

BRUCE A. GOODMAN, P.A.

himself out as a representative of said Plaintiffs, and requiring DAREN to turn over all Assets to said Plaintiffs.

146.    ALL PAVING INC. and ALL PAVING LLC have no adequate remedy at law to stop DAREN from wrongfully having possession of and using the Assets which DAREN has misappropriated by his actions described above.

147.    ALL PAVING INC. and ALL PAVING LLC have a legitimate business interest in prohibiting DAREN from utilizing their Assets and this is a clear legal right of said Plaintiffs based on the facts alleged above.

148.    Plaintiffs have a substantial likelihood of success on the merits given the facts alleged above, including the fact that DAREN cannot show he has a majority ownership interest in ALL PAVING INC., and therefore he must abide by the June 29, 2017 Corporate Actions which removed him from any position of authority.

149.    Florida has a public policy interest in protecting the assets of business entities, and in preventing the misappropriation of business assets, and therefore, the public interest will be served by this Court entering a temporary injunction and thereafter a permanent injunction against DAREN.

150.    The facts alleged above show that JAMIE has substantially assisted DAREN in his tortious interference, including by fabricating false ALL PAVING INC. ownership documents, and both Defendants have caused ALL PAVING INC. and ALL PAVING LLC to suffer damages.

151.    In addition to injunctive relief, the Court should also award damages to ALL PAVING INC. and ALL PAVING LLC and against Defendants, jointly and severally, including for the actual loss proximately caused by Defendants' interference.

WHEREFORE, Plaintiffs ALL PAVING, INC. and ALL PAVING & SEALCOATING LLC demand judgment in their favor and against Defendant DAREN C. DALY and JAMIE A.

SCHINDLER, for temporary and permanent injunctive relief, requiring Defendants to cease and desist from holding themselves out as authorized representatives of said Plaintiffs and from using the ALL PAVING name, trademark and intellectual property, and to turn over to said Plaintiffs all corporate funds in bank accounts, the AllPaving.com and AllPavingAndSealcoating.com domain names, the AllPaving.com website, the AllPaving.com and AllPavingAndSealcoating.com emails and email accounts, and said Plaintiffs' personal property, equipment, keys, documents, checkbooks, bank statements, customer lists, vendor lists, contracts, project files, bond documents, equipment financing documents, bills of sale and equipment ownership documents, ledgers, computers, computer data, software, media, etc., as well as user names and passwords for online access to banks, QuickBooks, domain name registrars, webhosts, email and other online services, etc., together with an award of damages against Defendants, jointly and severally, court costs, and such other and further relief as the Court deems just and proper.

### Count XI (Violation of Florida Deceptive and Unfair Trade Practices Act against both Defendants)

152.    This is an action for injunctive relief pursuant to the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes Section 501.201, et seq., within the jurisdiction of this Court.

153.    Plaintiffs ALL PAVING INC., ALL PAVING LLC and PATRICK reassert the allegations in paragraphs 2 through 91 above as if fully set forth herein.

154.    Florida Statutes Section 501.201(1) prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or products in the conduct of any trade or commerce and declares them to be unlawful.

155.    DAREN has engaged in unfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts, as described above in the reincorporated paragraphs.

BRUCE A. GOODMAN, P.A.

156.    These wrongful acts include, without limitation, DAREN's conduct beginning in March 2017 when he illegally and without authorization gained access to PATRICK's GoDaddy account in which the AllPaving.com Domain Name was registered (which Domain Name was used by Plaintiffs for their website and email addresses). **From March 2017 to present, DAREN has misappropriated the Domain Name, website, and all email of AllPaving.com.** DAREN has also locked PATRICK out of his GoDaddy account (by changing the password and/or creating a second factor authentication which only DAREN controls), and DAREN has apparently either changed the Registrant Name on PATRICK's GoDaddy account to DAREN's name or moved the AllPaving.com Domain Name to another GoDaddy account which DAREN controls; in any event, Plaintiffs presently do not have registrar level access to the AllPaving.com Domain Name. DAREN has been intercepting all email coming into said Domain Name and has gained access to and has been using to his benefit and to the detriment of Plaintiffs their previously stored emails, and new AllPaving.com email, including emails directed to Plaintiffs from their customers, vendors, etc. The emails intercepted by DAREN include emails intended for PATRICK and ELIZABETH (Patrick@AllPaving.com and Elizabeth@AllPaving.com), as well as emails intended for Plaintiffs' several employees. Such action has caused customer confusion.

157.    As a result of DAREN's deceptive and unfair trade practices in violation of Florida Statutes Section 501.201, the remedies in Florida Statutes Section 501.211 should be awarded to Plaintiffs including injunctive relief, and attorney's fees.

WHEREFORE, Plaintiffs ALL PAVING, INC., ALL PAVING & SEALCOATING LLC, and PATRICK DALY demand judgment in their favor and against Defendant DAREN C. DALY, declaring that said Defendant has violated the Florida Deceptive and Unfair Trade Practices Act, and entering temporary and permanent injunctive relief, requiring said Defendant to cease and desist

from holding himself out as an authorized representative of said Plaintiffs and from using the ALL PAVING name, trademark and intellectual property, and to turn over to said Plaintiffs all corporate funds in bank accounts, the AllPaving.com and AllPavingAndSealcoating.com domain names, the AllPaving.com website, the AllPaving.com and AllPavingAndSealcoating.com emails and email accounts, and said Plaintiffs' personal property, equipment, keys, documents, checkbooks, bank statements, customer lists, vendor lists, contracts, project files, bond documents, equipment financing documents, bills of sale and equipment ownership documents, ledgers, computers, computer data, software, media, etc., as well as user names and passwords for online access to banks, QuickBooks, domain name registrars, webhosts, email and other online services, etc., together with court costs, attorney's fees, and such other and further relief as the Court deems just and proper.

### Count XII - (Declaratory Judgment regarding ownership of ALL PAVING INC.)

158.    This is an action for declaratory judgment pursuant to Chapter 86, Florida Statutes within the jurisdiction of this Court.

159.    Plaintiffs ALL PAVING INC., PATRICK and ELIZABETH reassert the allegations in paragraphs 2 through 91 above as if fully set forth herein.

160.    Ownership in ALL PAVING INC. was established on September 18, 2015 at BankUnited with ELIZABETH owning 75%, PATRICK owning 12.5%, and DAREN owning 12.5% of ALL PAVING INC.

161.    Defendant DAREN has never held more than a minority interest in ALL PAVING INC.

162.    Defendant JAMIE has never had an ownership interest in ALL PAVING INC.

BRUCE A. GOODMAN, P.A.

163.    However, because of various contradictory assertions of ownership made by DAREN and JAMIE, they have created a controversy regarding the parties' respective ownership interests in ALL PAVING INC.

164.    Florida Statutes Sections 86.011 and 86.021 authorize the Court to declare the parties' ownership interests in ALL PAVING INC.

WHEREFORE, Plaintiffs ALL PAVING, INC., PATRICK DALY and ELIZABETH DALY respectfully requests that the Court enter a judgment against Defendants DAREN C. DALY and JAMIE A. SCHINDLER declaring ownership of ALL PAVING INC. and awarding supplemental relief enforcing the declaratory judgment, and that Plaintiffs be awarded their costs and such other and further relief as the Court deems just and proper.

### Count XIII - (Declaratory Judgment regarding ownership of the ALL PAVING Tradename, Trademark, Logo, and the AllPaving.com Domain Name)

165.    This is an action for declaratory judgment pursuant to Chapter 86, Florida Statutes within the jurisdiction of this Court.

166.    Plaintiffs ALL PAVING INC., ALL PAVING LLC, PATRICK and ELIZABETH reassert the allegations in paragraphs 2 through 91 above as if fully set forth herein.

167.    Pursuant to the Domain Name Purchase Agreement, Exhibit 3 hereof, the AllPaving.com Domain Name was purchased by ALL PAVING LLC.

168.    ALL PAVING LLC reimbursed or paid for all costs associated with the purchase of the AllPaving.com Domain Name, the development of the ALL PAVING logo, tradename, logo and website, and was the first in commerce to use the name "ALL PAVING".

169.    On November 4, 2015, ELIZABETH registered the fictitious name "ALL PAVING" with the Florida Department of State, and listed two owners of that fictitious name: ALL PAVING INC. and ALL PAVING LLC, a copy of which is attached hereto as Exhibit 11.

45

BRUCE A. GOODMAN, P.A.

170.    However, because Defendants have been using said intellectual property without the authorization of Plaintiffs, and Defendants have made various allegations of ownership of said intellectual property including based on their false allegations of ownership of ALL PAVING INC., Defendants have created a controversy regarding the parties' respective ownership interests of said intellectual property.

171.    Florida Statutes Sections 86.011 and 86.021 authorize the Court to declare the parties' ownership interests of said intellectual property.

WHEREFORE, Plaintiffs ALL PAVING, INC., ALL PAVING LLC, PATRICK DALY and ELIZABETH DALY respectfully requests that the Court enter a judgment against Defendants DAREN C. DALY and JAMIE A. SCHINDLER declaring ownership of the "ALL PAVING" tradename, trademark, logo, website, the AllPaving.com Domain Name, and other intellectual property associated with said name, and awarding supplemental relief enforcing the declaratory judgment, and that Plaintiffs be awarded their costs and such other and further relief as the Court deems just and proper.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via Email through the Florida Courts E-Filing Portal for this case to John P. Kelly, Esq., (john@sotolawgroup.com, jkelly@businesslitigation.com), Soto Law Group, P.A., Coastal Tower, 2400 E. Commercial Blvd., Suite 400, Fort Lauderdale, FL 33308, and Jeffrey E. Streitfeld, Special Magistrate (jstreitfeld@gmail.com), 101 NE Third Ave., Suite 1500, Fort Lauderdale, FL 33301, this 17th day of February, 2021.

BRUCE A. GOODMAN, P.A.

Respectfully submitted,

BRUCE A. GOODMAN, P.A.
Attorney for Plaintiffs
5531 N. University Drive
Suite 101
Coral Springs, Florida 33067
Tel: (954) 919-6000; Fax: (754) 222-5122
Email: bruce@bgoodmanlaw.com

By: **/s/ Bruce A. Goodman, Esq.**
    Florida Bar No. 602302

BRUCE A. GOODMAN, P.A.

# Electronic Articles of Incorporation For

P13000077541
FILED
September 19, 2013
Sec. Of State
jbryan

ALL PAVING, INC.

The undersigned incorporator, for the purpose of forming a Florida profit corporation, hereby adopts the following Articles of Incorporation:

## Article I

The name of the corporation is:

ALL PAVING, INC.

## Article II

The principal place of business address:

8439 NW 20TH PLACE
CORAL SPRINGS, FL.  33071

The mailing address of the corporation is:

8439 NW 20TH PLACE
CORAL SPRINGS, FL.  33071

## Article III

The purpose for which this corporation is organized is:

ANY AND ALL LAWFUL BUSINESS.

## Article IV

The number of shares the corporation is authorized to issue is:

100

## Article V

The name and Florida street address of the registered agent is:

DAREN C DALY
8439 NW 20TH PLACE
CORAL SPRINGS, FL.  33071

I certify that I am familiar with and accept the responsibilities of registered agent.

Registered Agent Signature:  DAREN DALY

Exhibit
1

P13000077541
FILED
September 19, 2013
Sec. Of State
jbryan

# Article VI

The name and address of the incorporator is:

DAREN DALY
8439 NW 20TH PLACE

CORAL SPRINGS, FL 33071


Electronic Signature of Incorporator:   DAREN DALY

I am the incorporator submitting these Articles of Incorporation and affirm that the facts stated herein are true.  I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S.  I understand the requirement to file an annual report between January 1st and May 1st in the calendar year following formation of this corporation and every year thereafter to maintain "active" status.

# Article VII

The initial officer(s) and/or director(s) of the corporation is/are:

Title:  P
JAMIE A SCHINDLER
8439 NW 20TH PLACE
CORAL SPRINGS, FL.   33071

Title:  VP
DAREN  DALY
8439 NW 20TH PLACE
CORAL SPRINGS, FL.   33071

Title:  VP
PATRICK  DALY
8919 NW 20TH MANOR
CORAL SPRINGS, FL.   33071

# Article VIII

The effective date for this corporation shall be:

09/19/2013

## <u>AFFIDAVIT OF JOSEPH D. FAHRENDORF</u>

STATE OF NEVADA

COUNTY OF WASHOE

BEFORE ME, the undersigned authority, personally appeared Joseph D. Fahrendorf, who after being placed under oath, deposes and states:

1.      My name is Joseph D. Fahrendorf.  All facts stated herein are within my personal knowledge and are true and correct.

2.      I graduated from Nova Southeastern University – Shepard Broad Law Center, Fort Lauderdale, Florida in 2012, Magna Cum Laude.  I have been a member of The Florida Bar since 2012.

3      I am presently an attorney with Fahrendorf, Viloria, Oliphant & Oster L.L.P. in Reno, Nevada.  I have been a member of the State Bar of Nevada since 2015.  I have also been a member of The State Bar of California since 2016.

4.      During the summer of 2013, I began employment with All Paving & Sealcoating LLC, a Florida limited liability company, in Coral Springs, Florida.  I worked primarily in sales and marketing and also assisted with additional tasks requested by the business.

5.      My original plan was to start a law firm and subsequent sports agency with Daren Daly in anticipation that he would pass The Florida Bar examination which he took in 2013.

6.      From the beginning of my time at All Paving & Sealcoating LLC in 2013, it was my understanding that Patrick Daly and Elizabeth Daly (Daren Daly's parents) were the owners and managers of All Paving & Sealcoating LLC.

7.      In September 2013, Daren Daly requested that I file Electronic Articles of Incorporation for All Paving, Inc.  Although Daren Daly instructed me to indicate in the Articles an officer title for himself, his girlfriend Jamie Schindler, and his father Patrick Daly, it was my understanding based on my communications with the Daly family that Patrick Daly and Elizabeth Daly were the owners of All Paving, Inc., just like they were the owners of All Paving & Sealcoating LLC.  Patrick Daly and Elizabeth Daly signed my paychecks and were my supervisors and bosses.

8.      On the day The Florida Bar examination results were published, Daren Daly sent me a text advising that he failed the bar exam, that he was not going forward with our plan of forming a law firm or sports agency, and that there was no further work for me at All Paving.  I believe Daren Daly wanted me to leave All Paving because he was embarrassed for not passing the bar exam.

1

EXHIBIT

**2**

9.     Shortly after his failing The Florida Bar examination in 2013, Daren Daly began employment with the Miami Dolphins.  This further indicated to me that he did not own All Paving, Inc.

10.    I have been informed that Daren Daly has asserted he is the majority owner of All Paving, Inc.  I am not aware of any valid basis for such assertion.

FURTHER AFFIANT SAYETH NOT.

_____
JOSEPH D. FAHRENDORF

STATE OF NEVADA           )
                          )SS:
COUNTY OF _Washoe_        )

I HEREBY CERTIFY that on this day before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged and sworn to before me by Joseph D. Fahrendorf, who is personally known to me or who has produced _NV Drivers license_ as identification and who did take an oath.

WITNESS my hand and official seal in the County and State last aforesaid this _24th_ day of July, 2017.

_____
NOTARY PUBLIC

_Jamie Gammon Barrett_
Typed or printed name of Notary Public

JAMIE GAMMON BARRETT
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 07-4320-2 - Expires September 23, 2019

My commission expires: 9/23/19

2

All Paving Domain Transfer Agreement.docx Properties

General | Security | **Details** | Previous Versions

| Property | Value |
|---|---|
| **Description** | |
| Title | |
| Subject | |
| Tags | |
| Categories | |
| Comments | |
| **Origin** | |
| Authors | Elizabeth |
| Last saved by | Owner |
| Revision number | 2 |
| Version number | |
| Program name | Microsoft Office Word |
| Company | Toshiba |
| Manager | |
| Content created | 2/20/2014 11:52 AM |
| Date last saved | 2/20/2014 11:52 AM |
| Last printed | |
| Total editing time | 00:00:00 |

Remove Properties and Personal Information

Exhibit

**3**

OK | Cancel | Apply

# All Paving -Domain Name Purchase Agreement

The current owner of the domain name identified below (hereinafter referred to as "Seller") desires to sell all rights, title and interest in such domain name to the Purchaser, and the Purchaser desires to acquire same rights, title and interest in such domain name from the Seller. Therefore, it is agreed between the parties as follows:

1. The domain name to be transferred from the Seller to the Purchaser is AllPaving.com (referred to sometimes herein as "domain name.")

2. The Seller agrees to transfer to the Purchaser all right, title and interest in and to the identified domain name, including any trademark rights associated with the domain name itself and all Internet traffic to the domain name. Notwithstanding, this Agreement does not relate to any Website content, which shall remain the property of the Seller.

3. As consideration for the sale of the domain name the Purchaser promised to pay the Seller the amount of $4,600.00. This sum shall be paid in full within four (4) months from the date this Agreement becomes effective.

Upon the date of this Agreement $3,000.00 will be transferred, the remaining $1,600.00 will be paid in four installment payments of $400.00 on the anniversary date of the sent transfer code. If Purchaser does not make the four payments within four months of initial transfer or is late on any of the payments there will be a $400.00 penalty fee.

4. After receipt of $3,000.00 deposit for the domain name, the Seller will within 24 hours take the necessary actions required to change the registered ownership and Transfer of the Domain Name.

6. This Agreement states the entire agreement between the parties concerning the purchase and sale of the identified domain name and supersedes any prior agreements, understandings, or representations with respect thereto. Any addition or modification to this Agreement must be made in writing and signed by authorized representatives of both parties. This Agreement is made under and shall be construed according to the laws of the State of California, U.S.A. In the event that this agreement is breached, any and all disputes must be settled in a court of competent jurisdiction in the State of California, U.S.A.

7. If any of the provisions of this Agreement are found to be unenforceable, the remainder shall be enforced as fully as possible and the unenforceable provision(s) shall be deemed modified to the limited extent required to permit enforcement of the Agreement as a whole.

8. The effective date of this Agreement shall be the date signed by the parties. If the parties sign on different dates, the effective date shall be the date of the last signature.

**WHEREFORE**, the parties acknowledge that they have read and understand this Agreement and voluntarily accept the duties and obligations set forth herein.

Seller:

Name (Print or Type): George Day

Company: Promosample Marketing

Title: Owner

Address:4656 34th Street #3

City, State & Zip: San Diego, California, 92116

Signature:

Date:

Purchaser:

Name (Print or Type): Daren Daly

Company: All Paving and Sealcoating

Title:

Address: 6714 Nw 20th Ave

City, State & Zip: Fort Lauderdale, FL 33071

Signature:

Date:

*Date: July 2, 2018*          *Branch Banking and Trust*          *Page 2 of 4*

*Reference: 20000192359545:20000192359545:20000144937546*





| Date | 20140306 | Account Number | [redacted] |
| Amount | 220000 | CR-DR | D |
| Serial Number | 0000001504 | Transaction Link | 010320230653789106 |

Exhibit

**4**

### 2014 All Paving & Sealcoating, LLC - Daren Daly Reimbursements and Out of Pocket Expenses

| Date | Payee | Payor | Form of Payment | Out of Pocket Expense | Reimbursement |
|------|-------|-------|-----------------|----------------------:|--------------:|
| 02/20/14 | George Day - Promosample | Daren Daly | WellsFargo Acct #9738 Check #1044 | 2,500.00 | |
| 03/04/14 | Matthew Mitchel | Daren Daly | PayPal Credit | 350.00 | |
| **03/05/14** | **Daren Daly** | **All Paving & Sealcoating, LLC** | **LLC Check #1504** | | **2,200.00** |
| 03/27/14 | Promosample | Daren Daly | PayPal Credit | 400.00 | |
| **04/04/14** | **Daren Daly** | **All Paving & Sealcoating, LLC** | **LLC Check #1535** | | **2,500.00** |
| 04/24/14 | eBay Saiftmyersb | Daren Daly | PayPal Credit | 699.00 | |
| **05/02/14** | **Daren Daly** | **All Paving & Sealcoating, LLC** | **LLC Check #1582** | | **1,508.00** |
| 05/27/14 | Promosample | Daren Daly | PayPal Credit | 400.00 | |
| 06/27/14 | Branch Withdrawal | Daren Daly | WellsFargo Acct #9738 | 800.00 | |
| 06/28/14 | Promosample | Daren Daly | PayPal Credit | 400.00 | |
| 07/18/14 | Branch Withdrawal | Daren Daly | WellsFargo Acct #9738 | 800.00 | |
| 08/14/14 | PayPal PAYPAL | Daren Daly | PayPal Credit | 100.00 | |
| 08/27/14 | PayPal PAYPAL | Daren Daly | PayPal Credit | 250.00 | |
| **10/17/14** | **Daren Daly** | **All Paving & Sealcoating, LLC** | **LLC Check #1930** | | **350.00** |
| 11/06/14 | GoDaddy.com | Daren Daly | PayPal Credit | 33.51 | |
| **11/07/14** | **Daren Daly** | **All Paving & Sealcoating, LLC** | **LCC Check #1977** | | **3,000.00** |
| 11/10/14 | 99Designs | Daren Daly | PayPal Credit | 299.00 | |
| 11/10/14 | PayPal PAYPAL | Daren Daly | PayPal Credit | 250.00 | |
| 11/20/14 | DongChun201 | Daren Daly | PayPal Credit | 366.66 | |
| 12/10/14 | Daren Daly | 99Designs | Credit on PayPal Credit | -299.99 | |
| **Total** | | | | **7,348.18** | **9,558.00** |
| **Overpayment to Daren Daly** | | | | | **2,209.82** |

```
┌─────────────────┐
│    EXHIBIT      │
│                 │
│       5         │
│                 │
└─────────────────┘
```

About — All Paving

  

http://allpaving.com:80/about    Go

**28 captures**
16 Jun 2014 - 23 Oct 2016

SEP   DEC   JAN
2013   **31**   2016
    2014

About this capture



Serving the Southern Florida
**Toll Free: 1-855-735-7**
**Local: 954-933**

GET A QUOTE

| SERVICES | INDUSTRIES | NEWS | ABOUT US | CONTACT US |

# About



All Paving is an all-inclusive Parking Lot and Roadways solutions company focusing on securing and enhancing your property.  Our full-service firm provides solutions to Asphalt Pavement, Concrete, Road Construction, Sealcoating and any additional property maintenance issue.

Our On-Property Audit service allows All Paving to work in concert with your property management team to develop a clear, specific, and cost-reducing strategy with the goal of improving your property's value and reducing any potential liabilities.

Experience

All Paving has over 65 years of experience in the Paving and Parking Lot maintenance industry.  All Paving's expertise and knowledge is unmatched, allowing our staff to personalize each project to the goals of every customer in a unique, cost-effective manner.  Allow us to show you this experience as we are able to solve even the most difficult problems.  Unparalleled planning and processes are the most valuable function any project manager will be able to provide to you. This skill is only acquired through experience.

Professionalism

The professionals at All Paving work diligently serving our customers. Our courteous staff will provide only the finest Personal Service while making sure each project is completed with an uncompromising level of Professional Service.

Customer Satisfaction and Project Planning

All Paving has completed hundreds of projects across Florida.  All Paving will specifically meet with each property manager to provide a clear and focused plan to meet their goals for each project.  All Paving works around our customers' business operations, peak business hours, traffic, special events, seasonal customers and all other customer-specific issues. In addition, we will notify our customers in advance of our scheduled project phases and remind you of all steps needed to be

Exhibit
**6**



Personal Service

All Paving works hand-in-hand from the initial handshake through the finished product and beyond. Our team continuously updates our customers to provide [...] of mind during your projects.

Community

All Paving is actively involved in the Florida Community through various channels and charities. All Paving's home is Florida, so we always make sure we provide the best quality service and products.

Expert Workmanship

Strategically hiring skilled crews is essential to building a successful project. All Paving selects customized crews for the proper jobs; we make sure that each project has the most specialized tradesman completing the task. Our crews all share the common goal of producing the highest quality work that all of our employees and customers can be proud of.

Quality Materials

All Paving utilizes the most environmentally friendly and safe materials available in the industry. All our materials are approved by the U.S. Department of Transportation, whose minimum requirements far exceed the minimum federal and state regulations. These materials are always applied according to manufacturers' specifications. Using high-quality materials allows us to provide our customers with lasting durability.



**1-855-735-7623**
**1-855-SFL-Road**

Home    Services    Industries    Blog    About    Contact

Copyright © 2014 All Paving & Sealcoating. All Rights Reserved. Privacy Policy | Terms of Use






INTERNET ARCHIVE
**WaybackMachine**

http://www.allpaving.com:80/   Go

**95 captures**
11 Jan 2002 - 11 Jun 2017

JAN **FEB** MAR
2013 **14** 2016
**2015**

▼ About this capture



Serving the Southern Florida
**Toll Free: 1-855-735-7**
**Local: 954-933-**

↓ GET A QUOT

| SERVICES | INDUSTRIES | NEWS | ABOUT US | CONTACT US |
| --- | --- | --- | --- | --- |



**HOA / Condominium / Apartment Communities**

**Commercial & Retail**

**Asphalt Paving**

**Sealcoating**

**Concrete Services**



All Paving is an all-inclusive Parking Lot and Roadway Solutions company.

We Specialize in Parking Lots everything to do with Asphalt, Sealcoating, Concrete, ADA Compliance, Drainage and Property Maintenance.

**OUR COMPANY!**

http://www.allpaving.com:80/    Go

95 captures
11 Jan 2002 - 11 Jun 2017

JAN **FEB** MAR
◀ **14** ▶
2013 **2015** 2016

↓ GET A QUOTE

All Paving is an all-inclusive Parking Lot and Roadways Solutions company focusing on securing and enhancing your property.

We provide Asphalt Pavement, Concrete, Sealcoating and ADA Compliance.

**OUR SERVICES**

All Paving works with Home Owners Associations, Commercial Properties and Property Managers throughout Florida.

Check out all the different industries we work with!

**INDUSTRIES**

All Paving provides information to all Property Managers that visit our site, so that they stay informed about the new changes in parking lot maintenance.

Feel Free to check out this Information!

**NEWS**

## We Have Worked With *Great* Companies







All Paving is the experienced choice for your asphalt paving or asphalt repair in Fort Lauderdale and Southern Florida. We specialize in commercial projects - from HOA's, condos, and apartments, to malls, shopping centers, restaurants, office buildings, industrial complexes, and sporting facilities - to make sure that your project gets done right and on time. We serve all of Southern Florida from our offices in Naples, Jupiter, and Fort Lauderdale. Asphalt paving and repairs is just the start of what



INTERNET ARCHIVE WaybackMachine
http://www.allpaving.com:80/ Go
95 captures
11 Jan 2002 - 11 Jun 2017
JAN FEB MAR
14
2013 2015 2016

...t our services pa... ance, parking lot ... and repair
...es, drainage projects, sealcoating, striping, ADA compliance, and new site developm... you h...
any questions or would like to talk about partnering on a project, please give us a call, we'd be happy to serve you.

GET A QUOTE →

**1-855-735-7623**
**1-855-SFL-Road**

Home Services Industries Blog About Contact

Copyright © 2015 All Paving & Sealcoating. All Rights Reserved. Privacy Policy | Terms of Use



## CORPORATE RESOLUTION

The undersigned, Secretary of ALL PAVING INC _____ ,
a corporation organized and existing under the laws of the State of FLORIDA _____ , with its principal
place of business located at 8919 NW 20TH MANOR _____
(referred to herein as the "Corporation"), hereby certifies to BANKUNITED, N.A. (referred to herein as
"BANK") that I am the duly elected and qualified secretary of the Corporation, and that at a meeting of the
Board of Directors of the Corporation duly called and held on 09/19/2013 _____ , at which a quorum
was present, the following resolutions were adopted and are now in full force and effect.

**RESOLVED, THAT** BANK be and is hereby designated a depository of this Corporation.

**FURTHER RESOLVED, THAT** BANK is authorized to receive and accept any and all checks, drafts,
notes, orders or other instruments for the payment of money payable to the Corporation, or to its order,
when bearing the apparent endorsement of this Corporation, which endorsement, if any, may be in writing,
by stamp, or otherwise affixed, with or without the designation or signature of any person purporting to be
an officer, agent or authorized signer of this Corporation (collectively referred to herein as "Authorized
Signer(s)"). BANK may receive any and all such checks, drafts, notes, orders or other instruments for the
payment of money, and BANK may conclusively assume, without inquiry, that all such deposits, and all
withdrawals, of the proceeds thereof, represent the exclusive property of this Corporation, and this
Corporation hereby ratifies, confirms, and approves any and all acts of BANK in receiving for deposit such
checks, notes, drafts, or other instruments for the payment of money for deposit from this Corporation and
permitting withdrawal of the proceeds thereof.

**FURTHER RESOLVED, THAT** any Authorized Signer(s) of this Corporation is hereby authorized to
endorse the name of this Corporation on any and all checks, drafts, notes, orders or other instruments for
the payment of money payable to the Corporation, which endorsement, if any, may be in writing, by stamp,
by facsimile, or otherwise affixed with or without the designation or signature of any person purporting to
be an Authorized Signer(s) of this Corporation, it being understood that all prior endorsements on such
items are guaranteed by this Corporation, regardless of the lack of an express guarantee in the endorsement
of this Corporation.

**FURTHER RESOLVED, THAT** BANK be and is hereby directed to honor, pay and charge to the
accounts of this Corporation, without inquiry as to the circumstances of the issuance or application of the
proceeds of checks, drafts, notes, orders or other instruments for the payment of money drawn against any
accounts of this Corporation with BANK when signed, whether by signature or facsimile thereof, on behalf
of the Corporation by any 1__ **[insert number required to sign]** Authorized Signer(s), or their successors
in office, even if payable to, endorsed or negotiated by or for the credit of any person signing such item or
any other officer or agent of this Corporation when signed by any of the Authorized Signer(s) of this
Corporation or such other person tendered in payment of such signer's individual obligation.

**FURTHER RESOLVED, THAT** any Authorized Signer(s) of this Corporation is authorized to enter into
a written lease for the purpose of renting, maintaining, or accessing a safe deposit box with BANK, and is
further authorized to terminate any said lease and surrendering any box leased to this Corporation by
BANK.

\*\*For Internal use only   \*104\*   Account Number: █████████

Exhibit

**7**

**FURTHER RESOLVED, THAT** any Authorized Signer(s) of this Corporation is authorized to implement treasury management and other general banking services, including, but not limited to, online banking, wire transfer, cash management and electronic services, and to enter into agreements with BANK relating to such services.

**FURTHER RESOLVED, THAT** this Corporation acknowledges and agrees that BANK may furnish, at its discretion, automated access devices (i.e. ATM/debit cards, check cards, credit cards) to any Authorized Signer(s) of this Corporation to facilitate the powers authorized by this Resolution.

**FURTHER RESOLVED, THAT** this Corporation does hereby grant to BANK a continuing lien for the amount of any and all liabilities and obligations of the Corporation to BANK and claims of every nature and description of BANK against the Corporation whether now existing or hereafter incurred, upon any and all money, securities and any and all property of the Corporation and the proceeds thereof now or hereafter actually or constructively held or received by or in transit, in any manner to or from BANK, its correspondents or agents, from or for this Corporation, whether for safekeeping, custody, pledge, transmission, collection or otherwise coming into possession of BANK in any way or placed in any safe deposit box leased by BANK to the Corporation. BANK is also hereby granted a continuing lien and right of setoff for the amount of said liabilities and obligations upon any and all deposits and credits of the Corporation with, and any and all claims of this Corporation against BANK at any time existing and BANK is hereby authorized at any time or times without notice to apply such deposits or credits or any part thereof to such liabilities or obligations and in such amounts as BANK may elect although such liabilities or obligations may be contingent or unmatured and whether any collateral therefor is deemed adequate or not.

**FURTHER RESOLVED, THAT** each of the foregoing Resolutions and the authority conferred thereby shall remain in full force and effect until revoked or modified by written notice actually received by BANK at its office where the account of the Corporation is maintained and signed by one purporting to be the Secretary or Assistant Secretary of the Corporation. The Secretary, Assistant Secretary or any other officer of this Corporation be and is authorized and directed to furnish BANK with a certified copy of these resolutions, the names and specimen signatures of the person(s) named herein, and such persons from time to time holding the positions named herein.

**FURTHER RESOLVED, THAT** this Corporation agrees to be bound by all rules and regulations set forth in BANK'S applicable disclosure statements, agreements and schedules of fees, as same may be amended from time to time, or other agreement received by this Corporation from BANK with the same force and effect as if each and every term thereof were set forth in full herein and made a part hereof.

**FURTHER RESOLVED, THAT** this Corporation agrees to indemnify and hold Bank and its officers, directors, employees, parents, subsidiaries, affiliates and their respective successors and assigns harmless from and against any and all claims, demands, losses, charges, expenses, legal fees, costs and liabilities of whatever kind or description, and lawsuits or legal proceedings, including, without limitation, fees and disbursements of legal counsel incurred by Bank in any action or proceeding, without regard to the merit or lack of merit thereof, arising out of or related in any way to the matters set forth in this Resolution.

**FURTHER RESOLVED, THAT** BANK is authorized to deduct from the accounts of this Corporation any and all applicable and then current fees and charges for any and all services rendered to this Corporation by BANK.

\*\*For Internal use only  \*104\*  Account Number: ███████

I further certify that the following are the names and specimen signatures of the Authorized Signer(s) and that each presently holds the title or designation indicated and has full authority for all acts noted herein.

| Name | Title | Signature |
|---|---|---|
| ELIZABETH DALY | PRESIDENT | |
| DAREN DALY | VICE PRESIDENT | |
| PATRICK DALY | VICE PRESIDENT | |
| | | |
| | | |

I further certify that the Board of Directors of the Corporation has, and at the time of adoption of this Resolution had, full power and authority to adopt the foregoing Resolutions and to confer the powers granted herein and that there is no provision in the charter or by-laws of this Corporation limiting the power of the Board of Directors to pass the foregoing resolutions and that the same are in conformity with the provision of said charter and by-laws.

**IN WITNESS WHEREOF,** I have subscribed my name as Secretary of the Corporation and affixed the seal of said Corporation hereto this _18_ day of _SEPTEMBER_, 20_15_, and I do further acknowledge on behalf of the Corporation that the foregoing resolutions constitute an agreement by the Corporation with BANK in respect to the matters set forth herein.

Seal:

Name PATRICK DALY

Title (Secretary or Assistant Secretary)

**For Internal use only  *104*  Account Number:

(Rev02/12)

 **BankUnited**

## BENEFICIAL OWNERSHIP CERTIFICATION

This Certification of the Beneficial Owner(s) of ALL PAVING, INC. _____ (the

"Depositor"), a business entity organized under the laws of FLORIDA _____ , is made as of

09/18/2015 _____ . For purposes of this Certification, the term Beneficial Owner will be deemed to

mean an individual (a natural person), either directly or indirectly, with a 10% or greater ownership

interest in the Depositor. I, being the duly authorized officer of the Depositor, hereby certify to

BankUnited, N.A. (the "Bank") under penalties of perjury that:

1.  The true and complete name, Social Security number, date of birth, country of citizenship, street
    address (including city and country) and ownership interest of each Beneficial Owner is as
    follows*:

|  |  | % Ownership |
|---|---|---|
| Name: ELIZABETH DALY | SSN: ▮▮▮ | 75 |
| Date of Birth: ▮▮ 1967 | Citizenship: US | ☑ Direct |
| Address: 8919 NW 20TH MANOR  CORAL SPRINGS, FL 33071 | | ☐ Indirect |

| Name: DAREN DALY | SSN: ▮▮▮ | 12.5 |
|---|---|---|
| Date of Birth: ▮▮ 1986 | Citizenship: US | ☑ Direct |
| Address: 8919 NW 20TH MANOR  CORAL SPRINGS, FL 33071 | | ☐ Indirect |

| Name: PATRICK DALY | SSN: ▮▮▮ | 12.5 |
|---|---|---|
| Date of Birth: ▮▮ 1966 | Citizenship: US | ☑ Direct |
| Address: 8919 NW 20TH MANOR  CORAL SPRINGS, FL 33071 | | ☐ Indirect |

| Name: _____ | SSN: _____ | _____ |
|---|---|---|
| Date of Birth: _____ | Citizenship: _____ | ☐ Direct |
| Address: _____ | | ☐ Indirect |

| Name: _____ | SSN: _____ | _____ |
|---|---|---|
| Date of Birth: _____ | Citizenship: _____ | ☐ Direct |
| Address: _____ | | ☐ Indirect |

(Rev. 10/14)

Exhibit

**8**

 **BankUnited**

2. No other individual has an undisclosed ownership interest of 10% or more in the Depositor.

3. Written notice of any change in the beneficial ownership of the Depositor will be immediately sent to the Bank to its office where the Depositor's account is maintained. This notice will be signed by a duly authorized officer of the Depositor as reflected in the Bank's records.

4. The undersigned accept full responsibility that the foregoing information is true, accurate and complete.

   * Include attachments of organizational charts and/or related information in support of identifying the ultimate beneficial owner, if applicable.

**IN WITNESS WHEREOF,** the duly authorized officer of the Depositor has executed this Beneficial Ownership Certification as of the date first written above.

☐ Check here if there are no Beneficial Owners (natural persons), either directly or indirectly, with a 10% or greater ownership interest in the Depositor.

_____          ELIZABETH DALY, President          09/18/2015
(Signature)                      (Print Name, Title)                      (Date)

(Rev. 10/14)

**CAT Financial**

**CREDIT APPLICATION**
Caterpillar Financial Services Corporation
Caterpillar Financial Commercial Account Corporation
Phone: (800) 651-0567    Fax: (615) 341-5925
Email: Credit.Department@cat.com

Check all that apply. I am financing:
- ☑ Equipment from a Cat Dealer
- ☐ Equipment from another party or refinance
- ☐ Parts, service, attachments or renting equipment from a Cat Dealer with Commercial Account

I have previously applied with Cat Financial for:
- ☑ Equipment Financing
- ☑ Commercial Account to pay for parts, service, attachments or to rent equipment from a Cat Dealer
- ☐ N/A

**SECTIONS 1-3 ARE REQUIRED FOR ALL CUSTOMERS**

### ① CUSTOMER

Exact Business Name __All Paving Inc.__ DBA (if any) _____

Type of Business: ☑ Corporation ☐ Limited Liability Co ☐ General Partnership ☐ Limited Partnership ☐ Sole Proprietor ☐ Municipality ☐ Trust ☐ Other

Description of Business __Asphalt Paving__

Primary Contact Name __Elizabeth Daly__ Title __Owner__ Phone# __1-855-735-ROAD__ Email __Elizabethe oilpaving.com__

Physical Address __5121 Ehrlich Rd__ City __Tampa__ County __Hillsborough__ State/Zip __FL, 33624__

Billing Address (if different) __5121 Ehrlich Rd__ City __Tampa__ County __Hillsborough__ State/Zip __FL, 33624__

Phone# __1-855-735-ROAD__ Fax# __—__ Business Start Date __2012__ Years as Owner of this Business __3__

Federal Tax ID Number _____ State Incorporated __FL__ Sales Tax Exempt ☐ Yes (please attach certificate) ☐ No

Machine Fleet Size __15__

Prior bankruptcy? ☑ No ☐ Personal ☐ Current Business ☐ Prior Business

Active liens or judgments? ☑ No ☐ Liens ☐ Judgments

### ② OWNERSHIP: Provide copy of government issued ID for all owners completing this section

1) Name __Elizabeth Daly__ Date of Birth __1967__ SSN _____ % of Ownership __75__% Net Worth _____

Address __8819 Oso Loft Slover__ City __Coal Springs__ State/Zip __FL, 55004__ Annual Income __52,000__

2) Name __Patrick Day__ Date of Birth __1966__ SSN _____ % of Ownership __124__% Net Worth _____

Address __8827 NW 30th Main__ City __Coal Springs__ State/Zip __FL, 33094__ Annual Income __86,000__

*For more than 2 owners, complete OWNERSHIP section and sign an additional Credit Application.*

### ③ REFERENCES

| | Phone # | Contact Name | Account # | Average Balance |
|---|---|---|---|---|
| Primary Bank (Checking Account Specific) | | | | |
| BB&T | 1-800-726-5778 | Sonia Kroyd | | |
| Additional (Bank/Trade/Equipment Rental/Bonding) | | | | |
| 1) Berger Construction | 1-800-269-9402 | Karen | | |
| 2) Sunbelt Rentals | 1-800-667-9328 | | | |
| 3) Hertz | 1-888-777-2700 | | | |

### ④ COMPLETE if you are financing PARTS, SERVICE, ATTACHMENTS or RENTING equipment from a Cat Dealer with Commercial Account

Requesting a revolving credit limit range of (select ONE): ☐ $_____ ☐ $25,000 or less ☐ $25,000-$75,000 ☐ $75,000 or more (see FINANCIAL section below)

Billing preference (select ONE or statement billing will apply):

☐ STATEMENT BILLING: Receive one statement monthly that covers all transactions made during that period. A minimum payment of 10% (revolving) of the account balance plus interest is due each payment cycle, or pay in full without interest charges. Rental charges are due in full by the due date. As with all statement billing methods payments are applied to the oldest outstanding balance.

☐ INVOICE BILLING: Immediately receive a separate invoice Bill that mirrors the dealer invoice for each transaction you make, plus receive a monthly summary of all paid and open invoices. The full payment of the invoice is due on the stated terms.

Name(s) of individual(s) authorized to charge on account: 1) Name _____ 2) Name _____

*Contact Credit.Department@cat.com to request additional authorized users.*

### FINANCIAL: Attach the following if financing exceeds $350,000 for equipment purchases or is over $75,000 for a Commercial Account

Financial statements for the last 2 fiscal year-ends, latest interim statements and comparable interims from prior year (if fiscal year-end is over 120 days), and a detailed list of work on hand
*Additional financial information may be required.*

REVISED 2013

**Exhibit 9**

## INDUSTRY SPECIFICS

**FORESTRY** – Attach a list of equipment owned with make, model, year, s/n, lender and balance owing.

1. Number of crews _____ 2. Avg. monthly revenues $_____ 3. Avg. monthly expenses $_____
4. Do you own the timber you normally harvest? ☐ Yes ☐ No
5. Primary Customer Names

| | Length of Relationship | Is there a contract? |
|---|---|---|
| a. _____ | _____ | ☐ Yes ☐ No |
| b. _____ | _____ | ☐ Yes ☐ No |

**ENGINE / GENERATOR SET** (select ONE):
- ☐ Mobile and mounted on vehicle or trailer.
  - Assignment of title to Cat Financial will be required.
  - Attach copy of title if you own trailer.
- ☐ Fixed and fastened to land/building.
  - Attach a completed engine utilization form.
- ☐ Pallet/skid/pad mounted (not fixed to the property)

## VOCATIONAL TRUCKS

1. Products Hauled _____ 2. Fleet size?_____
3. Years Operating _____ Years Owning _____
4. Primary Customer Names

| | Length of Relationship | Is there a contract? |
|---|---|---|
| a. _____ | _____ | ☐ Yes ☐ No |
| b. _____ | _____ | ☐ Yes ☐ No |

**HAZMAT** – COMPLETE this section and sign below for EVERY truck transaction.

Do you haul HAZMAT? ☐ Yes* ☐ No
*If hauling HAZMAT, attach a completed HAZMAT questionnaire and proof of insurance. Minimum environmental liability coverage required from an acceptable insurer.

## NOTICES

**Definitions:** The terms "you" and "your" will refer to the person applying for financing, each Guarantor and each Signatory signing this credit application. The terms "we", "us" or "our" will refer to Caterpillar Financial Services Corporation ("CFSC") and/or Caterpillar Financial Commercial Account Corporation ("CFCAC" and, together with CFSC, the "Cat Financial Companies", either individually or collectively, as applicable. Collectively, the Cat Financial Companies, Caterpillar Inc. and their affiliates and subsidiaries are referred to herein as the "Caterpillar Companies".

**Representations and warranties:** You represent that the information provided by you in this credit application (i) is true, correct and complete and (ii) is provided for the purpose of you obtaining credit from us.

**Privacy Notice:** You authorize us, or our designee, to investigate or obtain from other Caterpillar Companies, sellers of Caterpillar products (each a "Dealer"), banks, consumer reporting agencies, financial institutions, merchants, customers or any other person or entity any personal or business information related to you that we may deem appropriate, including but not limited to consumer reports and credit histories, for the use described herein. You authorize and instruct each such person or entity to furnish, share or otherwise make accessible to us any such information in their possession. We may use and rely upon such information, and any information provided in this credit application, (a) to make a credit decision to extend credit now or in the future pursuant to a subsequent application or request, (b) to continue any previously provided credit, (c) to review your account, (d) to assist in any collection activity, (e) to otherwise investigate your credit, (f) to improve or market Caterpillar products and services, and (g) to share such information with any other person or entity, including but not limited to the Caterpillar Companies, Dealers, consumer reporting agencies, financial institutions, and merchants.

This application for credit is solely from us. A decision to grant or deny business credit by CFSC will be made by CFSC, and a decision to grant or deny credit by CFCAC will be made by CFCAC. We may, in our sole discretion, refuse to extend business credit, goods, or services to you and may terminate any such credit extended at any time. Any references to a requested amount of credit in this credit application will not be deemed a limitation of liability by you. You understand and agree that any credit granted by us to you will be governed by the provisions and conditions set forth in CFCAC's Customer Agreement (or similarly titled) between us where granted by CFCAC or the applicable agreements between us where granted by CFSC.

You acknowledge that this credit application is for business customers only (including sole proprietorships) and credit provided by us in connection with this credit application may not be used to acquire equipment or services for personal, household or family purposes. You acknowledge that you have read and fully understand the terms and conditions contained in this credit application.

The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning these creditors is the FTC Regional Office for the region in which the Cat Financial Companies operate or the Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.

If your application for business credit is denied, you have the right to a written statement of the specific reasons for the denial. To obtain the statement, contact us at the applicable address below within 60 days from the date you are notified of our decision. We will send you a written statement of the reasons for the denial within 30 days from receiving your request for the statement.

Caterpillar Financial Services Corporation, Attn: Credit Manager, 2120 West End Ave., P.O. Box 340001, Nashville, TN 37203

## SIGNATURES

**Required signatures:** If you are a legal entity (e.g., corporation, limited liability company or limited liability partnership), an authorized person must sign below on your behalf in addition to each owner listed in this credit application. If you are a partnership or a sole proprietorship, each owner must sign below.

Authorized Signature _Elizabeth Day_     Date _9/20/2015_

Printed Name _Elizabeth Day_     Title _Owner_

**Ownership** (To be completed by every owner identified in the OWNERSHIP Section of this Application; ID required)

1) Signature _Elizabeth Day_   Printed Name _Elizabeth Day_   Date _9/20/2015_

2) Signature _Patrick Day_   Printed Name _Patrick Day_   Date _9/20/2015_

## TO BE COMPLETED BY A CATERPILLAR REPRESENTATIVE OR CAT DEALER

Identity verified for all signatories listed above ☐ Yes ☐ No     Identification attached, if applying with Cat Financial Commercial Account ☐ Yes ☐ No

VOCATIONAL TRUCK / ENGINE / GEN SET: application number required for every transaction _____. Attach truck and body build sheets for vocational trucks.

**KOMATSU FINANCIAL**

## SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO. _____

| Insurance Coverage | Buyer Place of Business and Other Buyer Information |
|---|---|
| **LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.** | IF BUYER'S ACTUAL CHIEF PLACE OF BUSINESS (CHIEF EXECUTIVE OFFICE IF MORE THAN ONE PLACE OF BUSINESS) IS IN A STATE OTHER THAN STATE WHERE THE PROPERTY IS LOCATED (AS SET FORTH ON PAGE 1), SPECIFY ACTUAL CHIEF PLACE OF BUSINESS. |
| Physical Damage Insurance Covering The Property Is Required. | Physical Location: |
| BUYER HAS OBTAINED INSURANCE THROUGH THE INSURANCE AGENCY LISTED BELOW OR ON FORM KF543R, SUBMITTED WITH THIS CONTRACT. | |
| Insurance Agency | BUYER DOES NOT HAVE PLACES OF BUSINESS IN MORE THAN ONE COUNTY IN THE STATE WHERE PROPERTY IS LOCATED. |
| | THIS SALE IS CONTINGENT UPON FINANCING ON TERMS WHICH ARE SATISFACTORY TO THE PARTIES. |
| Contact:<br>Phone# | IF DATE OF DELIVERY IS DIFFERENT THAN EFFECTIVE DATE SHOWN BELOW, SHOW ACTUAL DELIVERY DATE: |

| Partner Names and Addresses (if applicable) | | |
|---|---|---|
| Name | Address | Tax ID |

**Delinquency Charge:** After maturity, each installment shall bear charges at the highest rate permitted by law, but not to exceed 1.5% per month. Buyer also agrees to pay all expenses, including reasonable attorneys' fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this contract.

**Security Interest:** In order to secure payment of the indebtedness contained herein or incurred hereunder, Seller hereby retains, and Buyer hereby grants, a purchase money security interest under the Uniform Commercial Code in and to the above described property sold hereunder, together with all replacements, substitutions, additions, attachments, repairs, accessions and proceeds, including amounts payable under any insurance policies with respect thereto. Buyer hereby authorizes Seller to file one or more financing statements and/or a carbon or reproduction of this contract as a financing statement. Buyer hereby authorizes Seller or its agent or assigns to sign and execute on its behalf any and all necessary UCC-1 forms to perfect the security interest herein granted to Seller.

**Location of Property:** Buyer and Seller agree that regardless of the manner of affixation, the property shall remain personal property and not become part of the real estate. Except as permitted by Paragraph 7, Buyer agrees to keep the property at the location set forth herein, and will notify Seller promptly in writing of any change in the location of the property within such State, but will not remove the property from such State without the prior written consent of Seller (except that in the State of Pennsylvania, the property will not be moved from the above location without such prior written consent).

**ENTIRE AGREEMENT:** BUYER agrees that this contract including the ADDITIONAL TERMS AND CONDITIONS PRINTED ON Page 3-5 hereof, which he has read and to which he agrees, contains the entire agreement relating to the conditional sale of the property and supersedes all previous contracts and agreements between Buyer and Seller relating to the order or sale of the property. This contract is not binding upon Seller, unless signed by the manager of Seller or owner.

**NOTICE TO BUYER: 1. Do not sign this contract before you read it or if it contains blank spaces. 2. You are entitled to an exact and completely filled-in copy of the contract you sign. 3. Under law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; and (c) to require, under certain conditions, a resale of the property if repossessed. 4. If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request. 5. Keep this contract to protect your legal rights.**

BUYER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT SIGNED BY SELLER

| | |
|---|---|
| Buyer:    ALL PAVING, INC. | Effective Contract Date:        11/03/2015 |
| By: *Elizabeth D.*    Title *Owner* | Salesman's Signature: |
| Co-Signer: *[signature]*    *President* | Signature For Seller Approval: |
| By: *[signature]*    Title: | |

**Exhibit 10**

## APPLICATION FOR REGISTRATION OF FICTITIOUS NAME

REGISTRATION# G15000112474

**Fictitious Name to be Registered:** ALL PAVING

**Mailing Address of Business:**     8919 NW 20TH MANOR
CORAL SPRINGS, FL  33071

**Florida County of Principal Place of Business:** BROWARD

**FEI Number:** 45-4543293

**FILED**
**Nov 04, 2015**
**Secretary of State**

**Owner(s) of Fictitious Name:**

ALL PAVING, INC.
8919 NW 20TH MANOR
CORAL SPRINGS, FL  33071
Florida Document Number: P13000077541
FEI Number: 46-3704275

ALL PAVING AND SEALCOATING LLC
8919 NW 20TH MANOR
CORAL SPRINGS, FL  33071
Florida Document Number: L12000010329
FEI Number: 45-4329388

I the undersigned, being an owner in the above fictitious name, certify that the information indicated on this form is true and accurate. I further certify that the fictitious name to be registered has been advertised at least once in a newspaper as defined in Chapter 50, Florida Statutes, in the county where the principal place of business is located.  I understand that the electronic signature below shall have the same legal effect as if made under oath and I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s. 817.155, Florida Statutes.

| ELIZABETH DALY | 11/04/2015 |
|---|---|
| Electronic Signature(s) | Date |

**Certificate of Status Requested ( )**     **Certified Copy Requested ( )**

Exhibit

**11**

All Paving, Inc.

TRANSACTION REPORT

January - December 2015

| DATE | TRANSACTION TYPE | NUM | NAME | MEMO/DESCRIPTION | AMOUNT | BALANCE |
|------|------------------|-----|------|-----------------|--------|---------|
| Construction Income | | | | | | |
| 09/23/2015 | Deposit | | | | 2,924.00 | 2,924.00 |
| 10/07/2015 | Invoice | 1038 | FirstService Residential:15-09-239 Huntington Pointe 2 | Concrete Slab | 89.74 | 3,013.74 |
| 10/07/2015 | Invoice | 1038 | FirstService Residential:15-09-239 Huntington Pointe 2 | Concrete Driveway | 660.26 | 3,674.00 |
| 10/08/2015 | Invoice | 1036 | Jupiter Village Townhomes:15-09-250 Jupiter Village Asphalt Repairs | Asphalt Repairs | 1,450.00 | 5,124.00 |
| 10/12/2015 | Invoice | 1038 | FirstService Residential:15-09-239 Huntington Pointe 2 | Concrete Driveway | 4,857.74 | 9,981.74 |
| 10/12/2015 | Invoice | 1038 | FirstService Residential:15-09-239 Huntington Pointe 2 | Concrete Slab | 660.26 | 10,642.00 |
| 10/15/2015 | Invoice | 1030 | Blue Lake Apartments:15-07-170 Blue Lake Villas | Pavement Markings | 2,197.80 | 12,839.80 |
| 10/15/2015 | Invoice | 1030 | Blue Lake Apartments:15-07-170 Blue Lake Villas | Parallel Parking Areas | 7,560.00 | 20,399.80 |
| 10/15/2015 | Invoice | 1030 | Blue Lake Apartments:15-07-170 Blue Lake Villas | Milling and Paving | 37,911.30 | 58,311.10 |
| 10/22/2015 | Invoice | 1049 | Ambassador Management:15-01-014 Quatraine 3 HOA | 2 Driveways | 1,500.00 | 59,811.10 |
| 10/22/2015 | Invoice | 1049 | Ambassador Management:15-01-014 Quatraine 3 HOA | 2 Driveways | 1,600.00 | 61,411.10 |
| 10/22/2015 | Invoice | 1050 | Specialized Condo Management:15-07-197 Meadowbrook 6 | Pavement Markings | 1,050.00 | 62,461.10 |
| 10/30/2015 | Invoice | 1048 | FirstService Residential:15-10-258 Lighthouse Cove 2 | Sinkhole Repairs | 3,100.00 | 65,561.10 |
| 11/12/2015 | Invoice | 1026 | FirstService Residential:15-10-273 Venetian Isles Pavers | Paver brick Sealing | 487.00 | 66,048.10 |
| 11/12/2015 | Invoice | 1026 | FirstService Residential:15-10-273 Venetian Isles Pavers | Additional Demo | 408.10 | 66,456.20 |
| 11/12/2015 | Invoice | 1026 | FirstService Residential:15-10-273 Venetian Isles Pavers | Paver Brick Installation | 3,487.90 | 69,944.10 |
| 11/23/2015 | Invoice | 1031 | Baywood Village III:15-07-169 Speed Tables | Permit Fees | 125.00 | 70,069.10 |
| 11/23/2015 | Invoice | 1031 | Baywood Village III:15-07-169 Speed Tables | Expediting | 350.00 | 70,419.10 |
| 11/23/2015 | Invoice | 1031 | Baywood Village III:15-07-169 Speed Tables | Speed Tables | 5,200.00 | 75,619.10 |
| 12/09/2015 | Invoice | 1026 | FirstService Residential:15-10-273 Venetian Isles Pavers | Paver brick Sealing | 1,303.00 | 76,922.10 |
| 12/09/2015 | Invoice | 1026 | FirstService Residential:15-10-273 Venetian Isles Pavers | Paver Brick Installation | 9,332.10 | 86,254.20 |
| 12/09/2015 | Invoice | 1026 | FirstService Residential:15-10-273 Venetian Isles Pavers | Additional Demo | 1,091.90 | 87,346.10 |
| 12/15/2015 | Invoice | 1052 | SE Mechanical Contractors:15-10-257 BW West Side | Asphalt Repairs | 15,570.00 | 102,916.10 |
| 12/15/2015 | Invoice | 1051 | SE Mechanical Contractors:15-10-256 BW East Side | Asphalt Repairs and Rock Work | 12,300.00 | 115,216.10 |
| 12/18/2015 | Deposit | | | | 19,902.00 | 135,118.10 |
| 12/29/2015 | Invoice | 1032 | Villas Del Mar:15-12-336 VdM A/R | Asphalt Repairs | 1,050.00 | 136,168.10 |
| 12/31/2015 | Invoice | 1035 | Mary Andrews:15-12-317 Pizza Hut Pete Valls | Asphalt Repairs | 2,000.00 | 138,168.10 |
| **Total for Construction Income** | | | | | **$138,168.10** | |
| **TOTAL** | | | | | **$138,168.10** | |

Exhibit

**12**

# All Paving, Inc.

## TRANSACTION REPORT

### January - December 2015

| DATE | TRANSACTION TYPE | NUM | NAME | MEMO/DESCRIPTION | AMOUNT | BALANCE |
|------|------------------|-----|------|-----------------|--------|---------|
| *Unapplied Cash Payment Income* | | | | | | |
| 10/14/2015 | Payment | 1133 | Ambassador Management:15-01-014 Quatraine 3 HOA | | 1,500.00 | 1,500.00 |
| 10/17/2015 | Payment | 1767 | Ambassador Management:15-01-014 Quatraine 3 HOA | | 1,600.00 | 3,100.00 |
| 10/22/2015 | Invoice | 1049 | Ambassador Management:15-01-014 Quatraine 3 HOA | 15-01-014A Q3 Driveways | -1,500.00 | 1,600.00 |
| 10/22/2015 | Invoice | 1049 | Ambassador Management:15-01-014 Quatraine 3 HOA | 15-01-014A Q3 Driveways | -1,600.00 | 0.00 |
| 11/04/2015 | Payment | 000222 | FirstService Residential:15-10-273 Venetian Isles Pavers | | 4,383.00 | 4,383.00 |
| 11/12/2015 | Invoice | 1026 | FirstService Residential:15-10-273 Venetian Isles Pavers | 15-10-273 | -4,383.00 | 0.00 |
| 11/19/2015 | Payment | 6542 | Cypress Island Marina:15-11-286 Cypress Island Marina | | 12,300.00 | 12,300.00 |
| 12/01/2015 | Payment | 1123 | Rainberry Lake:15-11-314 Rec Area | | 3,120.00 | 15,420.00 |
| 12/03/2015 | Payment | 5423 | Las Olas Yacht Club:15-12-322 Las Olas Yacht Club | | 2,500.00 | 17,920.00 |
| 12/04/2015 | Deposit | | FirstService Residential:15-10-273 Venetian Isles Pavers | | 4,383.00 | 22,303.00 |
| 12/21/2015 | Payment | 1571 | Engecon Construction:15-12-345 1417 N. Tamarind Ave | | 1,263.00 | 23,566.00 |
| 12/24/2015 | Deposit | | SE Mechanical Contractors | | 27,870.00 | 51,436.00 |
| 12/29/2015 | Payment | 000032 | Huntington Pointe:15-12-344 Huntington Pointe | | 1,150.00 | 52,586.00 |
| **Total for Unapplied Cash Payment Income** | | | | | **$52,586.00** | |
| **TOTAL** | | | | | **$52,586.00** | |

Bond No.    1153

# Document A312™ – 2010

### Conforms with The American Institute of Architects AIA Document 312

## *Performance Bond*

**CONTRACTOR:**
*(Name, legal status and address)*

All Paving & Sealcoating, LLC
6714 NW 20th Avenue

Fort Lauderdale, FL  33309

**OWNER:**
*(Name, legal status and address)*
Bay Colony Protective Association
1 North Compass Drive
Fort Lauderdale, FL  33308

**CONSTRUCTION CONTRACT**
Date:

Amount: $ 863,481.00

Description:
*(Name and location)*
Bay Colony Protective Association Paving and Road Beautification Project

**SURETY:**
*(Name, legal status and principal place of business)*
United States Fire Insurance Company
305 Madison Avenue
Morristown, NJ  07962
**Mailing Address for Notices**

305 Madison Avenue
Morristown, NJ  07962

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

Eight Hundred Sixty Three Thousand Four Hundred Eighty One Dollars and 00/100

**BOND**
Date:
*(Not earlier than Construction Contract Date)*

Amount: $ 863,481.00          Eight Hundred Sixty Three Thousand Four Hundred Eighty One Dollars and 00/100

Modifications to this Bond:    ☒ None        ☐ See Section 16

**CONTRACTOR AS PRINCIPAL**
Company:                         *(Corporate Seal)*

All Paving & Sealcoating, LLC

Signature: _____
Name
and Title:

**SURETY**
Company:                         *(Corporate Seal)*

United States Fire Insurance Company

Signature: _____
Name
and Title:  Shawn A. Burton  Attorney-in-Fact

*(Any additional signatures appear on the last page of this Performance Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**
Nielson
8000 Governors Square Blvd. #101
Miami Lakes, FL  33016

305-722-2663

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*

```
EXHIBIT
13
```

S-1852/AS 8/10

§ 1 The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

§ 2 If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except when applicable to participate in a conference as provided in Section 3.

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise after

.1     the Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the Surety may, within five (5) business days after receipt of the Owner's notice, request such a conference. If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;

.2     the Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and

.3     the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

§ 4 Failure on the part of the Owner to comply with the notice requirement in Section 3.1 shall not constitute a failure to comply with a condition precedent to the Surety's obligations, or release the Surety from its obligations, except to the extent the Surety demonstrates actual prejudice.

§ 5 When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

§ 5.1 Arrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract;

§ 5.2 Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;

§ 5.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and a contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Section 7 in excess of the Balance of the Contract Price incurred by the Owner as a result of the Contractor Default; or

§ 5.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1     After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, make payment to the Owner; or

.2     Deny liability in whole or in part and notify the Owner, citing the reasons for denial.

§ 6 If the Surety does not proceed as provided in Section 5 with reasonable promptness, the Surety shall be deemed to be in default on this Bond seven days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Section 5.4, and the Owner refuses the payment or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

§ 7 If the Surety elects to act under Section 5.1, 5.2 or 5.3, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. Subject to the commitment by the Owner to pay the Balance of the Contract Price, the Surety is obligated, without duplication, for

    .1    the responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

    .2    additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Section 5; and

    .3    liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

§ 8 If the Surety elects to act under Section 5.1, 5.3 or 5.4, the Surety's liability is limited to the amount of this Bond.

§ 9 The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators, successors and assigns.

§ 10 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 11 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after a declaration of Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 12 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears.

§ 13 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

## § 14 Definitions

§ 14.1 Balance of the Contract Price. The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

§ 14.2 Construction Contract. The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and changes made to the agreement and the Contract Documents.

§ 14.3 Contractor Default. Failure of the Contractor, which has not been remedied or waived, to perform or otherwise to comply with a material term of the Construction Contract.

§ 14.4 Owner Default. Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

§ 14.5 Contract Documents. All the documents that comprise the agreement between the Owner and Contractor.

§ 15 If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

**§ 16** Modifications to this bond are as follows:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

| CONTRACTOR AS PRINCIPAL | SURETY |
|---|---|
| Company:          *(Corporate Seal)* | Company:          *(Corporate Seal)* |

Signature: _____          Signature: _____
Name and Title:                                              Name and Title:
Address                                                           Address

S-1852/AS 8/10

Bond No.    1153

THIS BOND ONLY COVERS CLAIMS OF SUBCONTRACTORS,
SUB-CONTRACTORS, SUPPLIERS AND LABORERS TO
THE EXTENT THE CONTRACTOR HAS BEEN PAID FOR THE
LABOR, SERVICES, OR MATERIALS PROVIDED BY SUCH
PERSONS.  THIS BOND DOES NOT PRECLUDE YOU FROM
SERVING A NOTICE TO THE OWNER OR FILING A CLAIM OF
LIEN ON THIS PROJECT. THIS IS WRITTEN PURSUANT TO
FLA. STATUTE 713.245.

# Document A312™ – 2010

## Conditional Payment Bond

Conforms with The American Institute of Architects AIA Document 312

**CONTRACTOR:**
*(Name, legal status and address)*

All Paving & Sealcoating, LLC
6714 NW 20th Avenue
Fort Lauderdale, FL  33309

**SURETY:**
*(Name, legal status and principal place of business)*

United States Fire Insurance Company
305 Madison Avenue
Morristown, NJ  07962
**Mailing Address for Notices**

305 Madison Avenue
Morristown, NJ  07962

This document has important legal
consequences. Consultation with
an attorney is encouraged with
respect to its completion or
modification.

Any singular reference to
Contractor, Surety, Owner or
other party shall be considered
plural where applicable.

**OWNER:**
*(Name, legal status and address)*

Bay Colony Protective Association
1 North Compass Drive
Fort Lauderdale, FL  33308

**CONSTRUCTION CONTRACT**
Date:

Amount: $ 863,481.00          Eight Hundred Sixty Three Thousand Four Hundred Eighty One Dollars and 00/100

Description:
*(Name and location)*
Bay Colony Protective Association Paving and Road Beautification Project

**BOND**
Date:

*(Not earlier than Construction Contract Date)*

Amount: $ 863,481.00          Eight Hundred Sixty Three Thousand Four Hundred Eighty One Dollars and 00/100

Modifications to this Bond:     [X] None        [ ] See Section 18

**CONTRACTOR AS PRINCIPAL**
Company:                        *(Corporate Seal)*

All Paving & Sealcoating, LLC

Signature: _____

Name
and Title:

**SURETY**
Company:                        *(Corporate Seal)*

United States Fire Insurance Company

Signature: _____

Name
and Title:  Shawn A. Burton    Attorney-in-Fact

*(Any additional signatures appear on the last page of this Payment Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**
Nielson
8000 Governors Square Blvd. #101
Miami Lakes, FL  33016
305-722-2663

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*

S-2149/AS 8/10

**§ 1** The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference, subject to the following terms.

**§ 2** If the Contractor promptly makes payment of all sums due to Claimants, and defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, then the Surety and the Contractor shall have no obligation under this Bond.

**§ 3** If there is no Owner Default under the Construction Contract, the Surety's obligation to the Owner under this Bond shall arise after the Owner has promptly notified the Contractor and the Surety (at the address described in Section 13) of claims, demands, liens or suits against the Owner or the Owner's property by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety.

**§ 4** When the Owner has satisfied the conditions in Section 3, the Surety shall promptly and at the Surety's expense defend, indemnify and hold harmless the Owner against a duly tendered claim, demand, lien or suit.

**§ 5** The Surety's obligations to a Claimant under this Bond shall arise after the following:

**§ 5.1** Claimants, who do not have a direct contract with the Contractor,

.1    have furnished a written notice of non-payment to the Contractor, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were, or equipment was, furnished or supplied or for whom the labor was done or performed, within ninety (90) days after having last performed labor or last furnished materials or equipment included in the Claim; and

.2    have sent a Claim to the Surety (at the address described in Section 13).

**§ 5.2** Claimants, who are employed by or have a direct contract with the Contractor, have sent a Claim to the Surety (at the address described in Section 13).

**§ 6** If a notice of non-payment required by Section 5.1.1 is given by the Owner to the Contractor, that is sufficient to satisfy a Claimant's obligation to furnish a written notice of non-payment under Section 5.1.1.

**§ 7** When a Claimant has satisfied the conditions of Sections 5.1 or 5.2, whichever is applicable, the Surety shall promptly and at the Surety's expense take the following actions:

**§ 7.1** Send an answer to the Claimant, with a copy to the Owner, within sixty (60) days after receipt of the Claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed; and

**§ 7.2** Pay or arrange for payment of any undisputed amounts.

**§ 7.3** The Surety's failure to discharge its obligations under Section 7.1 or Section 7.2 shall not be deemed to constitute a waiver of defenses the Surety or Contractor may have or acquire as to a Claim, except as to undisputed amounts for which the Surety and Claimant have reached agreement. If, however, the Surety fails to discharge its obligations under Section 7.1 or Section 7.2, the Surety shall indemnify the Claimant for the reasonable attorney's fees the Claimant incurs thereafter to recover any sums found to be due and owing to the Claimant.

**§ 8** The Surety's total obligation shall not exceed the amount of this Bond, plus the amount of reasonable attorney's fees provided under Section 7.3, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

**§ 9** Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any construction performance bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

§ 10 The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for the payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligation to make payments to, or give notice on behalf of, Claimants or otherwise have any obligations to Claimants under this Bond.

§ 11 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 12 No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the state in which the project that is the subject of the Construction Contract is located or after the expiration of one year from the date (1) on which the Claimant sent a Claim to the Surety pursuant to Section 5.1.2 or 5.2, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 13 Notice and Claims to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears. Actual receipt of notice or Claims, however accomplished, shall be sufficient compliance as of the date received.

§ 14 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

§ 15 Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor and Owner shall promptly furnish a copy of this Bond or shall permit a copy to be made.

§ 16 Definitions
§ 16.1 Claim. A written statement by the Claimant including at a minimum:
    .1   the name of the Claimant;
    .2   the name of the person for whom the labor was done, or materials or equipment furnished;
    .3   a copy of the agreement or purchase order pursuant to which labor, materials or equipment was furnished for use in the performance of the Construction Contract;
    .4   a brief description of the labor, materials or equipment furnished;
    .5   the date on which the Claimant last performed labor or last furnished materials or equipment for use in the performance of the Construction Contract;
    .6   the total amount earned by the Claimant for labor, materials or equipment furnished as of the date of the Claim;
    .7   the total amount of previous payments received by the Claimant; and
    .8   the total amount due and unpaid to the Claimant for labor, materials or equipment furnished as of the date of the Claim.

§ 16.2 Claimant. An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Construction Contract. The term Claimant also includes any individual or entity that has rightfully asserted a claim under an applicable mechanic's lien or similar statute against the real property upon which the Project is located. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

§ 16.3 Construction Contract. The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and all changes made to the agreement and the Contract Documents.

**§ 16.4 Owner Default.** Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

**§ 16.5 Contract Documents.** All the documents that comprise the agreement between the Owner and Contractor.

**§ 17** If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

**§ 18** Modifications to this bond are as follows:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

**CONTRACTOR AS PRINCIPAL**                                     **SURETY**
Company:                         *(Corporate Seal)*             Company:                                 *(Corporate Seal)*


Signature: _____             Signature: _____
Name and Title:                                                Name and Title:
Address                                                        Address

**POWER OF ATTORNEY**
**UNITED STATES FIRE INSURANCE COMPANY**
**PRINCIPAL OFFICE - MORRISTOWN, NEW JERSEY**

6705

**KNOW ALL MEN BY THESE PRESENTS**: That United States Fire Insurance Company, a corporation duly organized and existing under the laws of the state of Delaware, has made, constituted and appointed, and does hereby make, constitute and appoint:

*Ian A. Nipper, David Russell hoover, Joseph Penichet Nielson, Charles David Nielson, Charles Jackson Nielson, Shawn Alan Burton*

each, its true and lawful Attorney(s)-In-Fact, with full power and authority hereby conferred in its name, place and stead, to execute, acknowledge and deliver: Any and all bonds and undertakings of surety and other documents that the ordinary course of surety business may require, and to bind United States Fire Insurance Company thereby as fully and to the same extent as if such bonds or undertakings had been duly executed and acknowledged by the regularly elected officers of United States Fire Insurance Company at its principal office, in amounts or penalties not exceeding: **Seven Million, Five Hundred Thousand Dollars ($7,500,000).**

This Power of Attorney limits the act of those named therein to the bonds and undertakings specifically named therein, and they have no authority to bind United States Fire Insurance Company except in the manner and to the extent therein stated.

This Power of Attorney revokes all previous Powers of Attorney issued on behalf of the Attorneys-In-Fact named above and expires on January 1, 2016.

This Power of Attorney is granted pursuant to Article IV of the By-Laws of United States Fire Insurance Company as now in full force and effect, and consistent with Article III thereof, which Articles provide, in pertinent part:

Article IV, Execution of Instruments - Except as the Board of Directors may authorize by resolution, the Chairman of the Board, President, any Vice-President, any Assistant Vice President, the Secretary, or any Assistant Secretary shall have power on behalf of the Corporation:

(a) to execute, affix the corporate seal manually or by facsimile to, acknowledge, verify and deliver any contracts, obligations, instruments and documents whatsoever in connection with its business including, without limiting the foregoing, any bonds, guarantees, undertakings, recognizances, powers of attorney or revocations of any powers of attorney, stipulations, policies of insurance, deeds, leases, mortgages, releases, satisfactions and agency agreements;

(b) to appoint, in writing, one or more persons for any or all of the purposes mentioned in the preceding paragraph (a), including affixing the seal of the Corporation.

Article III, Officers, Section 3.11, Facsimile Signatures. The signature of any officer authorized by the Corporation to sign any bonds, guarantees, undertakings, recognizances, stipulations, powers of attorney or revocations of any powers of attorney and policies of insurance issued by the Corporation may be printed, facsimile, lithographed or otherwise produced. In addition, if and as authorized by the Board of Directors, dividend warrants or checks, or other numerous instruments similar to one another in form, may be signed by the facsimile signature or signatures, lithographed or otherwise produced, of such officer or officers of the Corporation as from time to time may be authorized to sign such instruments on behalf of the Corporation. The Corporation may continue to use for the purposes herein stated the facsimile signature of any person or persons who shall have been such officer or officers of the Corporation, notwithstanding the fact that he may have ceased to be such at the time when such instruments shall be issued.

**IN WITNESS WHEREOF**, United States Fire Insurance Company has caused these presents to be signed and attested by its appropriate officer and its corporate seal hereunto affixed this 5th day of August, 2015.

**UNITED STATES FIRE INSURANCE COMPANY**

*A. R. [signature]*

Anthony R. Slimowicz, Senior Vice President

State of New Jersey}
County of Morris    }

On this 5th day of August, 2015 before me, a Notary public of the State of New Jersey, came the above named officer of United States Fire Insurance Company, to me personally known to be the individual and officer described herein, and acknowledged that he executed the foregoing instrument and affixed the seal of United States Fire Insurance Company thereto by the authority of his office.



**SONIA SCALA**
**NOTARY PUBLIC OF NEW JERSEY**
**MY COMMISSION EXPIRES 3/25/2019**

*Sonia Scala*

Sonia Scala                                    (Notary Public)

I, the undersigned officer of United States Fire Insurance Company, a Delaware corporation, do hereby certify that the original Power of Attorney of which the foregoing is a full, true and correct copy is still in force and effect and has not been revoked.

**IN WITNESS WHEREOF**, I have hereunto set my hand and affixed the corporate seal of United States Fire Insurance Company on the    day of    , 20  .

**UNITED STATES FIRE INSURANCE COMPANY**



*Al D. [signature]*

Al Wright, Senior Vice President

# 2016 FLORIDA PROFIT CORPORATION ANNUAL REPORT

**DOCUMENT# P13000077541**

**FILED**
**Jan 15, 2016**
**Secretary of State**
**CC3424456332**

**Entity Name:** ALL PAVING, INC.

**Current Principal Place of Business:**

8919 NW 20TH MANOR
CORAL SPRINGS, FL 33071

**Current Mailing Address:**

8919 NW 20TH MANOR
CORAL SPRINGS, FL 33071 US

**FEI Number: 46-3704275**

**Certificate of Status Desired:** No

**Name and Address of Current Registered Agent:**

DALY, ELIZABETH
8919 NW 20TH MANOR
CORAL SPRINGS, FL 33071 US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

Electronic Signature of Registered Agent                                                    Date

**Officer/Director Detail :**

| | | | | |
|---|---|---|---|---|
| **Title** | P | | **Title** | VP |
| **Name** | DALY, ELIZABETH | | **Name** | DALY, DAREN |
| **Address** | 8919 NW 20TH MANOR | | **Address** | 8919 NW 20TH MANOR |
| **City-State-Zip:** | CORAL SPRINGS FL 33071 | | **City-State-Zip:** | CORAL SPRINGS FL 33071 |

| | |
|---|---|
| **Title** | VP |
| **Name** | DALY, PATRICK |
| **Address** | 8919 NW 20TH MANOR |
| **City-State-Zip:** | CORAL SPRINGS FL 33071 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: DAREN DALY                                    VICE PRESIDENT                    01/15/2016

Electronic Signature of Signing Officer/Director Detail                                                    Date

**Exhibit**
**14**



**Daren Daly**
9542346381
8:57 PM

Friday, May 20, 2016

Maria Postman just called, she's pissed off and now the President if the Board wants to speak to the owner (Pat) and doesn't want to deal with you anymore

9:38 AM    what am I supposed to do?

I will call her right now. My dad doesn't own All Paving. My mom does.
10:09 AM

well thy don't want to talk to you

10:14 AM    they

I just spoke to the president
10:42 AM

10:47 AM    and?

Saturday, May 21, 2016

Good Morning! I'm gonna buy
the tickets. Are you sure I can

Enter message

Exhibit
15



Titan Florida, LLC

# APPLICATION FOR BUSINESS CREDIT AND AGREEMENT
(ORIGINAL DOCUMENT MUST BE MAILED – FAXED COPIES MAY WARRANT DENIAL OF CREDIT)

455 Fairway Drive, Suite 200
Deerfield Beach, FL 33441
(954) 481-2800 or Fax (954) 421-0296

**Section I**  Date: 6/22/2016

Your Sales Representative, If Known: Jock Irvin

**Note: Failure to sign or fill out the application completely will cause delays.**

Legal business name (Applicant)
All Paving

Business street address (No P.O. boxes please)
6700 NW 20th Ave  Suite C

Business mailing address
P.O. Box 669105  Pompano Beach, FL 33066

| City | State | Zip | Years in business |
|---|---|---|---|
| Fort Lauderdale , FL | FL | 33309 | 5 |

| Phone | Mobile Phone | Fax No. | Contact email address |
|---|---|---|---|
| ( 954 )  933-2053 | ( ) | ( 954 )  933-1380 | Elizabeth@allpaving.com |

Check one ☐ Individual  ☐ Partnership (State of organization) _____  ☒ Corporation (State of organization) __Florida__

| Purchase Orders Required? | Are you tax-exempt? | IF YES, ATTACH TAX EXEMPTION CERTIFICATE CARD | Federal ID No. |
|---|---|---|---|
| ☒ Yes  ☐ No | ☐ Yes  ☒ No | | ▮▮▮4275 |

| Principal Bank | Branch | Phone No. | Account No. |
|---|---|---|---|
| Bank United | Coral Springs | ( 954-757-0729 | ▮▮▮▮ |

**Attach a current, audited financial statement.  If self-employed 3 years or less include 2 years of Federal Income Tax 1040 Forms.**

## Section II – Owners or Officers

| Name | Title | Social Security No. |
|---|---|---|
| Elizabeth Daly | Owner/ Tresurer | ▮▮▮▮ |

| Home address (No P.O. Boxes) | No. of Years | Home phone |
|---|---|---|
| 8919 NW 20th Manor  Coral Springs, FL | 5 | ( 954 755-5946 |

| Name | Title | Social Security No. |
|---|---|---|
| | | |

| Home address (No P.O. Boxes) | No. of Years | Home phone |
|---|---|---|
| | | ( ) |

## Section III

**Trade references: Please provide at least four building material references covering the number of years stated in business.**

| Name | City, State | Phone No. | Fax No. |
|---|---|---|---|
| Ranger Construction | West Palm Beach, FL | ( 561-784-3489 | ( 561-753-1650 |
| Bob's Barricades | West Palm Beach, FL | ( 954-525-6736 | ( 954-473-8737 |
| Barreiro Concrete | Miami, FL | ( 305-258-7004 | ( 305-258-1030 |
| | | ( ) | ( ) |

| 1. Have you or any officers of the company ever done business under another name and/or in a different state? If so, name and address : | ☐ Yes  ☒ No |
|---|---|
| 2. Have you or any officers of the company ever filed personal or corporate bankruptcy in the last 7 years? If so, when and where? | ☐ Yes  ☒ No |
| 3. Have you or any of the officers of the company ever done business with Titan before? When and under what name? | ☐ Yes  ☒ No |

The person(s) signing below (must be Owner or Officer) warrants and represents that he/she has the authority to enter into this Agreement on behalf of the Applicant has read and hereby agrees that the Agreement is subject to the terms and conditions listed on the reverse side, including the personal guaranty, which are incorporated, and an integral part of this Agreement. The signature(s) below constitute the acknowledgment of receipt of the terms and conditions, and that Applicant is bound to same even if such is not returned to Titan with the signed Agreement. Applicant agrees that a facsimile or electronic copy of the signature below shall have the same legal effect as an original signature.

| Applicants Signature (1) | Applicants Signature (2) |
|---|---|
| *Elizabeth Daly* | |
| Title  Owner | Title |
| Printed Name of signer  Elizabeth Daly | Printed Name of signer |
| Date of signature  6/22/2016 | Date of signature |

Exhibit
**16**



Flagler Construction Equipment, LLC
5210 Reese Road
Davie, FL 33314
☎ (954) 581 4744
Fax (954) 583 0318

# SALES CONTRACT & PURCHASE ORDER

| Contract | Date | Customer |
|---|---|---|
| ORD-04359-K9T0H6 | 6/27/2016 | 208844 |

| CUSTOMER: | SHIP TO: | SHIP VIA: |
|---|---|---|
| All Paving Inc.<br>Elizabeth Daly<br>6700 Nw 20th Ave, Suite C<br>Fort Lauderdale, FL 33309 | All Paving Inc.<br>Elizabeth Daly<br>6700 Nw 20th Ave, Suite C<br>Fort Lauderdale, FL 33309 | Customer Pick Up<br>Common Carrier<br>Other |
| Purchase Order: | | Delivery Date: |

Customer hereby orders the following described machinery ( the "Equipment") from Flagler Construction Equipment LLC, "SELLER". Upon acceptance by signature of an authorized officer of SELLER, this Purchase Order shall become a contract for purchase and sale of the goods upon the terms and conditions set forth below and on the reverse side of this Purchase Order. All sales F.O.B. SELLER's location above.

## DESCRIPTION OF MACHINERY ORDERED

| Quantity | Make | Model | Description | Serial Number | Purchase Price |
|---|---|---|---|---|---|
| 1 | Takeuchi | TB240R | COMPACT EXCAVATOR | 124001152 | $39,500.00 |
| 1 | WAIN-ROY | BKTECR58 | 18" HDM 30 BUCKET SN: 185405 | E125694 | |
| 1 | WAIN-ROY | COUPLERTB240 | COUPLER SN: 185386 | H125684 | |

DESCRIPTION OF TRADE-IN (See reverse side for customer bill of sale for trade-in)

| | | |
|---|---|---|
| Make | TOTAL | $39,500.00 |
| Model | Less Trade-in Allowance | |
| Year | PDI | |
| Serial Number | Freight (NonTaxable) | |
| Engine S/N | Subtotal | 39,500.00 |
| Attachments | County Tax | - |
| Amount of Encumbrance: | State Tax | 2,370.00 |
| Payable to: | Less Cash Down Payment | |
| Trade-ins F.O.B. Seller's Branch Location: | UNPAID CASH BALANCE | 41,870.00 |
| 5210 Reese Road, Davie, FL 33314 | Trade Payoff | |
| | Federal Excise Tax | - |

Cash on Delivery ✓   Finance    Other _____

Lender _____

Program _____

**TOTAL CASH BALANCE PAYABLE BY CUSTOMER**    **$41,870.00**

TERMS AND CONDITIONS OF SALE ON THE REVERSE SIDE ARE PART OF THIS PURCHASE ORDER

Recommended

By: _____
    Salesman

_____
Branch Manager

Accepted: Flagler Construction Equipment, LLC

By: _____

Title: _____    Date: _____

Customer:    All Paving Inc.

By: _Elizabeth Daly_ (signature)

Title: _Owner / Treasurer_

Guarantor: _____

FEI/SSN#: _____

Exhibit

17



P13 00007754 l

_____
(Requestor's Name)

_____
(Address)

_____
(Address)

_____
(City/State/Zip/Phone #)

☐ PICK-UP      ☐ WAIT      ☐ MAIL

_____
(Business Entity Name)

_____
(Document Number)

Certified Copies _____      Certificates of Status _____

Special Instructions to Filing Officer:

Office Use Only



600292956686

12/12/16--01025--004   **35.00



FILED
2016 DEC 12 AM 9: 35
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

Exhibit
**18**

## COVER LETTER

**TO:** Amendment Section
Division of Corporations

**NAME OF CORPORATION:** All Paving INC

**DOCUMENT NUMBER:** P13000077541

The enclosed *Articles of Amendment* and fee are submitted for filing.

Please return all correspondence concerning this matter to the following:

Daren Daly
_____
Name of Contact Person

All Paving Inc
_____
Firm/ Company

10248 NW 62nd Court
_____
Address

Parkland, FL 33076
_____
City/ State and Zip Code

Daren@allpaving.com
_____
E-mail address: (to be used for future annual report notification)

For further information concerning this matter, please call:

Daren Daly                                    at ( 954 )   933-2053
_____
Name of Contact Person          Area Code & Daytime Telephone Number

Enclosed is a check for the following amount made payable to the Florida Department of State:

■ $35 Filing Fee    ☐$43.75 Filing Fee &    ☐$43.75 Filing Fee &    ☐$52.50 Filing Fee
                       Certificate of Status      Certified Copy            Certificate of Status
                                                  (Additional copy is       Certified Copy
                                                  enclosed)                 (Additional Copy
                                                                            is enclosed)

**Mailing Address**                    **Street Address**
Amendment Section                      Amendment Section
Division of Corporations               Division of Corporations
P.O. Box 6327                          Clifton Building
Tallahassee, FL 32314                  2661 Executive Center Circle
                                       Tallahassee, FL 32301

**Articles of Amendment**
**to**
**Articles of Incorporation**
**of**

All Paving, Inc.

<u>(Name of Corporation as currently filed with the Florida Dept. of State)</u>

P13000077541

(Document Number of Corporation (if known))

Pursuant to the provisions of section 607.1006, Florida Statutes, this *Florida Profit Corporation* adopts the following amendment(s) to its Articles of Incorporation:

**A.** <u>If amending name, enter the new name of the corporation:</u>

_____ *The new name must be distinguishable and contain the word "corporation," "company," or "incorporated" or the abbreviation "Corp.," "Inc.," or Co.," or the designation "Corp," "Inc," or "Co". A professional corporation name must contain the word "chartered," "professional association," or the abbreviation "P.A."*

**B.** <u>Enter new principal office address, if applicable:</u>
*(Principal office address MUST BE A STREET ADDRESS )*

10248 NW 62nd Court

Parkland, FL 33076

**C.** <u>Enter new mailing address, if applicable:</u>
*(Mailing address MAY BE A POST OFFICE BOX)*

10248 NW 62nd Court

Parkland, FL 33076

**D.** <u>If amending the registered agent and/or registered office address in Florida, enter the name of the new registered agent and/or the new registered office address:</u>

*Name of New Registered Agent*     Daren Daly

10248 NW 62nd Ct
*(Florida street address)*

*New Registered Office Address:*     Parkland                , Florida  33076
                                        *(City)*                        *(Zip Code)*

<u>New Registered Agent's Signature, if changing Registered Agent:</u>
*I hereby accept the appointment as registered agent.   I am familiar with and accept the obligations of the position.*

_____
                *Signature of New Registered Agent, if changing*

**Page 1 of 4**

**If amending the Officers and/or Directors, enter the title and name of each officer/director being removed and title, name, and address of each Officer and/or Director being added:**

*(Attach additional sheets, if necessary)*

*Please note the officer/director title by the first letter of the office title:*

*P = President; V= Vice President; T= Treasurer; S= Secretary; D= Director; TR= Trustee; C = Chairman or Clerk; CEO = Chief Executive Officer; CFO = Chief Financial Officer. If an officer/director holds more than one title, list the first letter of each office held. President, Treasurer, Director would be PTD.*

*Changes should be noted in the following manner. Currently John Doe is listed as the PST and Mike Jones is listed as the V. There is a change, Mike Jones leaves the corporation, Sally Smith is named the V and S. These should be noted as John Doe, PT as a Change, Mike Jones, V as Remove, and Sally Smith, SV as an Add.*

**Example:**

| X Change | PT | John Doe |
|---|---|---|
| X Remove | V | Mike Jones |
| X Add | SV | Sally Smith |

| Type of Action (Check One) | Title | Name | Address |
|---|---|---|---|
| 1) __X__ Change _____ Add _____ Remove | P | Daren Daly | 10248 NW 62nd Court Parkland FL 33076 |
| 2) _____ Change _____ Add __X__ Remove | P | Elizabeth Daly | 8919 NW 20th Manor Coral Springs Fl 33071 |
| 3) _____ Change _____ Add _____ Remove | | | |
| 4) _____ Change _____ Add _____ Remove | | | |
| 5) _____ Change _____ Add _____ Remove | | | |
| 6) _____ Change _____ Add _____ Remove | | | |

**E.** **If amending or adding additional Articles, enter change(s) here:**
    (Attach *additional sheets, if necessary).*    *(Be specific)*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____



**F.** **If an amendment provides for an exchange, reclassification, or cancellation of issued shares,**
    **provisions for implementing the amendment if not contained in the amendment itself:**
        *(if not applicable, indicate N/A)*

_____

_____

_____

_____

_____

_____

_____

_____

The date of each amendment(s) adoption: _____, if other than the
date this document was signed.

Effective date **if applicable**: _____

*(no more than 90 days after amendment file date)*

**Note:** If the date inserted in this block does not meet the applicable statutory filing requirements, this date will not be listed as the document's effective date on the Department of State's records.

**Adoption of Amendment(s)**              (**CHECK ONE**)

☐ The amendment(s) was/were adopted by the shareholders.  The number of votes cast for the amendment(s)
   by the shareholders was/were sufficient for approval.

☐ The amendment(s) was/were approved by the shareholders through voting groups.  *The following statement
   must be separately provided for each voting group entitled to vote separately on the amendment(s):*

   "The number of votes cast for the amendment(s) was/were sufficient for approval

   by _____."
                          *(voting group)*

☐ The amendment(s) was/were adopted by the board of directors without shareholder action and shareholder
   action was not required.

■ The amendment(s) was/were adopted by the incorporators without shareholder action and shareholder
   action was not required.

Dated  12/7/2016

Signature _____

(By a director, president or other officer – if directors or officers have not been
selected, by an incorporator – if in the hands of a receiver, trustee, or other court
appointed fiduciary by that fiduciary)

Daren Daly

_____
(Typed or printed name of person signing)

VP

_____
(Title of person signing)

 **BankUnited**

P.O. Box 521599    Miami, FL 33152-1599

**Page 1 of 7**

>020214 7124164 0002 008229 202

**ALL PAVING, INC.**
**OPERATING ACCOUNT**
**8919 NW 20TH MANOR**
**CORAL SPRINGS FL 33071**

| | |
|---|---|
| **Statement Date:** | **December 31, 2016** |
| Account Number: | *********4094 |

**Customer Service Information**

 Client Care        877-779-BANK (2265)

 Web Site          www.bankunited.com

 Bank Address      BankUnited
P.O. Box 521599
Miami, FL 33152-1599

---



### Customer Message Center

Introducing Visa® Checkout. Learn more about Visa® Checkout by visiting our website at www.bankunited.com.

---

## PRIMARY BUSINESS CHECKING  Account *********4094

### Account Summary

| | | | |
|---|---|---|---|
| Statement Balance as of 11/30/2016 | | | $604,493.86 |
| Plus | 4 | Deposits and Other Credits | $755,124.49 |
| Less | 95 | Withdrawals, Checks, and Other Debits | $1,123,538.11 |
| Less | | Service Charge | $0.00 |
| Plus | | Interest Paid | $0.00 |
| Statement Balance as of 12/31/2016 | | | $236,080.24 |

### Activity By Date

| Date | Description | Withdrawals | Deposits | Balance |
|---|---|---|---|---|
| 12/01/2016 | CheckFreePay AutoLn<br>Wallingford CT 0113<br>DDA RF#854649 CheckFreeP | $1,007.64 | | $603,486.22 |
| 12/01/2016 | CHECK #10401 | $53.00 | | $603,433.22 |
| 12/01/2016 | CHECK #10392 | $2,128.74 | | $601,304.48 |
| 12/01/2016 | SURCHARGE RF854649<br>CheckFreePay AutoLn<br>Wallingford CT 0113 | $3.45 | | $601,301.03 |
| 12/02/2016 | Customer Deposit | | $305,093.78 | $906,394.81 |
| 12/02/2016 | Credit Memo | | $30.71 | $906,425.52 |

**Exhibit**
**19**

**BankUnited, N.A.**


# BankUnited

P.O. Box 521599    Miami, FL 33152-1599

**Page 3 of 7**

**Statement Date:  December 31, 2016**
Account Number:  ********4094



## Activity By Date

| Date | Description | Withdrawals | Deposits | Balance |
|------|-------------|-------------|----------|---------|
| 12/14/2016 | ALLY FIN AUTO   ONLINE PMT | $946.44 | | $633,129.69 |
| | CKF950418304POS | | | |
| | ALL PAVING INC | | | |
| 12/14/2016 | ALLY FIN AUTO   ONLINE PMT | $959.66 | | $632,170.03 |
| | CKF950418304POS | | | |
| | ALL PAVING INC | | | |
| 12/15/2016 | CHECK #10395 | $1,928.99 | | $630,241.04 |
| 12/15/2016 | CHECK #1019 | $5,816.00 | | $624,425.04 |
| 12/15/2016 | CHECK #5012 | $614.26 | | $623,810.78 |
| 12/15/2016 | CHECK #10424 | $12,822.41 | | $610,988.37 |
| 12/15/2016 | CHECK #10428 | $980.33 | | $610,008.04 |
| 12/16/2016 | OUTGOING DOM WIRE: DAREN C DAL | $500,000.00 | | $110,008.04 |
| 12/16/2016 | OUTGOING DOM WIRE FEE | $25.00 | | $109,983.04 |
| 12/16/2016 | CHECK #10425 | $156.58 | | $109,826.46 |
| 12/16/2016 | BANK OF AMERICA  ONLINE PMT | $448.15 | | $109,378.31 |
| | CKF950418304POS | | | |
| | ALL PAVING INC | | | |
| 12/19/2016 | CHECK #10435 | $53.00 | | $109,325.31 |
| 12/19/2016 | CHECK #1020 | $6,830.00 | | $102,495.31 |
| 12/19/2016 | CHECK #10412 | $103,290.87 | | $-795.56 |
| 12/19/2016 | CHECK #10427 | $447.32 | | $-1,242.88 |
| 12/19/2016 | CHECK #10438 | $2,290.00 | | $-3,532.88 |
| 12/20/2016 | INCOMING DOM WIRE: DAREN C DAL | | $250,000.00 | $246,467.12 |
| 12/20/2016 | INCOMING DOM WIRE FEE | $15.00 | | $246,452.12 |
| 12/20/2016 | CHECK #10439 | $63,145.20 | | $183,306.92 |
| 12/20/2016 | Overdraft/NSF C000000000010412 | $35.00 | | $183,271.92 |
| | Insufficient funds | | | |
| 12/20/2016 | Overdraft/NSF C000000000010427 | $35.00 | | $183,236.92 |
| | Insufficient funds | | | |
| 12/20/2016 | Overdraft/NSF C000000000010438 | $35.00 | | $183,201.92 |
| | Insufficient funds | | | |
| 12/21/2016 | SHELL Service Stati | $20.67 | | $183,181.25 |
| | PARKLAND FL 8472 | | | |
| | PIN RF#054198 SHELL Serv | | | |
| 12/21/2016 | FERGUSON ENTERPRISE | $28.22 | | $183,153.03 |
| | 561-683-0635 FL 8472 | | | |
| | DDA RF#014973 FERGUSON E | | | |
| 12/21/2016 | PANERA BREAD #4707 | $181.48 | | $182,971.55 |
| | PALM BEACH GA FL 8472 | | | |
| | DDA RF#044369 PANERA BRE | | | |



Page 4 of 7

**Statement Date: December 31, 2016**
Account Number: ********4094

## Activity By Date

| Date | Description | Withdrawals | Deposits | Balance |
|------|-------------|-------------|----------|---------|
| 12/21/2016 | CHECK #10413 | $1,435.73 | | $181,535.82 |
| 12/21/2016 | CHECK #10426 | $440.96 | | $181,094.86 |
| 12/21/2016 | CHECK #10430 | $267.50 | | $180,827.36 |
| 12/21/2016 | CHECK #10433 | $3,432.47 | | $177,394.89 |
| 12/21/2016 | CHECK #10434 | $1,400.00 | | $175,994.89 |
| 12/21/2016 | CHECK #10436 | $5,301.83 | | $170,693.06 |
| 12/21/2016 | CHECK #10437 | $469.65 | | $170,223.41 |
| 12/21/2016 | CHECK #10442 | $3,200.00 | | $167,023.41 |
| 12/22/2016 | INCOMING DOM WIRE: DAREN C DAL | | $200,000.00 | $367,023.41 |
| 12/22/2016 | INCOMING DOM WIRE FEE | $15.00 | | $367,008.41 |
| 12/22/2016 | THE BUSHEL STOP POMPANO BEACH FL 8472 DDA RF#046726 THE BUSHEL | $138.86 | | $366,869.55 |
| 12/22/2016 | RACETRAC469 POMPANO BCH FL 8472 PIN RF#028656 RACETRAC46 | $44.87 | | $366,824.68 |
| 12/22/2016 | CHECK #10444 | $413.81 | | $366,410.87 |
| 12/22/2016 | CITIZENS ONE AUT LOAN PYMNT SCHINDLER | $365.31 | | $366,045.56 |
| 12/23/2016 | WEB TFR TO 009853704058 WEB RF#110111006297 | $30,000.00 | | $336,045.56 |
| 12/23/2016 | 6637 WAL-SAMS CORAL SPRINGS FL 8472 PIN RF#635899410891 SAM'S Club | $54.94 | | $335,990.62 |
| 12/23/2016 | SAM'S Club CORAL SPRINGS FL 8472 PIN RF#088824 SAMS CLUB | $54.94 | | $335,935.68 |
| 12/23/2016 | SAM'S Club CORAL SPRINGS FL 8472 PIN RF#781511 SAMS CLUB | $104.94 | | $335,830.74 |
| 12/23/2016 | SAM'S Club CORAL SPRINGS FL 8472 PIN RF#782098 SAMS CLUB | $104.94 | | $335,725.80 |
| 12/23/2016 | 6637 WAL-SAMS CORAL SPRINGS FL 8472 PIN RF#635855551008 SAM'S Club | $104.94 | | $335,620.86 |
| 12/23/2016 | SAM'S Club CORAL SPRINGS FL 8472 PIN RF#783207 SAMS CLUB | $104.94 | | $335,515.92 |
| 12/23/2016 | SAM'S Club | $154.94 | | $335,360.98 |

**From:** Shawn A Burton <sburton@nielsonbonds.com>
**Sent:** Wednesday, January 18, 2017 3:35 PM
**To:** Linda Thorsen <linda@allpaving.com>; Daren Daly <Daren@allpaving.com>
**Subject:** All Paving Bond Application

Your bond has been approved.  Will go out tomorrow.

Sincerely,


Shawn A. Burton, CIC
Construction Specialist
Bonds and Insurance
954-817-3515

---

**From:** Linda Thorsen [linda@allpaving.com]
**Sent:** Monday, January 16, 2017 9:49 AM
**To:** Shawn A Burton
**Subject:** All Paving Bond Application

Good Morning Shawn,

Attached please find the completed Bond Application, along with proof of financing and bid result.
Please review and let me know if anything further is required, thanks.


Regards,



**Linda K. Thorsen**
**Office Manager**

AllPaving.com
Corporate Office:
10394 W. Sample Road, Suite 201A
Coral Springs, FL 33065
Toll Free: 1-855-735-ROAD
Linda@AllPaving.com

    

Exhibit
**20**



**CNA SURETY**

www.cnasurety.com

**FAST Track** Application

For Single Bonds or Aggregate Programs up to $350,000, complete page 1.

For Aggregate Programs in excess of $350,000, up to $700,000, complete page 1 and page 2.

## CONTRACTOR DATA

E-Mail Address _____

Type of Business: [ ] Partnership  [X] (S) Corporation  [ ] (C) Corporation  [ ] Sole Proprietorship  [ ] LLC  [ ] LLP

Company Name  All Paving Inc.                                        Phone  954-933-2053

Company Address  P.O. Box 66915                    City Pompano Beach    State  FL    Zip 33066

Type of Work  Mill & Pave Asphalt, Striping & RPM's                    Date started in Business  2013

Has the applicant been in claim, **and/or**, denied bonding by another surety? [X] No [ ] Yes  Explain (if yes) _____

Underwriting File Number [ ] Yes                    [ ] No            Fax Number _____

## OWNER DATA / INDEMNITORS    (Provide the information below on all owners; use additional sheet if necessary)

| | |
|---|---|
| Name  Elizabeth Daly | Name  Patrick Daly |
| Address  8919 NW 20th Manor | Address  8919 NW 20th Manor |
| City/State/Zip  Coral Springs  FL  33071 | City/State/Zip  Coral Springs  FL  33071 |
| SS# _____  DOB _____ | SS# _____  DOB _____ |
| % of Business Ownership  32.50%  Married [X] Yes [ ] No | % of Business Ownership  32.50%  Married [X] Yes [ ] No |
| Spouse Name  Patrick Daly | Spouse Name  Elizabeth Daly |
| SS# _____  DOB  1967 | SS# _____  DOB  1966 |

[X] ***For **new** applicants, complete and sign the General Indemnity Agreement.***

## BOND REQUEST DATA    If no bond is needed at this time, but only prequalification for future bonding, check here [ ]

Anticipated Start Date  02/15/2017        Time for Completion  04/15/2017        Maintenance Period  N/A

Obligee (Who is requiring the contractor get a bond?)  Bar Harbour Condominimum Association, Inc.

Obligee Address  86 MacFarlane Drive                    City Delray Beach    State  FL    Zip 33483

Job Legal Description  12-43-46-16-H1-000-0000

Job Physical Address  86 MacFarlane Drive                City Delray Beach    State  FL    Zip 33483

*This application is **not intended** for use in connection with Design-Build Contracts, Subdivision or Site Improvement over $100,000, Asbestos Abatement, Completion, Hazardous Materials, or Multi-Year Contracts where term of contract is over 5 years.
**Check and Complete:** (**For private jobs or subcontracts**, please enclose a copy of the contract and bond form for projects over $150,000.)
(check one only)              (**For service type contracts**, provide a copy of the contract.)

[ ] **Bid Bond:**                                OR        Contract Price $ 137,937.00

   Bid date _____                        **Contract Date** (Date when contract is signed) _____

   Estimated total amount of bid:  $ _____    [X] **Performance & Payment Bond**    [ ] **Supply Bond**

   Engineers Estimate:  $ _____  [ ] None    [ ] **Subcontractor Performance & Payment Bond**

   Bid Bond %, or flat amount_____    [ ] **Stand Alone Maintenance Bond** $ _____

**Status of Outstanding Bid or Performance Bonds:**        Bid secured by: Check [ ] Bond [X] Negotiated [ ]

Bond No. _____ Bid Awarded: [ ] Yes [ ] No    Next two lowest bidders

Bond No. _____ Bid Awarded: [ ] Yes [ ] No    $ 161,091.00            $ 0.00

## BOND FORM DATA

Name of Agent signing as Power of Attorney

(Name here)  Shawn A. Burton, CIC - Nielson Hoovers & Assoc.

[ ] CNA Form          [ ] State Form (Send copy)
[X] AIA Form          [ ] Obligee Form (Send copy)
[ ] Federal Contract # _____
   State of Incorporation _____

## AGENCY DATA

Agency Name _____    Agency Code _____ - _____ _____ _____ _____

Any person who knowingly and with intent to defraud any insurance company or person files an application containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime under applicable law. The applicants and indemnitors certify the truth of all statements in the application and authorize the Company to verify this information and to obtain additional information from any source including obtaining a credit report.

**Phone: 1-800-331-6053 / Fax 605-335-0357**



## Complete this page for Aggregate Programs in excess of $350,000, up to $700,000.

Contractor's Company Name _____ File Number(s) Reference _____

Contractor's Company Address _____ City _____ State ____ Zip ____

## FINANCIAL DATA  Please submit the following:

☐ **Company Financial Requirements for (C) Corporations, (S) Corporations, and LLCs:**  Provide the company's last 2 years fiscal year-end financial statement or tax return. If the latest fiscal year financial statement or tax return is more than 6 months old, then also provide a current interim financial statement.

or

☐ **Business Financial Requirement for Sole Proprietorships and Partnerships:**  Provide the last 2 years fiscal year-end financial statement on the business. If the fiscal year-end statement on the business is more than 6 months old, then also provide us with a current interim financial statement.

and

☐ **Personal Financial Statements**  Provide a copy of each owner's latest personal financial statement. If the personal financial statement is more than 6 months old then provide us with a current statement.

**Does the contractor have a formal bank line of credit?** ☐ Yes ☐ No
If "Yes" amount of Line of Credit? _____ Amount currently borrowed? _____

## EXPERIENCE DATA

List the three largest contracts completed in the last five years:

| Owner or General | Kind of Work | Location (City/County, State) | Contract Price | Year Completed | Final Gross Profit |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

List the two largest jobs you presently have underway, giving the following information:

| Owner or General | Kind of Work | Location (City/County, State) | Contract Price | % of Completion | Estimated Gross Profit | Date to be Completed |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

## OPERATIONS DATA

Liability Insurance Company and Limits _____ Expiration Date ____/____/____

- Type of trades you perform: _____
- Territory in which you perform work (present and planned) _____
- Trades subcontracted: _____

## GENERAL DATA

**Disputes, Financial Difficulties, Problems, Etc.**

| | Company | | Any officer, owner or partner | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Failed in business or declared bankruptcy? | ☐ | ☐ | ☐ | ☐ |
| b. Failed to complete a job or been assessed with delay damages? | ☐ | ☐ | ☐ | ☐ |
| c. Been involved in any lawsuits or disputes in the last 5 years? | ☐ | ☐ | ☐ | ☐ |
| d. Do you have any corporate or personal assets held in trust or escrow accounts? | ☐ | ☐ | ☐ | ☐ |
| e. Are any business or personal assets restricted or pledged for any purpose (i.e. collateral for a loan, etc.)? | ☐ | ☐ | ☐ | ☐ |
| f. Were you bonded in the past - By whom? | ☐ | ☐ | ☐ | ☐ |

**Explain all "yes" answers fully below or attach explanation**

## AGENCY DATA

Agency Name _____ Agency Code ____ ____ - ____ ____

**Phone: 1-800-331-6053 / Fax 605-335-0357**
**www.cnasurety.com**

CNA is a registered service mark, trade name and domain name of CNA Financial Corporation. No part of this material, including the CNA Surety logo, may be reproduced without written permission from CNA Surety.

# GENERAL INDEMNITY AGREEMENT

THIS AGREEMENT is made by the undersigned Indemnitors ("Indemnitors") for the benefit of Surety in connection with any Bond, as defined below, which may have been or may hereafter be provided for the benefit of or at the request of any one or more Indemnitors. If any Indemnitors have previously executed an indemnity agreement in favor of Surety, this Agreement shall be in addition to and not in lieu of or in replacement of such other agreement.

I.    **DEFINITIONS.** The following terms shall be defined as follows for purposes of this Agreement:

A.    Bond: Any surety bond, undertaking, or other obligation in the nature of a guaranty or suretyship, as well as alterations, amendments, extensions, substitutions, and renewals issued or procured by the Surety on, before, or after the date of this Agreement for (a) any Indemnitor or any of their respective parent companies, subsidiaries, and affiliates; (b) any joint venture, partnership, association, limited liability company, or other legal entity in which one or more of the persons and entities identified above in sub-paragraph (a) have a direct or indirect interest; or (c) at the request of any Indemnitor.

B.    Contract: Any contract or obligation whose performance is covered or guaranteed under a Bond.

C.    Event of Default: Any one or more of the following: (a) any breach of the terms and conditions of this Agreement; (b) Principal's breach, abandonment or forfeiture of a Contract; (c) any bankruptcy, insolvency, assignment for the benefit of creditors, appointment of a receiver or conservator, or similar proceeding concerning the Principal or any Indemnitor, whether voluntary or involuntary.

D.    Loss: Any (a) claim, demand, liability, charge, suit, fee, or expense, including but not limited to attorney (both outside and in-house) and consultant fees, incurred by the Surety as a result of issuing or procuring a Bond; (b) cost incurred by Surety in procuring or attempting to procure a release from liability under a Bond; (c) cost incurred in investigation or adjustment of any claim or potential claim under a Bond; (d) costs incurred by Surety in enforcing the Indemnitors' obligations under this Agreement; and (e) any other cost incurred by Surety arising from the issuance or procurement of a Bond. The term Loss shall also include any advances or loans to any Principal or Indemnitor that are not repaid to the Surety as required by the terms of such advances or loans.

E.    Principal: The person(s) and entity (ies) whose Contract obligations the Surety is requested to guarantee by issuing or procuring a Bond. Principal includes any person or entity identified on a Bond as "Principal" or "Contractor."

F.    Surety: Any one or more of Western Surety Company, Universal Surety of America, and their successors, assigns, affiliates, subsidiary companies, and reinsurers. The term Surety shall also include any other person or entity which, at the request of the above, may act as surety or co-surety on any Bond.

II.    **INDEMNITY.** The Indemnitors agree:

A.    To defend, indemnify, and save harmless Surety from and against any and all Loss Indemnitor which the Surety may pay or incur.

B.    To pay Surety all premium due on Bonds at the rates and times specified by the Surety. The Indemnitors specifically acknowledge and agree that the Surety's right to charge and collect premiums continues until the Surety is provided written evidence, satisfactory to the Surety that (i) its liability on such Bond has been discharged or (ii) its termination of liability as a matter of law.

C.    That in any claim or suit arising out of or related to any Bond or this Agreement, an itemized statement of Surety's loss and expense, sworn to by a representative of Surety, or other evidence of disbursement by Surety, shall be prima facie evidence of the fact and extent of Indemnitor's liability under this Agreement.

D.    To deposit collateral security with the Surety upon demand in an amount that Surety shall reasonably determine is necessary to protect it from Loss whether or not Surety has made any payment.

E.    That in the Event of Default: (a) the Surety shall have the right, but not the obligation, to take possession of the work under any Contract, to complete such Contract, or cause or consent to the completion thereof, with any cost thereof being Loss; (b) the Indemnitors hereby assign, transfer, and set over to the Surety all of their rights under the Contracts, including: (i) their right, title and interest in and to all subcontracts let in connection therewith; (ii) all machinery, plant, equipment, tools and materials upon the site of the work or elsewhere for the purposes of the Contracts, including all material ordered for the Contracts; (iii) all patents, licenses, permits and computer software used for the performance of any Contract and/or financial record keeping of the same; (iv) all actions, causes of action, claims and demands whatsoever relating to the Contracts; and (v) any and all sums due under the Contracts at the time of the Event of Default or which may thereafter become due; (c) the Indemnitors hereby authorized the Surety to endorse in the name of the payee, and to receive and collect any check, draft, warrant or other instrument made or issued in payment of any such sum, and to disburse the proceeds thereof; and (d) the Indemnitors hereby irrevocably nominate, designate and appoint the Surety and its designees as their attorney-in-fact with all the powers necessary to exercise any right granted in this Agreement, including but not limited to the power to make, endorse, execute, sign, and deliver any and all additional or other instruments, checks, drafts, deposits, ACH and wire transfer directives and orders, change of address notices, liens and releases thereof, applications, certificates, draw requests, orders, releases, and papers deemed necessary or desirable by the Surety in order to give full effect to the obligations assumed and the agreements made by Indemnitors hereunder, the assignments and conveyances made herein, and the full protection intended to be herein given to the Surety under all the provisions of this Agreement. The Indemnitors ratify and confirm all acts undertaken by the Surety and/or its designees as such attorney-in-fact.

F.    That all payments earned on any Contract shall be held in trust as trust funds for the completion of the Contract and the payment of Indemnitors' obligations for labor, material, equipment, supplies or services furnished in the performance of the Contract. Upon an Event of Default and the Surety's request, Indemnitors shall open an account with a bank acceptable to the Surety for the deposit of such trust funds.

G.    That upon an Event of Default, the Indemnitors grant the Surety a security interest in all property, rights, and assets of the Indemnitors, including, but not limited to, all inventory, equipment, instruments, investments, contracts rights and proceeds, insurance, accounts, and deposits ("Collateral"). This Agreement shall constitute a Security Agreement and a Financing Statement for the benefit of the Surety in accordance with the Uniform Commercial Code and any similar statute and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety. Indemnitors authorize the Surety upon an Event of Default to file this Agreement or a photocopy thereof and any schedules or statements necessary to describe the Collateral covered by such filing.

III.    **GENERAL PROVISIONS.** The Indemnitors further agrees as follows:

A.    Books and Records; Credit Reports. Upon demand and reasonable notice, the Surety shall be provided access to the books and record of the Indemnitors which includes but is not limited to papers, books, records, contracts, reports financial information and electronically stored information for the purpose of review and copying. The Surety is authorized to obtain a credit report on any Indemnitor at any time while the Surety may be liable under any Bond.

B.    Joint and Several Liability. Indemnitors' obligations under this Agreement are joint and several. Surety's release of any one Indemnitor shall not release any other Indemnitor. No action or inaction of Surety with respect to anyone other than Indemnitor shall relieve the Indemnitor of any obligation owned under this Agreement. Indemnitor shall not be released from liability under this Agreement because of the status, condition, or situation of any party to this Agreement or any Principal.

C.    Defects in Execution. If the execution of this Agreement by any Indemnitor is defective or invalid for any reason, such defect or invalidity shall not affect the validity hereof as to any other Indemnitor. Should any provision of this Agreement be held invalid, the remaining provisions shall retain their full force and effect.

D.    Prior Bonds. Indemnitors waive any defense related to the date of this Agreement's execution and acknowledge that any and all Bonds executed pursuant to any Indemnitor's request before the date of this Agreement were executed by the Surety in reliance on this Agreement. Indemnitors understand and agree that this Agreement is a continuing agreement to indemnify over an indefinite period.

E.    Claim Notices. Immediately upon becoming aware of any claim, demand, or proceeding concerning a Bond, the Indemnitors shall send notice of same to the Surety at:
CNA Surety Corporation, Claim Department
333 South Wabash Avenue, 41st Floor
Chicago, Illinois 60604

F.    Claim Settlement. Surety shall have the right in its sole discretion to decide whether any claims arising out of or related to any Bond shall be paid, compromised, defended, prosecuted, or appealed regardless of whether or not suit is actually filed or commenced against Surety upon such claim. Absent Surety's intentional wrongdoing, Indemnitor agrees to be conclusively bound by Surety's resolution of any and all claims and to accept Surety's determination of liability in regard to any and all claims.

Form F9134-3-2012                                    Page 1 of 2

G. <u>Bond Declination</u>. Surety may decline to execute any Bond for any reason and shall not be liable to Indemnitor, or any person or entity, as a result of such declination.

H. <u>Termination</u>. An Indemnitor may terminate liability to Surety under this Agreement by sending written notice by registered mail of intent to terminate to Surety, in care of Western Surety Company, P.O. Box 5077, Sioux Falls, South Dakota 57117-5077. Termination will be effective twenty days after actual receipt of such notice by Surety, only for Bonds signed or committed to by Surety after the effective date of termination.

I. <u>Issuing Surety</u>. Indemnitors understand and agree that other than for the entity issuing a Bond, no other entity included within definition of the "Surety" in this Agreement assumes any obligation whatsoever with respect to either this Agreement or such Bond.

J. <u>Electronic Image</u>. An electronic image, printout, copy, or facsimile of this Agreement shall be considered an original and shall be admissible in a court of law to the same extent as an original copy.

K. <u>Bond Changes</u>. The Indemnitors' obligations to the Surety shall remain unchanged in the event of any changes in any Bond without regard to notice or consent by any Indemnitor. The Surety shall have no obligation to give the Indemnitors notice of the execution, renewal, or modification of a Bond.

L. <u>Other Agreements</u>. Indemnitors agree that this Agreement is not a replacement, release, or alteration of any other agreement between any Indemnitor and the Surety but shall be in addition to such other agreement unless expressly stated otherwise herein.

M. <u>Amendment; Assignment</u>. This Agreement may not be altered or amended except by a writing executed by the Indemnitors and the Surety. This Agreement and the Indemnitors' obligations hereunder may not be assigned without the prior written consent of the Surety.

N. <u>Date of Agreement</u>. The date of this Agreement shall be the earliest date that any Indemnitors executes this Agreement.

**PLEASE NOTE:  Indemnity is required of the entity AND all owners and spouses personally.  (1) Provide the indemnity of the entity by dating and signing with authorized title below.  (2) All owners and spouses must sign as personal indemnitors.  Refer to the boxes at right for examples of proper indemnity by indemnitor type.  <u>BY SIGNING THIS INDEMNITY, INDEMNITORS ARE ACKNOWLEDGING THEY HAVE READ AND ARE AGREEING TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS ON PAGES ONE AND TWO OF THIS DOCUMENT.</u>**

(1)  Dated: _____January_____, ___6___, __2017__
              (Month)              (Day)      (Year)

Company Name (Print): All Paving Inc._____
                               (As listed on questionnaire)

Authorized
Signature X _[signature]_____  Title: _____
(Printed) __Patrick Daly_____  Title: President_____

| Entity Type: | Proper Indemnity: |
|---|---|
| Sole Proprietor | John Doe, Owner |
| Partnership | Jane Doe, Partner |
| Corporation | John Doe, President |
| LLC | Jane Doe, Managing Member |

| Indemnitor Type: | Proper Indemnity: |
|---|---|
| Personal | John Doe, Indemnitor |
| Spouse | Jane Doe, Indemnitor |

(2)

Indemnitors:  Signature X _[signature]_____   Indemnitors:  Signature X _[signature]_____
(Printed) Patrick Daly, Indemnitor_____       Spouse: (Printed) Elizabeth Daly, Indemnitor____

Indemnitors:  Signature X _[signature]_____   Indemnitors:  Signature X _____
(Printed) Daren Daly, Indemnitor_____        Spouse: (Printed) _____

Indemnitors:  Signature X _____      Indemnitors:  Signature X _____
(Printed) _____          Spouse: (Printed) _____

Indemnitors:  Signature X _____      Indemnitors:  Signature X _____
(Printed) _____          Spouse: (Printed) _____

**All business submitted on this Indemnity Agreement shall be reviewed and underwritten by Western Surety Company, P.O. Box 5077, Sioux Falls, SD  57117-5077**

**CNA SURETY    FAST TRACK APPLICATION**

**ADDITIONAL OWNER INFORMATION:**

Name:                      Daren Daly

Address:                  10248 NW 62nd Court Parkland FL  33076

SSN#:                      █████████

% of Business:        35%

Married                  No

# Credit Application for Construction Equipment



*Wells Fargo Equipment Finance | Construction Group | 2700 S. Price Rd. 3rd Floor | MAC S3928-034 | Chandler, AZ 85286 | Phone: 877-248-7007*

Send completed applications to Chintan Patel by fax to 877-248-6955 or email chintan.patel4@wellsfargo.com

| Dealer/Vendor Name (Equipment Supplier) | Dealer/Vendor Contact Name | Dealer/Vendor Phone # |
|---|---|---|
| Dealer/Vendor Address: | | Dealer/Vendor Fax # |

| Applicant Legal Name: All Paving Inc. | | Tax ID No. (required) 4275 | Phone # 954-933-2053 |
|---|---|---|---|
| **Physical Address:** 10394 W. Sample Rd. STE 201 Coral Springs, FL 33065 | | | Fax # 954-933-1380 |
| **Billing Address:** P.O. Box 669105 Pompano Beach FL 33066 | | | |

| Email Address Accounting@AllPaving.com | Website www.AllPaving.com | | Years in Business: 4 | State of Organization Florida |
|---|---|---|---|---|

| ☐ Corporation ☒ LLC ☐ Partnership ☐ Sole Proprietorship ☐ Individual | Date of Birth | Country of Citizenship | Non-U.S.: Passport # |
|---|---|---|---|

| Year of Management Change: | # of Employees: 15 | Annual Revenue: $ 6 Million | Backlog: $ 2 Million |
|---|---|---|---|

Describe the nature of your business: Mill and pave, concrete work  
Insurance Company Name: FCCI Insurance /WF Roemer Agency  
Phone #: 954-731-5566

Will the Equipment be domiciled or travel within 100 miles of Mexico more than 25% of the annual miles? ☒ No ☐ Yes

Will the Equipment be used outside of the United States? ☒ No ☐ Yes  
If yes, list all countries and complete Cross Border Activity Questionnaire:

Will payments originate from non-U.S. locations? ☒ No ☐ Yes  
If yes, list the countries from which the payments will originate:

Please list all countries in which the applicant, its affiliates, and subsidiaries conduct activities or have assets located: USA

| Need for Equipment: ☒ Growth ☐ Replacement ☐ Refinance | Approx. Delivery Date: |
|---|---|

| Equipment Description (Quantity, Year, Make, Model, Serial #, Price): | Total Equipment Price: | $ |
|---|---|---|
| 2017 Weiler/Caterpillar P385 Commercail Paver $177,000.00 | Tax: | $ |
| | Less Down/Trade: | $ |
| | Doc Fees: | $ |
| *If lease, provide equipment location | Finance Amount: | $ |

| Type of Financing Desired (choose one): | Lease/Loan Term (months): |
|---|---|
| ☒ Loan ☐ Lease* ($1.00) ☐ Lease* (Fair Market Value) ☐ Other | ☐ 36 ☐ 48 ☐ 60 ☐ 72 ☐ 84 ☐ Other___ |

| Top Customer Name #1 Ranger Construction | Location (City, State) West Palm Beach, FL | % of Annual Sales 10% |
|---|---|---|
| Top Customer Name #2 Rose Paving | Location (City, State) Bridgeview, IL | % of Annual Sales 10% |

| Owner/Guarantor #1 Name Patrick Daly | Cell Phone # 954-703-9502 | Email Address Patrick@AllPaving.com | Social Security # | % of Ownership 50% |
|---|---|---|---|---|
| Residence Address: 8919 NW 20th Manor Coral Springs FL 33071 | | Country of Citizenship USA | Residence Phone # 954-703-9502 | Date of Birth 1966 |
| Owner/Guarantor #2 Name Daren Daly | Cell Phone # 954-234-6381 | Email Address Daren@AllPaving.com | Social Security # | % of Ownership 50% |
| Residence Address: 10248 NW 62nd Court Parkland FL 33076 | | Country of Citizenship USA | Residence Phone # 954-234-6381 | Date of Birth 1986 |

Has the Applicant, Guarantor(s), or Principal(s) of the Applicant ever been convicted of a Felony? ☒ No ☐ Yes  If yes, please explain:

Has the Applicant, Guarantor(s), or Principal(s) of the Applicant ever filed for bankruptcy? ☒ No ☐ Yes  
If yes, date filed and please explain:

| **Financial References:** | | | | |
|---|---|---|---|---|
| Bank or Equipment Finance Company Bank United | Account # | Contact Name Brenda Greenberg | Phone # 954-757-0729 | Fax # 954-757-1302 |
| Bank or Equipment Finance Company Ally Financial | Account # | Contact Name | Phone # 888-925-2559 | Fax # |

**Certification.** The undersigned certify to Wells Fargo Equipment Finance, Inc., its parent, and affiliates (collectively, "WFEF") that the information stated in this application is true and correct. The undersigned understand that WFEF will retain this application whether or not it is approved. WFEF and/or entities to whom WFEF refers this application (each a "WFEF Party") are authorized to check the credit and employment history of the undersigned (including criminal background checks), obtain insurance information, and to answer questions about their credit experience with the undersigned. The undersigned authorize each WFEF Party to contact any creditors of the undersigned and authorize any creditor so contacted to release to such WFEF Party such information as such WFEF Party may request. The undersigned further authorize each WFEF Party to share this application and the undersigned's information, including credit bureau reports and credit references, with potential purchasers or assignees of transactions that result from this application. **Notice to Applicants and Guarantors:** To help the government fight the funding of terrorism, narcotics trafficking, trans-national organized crime, and money laundering activities, U.S. Federal law requires financial institutions to obtain, verify, and record information that identifies each person (individuals or businesses) who opens an account. What this means for you: When you open an account or add any additional service, we will ask you for your name, address, and taxpayer identification number that will allow us to identify you. We may also ask to see other identifying documents and information relating to beneficial owners and we may verify compliance by you and other beneficial owners with requirements of U.S. Federal laws.

| Applicant Signature: | | Applicant Signature: | |
|---|---|---|---|
| Print name: Daly | Date: 2/14/2017 | Print name: Patrick Daly | Date: 2/14/2017 |

© 2015 Wells Fargo ___, N.A. All rights reserved. All transactions subject to credit approval. Some restrictions may apply. Wells Fargo Equipment Finance is the trade for certain equipme___ asing and finance businesses of Wells Fargo Bank, N.A. and its subsidiaries. Credit App for Construction Equipment – 07/2016

Exhibit
**21**

# 2017 FLORIDA PROFIT CORPORATION ANNUAL REPORT

**DOCUMENT# P13000077541**

**Entity Name:** ALL PAVING, INC.

**FILED**
**Mar 08, 2017**
**Secretary of State**
**CC7342456971**

**Current Principal  Place of Business:**

10248 NW 62ND CT
PARKLAND, FL 33076

**Current Mailing Address:**

10248 NW 62ND CT
PARKLAND, FL 33076

**FEI Number:** 46-3704275                                    **Certificate of Status Desired:** No

**Name and Address of Current Registered Agent:**

DALY, DAREN C
10248 NW 62ND CT
PARKLAND, FL 33076 US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

  Electronic Signature of Registered Agent                                                     Date

## Officer/Director Detail :

| Title | VP | | Title | P |
|---|---|---|---|---|
| Name | DALY, PATRICK | | Name | DALY, DAREN |
| Address | 8919 NW 20TH MANOR | | Address | 10248 NW 62ND CT E |
| City-State-Zip: | CORAL SPRINGS  FL  33071 | | City-State-Zip: | PARKLAND  FL  33076 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: DAREN DALY                                   P                              03/08/2017

  Electronic Signature of Signing Officer/Director Detail                                          Date

**EXHIBIT**
**22**

# PB000077541

_____
(Requestor's Name)

_____
(Address)

_____
(Address)

_____
(City/State/Zip/Phone #)

[ ] PICK-UP    [ ] WAIT    [ ] MAIL

_____
(Business Entity Name)

_____
(Document Number)

Certified Copies _____    Certificates of Status _____

Special Instructions to Filing Officer:

Office Use Only



100299966331

06/12/17--01019--011  **52.50

JUN 1 6 2017

S. YOUNG

**EXHIBIT**

**23**

## COVER LETTER

TO: Amendment Section
    Division of Corporations

NAME OF CORPORATION: _____ All Paving _____

DOCUMENT NUMBER: _____ P13000077541 _____

The enclosed *Articles of Amendment* and fee are submitted for filing.

Please return all correspondence concerning this matter to the following:

_____ Doren Doly _____
Name of Contact Person

_____ All Paving _____
Firm/ Company

_____ 10248 NW 62nd Ct _____
Address

_____ Parkland, FL 33076 _____
City/ State and Zip Code

_____ Doren@allpaving.com _____
E-mail address: (to be used for future annual report notification)

For further information concerning this matter, please call:

_____ Doren Doly _____ at ( 954 ) 234-6381 _____
Name of Contact Person                Area Code & Daytime Telephone Number

Enclosed is a check for the following amount made payable to the Florida Department of State:

☐ $35 Filing Fee      ☐ $43.75 Filing Fee &      ☐ $43.75 Filing Fee &      ☑ $52.50 Filing Fee
                        Certificate of Status        Certified Copy              Certificate of Status
                                                     (Additional copy is         Certified Copy
                                                     enclosed)                    (Additional Copy
                                                                                  is enclosed)

**Mailing Address**                    **Street Address**
Amendment Section                      Amendment Section
Division of Corporations               Division of Corporations
P.O. Box 6327                          Clifton Building
Tallahassee, FL 32314                  2661 Executive Center Circle
                                       Tallahassee, FL 32301

**Articles of Amendment**
**to**
**Articles of Incorporation**
**of**

_All Paving, Inc._

**(Name of Corporation as currently filed with the Florida Dept. of State)**

_P13.0000 77541_

**(Document Number of Corporation (if known)**

Pursuant to the provisions of section 607.1006, Florida Statutes, this *Florida Profit Corporation* adopts the following amendment(s) to its Articles of Incorporation:

**A.  If amending name, enter the new name of the corporation:**

_All Paving Incorpotion_ _The new_
*name must be distinguishable and contain the word "corporation," "company," or "incorporated" or the abbreviation*
*"Corp.," "Inc.," or Co.," or the designation "Corp," "Inc" or "Co".  A professional corporation name must contain the*
*word "chartered," "professional association," or the abbreviation "P.A."*

**B.  Enter new principal office address, if applicable:**    _10248 NW 62nd Ct_
*(Principal office address MUST BE A STREET ADDRESS )*    _Parkland Fl 33076_

**C.  Enter new mailing address, if applicable:**
*(Mailing address MAY BE A POST OFFICE BOX)*

**D.  If amending the registered agent and/or registered office address in Florida, enter the name of the**
**new registered agent and/or the new registered office address:**

*Name of New Registered Agent*

*(Florida street address)*

*New Registered Office Address*: _____, Florida _____
*(City)*                                      *(Zip Code)*

**New Registered Agent's Signature, if changing Registered Agent:**
*I hereby accept the appointment as registered agent.   I am familiar with and accept the obligations of the position.*

*Signature of New Registered Agent, if changing*

If amending the Officers and/or Directors, enter the title and name of each officer/director being removed and title, name, and address of each Officer and/or Director being added:
*(Attach additional sheets, if necessary)*
*Please note the officer/director title by the first letter of the office title:*
*P = President; V = Vice President; T = Treasurer; S = Secretary; D = Director, TR = Trustee; C = Chairman or Clerk; CEO = Chief Executive Officer; CFO = Chief Financial Officer. If an officer/director holds more than one title, list the first letter of each office held. President, Treasurer, Director would be PTD.*
*Changes should be noted in the following manner. Currently John Doe is listed as the PST and Mike Jones is listed as the V. There is a change, Mike Jones leaves the corporation, Sally Smith is named the V and S. These should be noted as John Doe, PT as a Change, Mike Jones, V as Remove, and Sally Smith, SV as an Add.*
**Example:**

| X Change | PT | John Doe |
| X Remove | V | Mike Jones |
| X Add | SV | Sally Smith |

| Type of Action (Check One) | Title | Name | Address |
|---|---|---|---|
| 1) ___ Change | VP | Patrick Doty | 8919 NW 20th |
| ___ Add | | | Near Coral Springs, FL 33076 |
| X Remove | | | |
| 2) ___ Change | | | |
| ___ Add | | | |
| ___ Remove | | | |
| 3) ___ Change | | | |
| ___ Add | | | |
| ___ Remove | | | |
| 4) ___ Change | | | |
| ___ Add | | | |
| ___ Remove | | | |
| 5) ___ Change | | | |
| ___ Add | | | |
| ___ Remove | | | |
| 6) ___ Change | | | |
| ___ Add | | | |
| ___ Remove | | | |

E.  **If amending or adding additional Articles, enter change(s) here:**
   (Attach *additional sheets, if necessary*).    *(Be specific)*

*NA*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

F.  **If an amendment provides for an exchange, reclassification, or cancellation of issued shares,**
   **provisions for implementing the amendment if not contained in the amendment itself:**
   *(if not applicable, indicate N/A)*

*Amendment    Attached*

_____

_____

_____

_____

_____

_____

_____

The date of each amendment(s) adoption: _____ 4/15/2017 _____, if other than the
date this document was signed.

Effective date if applicable: _____ 4/15/2017 _____
                                           (no more than 90 days after amendment file date)

Note:  If the date inserted in this block does not meet the applicable statutory filing requirements, this date will not be listed as the
document's effective date on the Department of State's records.

Adoption of Amendment(s)          (CHECK ONE)

☑ The amendment(s) was/were adopted by the shareholders.  The number of votes cast for the amendment(s)
    by the shareholders was/were sufficient for approval.

☐ The amendment(s) was/were approved by the shareholders through voting groups. *The following statement
    must be separately provided for each voting group entitled to vote separately on the amendments):*

        "The number of votes cast for the amendment(s) was/were sufficient for approval

        by _____."
                                (voting group)

☐ The amendment(s) was/were adopted by the board of directors without shareholder action and shareholder
    action was not required.

☑ The amendment(s) was/were adopted by the incorporators without shareholder action and shareholder
    action was not required.

Dated_____ 4/15/2017 _____

Signature _____  President
            (By a director, president or other officer - if directors or officers have not been
            selected, by an incorporator - if in the hands of a receiver, trustee, or other court
            appointed fiduciary by that fiduciary)

        _____
                (Typed or printed name of person signing)

        _____
                (Title of person signing)


                            **Page 4 of 4**

## ACTION BY WRITTEN CONSENT OF A MAJORITY OF OWNERS/SHAREHOLDERS OF ALL PAVING, INC.

The undersigned, Patrick Daly and Elizabeth Daly, husband and wife, together constituting a majority of the owners/shareholders of ALL PAVING, INC., a Florida corporation, Document Number P13000077541 filed with the Florida Department of State, FEI/EIN Number 46-3704275 (hereinafter, the "Corporation"), do hereby consent to and take the following action without a meeting pursuant to Florida Statutes Section 607.0704:

WHEREAS, Patrick Daly has been in the paving business since 1988 on a full time basis;

WHEREAS, on January 23, 2012, Patrick Daly formed All Paving & Sealcoating LLC, a Florida limited liability company, Document Number L12000010329 filed with the Florida Department of State, to engage in the paving business. Patrick Daly was the sole owner/member of that entity at that time and he and Elizabeth Daly provided all the startup funds;

WHEREAS, the 2015 tax return for All Paving & Sealcoating LLC reflects that Elizabeth Daly owns 51%, Patrick Daly owns 34%, and Robert Holland owns 15% of the interests in All Paving & Sealcoating LLC;

WHEREAS, in 2013, All Paving & Sealcoating LLC began employing Daren Daly on a part time basis. Daren Daly is a son of Patrick Daly and Elizabeth Daly;

WHEREAS, in 2013, Electronic Articles of Incorporation for the Corporation were filed by Daren Daly, in which he listed his fiancé Jamie Schindler as President, his father Patrick Daly as Vice President, and Daren Daly as Vice President;

WHEREAS, in 2014, Daren Daly filed the 2014 Annual Report for the Corporation with the Florida Department of State, stating by his electronic signature under oath that the three Officers of the Corporation were himself as President, Patrick Daly as Vice President, and Elizabeth Daly as Vice President;

Page 1 of 6

**EXHIBIT**

**24**

WHEREAS, the Corporation did not transact any business in 2013 and 2014;

WHEREAS, on April 23, 2015, Daren Daly filed the 2015 Annual Report for the Corporation with the Florida Department of State, stating by his electronic signature under oath that the three Officers of the Corporation were himself as President, Patrick Daly as Vice President, and Elizabeth Daly as Vice President;

WHEREAS, in September 2015, Patrick Daly and Daren Daly had discussions regarding the utilization of the Corporation (which had not yet begun operations) to expand the paving business using the "All Paving" name, with Daren Daly being given a 15% interest in the Corporation, and with Patrick Daly and Elizabeth Daly owning the remaining 85% of the Corporation, with the understanding that All Paving & Sealcoating LLC and Corporation will have equal rights to the All Paving name and the allpaving.com domain name;

WHEREAS, the Corporation did not begin actual operations until late 2015 and its startup costs were completely funded by All Paving & Sealcoating LLC, and Patrick Daly and Elizabeth Daly signed personal guaranties for most of the equipment purchased by Corporation;

WHEREAS, on September 18, 2015, the Corporation opened bank accounts with BankUnited and executed a Beneficial Ownership Certification to the bank under penalties of perjury, stating that Elizabeth Daly is the 75% owner of the Corporation, Patrick Daly is the 12.5% owner of the Corporation, and Daren Daly is the 12.5% owner of the Corporation. Elizabeth Daly signed the Beneficial Ownership Certification as President of the Corporation in the presence of and with the approval of Daren Daly and Patrick Daly. Pursuant to other documents signed the same day by Elizabeth Daly, Patrick Daly and Daren Daly, all three were designated as authorized signers for the Corporation's BankUnited bank accounts;

WHEREAS, on September 20, 2015, Daren Daly in his handwriting filled out all information on a credit application which was submitted to CAT Financial, including the representation that Elizabeth Daly is the 75% owner of the Corporation and Patrick Daly is the 12.5% owner of the Corporation. Elizabeth Daly and Patrick Daly signed said credit application filled out by Daren Daly below their representation that the information is true, correct and complete.

WHEREAS, on November 4, 2015, Elizabeth Daly, through the electronic signature of Elizabeth Daly on behalf of the Corporation and All Paving & Sealcoating LLC, registered the fictitious name "All Paving" with the Florida Department of State, and listed two owners of that fictitious name: the Corporation and All Paving & Sealcoating LLC;

WHEREAS, on January 15, 2016, Daren Daly filed the 2016 Annual Report for the Corporation with the Florida Department of State, stating by his electronic signature under oath that the three Officers of the Corporation were himself as President, Patrick Daly as Vice President, and Elizabeth Daly as Vice President;

WHEREAS, after having an argument with his mother, on December 12, 2016 Daren Daly filed Articles of Amendment to Articles of Incorporation of the Corporation which purported to remove Elizabeth Daly as President of the Corporation.  Said Articles of Amendment violated Florida Statutes Sections 607.1006(5) and 607.0120(6)(b) because Daren Daly misrepresented that shareholder or director approval was not required, and said Articles of Amendment were otherwise unauthorized;

WHEREAS, on February 14, 2017, Daren Daly signed a Credit Application for Construction Equipment on behalf of the Corporation on a Wells Fargo Equipment Finance form, purporting to state that Daren Daly owns 50% of the Corporation, and that Patrick Daly owns 50% of the Corporation.  Daren Daly signed this form; however, Daren Daly forged the signature of Patrick

Daly. This document is not only illegitimate because Patrick Daly's signature was forged, but also because it inaccurately states that Daren Daly owns 50% of the Corporation when in fact at no time has he held more than a minority interest;

WHEREAS, on March 8, 2017, Daren Daly filed the 2017 Annual Report for the Corporation with the Florida Department of State, stating by his electronic signature under oath that the two Officers of the Corporation were himself as President, and Patrick Daly as Vice President;

WHEREAS, after having an argument with his father, on June 12, 2017 Daren Daly filed Articles of Amendment to Articles of Incorporation of the Corporation which purported to remove Patrick Daly as Vice President of the Corporation, and purported to change the name of the Corporation to "All Paving Incorpation (sic)". Said Articles of Amendment violated Florida Statutes Sections 607.1006(5) and 607.0120(6)(b) because Daren Daly misrepresented that shareholder or director approval was not required, and said Articles of Amendment were otherwise unauthorized;

WHEREAS, beginning in December 2016, Daren Daly took several actions adverse to the Corporation including:

a.      He misappropriated funds of the Corporation in the BankUnited bank accounts which led to BankUnited terminating its relationship with the Corporation in April 2017.

b.      He opened one or more new bank accounts in the name of the Corporation with SunTrust Bank and did not include the majority owners of the Corporation, Elizabeth Daly and Patrick Daly, as authorized signers, and has used those accounts to transact business of the Corporation without the approval of its majority owners.

c.      He began using a new unauthorized online QuickBooks database for the Corporation and has excluded the majority owners of the Corporation, Elizabeth Daly and Patrick Daly, from having access.

      d.      Beginning in March 2017, he has misappropriated the domain name, website, and all email of allpaving.com including email addresses used by Elizabeth Daly and Patrick Daly, and has blocked All Paving & Sealcoating LLC, Patrick Daly and Elizabeth Daly from having access to their email, website, and domain name, which has seriously harmed the business of All Paving & Sealcoating LLC notwithstanding the fact the Corporation shares ownership of the All Paving name with All Paving & Sealcoating LLC including the allpaving.com domain, website and email. Daren Daly also misappropriated the allpavingandsealcoating.com domain.

      e.      He removed Elizabeth Daly and Patrick Daly from the Florida Department of State corporate records as officers of the Corporation and changed the name of the Corporation to "All Paving Incorpation (sic)" through the unauthorized Articles of Amendment of Articles of Corporation filed on December 12, 2016 and June 12, 2017.

      f.      He has asserted that All Paving & Sealcoating LLC is not authorized to use the All Paving name even though they are joint owners of the fictitious name registered with the Florida Department of State.

NOW, THEREFORE, in view of the above, the Board of Directors by a majority vote, take the following action:

1.      All WHEREAS clauses stated above are incorporated herein.

2.      The Undersigned representing the majority of the owners/shareholders of the Corporation, by their undersigned written consent and action hereby elect Patrick Daly and Elizabeth Daly the sole Directors of the Corporation and remove any other Directors who may have purported to assume such role including, without limitation, Daren Daly and Jamie Schindler.

3.      Articles of Amendment of the Articles of Corporation shall be executed and filed by the Corporation changing its name back to All Paving, Inc. (in order to counteract the unauthorized

Articles of Amendment to Articles of Incorporation filed by Daren Daly on June 16, 2017). Said

Articles of Amendment to be filed shall properly reflect Patrick Daly as Director and President of

the Corporation, and Elizabeth Daly as Director, Vice President, Secretary and Treasurer of the

Corporation.

_____
Elizabeth Daly, 75% Shareholder

_____
Date 6/29/17

_____
Patrick Daly, 12.5% Shareholder

_____
Date 6-29-17

## ACTION BY WRITTEN CONSENT OF THE
## BOARD OF DIRECTORS OF ALL PAVING, INC.

The undersigned, Patrick Daly and Elizabeth Daly, constituting the sole members of the

Board of Directors of ALL PAVING, INC., a Florida corporation, Document Number

P13000077541 filed with the Florida Department of State, FEI/EIN Number 46-3704275

(hereinafter, the "Corporation"), do hereby consent to and take the following action without a

meeting pursuant to Florida Statutes Section 607.0821:

WHEREAS, Patrick Daly and Elizabeth Daly have been elected the sole members of the

Board of Directors of the Corporation pursuant to the Action by Written Consent of a Majority of

Owners/Shareholders of All Paving, Inc. signed on even date herewith, a copy of which is attached

hereto and incorporated herein ("Shareholder Action");

WHEREAS, Daren Daly has taken several actions adverse to the Corporation including as

discussed in the final Whereas clause of the attached Shareholder Action;

NOW, THEREFORE, in view of the above, the Board of Directors by a unanimous vote, take

the following action:

1. The WHEREAS clauses stated above and the WHEREAS clauses in the attached

Shareholder Action are incorporated herein and support the action taken below.

2. The Undersigned sole members of the Board of Directors of the Corporation, by this

their written consent and action, hereby appoint the following persons as the sole Officers of the

Corporation: Patrick Daly as President, and Elizabeth Daly as Vice President, Secretary and

Treasurer, and all other persons who have purported to assume the role of Officers of the

Corporation including, without limitation, Daren Daly and Jamie Schindler, are hereby REMOVED.

3. Daren Daly is hereby immediately TERMINATED as an employee, agent,

independent contractor, or representative of the Corporation in any capacity, and he shall

Page 1 of 3

EXHIBIT
**25**

immediately remove himself from all premises of the Corporation, and turn over to its President, Patrick Daly, all property of the Corporation including all keys, personal property, equipment, documents, checkbooks, bank statements, emails, customer lists and contact information, vendor lists and contact information, contracts, project files, bonding documents, equipment financing documents, bills of sale and equipment ownership documents, ledgers, computers, computer data, software, media, etc., and all login information (including user names and passwords for all online access associated with the Corporation including with banks, QuickBooks, domain registrars, webhosts, email and all other services). Daren Daly shall also execute any paperwork needed or requested by vendors, banks, QuickBooks, lenders, registrars, webhosts, and other parties, to confirm that he is no longer an employee, officer, agent, or other representative of the Corporation, and to transfer all access and authority to Patrick Daly and Elizabeth Daly. Such paperwork shall include documents and online authorizations to transfer the domain names allpaving.com and allpavingandsealcoating.com to a GoDaddy account controlled by Patrick Daly or Elizabeth Daly (or turning over to them the GoDaddy account in which said domains are currently registered by providing Patrick Daly and Elizabeth Daly with the login information).

4.      Articles of Amendment of the Articles of Corporation shall be executed and filed by the Corporation changing its name back to All Paving, Inc. (in order to counteract the unauthorized Articles of Amendment to Articles of Incorporation filed by Daren Daly on June 16, 2017 with the Florida Department of State, which purported to change the name of the Corporation to "All Paving Incorpation (sic)"). Said Articles of Amendment to be filed shall properly reflect Patrick Daly as Director and President of the Corporation, and Elizabeth Daly as Director, Vice President, Secretary and Treasurer of the Corporation.

5.    Bruce A. Goodman, Esq. of Bruce A. Goodman, P.A. has been engaged by the Corporation, through the authority of the undersigned sole Directors, who are also the majority shareholders/owners of the Corporation, to file a lawsuit in the name of the Corporation seeking injunctive relief and other available remedies against Daren Daly including damages, in the event he fails to immediately comply with this Action.

_____
Elizabeth Daly, Director

_____
Date     6 29 17

_____
Patrick Daly, Director

_____
Date     6 - 29 - 17

## ACTION BY WRITTEN CONSENT OF A MAJORITY OF
## OWNERS/SHAREHOLDERS OF ALL PAVING, INC.

The undersigned, Patrick Daly and Elizabeth Daly, husband and wife, together constituting

a majority of the owners/shareholders of ALL PAVING, INC., a Florida corporation, Document

Number P13000077541 filed with the Florida Department of State, FEI/EIN Number 46-3704275

(hereinafter, the "Corporation"), do hereby consent to and take the following action without a

meeting pursuant to Florida Statutes Section 607.0704:

WHEREAS, Patrick Daly has been in the paving business since 1988 on a full time basis;

WHEREAS, on January 23, 2012, Patrick Daly formed All Paving & Sealcoating LLC, a

Florida limited liability company, Document Number L12000010329 filed with the Florida

Department of State, to engage in the paving business. Patrick Daly was the sole owner/member of

that entity at that time and he and Elizabeth Daly provided all the startup funds;

WHEREAS, the 2015 tax return for All Paving & Sealcoating LLC reflects that Elizabeth

Daly owns 51%, Patrick Daly owns 34%, and Robert Holland owns 15% of the interests in All

Paving & Sealcoating LLC;

WHEREAS, in 2013, All Paving & Sealcoating LLC began employing Daren Daly on a part

time basis. Daren Daly is a son of Patrick Daly and Elizabeth Daly;

WHEREAS, in 2013, Electronic Articles of Incorporation for the Corporation were filed by

Daren Daly, in which he listed his fiancé Jamie Schindler as President, his father Patrick Daly as

Vice President, and Daren Daly as Vice President;

WHEREAS, in 2014, Daren Daly filed the 2014 Annual Report for the Corporation with the

Florida Department of State, stating by his electronic signature under oath that the three Officers of

the Corporation were himself as President, Patrick Daly as Vice President, and Elizabeth Daly as

Vice President;

WHEREAS, the Corporation did not transact any business in 2013 and 2014;

WHEREAS, on April 23, 2015, Daren Daly filed the 2015 Annual Report for the Corporation with the Florida Department of State, stating by his electronic signature under oath that the three Officers of the Corporation were himself as President, Patrick Daly as Vice President, and Elizabeth Daly as Vice President;

WHEREAS, in September 2015, Patrick Daly and Daren Daly had discussions regarding the utilization of the Corporation (which had not yet begun operations) to expand the paving business using the "All Paving" name, with Daren Daly being given a 15% interest in the Corporation, and with Patrick Daly and Elizabeth Daly owning the remaining 85% of the Corporation, with the understanding that All Paving & Sealcoating LLC and Corporation will have equal rights to the All Paving name and the allpaving.com domain name;

WHEREAS, the Corporation did not begin actual operations until late 2015 and its startup costs were completely funded by All Paving & Sealcoating LLC, and Patrick Daly and Elizabeth Daly signed personal guaranties for most of the equipment purchased by Corporation;

WHEREAS, on September 18, 2015, the Corporation opened bank accounts with BankUnited and executed a Beneficial Ownership Certification to the bank under penalties of perjury, stating that Elizabeth Daly is the 75% owner of the Corporation, Patrick Daly is the 12.5% owner of the Corporation, and Daren Daly is the 12.5% owner of the Corporation. Elizabeth Daly signed the Beneficial Ownership Certification as President of the Corporation in the presence of and with the approval of Daren Daly and Patrick Daly. Pursuant to other documents signed the same day by Elizabeth Daly, Patrick Daly and Daren Daly, all three were designated as authorized signers for the Corporation's BankUnited bank accounts;

WHEREAS, on September 20, 2015, Daren Daly in his handwriting filled out all information on a credit application which was submitted to CAT Financial, including the representation that Elizabeth Daly is the 75% owner of the Corporation and Patrick Daly is the 12.5% owner of the Corporation. Elizabeth Daly and Patrick Daly signed said credit application filled out by Daren Daly below their representation that the information is true, correct and complete.

WHEREAS, on November 4, 2015, Elizabeth Daly, through the electronic signature of Elizabeth Daly on behalf of the Corporation and All Paving & Sealcoating LLC, registered the fictitious name "All Paving" with the Florida Department of State, and listed two owners of that fictitious name: the Corporation and All Paving & Sealcoating LLC;

WHEREAS, on January 15, 2016, Daren Daly filed the 2016 Annual Report for the Corporation with the Florida Department of State, stating by his electronic signature under oath that the three Officers of the Corporation were himself as President, Patrick Daly as Vice President, and Elizabeth Daly as Vice President;

WHEREAS, after having an argument with his mother, on December 12, 2016 Daren Daly filed Articles of Amendment to Articles of Incorporation of the Corporation which purported to remove Elizabeth Daly as President of the Corporation.  Said Articles of Amendment violated Florida Statutes Sections 607.1006(5) and 607.0120(6)(b) because Daren Daly misrepresented that shareholder or director approval was not required, and said Articles of Amendment were otherwise unauthorized;

WHEREAS, on February 14, 2017, Daren Daly signed a Credit Application for Construction Equipment on behalf of the Corporation on a Wells Fargo Equipment Finance form, purporting to state that Daren Daly owns 50% of the Corporation, and that Patrick Daly owns 50% of the Corporation.  Daren Daly signed this form; however, Daren Daly forged the signature of Patrick

Daly. This document is not only illegitimate because Patrick Daly's signature was forged, but also because it inaccurately states that Daren Daly owns 50% of the Corporation when in fact at no time has he held more than a minority interest;

WHEREAS, on March 8, 2017, Daren Daly filed the 2017 Annual Report for the Corporation with the Florida Department of State, stating by his electronic signature under oath that the two Officers of the Corporation were himself as President, and Patrick Daly as Vice President;

WHEREAS, after having an argument with his father, on June 12, 2017 Daren Daly filed Articles of Amendment to Articles of Incorporation of the Corporation which purported to remove Patrick Daly as Vice President of the Corporation, and purported to change the name of the Corporation to "All Paving Incorpation (sic)". Said Articles of Amendment violated Florida Statutes Sections 607.1006(5) and 607.0120(6)(b) because Daren Daly misrepresented that shareholder or director approval was not required, and said Articles of Amendment were otherwise unauthorized;

WHEREAS, beginning in December 2016, Daren Daly took several actions adverse to the Corporation including:

      a.      He misappropriated funds of the Corporation in the BankUnited bank accounts which led to BankUnited terminating its relationship with the Corporation in April 2017.

      b.      He opened one or more new bank accounts in the name of the Corporation with SunTrust Bank and did not include the majority owners of the Corporation, Elizabeth Daly and Patrick Daly, as authorized signers, and has used those accounts to transact business of the Corporation without the approval of its majority owners.

      c.      He began using a new unauthorized online QuickBooks database for the Corporation and has excluded the majority owners of the Corporation, Elizabeth Daly and Patrick Daly, from having access.

d.      Beginning in March 2017, he has misappropriated the domain name, website, and all email of allpaving.com including email addresses used by Elizabeth Daly and Patrick Daly, and has blocked All Paving & Sealcoating LLC, Patrick Daly and Elizabeth Daly from having access to their email, website, and domain name, which has seriously harmed the business of All Paving & Sealcoating LLC notwithstanding the fact the Corporation shares ownership of the All Paving name with All Paving & Sealcoating LLC including the allpaving.com domain, website and email. Daren Daly also misappropriated the allpavingandsealcoating.com domain.

e.      He removed Elizabeth Daly and Patrick Daly from the Florida Department of State corporate records as officers of the Corporation and changed the name of the Corporation to "All Paving Incorpation (sic)" through the unauthorized Articles of Amendment of Articles of Corporation filed on December 12, 2016 and June 12, 2017.

f.      He has asserted that All Paving & Sealcoating LLC is not authorized to use the All Paving name even though they are joint owners of the fictitious name registered with the Florida Department of State.

NOW, THEREFORE, in view of the above, the Board of Directors by a majority vote, take the following action:

1.      All WHEREAS clauses stated above are incorporated herein.

2.      The Undersigned representing the majority of the owners/shareholders of the Corporation, by their undersigned written consent and action hereby elect Patrick Daly and Elizabeth Daly the sole Directors of the Corporation and remove any other Directors who may have purported to assume such role including, without limitation, Daren Daly and Jamie Schindler.

3.      Articles of Amendment of the Articles of Corporation shall be executed and filed by the Corporation changing its name back to All Paving, Inc. (in order to counteract the unauthorized

Articles of Amendment to Articles of Incorporation filed by Daren Daly on June 16, 2017).  Said

Articles of Amendment to be filed shall properly reflect Patrick Daly as Director and President of

the Corporation, and Elizabeth Daly as Director, Vice President, Secretary and Treasurer of the

Corporation.

_____
Elizabeth Daly, 75% Shareholder

_____
Date

_____
Patrick Daly, 12.5% Shareholder

_____
Date

## NOTICE OF ACTION BY WRITTEN CONSENT OF A MAJORITY OF OWNERS/SHAREHOLDERS OF ALL PAVING, INC. and NOTICE OF ACTION BY WRITTEN CONSENT OF THE BOARD OF DIRECTORS OF ALL PAVING, INC.

To:   **Daren Daly**
      **10248 NW 62nd Court**
      **Parkland, FL 33076**

Pursuant to Florida Statutes Section 607.0704, you are hereby provided notice of the enclosed (1) Action by Written Consent of a Majority of Owners/Shareholders of All Paving, Inc., and (2) Action by Written Consent of the Board of Directors of All Paving, Inc.

The Action by Written Consent of a Majority of Owners/Shareholders of All Paving, Inc. elected Patrick Daly and Elizabeth Daly the sole Directors of the Corporation and removed any other Directors who may have purported to assume such role including, without limitation, Daren Daly and Jamie Schindler.

The Action by Written Consent of the Board of Directors of All Paving, Inc.:

1.     Appointed the following persons as the sole Officers of the Corporation: Patrick Daly as President, and Elizabeth Daly as Vice President, Secretary and Treasurer, and removed all other persons who have purported to assume the role of Officers of the Corporation including, without limitation, Daren Daly and Jamie Schindler.

2.     Terminated Daren Daly immediately as an employee, agent, independent contractor, or representative of the Corporation in any capacity, and directed that he immediately remove himself from all premises of the Corporation, and turn over to its President, Patrick Daly, all property of the Corporation including all keys, personal property, equipment, documents, checkbooks, bank statements, emails, customer lists and contact information, vendor lists and contact information,

EXHIBIT
**26**

contracts, project files, bonding documents, equipment financing documents, bills of sale and equipment ownership documents, ledgers, computers, computer data, software, media, etc., and all login information (including user names and passwords for all online access associated with the Corporation including with banks, QuickBooks, domain registrars, webhosts, email and all other services). Daren Daly shall also execute any paperwork needed or requested by vendors, banks, QuickBooks, lenders, registrars, webhosts, and other parties, to confirm that he is no longer an employee, officer, agent, or other representative of the Corporation, and to transfer all access and authority to Patrick Daly and Elizabeth Daly. Such paperwork shall include documents and online authorizations to transfer the domain names allpaving.com and allpavingandsealcoating.com to a GoDaddy account controlled by Patrick Daly or Elizabeth Daly (or turning over to them the GoDaddy account in which said domains are currently registered by providing Patrick Daly and Elizabeth Daly with the login information).

      3.      Stated that Articles of Amendment of the Articles of Corporation shall be executed and filed by the Corporation changing its name back to All Paving, Inc. (in order to counteract the unauthorized Articles of Amendment to Articles of Incorporation filed by Daren Daly on June 16, 2017 with the Florida Department of State, which purported to change the name of the Corporation to "All Paving Incorpation (sic)"). Said Articles of Amendment to be filed shall properly reflect Patrick Daly as Director and President of the Corporation, and Elizabeth Daly as Director, Vice President, Secretary and Treasurer of the Corporation.

      4.      Stated that Bruce A. Goodman, Esq. of Bruce A. Goodman, P.A. has been engaged by the Corporation, through the authority of the undersigned sole Directors, who are also the majority shareholders/owners of the Corporation, to file a lawsuit in the name of the Corporation

seeking injunctive relief and other available remedies against Daren Daly including damages, in the

event he fails to immediately comply with this Action.

_____
Elizabeth Daly, Shareholder and Director

_____
6/29/17
Date

_____
Patrick Daly, Shareholder and Director

_____
6-29-17
Date

**ORIGINAL DOCUMENT**

**Recording Requested by**
SHERRI R. FARMER
TRUIST BANK
1001 SEMMES AVENUE
RVW3013 RICHMOND LIEN RELEASE
RICHMOND, VA 23224

**When Recorded Mail To:**
TRUIST BANK
LIEN RELEASE DEPT RVW 3013
P. O. BOX 27406
RICHMOND, VA 23286-9437

Loan #: **4000456535**
Investor Loan #: **291727964**
MIN: **100010400000680544**
MERS Phone #: **(888) 679-6377**

## Release of Mortgage

KNOW ALL MEN BY THESE PRESENTS that MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as mortgagee, AS NOMINEE FOR SUNTRUST MORTGAGE, INC., its successors and assigns , the mortgagee of a certain Mortgage, whose parties, dates and recording information are listed below, does hereby  acknowledge full payment and satisfaction of the same, and in consideration thereof, does hereby cancel and discharge said Mortgage.

Original Mortgagor: **DAREN C DALY, A SINGLE MAN AND JAMIE A SCHINDLER, A SINGLE WOMAN**

Original Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SUNTRUST MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS**

dated: **12/22/2015** Recorded: **01/06/2016** as Instrument Number: **113439864** In the Official Records in the County of **Broward** State of **FL** affecting Real Property and more particularly, described on said Mortgage referred to herein.

Property Address: **10248 NW 62ND COURT PARKLAND, FL 33076**

Loan Amount: **$417000.00**

IN WITNESS WHEREOF, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as mortgagee, AS NOMINEE FOR SUNTRUST MORTGAGE, INC., its successors and assigns** by the officers duly authorized, has duly executed the foregoing instrument.

Date: **04/20/2020.**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
**as mortgagee, AS NOMINEE FOR SUNTRUST MORTGAGE,**
**INC., its successors and assigns**

By: _____

Name: **STARR LACKS**

Title: **Assistant Vice-President**

STATE OF **Virginia**
COUNTY OF **Richmond (City)** } s.s.

On **04/20/2020**, before me, **ANGELA YVETTE WRIGHT,** Notary Public, personally appeared **STARR LACKS, Assistant Vice-President** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as mortgagee, AS NOMINEE FOR SUNTRUST MORTGAGE, INC., its successors and assigns** , personally known to me (or proved to me the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she/he/they executed the same in her/his/their authorized capacity(ies), and that by her/his/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Notary Public: **ANGELA YVETTE WRIGHT**
My Commission Expires: **08/31/2021**
Commission #: **7708551**

```
ANGELA YVETTE WRIGHT
Notary Public
Commonwealth of Virgina
Registration No. 7708551
My Commission Expires Aug 31, 2021
```

Drafted By: **SHERRI R. FARMER**

**EXHIBIT**
**27**