UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                    Chapter 11

DAREN C. DALY                             Case No.: 22-15694-SMG

　　　　Debtor.
_____/

**OBJECTION TO CLAIM NO. 13-1**

**IMPORTANT NOTICE TO CREDITOR:
THIS IS AN OBJECTION TO YOUR CLAIM**

　　　　This objection seeks either to disallow or reduce the amount or change the priority status of the claim filed by you or on your behalf. Please read this objection carefully to identify which claim is objected to and what disposition of your claim is recommended.

　　　　If you disagree with the objection or the recommended treatment, you must file a written response WITHIN 30 DAYS from the date of service of this objection, explaining why your claim should be allowed as presently filed, and you must serve a copy to the undersigned attorney OR YOUR CLAIM MAY BE DISPOSED OF IN ACCORDANCE WITH THE RECOMMENDATION IN THIS OBJECTION.

　　　　If your entire claim is objected to and this is a chapter 11 case, you will <u>not</u> have the right to vote to accept or reject any proposed plan of reorganization until the objection is resolved, unless you request an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing your claim for voting purposes.

　　　　The written response must contain the case name, case number, and must be filed with the Clerk of the United States Bankruptcy Court.

　　　　Pursuant to Bankruptcy Rule 3007 and Local Rule 3007-1, the Debtor object(s) to the following claim filed in this case*:

| Claim No. | Name of Claimants | Amount of Claim | Basis for Objection and Recommended Disposition |
|---|---|---|---|
| 13-1 | Patrick Daly, Elizabeth Daly, All Paving & Sealcoating, LLC | $4,051,277.41 | **Basis:** As detailed in the attached Summary of Objection**,** there is no credible evidence or legal basis to support that the Claimants are general unsecured creditors of the |

| | | | Debtor, yet the Claimants have continued to assert frivolous claims to vexatiously multiply the legal proceedings and costs.<br><br>**Recommendation:** The Claim should be disallowed in its entirety. |
|---|---|---|---|

*Notwithstanding the requirements of Bankruptcy Rule 3007, up to five objections to claim may be included in one pleading.  (See Local Rule 3007-1(C).)

Dated: October 24, 2022

Respectfully submitted,

**DGIM Law, PLLC**
*Counsel for the Debtor*
2875 NE 191st Street, Suite 705
Aventura, FL 33180
Phone: (305) 763-8708

*/s/ Monique D. Hayes*
Isaac Marcushamer, Esq.
Florida Bar No. 0060373
isaac@dgimlaw.com
Monique D. Hayes, Esq.
Florida Bar No. 0841573
monique@dgimlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was served via CM/ECF Notification to all interested parties via CM/ECF and via U.S. Mail to all parties on the attached service list on this 24th day of October, 2022.

*/s/ Monique D. Hayes*
Monique D. Hayes, Esq.
Florida Bar No. 0841573
monique@dgimlaw.com

2

**<u>SERVICE LIST</u>**

Patrick Daly
c/o Bruce Goodman, Esq.
5531 N. University Drive
Pompano Beach, FL 33067

C. David Tangora, P.A.
200 SE 18th Ct
Ft. Lauderdale, FL 33316
Tangoralaw@bellsouth.net

**<u>TO ALL PARTIES ON THE ATTACHED MAILING MATRIX</u>**

Label Matrix for local noticing
113C-0
Case 22-15694-SMG
Southern District of Florida
Fort Lauderdale
Mon Oct 24 14:50:18 EDT 2022

All Paving, Inc.
23123 N State Road 7
Syite 250
Boca Raton, FL 33428-5489

Ally Bank, c/o AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

AmeriCredit Financial Services, Inc. dba GM
P O Box 183853
Arlington, TX 76096-3853

Broward County
c/o Records, Taxes & Treasury
Attn: Bankruptcy Section
115 S. Andrews Ave. A-100
Ft. Lauderdale, FL 33301-1888

Tokyo Century (USA) Inc
c/o Dennis Dressler
Dressler Peters LLC
70 W. Hubbard St.
Suite 200
Chicago, IL 60654-5677

All Paving and Sealcoating, LLC
Bruce A. Goodman
5531 N. University Drive
Pompano Beach, FL 33067-4649

All Paving, Inc.
10248 NW 62nd Ct
Pompano Beach FL 33076-2349

Ally Financial, Inc.
Ally Detroit Center
500 Woodward Ave
Detroit, MI 48226-3416

BMO Harris Bank N.A.
PO Box 3040
Cedar Rapids, IA 52406-3040

BMO Transportation Finance
300 E John Carpenter Freeway
Suite 500
Irving TX 75062-2370

Best Buy CBNA
POB 78009
Phoenix, AZ 85062-8009

CIT Bank NA
10201 Centurion Parkway N 110
Jacksonville, FL 32256-4101

Cadence Bank NA
25 South Links Avenue
Sarasota, FL 34236-5906

Capital One Bank (USA), N.A.
by American InfoSource as agent
PO Box 71083
Charlotte, NC  28272-1083

(p)CATERPILLAR FINANCIAL SERVICES CORPORATION
2120 WEST END AVENUE
NASHVILLE TN 37203-5341

Clayton Trial Lawyers
401 E. Las Olas Blvd
Suite 1400
Fort Lauderdale, FL 33301-2218

Clayton Trial Lawyers, PLLC
401 E Las Olas Blvd, Suite 1400
Ft. Lauderdale, FL 33301-2218

Elizabeth Daly
Bruce Goodman Esq.
5531 N. University Drive
Pompano Beach, FL 33067-4649

First Citizens Bank & Trust Comapny
PO Box 593007
San Antonio, TX 78259-0200

Internal Revenue Service
POB 7346
Philadelphia, PA 19101-7346

Isuzu Finance of America, Inc.
2500 Westchester Ave Ste 312
Purchase, NY 10577-2578

Komatsu Financial
c/o Linder Industrial Machinery
1601 S Plant City, FL 33563-2014

Kubota Credit Corporation USA
1000 Kubota Drive
Grapevine, TX 76051-2334

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Patrick Daly
Bruce Goodman, Esq.
5531 N. University Drive
Pompano Beach, FL 33067-4649

Suntrust Mastercard
6260 Powerline Road
Fort Lauderdale, FL 33309-2018

Synchrony Bank/Paypal Credit
POB 530975
Orlando, FL 32896-0001

Tax Collector Palm Beach County
Attn Anne M Gannon
POB 3353
West Palm Beach, FL 33402-3353

The Meadow Run Association, Inc.
c/o Paul J. Milberg, Esq.
5550 Glades Road, Suite 630
Boca Raton, FL 33431-7206

The Soto Law Group, PA
2400 E. Commercial Blvd, Suite 400
Fort Lauderdale, FL 33308-4026

Tokyo Century (USA) Inc.
C/O Dennis A. Dressler
Dressler Peters LLC
70 W. Hubbard St., Ste. 200
Chicago, IL 60654-5677

UHealth
POB 2978
Munice, IN 47307-0978

US Attorney General
950 Pennsylvania Avenue, NW
Washington DC 20500

US Department of Education
400 Maryland Avenue SW
Washington DC 20202-0001

(p)U S  ATTORNEY'S OFFICE
99 NE 4TH STREET SUITE 300
MIAMI FL 33132-2131

Daren C. Daly
10248 NW 62 CT
Pompano Beach, FL 33076-2349

Isaac M Marcushamer Esq.
DGIM Law, PLLC
2875 NE 191st Street
Suite 705
Aventura, FL 33180-2803

Monique D Hayes
DGIM Law, PLLC
2875 NE 191 Street
Suite 705
Aventura, FL 33180-2803

Tarek Kirk Kiem
PO Box 541325
Greenacres, FL 33454-1325

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Caterpillar Financial
POB 340001
Nashville, TN 37203-0001

United States Attorney
99 NE 4th Street
Miami, FL 33131

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)All Paving And Sealcoating, LLC
Bruce A. Goodman
5531 N. University Drive, Suite 101Pompa

(d)Ally Bank c/o AIS Portfolio Services, LLC
4515 N. Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

(d)AmeriCredit Financial Services, Inc. dba G
P O Box 183853
Arlington, TX 76096-3853

(d)Broward County
c/o Records, Taxes & Treasury
Attn:  Bankruptcy Section
115 S. Andrews Ave. A-100
Ft. Lauderdale, FL 33301-1888

(u)Name,Address1,Address2,Address3,City,State
Ally Financial Inc,Ally Detroit Center 5
Best Buy CBNA,PO Box 78009,,,Phoenix,AZ,
BMO Transportation Finance,300 E John Ca
Capital One Bank,1680 Capital One Dr,,,M
CIT Bank NA,10201 Centurion Parkway N 10

End of Label Matrix
Mailable recipients    39
Bypassed recipients     5
Total                  44

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                              Chapter 11

DAREN C. DALY                                       Case No.: 22-15694-SMG

        Debtor.
_____/

## SUMMARY OF DEBTOR'S OBJECTION TO CLAIM 13-1

1.      The Debtor commenced this action by the filing of a Subchapter V Chapter 11 petition on July 26, 2022.

2.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. 157(b)(2).

3.      Venue of this case, the Motion, and this Objection in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The Debtor is the owner of All Paving, Inc. and Resurface Industries, LLC. Through these entities the Debtor provides roadway solutions, including paving, concrete overlay, sealcoating and related services to municipalities and commercial customers.  The Debtor operates in multiple counties in Florida with offices at 23123 N. State Road 7, Suite 250, Boca Raton, FL 33428.

5.      The Debtor's businesses are dependent on his paving license, skill, bonding, relationships, and personal services.

6.      On September 19, 2013, the Debtor formed All Paving, Inc. ("API" or the "Company") as a corporation operating under the laws of the State of Florida (the "Formation"). At the time of Formation, the Debtor identified his fiancé, Jamie A. Schindler ("Jaime"), as the

1

president and 80% owner or the Company. The Debtor identified himself as a 10% owner and Patrick Daly[1] ("Patrick") as the holder of the remaining 10% ownership interest. A copy of the Formation Ledger is attached hereto as **Exhibit A.**

7.      Prior to the Formation, the Debtor worked with Patrick in a business, All Paving & Sealcoating, LLC ("APS") formed by Patrick in 2012. The Debtor continued to work with Patrick and APS after the Debtor founded API.

8.      In late 2015, the Debtor and Patrick agreed to share and maintained operational affiliations, but had distinguished businesses for taxes, revenue, customers and services. Under the arrangement, Patrick maintained full control and ownership of APS. The Debtor maintained full control and ownership of API. Elizabeth Daly[2], who is claiming majority ownership in the declaratory action did not work at business, and never held an ownership interest in the API.

9.      The separate companies shared a common office, fictious name, equipment, some vendor accounts, and certain personnel. They maintained separate bookkeeping and filed separate tax returns. The arrangement clearly benefited both companies due to economies of scale.

10.     Both APS and API flourished under the arrangement.

11.     For a relatively short period between Fall 2015 and May 2017, the companies operated as separate entities sharing resources and a business office with Patrick at the helm of APS and the Debtor at the helm of API. Periodic financial reconciliations were conducted between the companies that were reviewed and approved by both Patrick and the Debtor.

12.     In 2016, Jaime completely relinquished her ownership interest in API to the Debtor.

13.     Beginning in 2016, discord arose between Patrick and the Debtor regarding the business arrangements.

---

[1] Patrick Daly is the Debtor's father.
[2] Elizabeth Daly is the Debtor's mother.

14.     Between late 2016 and spring 2017, the Debtor and Patrick, engaged in discussions to disaffiliate the businesses. Those discussions culminated in a meeting on April 14, 2017 at BankUnited to disburse the funds on hand in the API Operating Account as a "separation reconciliation". An agreement was reached to facilitate the separation with the payment of certain funds to Patrick.

15.     The purpose of the separation, and related payments, was to facilitate complete business disassociation between the Debtor, Patrick and Elizabeth. The parties intended to extinguish any claim of ownership Patrick and Elizabeth had in API and any claim of ownership the Debtor had in APS. In other words, each side was going separate ways.

16.     On or about May 22, 2017, Patrick removed all APS files and materials from the shared business office, opened a new office down the street, stopped using the "all paving" fictious name and trademark, and registered a different fictitious name for APS on May 22, 2017.

17.     Months after the agreed separation and both businesses moved forward with their operations the Movants, for the first time, asserted their unwarranted claim of majority ownership in API.

18.     The Claimants filed Proof of Claim No. 13-1 (the "Claim") on September 30, 2022. As support for the Claim, the Claimants attach a copy of the Second Amended Complaint pending in the Circuit Court of the Seventeenth Judicial Circuit, in and for, Broward County, Florida (the "Second Amended Complaint") and related filings.

19.     The Second Amended Complaint asserts thirteen (13) counts against the Debtor and his fiancé Jaime A. Schindler, a non-debtor. Each of the claims asserted in the Claimants' Second Amended Complaint is contingent on the viability of their Count XII (Declaratory Judgment claim regarding the movants Patrick and Elizabeth Daly ownership of All Paving, Inc.)

and their Count XIII (Declaratory Judgment regarding ownership of All Paving Tradename,
Trademark, Logo, and the AllPaving.com Domain Name) of the Second Amended Complaint.

20.     The Claim is objected to for the following reasons:

- The Claim is unenforceable against the Debtor or property of the Debtor
- there is no credible evidence or legal basis to support that the Claimants are general
  unsecured creditors of the Debtor
- the Debtor is the sole founder, funder, and operator of the Company
- the Claimants have no legally recognizable interest in the Company
- there is no equitable basis to grant the Claimants an interest in the Company
- To the extent the Claim seeks declaratory relief, such relief requires an adversary
  proceeding pursuant to Fed. R. Bankr. P. 7001(9) and (2).

As further support for the Objection, the Debtor attaches and incorporates by reference his
answer and affirmative defenses and counterclaim to the Second Amended Complaint hereto as
**Exhibit B**.

21.     For the reasons set forth above, the Debtor respectfully requests (i) that the
Objection be sustained, (ii) that the Debtor be awarded attorney fees for having brought such
Objection, (iii) that such fees be paid directly to counsel for the Debtor by Claimants, and (iv) such
other and further relief as this Court may deem just and proper.

Dated: October 24, 2022

Respectfully submitted,

**DGIM Law, PLLC**
*Counsel for the Debtor*
2875 NE 191st Street, Suite 705
Aventura, FL 33180
Phone: (305) 763-8708

*/s/ Monique D. Hayes*
Isaac Marcushamer, Esq.
Florida Bar No. 0060373
isaac@dgimlaw.com
Monique D. Hayes, Esq.
Florida Bar No. 0841573
monique@dgimlaw.com

4

## VERIFICATION OF PLEADING

I, Daren C. Daly, hereby swear and affirm that the factual statements and representations made herein are true and correct.

_____
Daren C. Daly

STATE OF FLORIDA        )
COUNTY OF BROWARD    )

**I HEREBY CERTIFY** that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, personally appeared, Daren C. Daly, who has produced a Florida's driver's license as valid identification and who executed and acknowledged the foregoing instrument freely and voluntarily and for the purposes contained thereon

**WITNESS** my hand and official seal in the County and State last foresaid on this 24 day of October, 2022.

_____
NOTARY PUBLIC

My commission expires: April 12, 2024

FRANCY FELICIANO
Notary Public - State of Florida
Commission # GG 972959
My Comm. Expires Apr 12, 2024
Bonded through National Notary Assn.

5

# EXHIBIT A

| All Paving Corporate Information | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **List Name** | **Information to Fill Out** | | | | | | | | | | | | | | |
| Firm Name | All Paving, Inc. | | | | | | | | | | | | | | |
| Business Organization | Corporation | | | | | | | | | | | | | | |
| Business Address | 8439 NW 20th Place, Coral Springs, FL 33071 | | | | | | | | | | | | | | |
| County | Broward | | | | | | | | | | | | | | |
| Phone | 954-933-2053 | | | | | | | | | | | | | | |
| Fax | 954-933-1380 | | | | | | | | | | | | | | |
| Type of Business | Construction Contractual Referrals | | | | | | | | | | | | | | |
| Date of Business Incorp. | 9/19/2013 | | | | | | | | | | | | | | |
| Federal Tax #/ EIN Number | 46-3704275 | | | | | | | | | | | | | | |
| Corporation Papers State | Florida | | | | | | | | | | | | | | |
| Email information | jamie@all-paving.com | | | | | | | | | | | | | | |
| Website | www.all-paving.com | | | | | | | | | | | | | | |
| Principal Name | Jamie Schindler | | | | | | | | | | | | | | |
| Physical Residential Address | 8439 NW 20th Pl., Coral Springs, FL 33071 | | | | | | | | | | | | | | |
| Jamie's DOB | 11/1/1986 | | | | | | | | | | | | | | |
| Patrick's Contractor License # | ███████17856-X | | | | | | | | | | | | | | |
| Patrick's Date of Birth | 7/11/1966 | | | | | | | | | | | | | | |
| Jamie's Social Security ### | ███████-9076 | | | | | | | | | | | | | | |
| DUNS Number | | | | | | | | | | | | | | | |
| NAICS Designation | 237310, 238990 | | | | | | | | | | | | | | |
| SBA CCR Listed | Yes | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| System for Award Management (SAM) Username | All Paving | | | | | | | | | | | | | | |
| SAM email | Daren@allpavingandsealcoating.com | | | | | | | | | | | | | | |
| SAM Passord | Umiami12! | | | | | | | | | | | | | | |
| CAGE Code | | | | | | | | | | | | | | | |
| 8 (A) Certification Number | | | | | | | | | | | | | | | |
| 8 (a) Expiration Date | | | | | | | | | | | | | | | |
| SDB Certification Number | | | | | | | | | | | | | | | |
| SDB Expiration Date | | | | | | | | | | | | | | | |
| Woman Own Enterprise Cert. Number | | | | | | | | | | | | | | | |
| Certification Type | | | | | | | | | | | | | | | |
| Certifying Agency | | | | | | | | | | | | | | | |
| Expiration Date | | | | | | | | | | | | | | | |
| Owner 1 | Jamie - 80% | | | | | | | | | | | | | | |
| Owner 2 | Daren - 10% | | | | | | | | | | | | | | |
| Owner 3 | Patrick - 10% | | | | | | | | | | | | | | |
| Legal Structure | Corporation | | | | | | | | | | | | | | |
| Business Type | Service Provider | | | | | | | | | | | | | | |
| Geographical Sesrvice Area | Local, Regional, and National | | | | | | | | | | | | | | |
| State registred to collect tax | Florida | | | | | | | | | | | | | | |
| Year Business established | 2013 | | | | | | | | | | | | | | |
| Number of Employees | 3 | | | | | | | | | | | | | | |
| Commodity | Construction Contractual Referrals | | | | | | | | | | | | | | |
| Business specialty | All Paving is service company focused on connecting businesses with third-party contractors to ease the bidding and subcontracting process.  Specifically, we handle bidding, subcontracting and contract proposals f | | | | | | | | | | | | | | |
| What does company add? | Our company can reduce expenses and streamline the bidding and subcontracting process for all parking lot, curbing, ADA Compliance and paving issues by structuring unique, individualized property audits with a | | | | | | | | | | | | | | |
| Describe product to end-user | Our product/service end-user is the target corporation.  We provide a service to reduce costs of parking lot issues by streamlining and anticipating the bidding process. | | | | | | | | | | | | | | |
| Competitive Advantage | Our competitive advantage of leveraging and knowing the paving market by not just asking several companies to submit a bid, and going with the cheapest one.  But we know what each project should cost, why sep | | | | | | | | | | | | | | |
| Annual Sales | 0 | | | | | | | | | | | | | | |

# **EXHIBIT B**

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

ALL PAVING, INC., a Florida corporation,
ALL PAVING & SEALCOATING LLC, a
Florida limited liability company,
PATRICK DALY and ELIZABETH DALY,

CASE NO.: CACE 17-014794 (03)

  Plaintiffs,

v.

DAREN C. DALY and JAMIE A.
SCHINDLER,

  Defendants.

_____/

DAREN C. DALY and ALL PAVING, INC.,
a Florida corporation,

  Counter-Plaintiffs,

v.

PATRICK DALY, ELIZABETH DALY,
and ALL PAVING & SEALCOATING LLC,
a Florida limited liability company,

  Counterclaim-Defendants.

_____/

### DEFENDANT DAREN C. DALY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' SECOND AMENDED COMPLAINT AND AMENDED COUNTERCLAIM BY DAREN DALY AND ALL PAVING, INC. AGAINST ALL PAVING & SEALCOATING, LLC D/B/A 3D PAVING, PATRICK DALY, AND ELIZABETH DALY

  Defendant, DAREN C. DALY ("Defendant Daren Daly") answers the Second Amended

Complaint ("SAC"), as follows:

  1.  Admit only that the SAC claims such relief; otherwise denied.

  2.  Denied. All Paving, Inc. is a Florida corporation with its principal place of business

in Palm Beach County, Florida.

  3.  Denied. "All Paving LLC" n/k/a 3-D Paving (hereinafter "All Paving &

Sealcoating" or "3D Paving") may have been formed as a limited liability company in January 2012, but it was operated as a partnership between Robert Holland and Patrick Daly pursuant to a May 2013 partnership agreement until January 2020.

4.   Admit.

5.   Denied as pled.

6.   Admit.

7.   Denied as pled.

8.   Admit only as to 2012; otherwise, denied.

9.   Admit.

10.   Admit that All Paving & Sealcoating purchased the allpavingandsealcoating.com domain name in 2012.

11.   Denied as pled. Admit that Daren went to law school and played football in college.

12.   Denied. All Paving & Sealcoating was initially formed as a Florida limited liability company with Patrick Daly as the sole manager and member. In May 2013 it became a partnership pursuant to a written partnership agreement with Robert ("Bob") Holland, and thereafter operated as a partnership. *See* attached Exhibit "A". It was treated as a partnership for federal tax purposes. In January 2020, Robert Holland sold his partnership interest to Patrick Daly. *See* attached Exhibit "B".

13.   Denied. The ownership of the All Paving & Sealcoating entity is, in fact, in dispute. *See* above no. 12.

14.   Denied. Daren Daly has not completed the remaining credits for a master's degree in finance and real estate.

15.   Admit that Robert Holland was a partner in All Paving & Sealcoating pursuant to

the written agreement signed by Patrick Daly and Robert Holland; otherwise denied.

16.     Admit that Plaintiffs employed Joseph Farendorf as their attorney; otherwise denied.

17.     Denied.

18.     Admit that the Articles of Incorporation of All Paving, Inc. as filed, accepted and on record with the Florida Secretary of State reflect Daren Daly as the incorporator, Jamie Schindler as president, Daren Daly as vice-president, and Patrick Daly as vice-president. No directors were named in the Articles of Incorporation. Accordingly, pursuant to the statutory mandate of Fla. Stat. §607.0205(1), only Daren Daly as the incorporator could complete the organization of the corporation and appoint directors; otherwise denied.

19.     Denied. Further, Joseph Fahrendorf never had any involvement with All Paving, Inc. other than to provide clerical assistance to Daren Daly in his incorporation of All Paving, Inc.

20.     Denied as pled.

21.     Admit only that Daren Daly commenced employment with All Paving & Sealcoating in February 2014; otherwise denied as pled.

22.     Denied as pled. All Paving & Sealcoating was at that time owned by Patrick Daly and Robert Holland. Admit that Daren Daly had a football resume for several years having worked in that career previously, but otherwise he was fully involved in the paving business.

23.     Denied as phrased. Daren Daly's involvement in the paving business included his sole development of All Paving, Inc. as a separate entity and business from All Paving & Sealcoating.

24.     Denied. Daren Daly alone purchased the allpaving.com domain name from George Day. The document attached as Exhibit "3" to the SAC is a proposed contract prepared by the

seller George Day that was never executed. The buyer is shown as Daren Daly. The reference to the company is superfluous because if All Paving & Sealcoating in fact was the purchaser there would be no need for a reference to Daren Daly as purchaser. The insert of "company" was made by George Day for unknown reasons, but likely was just a stock form used by George Day. In fact, Patrick Daly has admitted in this litigation that he rejected on behalf of himself and All Paving & Sealcoating Daren Daly's request that Patrick Daly or his company purchase the domain name for $4,600.00, which led to Daren Daly independently purchasing the domain name. Neither Patrick Daly, Elizabeth Daly nor All Paving & Sealcoating was involved in any negotiations for purchase of the domain name. Further, Daren Daly was not an officer, director, or agent of All Paving & Sealcoating when the contract negotiations took place and thus had no actual or apparent authority to bind All Paving & Sealcoating to a contract. Only Daren Daly was liable to George Day to make payment pursuant to their contract for the domain name, and in fact only Daren Daly transmitted payment to George Day.

25.    Denied.

26.    Denied. The domain name was placed in Patrick Daly's Go Daddy Account for convenience purposes only; in fact, Patrick Daly allowed Daren Daly to place a multitude of other domain names owned by Daren Daly in the account.

27.    Denied. Further, All Paving & Sealcoating never acquired a trademark in "all paving" or any logo using "all paving".

28.    Denied. Admitted only that during the period when the two companies, All Paving, Inc., and All Paving & Sealcoating, operated with combined operations from fall 2015 to spring 2017, the companies shared email addresses for all employees.

29.    Denied.

30.     Denied. Admit that an operating account for All Paving, Inc. was opened at BankUnited in September 2015 so that Daren Daly could separately run and operate All Paving, Inc.

31.     Admit that the bank account was opened and that the Corporate Resolution prepared by BankUnited was executed and certified erroneously by Patrick Daly only. Daren Daly signed only the section requiring specimens of signatures of authorized users of the bank account in order to protect the bank in processing withdrawals. As attested by the BankUnited bank officer, Henry Mendez, there was no simultaneous meeting of all three Dalys at Bank United; rather the Dalys provided signatures at different times. Further, Patrick Daly signed the Corporate Resolution certification days after Elizabeth Daly and Daren Daly signed the authorized bank account signer section of the document. There never was corporate action taken in September 2015. Documents created by a bank are not authorized under Chapter 607, the Florida Business Corporation Act, as substitutes for required written statutory corporate action, as Judge Lopane found in this litigation, in September 2020.[1] Further, there was no meeting of the minds between the parties because the incorporator, Daren Daly, never intended the BankUnited documents to operate as the completion of the formation of the corporation or appointment of directors. Rather, the purpose for the bank documents was to open a bank account and merely to allow All Paving, Inc. under the auspices of Daren Daly to have a separate operating account from that of All Paving & Sealcoating and facilitate the business plan of two companies under separate control operating in tandem for the benefit of each.

---

[1] THE COURT: So, if I were to open up a
4 bank account at any bank and say, "I am the
5 primary shareholder of the McDonald's
6 Corporation," then, all of a sudden, I own
7 the McDonald's Corporation?

September 16, 2020 Trial Transcript @14.

32.     Denied. The BankUnited Bank Resolution references solely a Board of Directors meeting on 9/19/2013, which not only did not take place, but was a legal and factual impossibility because that was the date that All Paving, Inc. was incorporated without directors named in its filed Articles. Further, the document references that Patrick Daly was elected as secretary of the corporation on 9/19/2013, which also was a legal and factual impossibility and never occurred. Thus, the document is void.

33.     Denied. *See* No. 32.

34.     Denied. *See* No. 32.

35.     Denied. The Florida statute quoted absolutely does not state that.

36.     Denied. Again, the referenced Florida statutes do not support the propositions alleged.

37.     Denied. A meeting to complete the formation of the corporation and appoint directors in compliance with Fla. Stat. §607.0205(1) occurred in July 2019, at which time a Corporate Record Book was created. Nothing was "backdated" for fraudulent purposes. Rather, as is customary in corporate practice, the corporate records were merely "updated". However, prior to that date in September 2013, Daren Daly and Jamie Schindler had discussed corporate ownership and Jamie Schindler in fact had accepted 80% ownership, which was recorded in a contemporaneous corporate record, as defined in Fla. Stat. §607.01401(62).

38.     Denied. As stated by BankUnited in its deposition in this litigation, the sole purpose of the bank-created Beneficial Ownership Certificate was for bank regulation purposes and anti-money laundering purposes. In fact, BankUnited has testified that it does not participate in corporate action or meetings when bank accounts are opened, which is contrary to bank policy. Daren Daly never saw or was provided the Beneficial Ownership document when the bank account

was opened. In fact, in December 2016, Elizabeth Daly had correspondence with BankUnited that revealed that she too was unaware of the document until it was provided to her in December 2016 by BankUnited. In fact, during this email correspondence it is apparent that Elizabeth Daly had no clue that any documents existed that purportedly and incorrectly showed her as having any ownership interest in All Paving, Inc.

39.    Admit that no stock certificates were issued prior to July 2019. Otherwise denied, including that BankUnited internal bank documents established corporate ownership and in any way complied with Chapter 607, Florida Statutes. However, All Paving, Inc. corporate ownership was documented in a corporate record at the time of incorporation.

40.    Admit that a credit application was submitted; otherwise, denied. All credit applications were prepared with the consent and ratification of all parties were filled out to facilitate the scheme orchestrated by Steven Joseph Berkman to qualify All Paving & Sealcoating as a disadvantaged woman-owned business and thus promote Elizabeth Daly, who in reality knew nothing about the paving business and had no substantial involvement in the paving businesses, as a majority owner of a paving business.

41.    Admit that a credit application was submitted; otherwise denied. *See* No. 40.

42.    Denied. *See* No.40. Further, if Daren Daly signed either of his parent's signature to credit applications and the like, it was done with their knowledge, approval, or ratification. As admitted by Plaintiffs' agent, Steven Joseph Berkman, the scheme that benefited the Plaintiffs included showing Elizabeth Daly on as many business documents as possible when she applied for disadvantaged business status. Ultimately, the State of Florida and the United States government denied Elizabeth Daly's applications finding that she had no substantial involvement in the paving businesses.

43.     Denied. Steven Joseph Berkman registered and filed the fictitious name document. This was consistent with the joint business plan adopted and implemented by All Paving, Inc. and All Paving & Sealcoating.

44.     Admit that Patrick Daly and Elizabeth Daly guarantied certain equipment that was titled in the name of All Paving, Inc., but which All Paving & Sealcoating claimed as assets and depreciated on its federal tax return; the equipment was used by both companies prior to the 2017 Business Divorce; otherwise, denied. Further, Patrick Daly and Elizabeth Daly are no longer liable as guarantors on any of the equipment, or for that matter any equipment owned by All Paving, Inc.

45.     Denied. Any alleged "seed money" was repaid to All Paving and Sealcoating pursuant to reconciliations between the two companies. As of December 2017, according to the internal accounting records of All Paving & Sealcoating, nothing was owed to or from the companies. *See* the All Paving & Sealcoating Balance Sheet, attached as Exhibit "C".

46.     Denied.

47.     Admit that Daren Daly and Jamie Schindler applied for a personal mortgage on a personal residence, but otherwise denied as argumentative and incomplete recitation of facts.

48.     Denied as argumentative and incomplete recitation of facts. Further, the 2016 Annual Report was filed by Steven Joseph Berkman.

49.     Denied.

50.     Denied.

51.     Denied as argumentative and incomplete recitation of facts. Further, no "forgery" occurred as a matter of law.

52.     Denied as argumentative and incomplete recitation of facts. Further, no "forgery" occurred as a matter of law.

53.    Admit that Amended Articles were filed; otherwise denied as argumentative and incomplete recitation of facts.

54.    Admit that a wire transfer occurred and that monies were thereafter immediately transferred to an All Paving, Inc. account; otherwise, denied.

55.    Admit that settlement negotiations occurred in January 2017 when the parties were adverse; otherwise denied.

56.    Denied.

57.    Denied. Further, no "forgery" occurred.

58.    Denied. Steven Joseph Berkman filed the annual report.

59.    Admit that Patrick Daly agreed to accept 65% of the profits of All Paving, Inc. for 2016 in consideration of his abandonment of any claim that he was ever a shareholder of All Paving, Inc. as part of the Business Divorce Agreement between All Paving, Inc. and All Paving & Sealcoating.

60.    Denied.

61.    Denied. Further, as part of the business divorce between All Paving, Inc. and All Paving & Sealcoating, Patrick Daly and Elizabeth Daly agreed to move the allpaving.com domain name out of Patrick Daly's Go Daddy account so that Daren Daly could use another hosting service to host the domain name that he solely owned.

62.    Denied.

63.    Denied.

64.    Admit that Bank United froze the account due to Patrick Daly and Elizabeth Daly's reneging on their Business Divorce Agreement and making spurious claims; otherwise, denied.

65.    Denied. On April 14, 2017, the parties agreed to a final reconciliation of the funds

in the Bank United account with some $313,000.00 going to All Paving & Sealcoating, some $58,000.00 going to Patrick Daly and a balance of some $300,000.00 remaining with All Paving, Inc. under the sole auspices of Daren Daly. *See* attached Exhibit "D".

66.    Admit that the server was temporarily removed to make a copy; otherwise denied.

67.    Denied. This is a subterfuge by Plaintiffs to explain why they voluntarily abandoned All Paving, Inc. and chose to start a competing business as 3D Paving & Sealcoating ("3-D Paving") in May 2017 while now contending, both absurdly and contrary to law, that they are fiduciaries to All Paving, Inc.

68.    Denied. Plaintiffs abandoned the former joint office of the two companies and unilaterally moved to a new office, taking their employees, files, and equipment to launch "3-D Paving" as a competing business to All Paving, Inc.

69.    Denied.

70.    Denied.

71.    Denied.

72.    Admit that Amended Articles were filed; otherwise, denied.

73.    Admit that Patrick Daly and Elizabeth Daly created the unlawful and phony June 2017 documents that Judge Lopane found on the record in September 2020 were self-serving and irrelevant to the issues in this litigation and inadmissible in evidence; otherwise, denied.[2]

74.    Admit that Patrick Daly and Elizabeth Daly created the unlawful and phony documents that Judge Lopane found on the record in September 2020 were self-serving and

---

[2] "THE COURT: That is exactly my position.
9 They're self-serving documents. Until we
10 assign the initial ownership or transfer of
11 ownership later on, these are just
12 self-serving documents that don't mean
13 anything, so I would sustain the objection."

Day 3 transcript of September 2020 trial @28.

irrelevant to the issues in this litigation; otherwise, denied.

75.    Admit that Daren Daly does not recognize the validity of Plaintiffs' unlawful unilateral and self-serving phony "Corporate Actions"; otherwise, denied.

76.    Admit. *See* No. 75.

77.    Admit except that All Paving, Inc. is not a proper plaintiff in this action.

78.    Admit that Daren Daly sent a letter to Ranger Construction Industries, Inc.; otherwise denied, including that it contained any false statements.

79.    Admit that this has been an expensive frivolous litigation; otherwise, denied.

80.    Denied.

81.    Denied.  To the extent they still exist, the equipment is titled and in the possession of All Paving, Inc.

82.    Admit that Jamie Schindler is a CPA and attorney employed by the Department of Treasury; otherwise denied.

83.    Denied.

84.    Denied. Jamie Schindler was a shareholder of All Paving, Inc. between September 19, 2013 and late 2016 when she relinquished her ownership to Daren Daly.

85.    Denied.

86.    Admit that a Release of Mortgage was recorded; otherwise denied.

87.    Denied.

88.    Denied.

89.    Denied.

90.    Denied.

91.    Denied. *See* Affirmative Defenses.

92.    Any allegation of the SAC not specifically admitted herein is specifically denied.

**DEFENSES AND AFFIRMATIVE DEFENSES**

93.    For a first defense, Defendant Daren Daly asserts that the Plaintiffs' claims are barred by waiver and estoppel. Plaintiff Patrick Daly has stated under oath in this litigation that he contends that he and Elizabeth Daly obtained their alleged interest in All Paving, Inc. by a gift from Daren Daly of all the All Paving, Inc corporate stock ("the whole company") in the summer of 2017 before the opening of the September 2017 BankUnited bank account and thereafter transferred 15% to Daren Daly, notwithstanding that the alleged BankUnited documents purport to show Daren Daly only as a 12.5% beneficial shareholder, which makes no rhyme or reason. Moreover, Daren Daly could not have factually or legally transferred all of the All Paving, Inc. corporate stock to Patrick Daly and Elizabeth Daly because he did not own all of the corporate stock at that time. Further, no subsequent transfer of All Paving, Inc. stock was made factually or legally by either Patrick Daly or Elizabeth Daly to Daren Daly.  Even if such a donative intent arguably existed, no delivery and acceptance of All Paving Inc. corporate stock ever occurred, which renders the alleged gift void. Alternatively, if the Daly Plaintiffs contend that Daren Daly promised them stock, their remedy is a claim for breach of contract to deliver the corporate stock, and no such contract claim has been brought in this litigation. Alternatively, even if Patrick Daly and Elizabeth Daly somehow received 100% of the All Paving, Inc. stock, Patrick Daly, and Elizabeth Daly as 100% owners of All Paving, Inc. *in toto* failed to comply with the Florida Business Corporation Act, Fla. Stat. §607.001, *et seq*. thereafter.

94.    For a second defense, Defendant Daren Daly asserts that the Daly Plaintiffs have filed this litigation based on their theory that they legally own corporate shares in a Florida corporation, All Paving, Inc., pursuant to alleged "legitimate documents" in accordance with Florida statutory law that they unilaterally created in June 2017, which is inconsistent with their theory that they became corporate shareholders in September 2017. They are not contending in

this litigation that they had any other contractual relationship or business entity relationship with Defendants. The June 29, 2017, purported "corporate documents" created by the Daly Plaintiffs and the July 3, 2017, Annual Meeting are illegal, void, and *intra vires* pursuant to the Florida Business Corporation Act, Fla. Stat. §607.0101, *et seq*. ("the Florida Corporation Act"). All Paving, Inc. was incorporated on September 19, 2013, by sole incorporator Defendant Daren Daly. The Articles of Incorporation did not name a Board of Directors. Pursuant to Fla. Stat. §607.0205 (1) (b), only the incorporator could hold an organizational meeting at the call of a majority of incorporators to complete the organization of the corporation and elect a board of directors. Because neither Patrick Daly nor Elizabeth Daly was ever an incorporator of All Paving, Inc., neither could call a meeting to complete the organization of the corporation or elect a board of directors. Pursuant to Fla. Stat. §607.0621, the issuance of stock in a Florida corporation is not mandatory, but rather at the discretion of the Board of Directors ("The board of directors *may* authorize shares to be issued for consideration . . .") (emphasis supplied). The Daly Plaintiffs were never elected as directors of All Paving, Inc. at an organizational meeting called by Daren Daly as incorporator and thus had no power to issue stock to themselves. In fact, they admit they were never elected as directors of All Paving, Inc. *Ergo*, they had no power to create corporate resolutions or call a meeting prior to the filing of this litigation. Further, Judge Lopane has ruled in this litigation in September 2020 that the claimed corporate documents attached to the SAC are irrelevant self-serving documents unilaterally created by the Daly Plaintiffs. *See* f.n.2 *supra*. Furthermore, the Daly Plaintiffs, while claiming for the past four years that they either are majority shareholder of All Paving, Inc. or seek a future declaration that they are majority shareholders, have in fact made repeated sworn statements under oath that they are *not* owners of All Paving, Inc., including in several affidavits filed with the Women's Business Enterprise Council in 2017 through 2020 and in a Paycheck Protection Program ("PPP") application with the federal government.

95.    For a third defense, if the Daly Plaintiffs' theory is that they are not corporate shareholders until Counts XII and XIII are determined, then they lack standing to maintain their other claims in the SAC.

96.    For a fourth defense, Defendant Daren Daly asserts waiver, estoppel, release. accord and satisfaction, and mootness based on the following facts: All Paving, Inc. has always been under the control of Daren Daly. For a less than 18-month period, All Paving Inc. under the control of Daren Daly, and All Paving & Sealcoating, under the control of Patrick Daly, operated as shared business operations whereby the companies shared offices, personnel, equipment, a fictitious name, and marketing. Periodic financial reconciliations occurred between the two companies with the consent, approval, and ratification of all parties. A Business Divorce occurred in spring 2017 that was fully approved, agreed-upon and ratified by the Daly Plaintiffs and All Paving & Sealcoating. At all times,

- Daren Daly alone filed all federal and state tax returns for All Paving, Inc.;

- Daren Daly alone was the licensor for All Paving, Inc to obtain its licenses and permits;

- Daren Daly alone made all decisions regarding hiring and retention of employees.

- Daren Daly alone obtained all registered trademarks for All Paving, Inc.

In fact, in May 2017 the Daly Plaintiffs and All Paving & Sealcoating unilaterally and without notice to Daren Daly or All Paving, Inc. abandoned the shared offices and opened a separate office as "3-D Paving & Sealcoating." They also filed for a fictitious name as "3-D Paving & Sealcoating" and discontinued the use of the "all paving" fictitious name, which has been solely used by All Paving, Inc. since that date. The Daly Plaintiffs and 3D Paving also registered and have exclusively been using "3-dpaving.com" as their domain name and web site since their voluntary abandonment of the shared business operations. The Daly Plaintiffs and All Paving & Sealcoating have been

14

using a 3-D Paving email account since that date. Furthermore, All Paving, Inc. and All Paving & Sealcoating since at least May 22, 2017—a period of over four years—have been direct marketplace competitors in the same paving industry in the same geographic location.

97.    For a fifth defense, Defendant Daren Daly asserts failure of consideration including failure to comply with Chapter 607, Florida Statutes in that that neither Patrick Daly nor Elizabeth Daly paid for All Paving, Inc. corporate shares with any consideration as set forth in Fla. Stat. §607.0621(2), which was approved by the Board of Directors of All Paving, Inc.

98.    For a sixth defense, Defendant Daren Daly asserts failure of consideration including failure to comply with Chapter 607, Florida Statutes in that that the Board of Directors of All Paving, Inc. never determined that any claimed consideration paid by Patrick Daly or Elizabeth Daly for their purported issuance of All Paving, Inc. corporate shares was adequate as mandated by Fla. Stat. §607.0621(2). In fact, the Daly Plaintiffs have admitted that they provided no personal funds in connection with their alleged ownership of All Paving, Inc. corporate shares. There is no evidence that either Elizabeth Daly or Patrick Daly paid any consideration in connection with their spurious claim that they acquired ownership through a transfer of corporate stock from Daren Daly in late summer or fall 2015.

99.    For a seventh defense, Defendant Daren Daly asserts assumption of the risk and failure to comply with Chapter 607, Florida Statutes, in that the Daly Plaintiffs chose to ignore the statutory requirements of the Florida Business Corporation Act as mandated by the Florida legislature and did so at their own peril and risk.

100.    For an eighth defense, Defendant Daren Daly asserts that the Daly Plaintiffs negligently ignored the statutory requirements of the Florida Business Corporation Act as mandated by the Florida legislature and did so at their own peril and risk.

101.    For an ninth defense, Defendant Daren Daly asserts that the Daly Plaintiffs are estopped or equitably estopped to claim that they own All Paving, Inc. by virtue of their disregard

and foregoing of the statutory-required compliance with the Florida Business Corporation Act and their inequitable and fraudulent actions that caused monetary harm to All Paving, Inc. and diverted business opportunities from All Paving, Inc. to 3-D Paving, a competitor of All Paving, Inc. under the control of the Daly Plaintiffs and for the exclusive wrongful financial benefit to Plaintiffs.

102.    For a tenth defense, Defendant Daren Daly asserts that on July 3, 2019, Defendant Daren Daly completed the organization of All Paving, Inc. and lawfully elected Daren Daly as director. This was the only compliance with Fla. Stat. §607.0205(1)(b) by All Paving, Inc. after the creation of the initial corporate record of ownership. By unanimous consent of the Board of Directors, corporate action was adopted, confirmed, and ratified from the original date of incorporation and the corporate records were updated. The corporate action adopted is completely contrary to the Daly Plaintiffs' claims in this litigation.

103.    For an eleventh defense, Defendant Daren Daly asserts that the Daly Plaintiffs and Plaintiff 3-D Paving f/k/a All Paving & Sealcoating, LLC have waived their claims, are estopped, or are equitably estopped by virtue of the following: They opened a bank account at PNC Bank on or about April 7, 2017 without the knowledge or approval of All Paving, Inc. or Defendant Daren Daly in order to intercept checks paid by customers for whom All Paving, Inc. had previously performed services and that the parties had agreed as part of the Business Divorce would be paid to, or inure to the benefit of, All Paving, Inc., consistent with the practices during the joint business operation period, and instead diverted monies in an amount in excess of $300,000.00 to 3-D Paving and Patrick Daly or for their exclusive benefit and for no benefit to All Paving, Inc. Among other things, this shows that the Daly Plaintiffs recognized the two companies as separate businesses.

104.    For a twelfth defense, Defendant Daren Daly assert that Plaintiffs are estopped and equitably estopped from maintaining their action premised on the theory that Elizabeth Daly owns 75% of All Paving, Inc. corporate shares and Patrick Daly 12.5% of All Paving, Inc. corporate shares under Florida's corporate opportunity doctrine by engaging in conduct to divert business

opportunities from All Paving, Inc. to 3-D Paving. They cannot have their cake and eat it too. If they truly claim to be fiduciaries to All Paving, Inc., they have been barred as a matter of law from competing with it for over the past four (4) years as 3-D Paving.

105.    For a thirteenth defense, Defendant Daren Daly asserts that to the extent that the Daly Plaintiffs claim that documents prepared by or executed for the benefit of BankUnited in September 2015 in order to open an All Paving, Inc. operating account satisfy compliance with the Florida Business Corporation Act or otherwise legally establish ownership of corporate shares of All Paving, Inc., that position is completely without factual or legal merit.  The September 2017 BankUnited bank resolution signed by Patrick Daly and the Beneficial Ownership document signed by Elizabeth Daly were merely documents created by BankUnited to protect itself in connection with the opening of a bank account. They were not legal substitutes for compliance with the requirements of the Florida Business Corporation Act. Nothing in the Florida Business Corporation Act recognizes such an exception to actual compliance with the statute as mandated by the Florida Legislature. Forming a Florida corporation is a privilege, and not a right, and strict compliance with Chapter 607 is required.

106.    For a fourteenth defense, Defendant Daren Daly asserts a setoff based on unjust enrichment of the monetary value of all of his efforts as the chief executive and person in control of All Paving, Inc. Allowing Plaintiffs, *arguendo*, to assume control of All Paving, Inc. more than four years after the Business Divorce must in any event recognize the monetary value to All Paving, Inc. of services performed by Defendant Daren Daly and compensate him accordingly. Daren Daly also asserts a setoff of all damage claims in the Amended Counterclaim herein.

107.    For a fifteenth defense, Defendant Daren Daly asserts that the Daly Plaintiffs released and acquiesced in the release of any purported claim to All Paving, Inc. corporate shares by accepting on April 14, 2017, over $350,000.00 payable to the Plaintiffs as consideration for the Business Divorce as well as subsequent six figure amounts paid to them.

17

108.    For a sixteenth defense, Defendant Daren Daly asserts that the Daly Plaintiffs lack standing to bring this action on behalf of or through All Paving, Inc.  Plaintiffs Elizabeth Daly and Patrick Daly do not presently have a controlling interest in All Paving, Inc., or in fact control the business, and have no authority to act on behalf of or through All Paving, Inc. Further, they cannot maintain a shareholder derivative action because they have not been declared shareholders of All Paving, Inc. and have not complied with Fla. Stat. §607.0742.

109.    For a seventeenth defense, Defendant Daren Daly asserts that Counts I and IV of the SAC fail to state cause of action for conversion as a matter of law. No *Shelby* demand has been made or pled. Plaintiffs have no standing. Patrick Daly and Elizabeth Daly have no claim for "lost profits" or loss of "business interest" based on alleged conversion. The Florida legislature has decreed in Fla. Stat. §607.01401(43)(a) that an "interest" in a corporation means "a share in a corporation for profit" and in §607.01401(44) that "interest holder" in a corporation means "a shareholder of a corporation for profit". *Ergo*, only a shareholder of a corporation can claim a "share in a corporation." A claim such as in this case that a corporate shareholder owns, has a claim to, or has a "business interest" in the underlying tangible or intangible assets of a Florida corporation is clearly frivolous.

110.    For an eighteenth defense, Defendant Daren Daly asserts that Count VII of the SAC fails to state a cause of action for breach of fiduciary duty as a matter of law, including that at all times as alleged in the SAC the parties were adversaries and no fiduciary relationship existed between Daren Daly and the Daly Plaintiffs. Furthermore, Daren Daly has solely operated and controlled All Paving, Inc. and has not breached any fiduciary duty to All Paving, Inc.

111.    For a nineteenth defense, Defendant Daren Daly asserts that Count X of the SAC fails to state a cause of action as a matter of law. The claim is brought solely by the two corporate entities. As alleged *supra*, All Paving, Inc. has no standing or authority to sue Daren Daly for tortious interference. Moreover, Daren Daly has always been in control of the business of All

Paving, Inc. and has completely independently operated All Paving, Inc. since the spring 2017 Business Divorce. All Paving & Sealcoating has not alleged sufficient facts and cannot establish that Defendant Daren Daly interfered with its advantageous business relations because at all times All Paving, Inc. and 3D Paving since the Business Divorce have been marketplace competitors, whereas prior to the Business Divorce no tortious interference could take place because the parties shared business operations.

112.    For a twentieth defense, Defendant Daren Daly asserts that at all times he was acting as the agent of All Paving, Inc. and engaged in lawful competition with All Paving & Sealcoating.

113.    For a twenty-first defense, Defendant Daren Daly asserts that at all times he was acting in protection of All Paving, Inc.'s contractual, legal and corporate rights. At all times Defendant Daren Daly was entitled to conduct his business and legal affairs in his own best interests without regard to the effects on All Paving & Sealcoating. Moreover, even under Plaintiffs' pled theory, Daren Daly is a 15% owner of All Paving, Inc., and thus under Plaintiffs' pled theory, he cannot be sued for tortious interference as a matter of law.

114.    For a twenty-second defense, Defendant Daren Daly asserts that the basis for "advantageous business opportunities" as alleged in the SAC are contractual relationships terminable at will and thus unactionable as a matter of law.

115.    For a twenty-third defense, Defendant Daren Daly assert that no damages are available to the Plaintiffs under Count X of the SAC because they have admitted that their damages are "speculative and unascertainable." All Paving & Sealcoating's measure of damages is limited to proof of loss profits proximately caused by Defendant Daren Daly which cannot be proven as a matter of law. All Paving & Sealcoating's December 2017 QuickBooks Balance Sheet shows no monies owed to or from All Paving, Inc. Count X of the SAC fails to plead any special damages but rather pleads for general damages only ("award of damages to extent ascertainable"). If special

19

damages are not specifically pled, then evidence of them is inadmissible. *See Precision Tune Auto Care, Inc. v. Radcliffe*, 804 So.2d 1287 (Fla. 4th DCA 2002).

116.    For a twenty-fourth defense, Defendant Daren Daly asserts that Counts XII and XIII of the SAC should be dismissed because it attempts to substitute a declaratory judgment claim for a common law claim contrary to established Florida law that recognizes that such is not the purpose of Chapter 86, Florida Statutes. Otherwise, a declaratory judgment claim could thwart all common law claims and defenses. To the extent that the Daly Plaintiffs claim that Defendant Daren Daly breached an agreement to transfer corporate shares of All Paving, Inc. to them, then the only claim and remedy to the Daly Plaintiffs is a claim for breach of contract, which has not been asserted in this litigation. Plaintiffs are attempting an "end run" of Florida common law through the guise of a declaratory judgment action. Count XIII thwarts established common law and statutory claims for trademark infringement under the guise of an improper "catch-all" declaratory judgment claim in order to obscure the facts and law.

117.    For a twenty-fifth defense, Defendant Daren Daly asserts that the Daly Plaintiffs have failed to mitigate their damages and avoid the consequences of their actions, including that they approved, acquiesced, and condoned Daren Daly's unfettered control of All Paving, Inc. during the roughly one-and-one half year period that it shared business operations with All Paving & Sealcoating. If Daren Daly was not in complete control of All Paving, Inc. during this period and if the Daly Plaintiffs were "controlling owners", and they no longer wanted Daren Daly in control in any way of All Paving, Inc., then why didn't they simply fire Daren Daly from All Paving, Inc.? The Plaintiffs have no cognizable damages claims under Florida law.

118.    For a twenty-sixth defense, Defendant Daren Daly asserts that the parties voluntarily entered into an oral agreement and course of dealings that was ratified by their conduct to effect a Business Divorce with respect to the shared business operations between All Paving, Inc. and All Paving & Sealcoating that had existed between late 2015 and late 2016. As a result of

20

the Business Divorce, Plaintiffs have no damages and no right to equitable or declaratory relief.

119.    For a twenty-seventh defense, Defendant Daren Daly asserts that the Plaintiffs are guilty of unclean hands due to their inequitable conduct as more fully alleged *supra* in the amended counterclaim, including crimes of theft and extortion.

120.    For a twenty-eighth defense, Defendant Daren Daly asserts that the Daly Plaintiffs are *in pari delicto*.

121.    For a twenty-ninth defense, Defendant Daly asserts that the parties entered into an accord and satisfaction in the aforementioned Business Divorce.

122.    For a thirtieth defense, Defendant Daly asserts that the parties entered into a novation in the aforementioned Business Divorce.

123.    For a thirty-first defense, Defendant Daren Daly asserts that the Plaintiffs cannot obtain injunctive relief in any count of the SAC because their remedies at law are adequate and whether prohibitory or mandatory, an injunction can only be prospective. "[A]n injunction does not lie to prohibit an act which has already been committed." *Quadomain Condominium Ass'n, Inc. v. Pomerantz*, 341 So.2d 1041, 1042 (Fla. 4th DCA 1977). "It is well settled that injunction will not lie to enjoin that which has already been done." *Wilkinson v. Woodward*, 105 Fla. 376, 141 So. 313 (1932). "[A]n injunction will lie only to restrain ... future injury, since it is impossible to prevent what has already occurred." *City of Coral Springs v. Florida Nat'l Propertie*s, 340 So.2d 1271, 1272 (Fla. 4th DCA 1976). Furthermore, as alleged supra, Plaintiffs have waived or are estopped from seeking mandatory injunctive relief based on their agreement, acquiescence condonation, and affirmative acts with respect to the Business Divorce.

124.    For a thirty-second defense, Defendant Daren Daly asserts that he alone acquired and owns the all-paving.com domain name and merely allowed All Paving & Sealcoating to use the domain name during the period of shared marketing between All Paving, Inc. and All Paving & Sealcoating. All Paving & Sealcoating abandoned its use of the all-paving.com domain name

when it obtained in March 2017 the 3d-paving.com domain name and proceeded to use that in the marketplace exclusively as its domain name in order to establish, *inter alia*, that it had divorced its operations and business from All Paving, Inc., which was under the control and ownership of Daren Daly.

125.    For a thirty-third defense, Defendant Daren Daly asserts his exclusive right to allow All Paving, Inc. to use the allpaving.com domain name and related intellectual property so long as he is in control of All Paving, Inc.

126.    For a thirty-fourth defense, Daren Daly asserts that Elizabeth Daly's request to have her be declared the lawful holder of 75% of the corporate shares of All Paving, Inc. is fraudulent and inequitable based on a course of conduct whereby she has previously unsuccessfully attempted to obtain status for All Paving & Sealcoating as a disadvantaged woman-owned business, which was rejected by the State of Florida and the federal government after an investigation of her application. By claiming she was a 75% owner of All Paving, Inc. in this litigation, she was trying to bolster her bogus claim that she was a majority controlling owner of All Paving & Sealcoating. Elizabeth Daly also has provided numerous sworn affidavits to third parties with the same bogus claims since the filing of this litigation. Elizabeth Daly was never a "disadvantaged owner" and controlling party in any paving business.

127.    For a thirty-fifth defense, Defendant Daren Daly asserts that he alone has obtained a registered trademark for All Paving, Inc., which was acquired after the Business Divorce. Any domain name for All Paving, Inc. must be linked to its trademark.

128.    For a thirty-sixth defense, Defendant Daren Daly asserts that the Plaintiff All Paving, Inc., is not a proper plaintiff in this lawsuit because, as set forth herein, Plaintiffs Patrick and Elizabeth are presently not legal owners of corporate shares of All Paving, Inc., and have no authority to direct the actions of All Paving, Inc., including, without limitation, the authority to cause All Paving, Inc. to file this lawsuit or to have Bruce A. Goodman, P.A. as counsel herein for

All Paving, Inc. and to pay said firm for its services herein from the funds of All Paving, Inc.

129.    For a thirty-seventh defense, Defendant Daren Daly asserts that the Daly Plaintiffs abandoned All Paving, Inc. in order to focus on the business development of 3-D Paving, a direct competitor in the marketplace to All Paving, Inc. and all of their actions since the Business Divorce has been to the detriment of All Paving, Inc. and solely to benefit 3D Paving and their financial interests in 3D Paving.

130.    For a thirty-eighth defense, Defendant Daren Daly asserts that the Daly Plaintiffs cannot be directors, officers or controlling shareholders of All Paving, Inc. following the Business Divorce because fiduciaries to one corporation cannot operate another corporation in competition to that corporation and remain as fiduciaries in accordance with Florida's Business Opportunity Doctrine.

131.    For a thirty-ninth defense, Daren Daly asserts that all claims in the SAC for "conspiracy" and "aiding and abetting" fail as a matter of law because they have no cognizable tort claims against the Defendants and a party cannot conspire or aid and abet a tort with itself as the alleged perpetrator and conspirator as a matter of law. Further, Daren Daly cannot conspire with All Paving, Inc. as a matter of law.

132.    For a fortieth defense, Daren Daly asserts that the Daly Plaintiffs have no standing to claim harm to the "business interests" of All Paving, Inc. because their interest as a matter of law is limited to any stock in All Paving, Inc.

133.    For a forty-first defense, Defendant Daren Daly asserts that All Paving & Sealcoating has no standing to claim damages to the "business interests" of All Paving, Inc., a competitor.

134.    For a forty-second defense, Defendant Daren Daly asserts that Plaintiffs cannot claim legal rights to the words "all paving" or any use thereof as the same is generic and unprotectable.

135.    For a forty-third defense, Defendant Daren Daly asserts that any claims by Plaintiffs for intellectual property of All Paving, Inc. infringes upon All Paving, Inc.'s registered Florida trademark.

136.    For a forty-fourth defense, Defendant Daren Daly asserts the failure to join Robert Holland as an indispensable or necessary party based on his partnership interest in All Paving & Sealcoating between May 2013 and January 2020.

137.    Trial by jury is demanded on all claims so triable as of right.

## AMENDED COUNTERCLAIM

COMES NOW, Counterclaimant DAREN DALY, joined by ALL PAVING, INC. as an additional Counterclaimant, and file their Amended Counterclaim against Counterclaim Defendants PATRICK DALY, ELIZABETH DALY, and ALL PAVING & SEALCOATING, LLC d/b/a 3-D PAVING (hereinafter "All Paving & Sealcoating" or "3D-Paving"), and in support thereof state:

## PARTIES, JURISDICTION AND VENUE

1.    Counterclaimant Daren Daly ("Daren Daly") is an individual residing in Broward County, Florida, who is over the age of 18 and is otherwise *sui juris*.

2.    Counterclaimant All Paving, Inc. is a Florida corporation with its principal place of business in Broward County, Florida. It is a corporation solely under the control and dominion of Daren Daly, who is the sole director of the corporation.

3.    Counterclaim Defendant Patrick Daly ("Patrick Daly") is an individual residing in Broward County, Florida, who is over the age of 18 and is otherwise *sui juris*.

4.    Counterclaim Defendant Elizabeth Daly ("Elizabeth Daly") is an individual residing in Broward County, Florida, who is over the age of 18 and is otherwise *sui juris*.

5.    Counterclaim Defendant All Paving & Sealcoating LLC d/b/a 3-D Paving ("All

Paving & Sealcoating" or "3D Paving") was until January 2020 a partnership but now purports to be a limited liability company with its principal place of business in Broward County, Florida. It does business as 3D Paving, including maintaining a "3D Paving web site" and a 3-dpaving.com domain name.

6.     Venue lies in this Court in Broward County, Florida because the Counterclaim Defendants reside in Broward County, Florida and the present action was brought in Broward County, Florida. The counterclaims arise out of the claims asserted in the SAC. The claims asserted in this Amended Counterclaim relate back to the original counterclaim filed in this action and arise out of the same nucleus of facts. All the damages claims in this counterclaim each exceed the sum of $30,000.00

7.     In 2012, Patrick Daly purportedly formed and registered a Florida limited liability company, All Paving & Sealcoating as the sole manager and sole member. The following year he entered into a partnership agreement pertaining to All Paving & Sealcoating with Robert Holland, a true and correct copy of which is attached hereto as Exhibit "A" that superseded the limited liability company formation and converted it to a Florida partnership between Patrick Daly and Robert Holland. Elizabeth Daly was not a party to the partnership agreement.

8.     Indeed, Elizabeth Daly never was a true member of All Paving & Sealcoating. She first appeared on Sunbiz as a purported manager (not a member) in June 2015. Patrick Daly added Elizabeth Daly as a purported manager by an amendment document he executed on May 26, 2015 and filed with the Florida Secretary of State on June 1, 2015 in order to have her fraudulently apply for and attempt to obtain disadvantaged woman-owned certification with the State of Florida and the United States government, which application was ultimately rejected by the governments after a determination that Elizabeth Daly was neither a true owner or in control of All Paving &

25

Sealcoating. According to the Sunbiz records filed with the Florida Secretary of State from 2012 though 2019, Elizabeth Daly has never been a member of All Paving & Sealcoating.

9.        All Paving & Sealcoating has no records of its ownership and management other than the aforementioned partnership agreement between Patrick Daly and Robert Holland and a January 2020 termination of the partnership with Robert Holland.

10.       On or about September 19, 2013, Daren Daly was the incorporator of All Paving, Inc. A copy of the Articles of Incorporation for All Paving, Inc. are attached hereto as Exhibit "E". The articles do not specify a Board of Directors, and therefore, pursuant to the Florida Business Corporation Act, and in particular Fla. Stat. §607.0205, only the incorporator (Daren Daly) could complete the organization of the corporation and elect a Board of Directors.

11.       The Daly Counterclaim Defendants have admitted under oath in this litigation that they have no legal basis to claim they are directors of All Paving, Inc., other than bank documents created by BankUnited in September 2015 to open a bank account that they unilaterally certified and which do not comply with Chapter 607, Florida Statutes.

12.       Also, on or about September 19, 2013, Daren Daly created an Excel spreadsheet (the "Spreadsheet") reflecting the corporate ownership of All Paving, Inc.; to wit: Jamie Schindler held an 80% ownership interest in All Paving, Daren Daly held a 10% ownership interest in All Paving, and Patrick Daly held a 10% ownership interest in All Paving, Inc.  The Spreadsheet constitutes a "corporate record" pursuant to Fla. Stat.§607.01401(62). A copy of the Spreadsheet regarding the initial ownership of All Paving, Inc. is attached hereto as Exhibit "F". Jamie Schindler agreed to and accepted her 80% corporate ownership in All Paving, Inc.

13.       Patrick Daly was assigned a 10% ownership interest in All Paving, Inc. in anticipation that he would be future qualifier for All Paving, Inc. projects. It is common practice in

the construction industry for a company to use a qualifier's license. In fact, All Paving, Inc. between 2015 and 2017 used the licenses of several qualifiers including Patrick Daly's license obtained for All Paving & Sealcoating. However, only Daren Daly has ever obtained a qualifying license for All Paving, Inc.

14.    Between September 2013 and the fall of 2015, All Paving, Inc. developed a business and marketing plan in anticipation of a paving business *niche* different from that of All Paving & Sealcoating. Prior to the time All Paving, Inc. began conducting business in the marketplace, All Paving, Inc. was focused on branding and business development planning. Specifically, among other things, in or around February of 2014, Daren Daly purchased the domain name allpaving.com to be used by his company, All Paving, Inc. At the time, All Paving & Sealcoating was using the domain name allpavingandsealcoating.com. Before purchasing the allpaving.com domain name, Daren inquired of Patrick Daly as to whether Patrick wanted to acquire the domain name. However, Patrick Daly indicated he had no such desire for his company. Daren ended up purchasing the domain name for himself with his funds and Jamie Schindler's funds.

15.    Between September 2013 and fall 2017 Daren Daly worked on the development of All Paving, Inc., focusing primarily on marketing and business development planning in anticipation of launching All Paving, Inc, in the marketplace with a different business model than All Paving & Sealcoating.  In or around the fall of 2015, All Paving began conducting business in the marketplace, with Daren Daly as President, CEO and COO, and fully in charge of the business operations of All Paving, Inc. Patrick and Elizabeth fully agreed, acquiesced, condoned, and ratified Daren's control over All Paving, Inc. and its business operations, including Daren running the business operations of All Paving, Inc., hiring and firing employees, obtaining business and

supervising projects, and filing tax returns. The Daly Counterclaim Defendants also agreed to assist in the financing and guaranty of, and acquisition of paving equipment to be titled in the name of All Paving, Inc., but used by both companies. A true and correct copy of an affidavit of Daren Daly is attached hereto as Exhibit "G" and incorporated by reference as if asserted as allegations of this Counterclaim.

16.    In January 2016, Jamie Schindler orally relinquished her ownership interest in All Paving to Daren Daly, which was later memorialized by a written assignment, attached hereto as Exhibit "H". Nothing was "backdated". As is customary in commercial transactions, a written document was created to memorialize a prior oral event. Jamie Schindler has always maintained and testified accordingly.

17.    Beginning in late 2015 and continuing through the end of 2016, All Paving & Sealcoating under the helm of Patrick Daly, and All Paving, Inc. under the helm of Daren Daly began shared business operations including joint marketing and shared resources. All Paving, Inc. developed a different business strategy than All Paving & Sealcoating and targeted different customers. Patrick Daly, Elizabeth Daly, and All Paving & Sealcoating continued to approve, acquiesce, condone, and ratify Daren Daly's complete control over the business operations of All Paving, Inc. during the shared business operations.

18.    During the shared business operations, even though Daren owned the allpaving.com domain name, he permitted All Paving & Sealcoating to use the domain name he had purchased as part of the shared business operations that included shared marketing.

19.    When All Paving, Inc. began conducting shared business operations at the end of 2015 with All Paving & Sealcoating, money would be by necessity advanced by one company to the other. However, at all times, the expenses were reconciled between the two independent

companies based on paving jobs performed. As of December 2017, the QuickBooks balance sheet for All Paving & Sealcoating, a copy of which is attached hereto as Exhibit "C", as prepared by or for Patrick Daly and Elizabeth Daly shows no monies owed to or from either company to the other.

20.    Patrick Daly never personally paid any consideration for corporate shares of All Paving, Inc. Elizabeth Daly never personally paid any consideration for corporate shares of All Paving, Inc, as they have admitted ion this litigation. No corporate shares of All Paving, Inc. were ever issued to either Patrick Daly or Elizabeth Daly for consideration approved by the directors of All Paving, Inc. Further, neither Daren Daly nor Jamie Schindler ever transferred their shares or ownership interest to the Daily Counterclaim Defendants.

21.    Patrick Daly has admitted in this litigation that he never personally loaned any monies to All Paving, Inc. Elizabeth Daly has admitted that she never personally loaned monies to All Paving, Inc.

22.    In or about September of 2015, prior to the time that All Paving, Inc. was operating and taking on jobs, a bank account was opened at BankUnited in the name of All Paving, Inc. in which Daren Daly, Patrick Daly and Elizabeth Daly were all signatories. This was done to facilitate the shared business operations between the two companies and to allow Daren Daly to control All Paving, Inc. Patrick incorrectly and spuriously represented to Bank United that he was the secretary of All Paving, Inc. and that the Board of Directors of All Paving, Inc. had authorized bank resolutions two years earlier on September 19, 2015, the date of incorporation, which was legally and factually impossible because no Board of Directors had then been appointed. Moreover, Patrick Daly testified under oath at a failed injunction hearing in this litigation that he never even knew of the existence of All Paving, Inc. prior thereto. Elizabeth Daly provided the same information, i.e., that she was not an owner in All Paving, Inc., to the Florida Department of Transportation in August 2017 in connection with her spurious application for women disadvantaged business ownership

status for All Paving & Sealcoating, LLC, which application was ultimately rejected. Daren Daly only intended that the BankUnited account provide for joint signatures with Patrick Daly and Elizabeth Daly so as to facilitate the operations of All Paving, Inc. and never intended that any bank documents establish a transfer of ownership in All Paving, Inc. as of September 2015 or anytime thereafter. All information provided to BankUnited in connection with the opening of the BankUnited bank account was furnished by Patrick Daly or Elizabeth Daly only.

23.    The Daly Counterclaim Defendants never undertook to comply with corporate formalities mandated by the Florida Business Corporation Act to establish one's lawful status as a shareholder, director or officer of All Paving, Inc.

24.    Elizabeth Daly has never been in control of All Paving, Inc., or even an employee of All Paving, Inc. One former employee attempted to include her as an employee for worker's compensation, but Daren Daly, as the one in control of All Paving, Inc., refused to allow it.

25.    Between December 2016 and April 2017, the parties undertook discussions to divorce the two paving business companies from the shared business operations such that the companies would no longer have an affiliation in the marketplace and thereafter be completely independent.

26.    As a result of these disputes, in or around the beginning of 2017, Daren Daly, All Paving, Inc., Patrick, and All Paving & Sealcoating entered into an oral agreement to be performed forthwith whereby Patrick agreed to relinquish his 10% interest in All Paving and thereafter have no affiliation with All Paving, Inc.

27.    Specifically, Daren Daly and Patrick Daly agreed to the following:

a.    Patrick Daly would relinquish his 10% ownership interest in All Paving, Inc. to Daren Daly;

b.    Daren Daly would remove Elizabeth Daly and Patrick Daly as personal guarantors on any financing previously obtained with vehicles and equipment titled to All Paving that they may have guaranteed;

c.  Daren Daly would alone be a guarantor on any new equipment obtained by All Paving, Inc. In fact, in February 2017 All Paving, Inc. had purchased an $800,000.00 piece of equipment with Daren as the sole guarantor. Furthermore, at that time Patrick Daly had specifically contacted the seller financing company to assure that neither he nor Elizabeth Daly were in any way involved with the transaction. Subsequently, all equipment obtained by All Paving, Inc. has Daren Daly alone at recourse;

d.  Daren Daly agreed to have All Paving, Inc. make payment to All Paving & Sealcoating for labor provided by All Paving & Sealcoating to All Paving for 2016 and the beginning of 2017;

e.  Daren agreed that All Paving, Inc. would pay Patrick Daly a qualifier fee for 2016 and the beginning of 2017 for prior use of his qualifying licenses in the name of All Paving & Sealcoating;

f.  Daren Daly would remove Patrick Daly from any permits for All Paving, Inc. jobs;

g.  Patrick Daly and Elizabeth Daly would sign documents required by Bank United to remove themselves as authorized signers on the BankUnited accounts;

h.  Patrick Daly would sign licensing documents and general contractor licensing documents attesting to Daren Daly's experience and qualifications to assist Daren Daly in obtaining licenses for All Paving, Inc.;

i.  Patrick Daly would not solicit or attempt to solicit business from All Paving, Inc.'s customers;

j.  Daren Daly would not solicit or attempt to solicit business from All Paving & Sealcoating's customers; and

k.  Patrick Daly would forthwith turn over to Daren any All Paving, Inc. checks received in a P.O. Box shared by All Paving, Inc. and All Paving & Sealcoating

(hereinafter referred to as the "Business Divorce Agreement").

28.    In reliance upon the Business Divorce Agreement, Daren in fact distributed over $300,000.00 from an All Paving, Inc. account to All Paving & Sealcoating and Patrick Daly. Specifically, All Paving & Sealcoating received $267,459.35 in payment. Patrick Daly personally received $59,800.00 which included an additional salary payment for 2016 of $28,800.00 and a qualifying fee for 2016 and the beginning of 2017 of $31,000.00. The remaining amount of some

$300,000.00 in the BankUnited Accounts was transferred to an All Paving, Inc. SunTrust account (the "SunTrust Account") set up by Daren Daly with Daren Daly as the only signatory.

29.     Patrick Daly and Elizabeth Daly were fully aware and had agreed that the remaining funds were being distributed to the SunTrust Account for the benefit and use by All Paving, Inc. under the auspices and control of Daren Daly.

30.     Subsequently, All Paving, Inc. paid All Paving & Sealcoating another $100,000.00 in or about June 2017.

31.     Indeed, the document closing the BankUnited Accounts, memorializing the disbursements to Patrick Daly and All Paving & Sealcoating and memorializing the disbursement to the SunTrust Account was signed by all three Daly parties and notarized (the "April 14, 2017 Letter"). A copy of the April 14, 2017 document is attached hereto as Exhibit "D".

32.     In addition to paying Patrick Daly and All Paving & Sealcoating pursuant to the Business Divorce Agreement, and thus performing under the Business Divorce Agreement, Daren Daly substantially if not fully performed all of his obligations under the Business Divorce Agreement, including:

    a.  Daren Daly removed Elizabeth Daly and Patrick Daly as personal guarantors on leases for All Paving, Inc. equipment and vehicles;

    b.  Daren Daly removed Patrick Daly from permits for any All Paving, Inc. jobs; and

    c.  Daren Daly did not and has not solicited or attempted to solicit business from All Paving & Sealcoating's customers.

33.     Counterclaim Defendant initially took actions consistent with the Business Divorce Agreement for the Daly Counterclaim Defendants to no longer be involved in All Paving thus evidencing their consent, acquiescence to, and ratification of, the Business Divorce Agreement.

34.     Elizabeth Daly had no involvement in the negotiations surrounding the Business

Divorce Agreement because she was neither in control nor had a controlling ownership interest in either All Paving, Inc. or All Paving & Sealcoating.

35.      On or about May 22, 2017, unbeknownst to Daren Daly and without advance notice to Daren Daly, Patrick Daly caused All Paving & Sealcoating to move out of the former joint office of the companies and took the All Paving & Sealcoating customer files with him.  The only things left at the former joint office between the two businesses were All Paving, Inc.'s customer files.

36.      Then on or about May 22, 2017, Patrick Daly caused All Paving & Sealcoating to file an Application for Registration of the Fictitious Name "3-D Paving & Sealcoating", changing the name that All Paving & Sealcoating did business to the public to 3-D Paving & Sealcoating ("3-D Paving").

37.      Then on or about June 5, 2017, 3-D Paving sent out blast emails to its customers and All Paving, Inc. customers (over 3500 emails) advising customers and potential customers that All Paving & Sealcoating was no longer operating under the "All Paving" name but instead was rebranding itself and had changed its name to 3-D Paving.

38.      Patrick Daly wrote letters in the summer of 2017 to construction companies indicating that 3-D Paving are All Paving, Inc. were separate independent companies and businesses.

39.      Initially Patrick Daly was also turning over All Paving, Inc. checks to Daren Daly for jobs performed by All Paving, Inc. that were delivered to a joint P.O. Box shared by the companies as he agreed in the Business Divorce Agreement.

40.      As even further evidence of the Counterclaim Defendant's acceptance and ratification of the Business Divorce Agreement, and Patrick Daly's agreement to relinquish his interest in All Paving, Inc. on or about June 22, 2017, a manager from Wells Fargo Equipment

Finance, confirmed a conversation she had with Patrick Daly in which Patrick Daly advised the manager that while All Paving, Inc. is "currently owned by you [Patrick] and your son that as of this year [2017], the ownership will be 100% in Daren's name . . ."

41.    Patrick Daly and 3D Paving ultimately breached the terms of the Business Divorce Agreement.

42.    Specifically, Patrick refused to sign licensing documents and general contractor licensing documents attesting to Daren Daly's experience and qualifications to assist Daren Daly in obtaining such licenses for All Paving, Inc.

43.    Patrick Daly and 3D Paving further breached the Business Divorce Agreement by sending out blast emails telling not only All Paving & Sealcoating's customers but All Paving, Inc.'s customers that All Paving, Inc. had changed its name when only All Paving & Sealcoating had changed its name to 3D Paving. This was done in an effort to solicit, interfere and tamper with All Paving, Inc.'s customers in violation of the Business Divorce Agreement. This action alone caused significant monetary and good will harm to All Paving, Inc. Patrick also tortiously and unjustifiably interfered with All Paving, Inc.'s relationships with its customers by incorrectly and falsely advising All Paving, Inc.'s customers that Daren was purportedly operating All Paving, Inc. without a license and insurance.

44.    Then, in further breach of the Business Divorce Agreement and Patrick Daly's agreement that his interest in All Paving, Inc. was terminated, on or about June 29, 2017, Daren was notified by counsel for Elizabeth Daly and Patrick Daly that Elizabeth Daly and Patrick Daly was also provided with the following void, invalid, *intra vires* documents that do not comport with the requirements of the Florida Business Corporation Act:

      a.    A purported "Notice of Annual Meeting of Shareholders of All Paving, Inc.;"

    b.   A purported void and unenforceable "Notice of Action by Written Consent of a Majority of Owners/Shareholders of All Paving, Inc. and Notice of Action by Written Consent of the Board of Directors of All Paving. Inc.;"

    c.   A purported void and unenforceable "Action by Written Consent of a Majority of Owners/Shareholders of All Paving, Inc.;" and

    d.   A purported void and unenforceable "Action by Written Consent of the Board of Directors of All Paving, Inc." (collectively, the "Purported Actions by Written Consent").

Copies of the Notice of Annual Meeting of Shareholders of All Paving, Inc., Notice of Action by Written Consent of a Majority of Owners/Shareholders of All Paving, Inc. and Notice of Action by Written Consent of the Board of Directors of All Paving. Inc. and the Purported Actions by Written Consent are attached to the SAC. However, Judge Lopane has already ruled in this litigation that said documents are self-serving, irrelevant, and not admissible in evidence in this litigation. *See* f.n. 2 *supra*.

45.    At the illegitimate and bogus "meeting of shareholders" called by the Counterclaim Defendants, Patrick stated the following:

> Patrick: Just for the record, to make sure that everybody understands, a lot of the customers get confused regarding All Paving, Inc. and All Paving [& Sealcoating] because we both do business. A lot of people do not recognize that there's two independent companies because we use the same banner and everything else. Numerous times I get checks which are made out to All Paving & Sealcoating, which I'll just displace to All Paving because we know ourselves internally. A lot of times sometimes that flies through the cracks. And I'm sure it happens to the other side too.

46.    Furthermore, Patrick Daly expressly acknowledged the existence of the Business Divorce Agreement by emphatically stating at that time that "[w]e had an agreement between you and I [Daren]. That's what I'm saying."

47.    However, in reality and with deceit and criminal intent, unbeknownst to Daren Daly and without notice to him, Counterclaim Defendants surreptitiously and fraudulently opened a bank

account on April 7, 2017 at PNC Bank in order to deposit checks they had intercepted from customers of All Paving, Inc. who were paying for paving jobs performed by All Paving, Inc., and then diverted the monies, in a sum over $300,000.00, to All Paving & Sealcoating or Patrick Daly. These customer payments were required to be turned over to All Paving, Inc. pursuant to the Business Divorce Agreement and also because they were payments for work previously done by All Paving, Inc.

48.      On July 3, 2019, Daren Daly completed the organization of All Paving, Inc. and lawfully elected Daren Daly as director. This was the only compliance with Fla. Stat. §607.0205(1)(b) by All Paving, Inc. prior to the creation of the corporate record referred to in paragraph 37, which is incorporated herein by reference.  By unanimous consent of the Board of Directors, corporate action was adopted, confirmed, and ratified from the original date of incorporation.  Despite the formation of the corporation not having been completed until July 2019, prior to that date,

- Daren Daly alone had signed and filed every All Paving, Inc. tax returns as the "responsible party";

- Daren Daly alone had obtained qualifying licensing and permits for All Paving, Inc.

- Daren Daly alone hired, supervised, and terminated All Paving, Inc. employees.

Furthermore, since the formation of the Business Divorce Agreement and following the "midnight move" on about May 22, 2017, Patrick Daly and Elizabeth Daly have had zero, zip, zilch involvement or connection to All Paving, Inc., other than controlling and running 3D-Paving as a direct competitor to All Paving, Inc.

49.      Although Patrick Daly and Elizabeth Daly personally guaranteed certain equipment purchased in 2015 or 2016 owned and titled in the name of All Paving, Inc., they no longer have

any liability on the guaranties and have incurred no damages whatsoever from having agreed to the guaranties. Moreover, Patrick Daly and Elizabeth Daly caused a 2015 All Paving & Sealcoating tax return to be filed with the Internal Revenue Service that reflected ownership for depreciation purposes of paving equipment titled and owned by All Paving, Inc.

50.     Counterclaimants incorporate by reference the factual allegations of paragraphs 93-96, 104, 106, and 124 of Daren Daly's Answer to the SAC.

51.     All conditions precedent to the filing of this action have been performed, been waived, or have occurred.

<div align="center">

**COUNT I**
**SPECIFIC PERFORMANCE OF BUSINESS DIVORCE**
**AGREEMENT AGAINST PATRICK DALY**

</div>

52.     Counterclaimants Daren Daly and All Paving, Inc. re-allege the allegations in paragraphs 1 through 51 above as if set forth fully herein.

53.     This is an action for Specific Performance of the Business Divorce Agreement by Counterclaimants against Counter Defendants Patrick Daly and All Paving & Sealcoating within the jurisdiction of this Court.

54.     The oral Business Divorce Agreement entered into between Daren Daly and All Paving, Inc., on one side, and Patrick Daly and All Paving & Sealcoating, on the other side is a valid specifically enforceable agreement. The agreement is memorialized in various documents, including emails, and was ratified by the conduct thereafter by Counterclaim Defendants.

55.     In or around the beginning of 2017, Daren Daly and Daren Daly on behalf of All Paving, Inc. and Patrick Daly, and Patrick Daly on behalf of 3D Paving, entered into the oral Business Divorce Agreement whereby Patrick Daly agreed to relinquish his interest in All Paving, Inc. and that neither he, Elizabeth Daly, nor All Paving & Sealcoating would have any future

affiliation with All Paving, Inc. or any claim against Daren Daly or All Paving & Sealcoating or

its successor, 3D Paving. At all times All Paving, Inc. was an intended beneficiary of the Business

Divorce Agreement.

56.    Specifically, pursuant to the Business Divorce Agreement, Daren and Patrick

agreed to the following:

a.   Patrick Daly would relinquish his 10% ownership interest in All Paving to
     Daren Daly;

b.   Daren Daly would remove Elizabeth Daly and Patrick Daly as personal
     guarantors from any loans associated with vehicles and equipment titled to All
     Paving, Inc.;

c.   Daren Daly agreed to have All Paving, Inc. make payment to All Paving &
     Sealcoating for labor provided by the All Paving & Sealcoating to All Paving,
     Inc. for 2016 and the beginning of 2017;

d.   Daren Daly agreed that All Paving, Inc. would pay Patrick Daly a qualifier fee
     for using his qualifying license in 2016 and the beginning of 2017;

e.   Daren Daly would remove Patrick Daly from any permits for All Paving, Inc.
     jobs;

f.   Patrick Daly and Elizabeth Daly would sign documents required by the bank to
     remove themselves as authorized signers on the BankUnited Accounts;

g.   Patrick Daly would sign licensing documents and general contractor licensing
     documents attesting to Daren Daly's experience and/or qualifications to assist
     Daren Daly in obtaining such licenses for All Paving, Inc.;

h.   Patrick Daly would not solicit or attempt to solicit business from All Paving,
     Inc.'s customers;

i.   Daren Daly would not solicit or attempt to solicit business from All Paving &
     Sealcoating's customers; and

j.   Patrick Daly would turn over to All Paving, Inc. checks received in the P.O.
     Box shared by All Paving, Inc. and All Paving & Sealcoating.

57.    In order to partially perform the Business Divorce Agreement, on or about April

14, 2017, Daren Daly, Elizabeth Daly and Patrick Daly went to BankUnited to close the BankUnited

Accounts.

58.     In reliance upon the Business Divorce Agreement, Daren Daly had over $300,000.00 from All Paving accounts distributed to All Paving & Sealcoating and Patrick Daly. Specifically, All Paving & Sealcoating received $267,459.35 in reconciliation payments and a salary fee for Patrick of $46,200.00 for 2016 for a total of $313,659.35. Patrick Daly personally received $59,800.00 which included an additional salary payment for 2016 of $28,800.00 and a qualifying fee for 2016 and part of 2017 of $31,000.00. The remaining amount of over $300,000.00 in the BankUnited Accounts was transferred to the SunTrust Account set up by Daren Daly with Daren Daly as the only signatory for the sole benefit of All Paving, Inc.

59.     Patrick Daly and Elizabeth Daly were fully aware that the remaining funds were being distributed to the SunTrust Account for the sole benefit of All Paving, Inc. The letter closing the BankUnited account, memorializing the disbursements to Patrick Daly and All Paving & Sealcoating and memorializing the disbursement to the SunTrust Account was signed by all three Daly parties and notarized. *See* Exhibit "D".

60.     In addition to paying Patrick Daly and All Paving & Sealcoating as per the Business Divorce Agreement, Daren Daly substantially if not fully performed all his obligations under the Business Divorce Agreement, including:

   a.   Daren Daly removed Elizabeth Daly and Patrick Daly as personal guarantors on leases for All Paving. Inc. equipment and vehicles.

   b.   Daren Daly removed Patrick Daly from permits for any All Paving. Inc. jobs; and

   c.   Daren Daly did not and has not solicited or attempted to solicit business from All Paving & Sealcoating customers.

61.     The Counterclaim Defendants initially took actions consistent with the Business Divorce Agreement for him to no longer be involved in All Paving. Thus, the Counterclaim

Defendants' behavior ratified the Business Divorce Agreement.

62.      Specifically, on or around May 22, 2017, Patrick Daly caused All Paving & Sealcoating to move out of the joint officers and took the All Paving & sealcoating files with him. The only things left at the former joint office were All Paving, Inc.'s files.

63.      Then on or around May 22, 2017, Patrick Daly caused All Paving & Sealcoating file an Application for Registration of the Fictitious Name 3-D Paving & Sealcoating, changing the name All Paving & Sealcoating did business under to 3-D Paving & Sealcoating.

64.      Then on or about June 5, 2017, All Paving & Sealcoating n/k/a 3-D Paving sent out blast emails to its customers advising people that All Paving & sealcoating was no longer operating under the "All Paving" name but instead was rebranding itself and had changed its name to 3-D Paving & Sealcoating. *See* Exhibit "I".

65.      In accordance with the Business Divorce Agreement, on or about June 12, 2017, Patrick Daly was also removed as an officer and as a shareholder of All Paving, Inc.

66.      Initially Patrick Daly was also turning over All Paving, Inc. checks to Daren Daly for All Paving, Inc. that were delivered to the P.O. Box as per the Agreement.

67.      As even further evidence of Patrick Daly's agreement to relinquish his interest in All Paving, Inc. on or about June 22, 2017, a Manager from Wells Fargo Equipment Finance, confirmed a conversation she had with Patrick Daly in which Patrick Daly advised the Manager that while All Paving is "currently owned by you [Patrick] and your son that as of this year [2017], the ownership will be 100% in Daren's name . . ." Indeed, Patrick Daly was representing to third parties that in 2017, All Paving, Inc. was owned 100% by Daren Daly.

68.      Counterclaim Defendants, however, ultimately breached the terms of the Business Divorce Agreement.

69.     Specifically, Patrick Daly refused to sign licensing documents and general contractor licensing documents attesting to Daren Daly's experience and qualifications to assist Daren Daly in obtaining such licenses for All Paving, Inc.

70.     Patrick Daly further breached the Agreement by sending out blast emails telling not only All Paving & Sealcoating customers but All Paving, Inc.'s customers that "All Paving" had changed its name when only All Paving & Sealcoating had changed its name. This was done in an effort to solicit All Paving, Inc.'s customers in violation of the Business Divorce Agreement.

71.     Then, in further breach of the Business Divorce Agreement, including Patrick Daly's agreement to relinquish his interest in All Paving, Inc. on or about June 29, 2017, Daren Daly was notified by counsel for the Daly Counterclaim Defendants that he was calling an "Annual Meeting of Shareholders of All Paving, Inc." on July 11, 2017. Daren Daly was also provided with the following void, *intra vires* and unenforceable documents:

      a.  A purported "Notice of Annual Meeting of Shareholders of All Paving, Inc.;"

      b.  A purported and unenforceable "Notice of Action by Written Consent of a Majority of Owners/Shareholders of All Paving, Inc. and Notice of Action by Written Consent of the Board of Directors of All Paving. Inc.;"

      c.  A purported and unenforceable "Action by Written Consent of a Majority of Owners/Shareholders of All Paving, Inc.;" and

      d.  A purported and unenforceable "Action by Written Consent of the Board of Directors of All Paving, Inc."

72.     At the meeting that Daren Daly attended with stated objection, however, Patrick Daly acknowledged and ratified the Divorce Agreement and also acknowledged multiple times that All Paving, Inc. and All Paving & Sealcoating were two separate companies.

73.     As one such example, Patrick Daly stated the following:

**Patrick:** Just for the record, to make sure that everybody understands, a lot of the customers get confused regarding All Paving, Inc. and All Paving [& Sealcoating]

because we both do business. **A lot of people do not recognize that there's two independent companies** because we use the same banner and everything else. Numerous times I get checks which are made out to All Paving & Sealcoating, which I'll just displace to All Paving because we know ourselves internally. A lot of times sometimes that flies through the cracks. And I'm sure it happens to the **other side** too.

(Emphasis supplied).

74.     As another example, Patrick Daly expressly stated "[w]e had an agreement between you and I [Daren]. That's what I'm saying."

75.     Additionally, in further breach of the Business Divorce Agreement, on or about August 23, 2017, the Day Counterclaim Defendants  improperly and impermissibly filed Articles of Amendment to All Paving, Inc.'s Articles of Incorporation seeking to remove Da ren Daly as President of All Paving, Inc. and listing Patrick Daly as the President and Elizabeth Daly as the Vice President of All Paving, Inc. Patrick Daly and Elizabeth Daly also improperly and impermissibly changed the principal place of business address and registered agent address for All Paving, Inc. to their home.

76.     Patrick Daly and Elizabeth Daly have also been misappropriating checks payable to All Paving, Inc. by intercepting and depositing checks made out to All Paving, Inc. in the PNC Account to which only Patrick Daly and Elizabeth Daly had access. These checks were required to be turned over to Daren Daly for the benefit of All Paving, Inc. pursuant to the Business Divorce Agreement for the sole benefit of All Paving, Inc. Instead, the customer payments have been diverted for the sole benefit of Counterclaim Defendants.

77.     The terms and conditions of the Business Divorce Agreement are just and commercially reasonable and enforcement of the Business Divorce Agreement would be equitable.

78.     Counterclaim Defendants have the ability to specifically perform their obligations

under the Business Divorce Agreement.

79.     Based upon Counterclaim Defendants breach of the Business Divorce Agreement, Counterclaimants are entitled to the relief of specific performance. The Business Divorce Agreement covered unique property and proprietary interests that a court of equity should specifically enforce.

80.     Specifically, Counterclaim Defendants must be required to formally relinquish any claimed interest in All Paving, Inc. consistent with the corporate action adopted by All Paving, Inc. on July 3, 2019, cease and desist holding themselves out as owners, directors and officer of All Paving, Inc. and cease and desist from soliciting and/or attempting to soliciting All Paving, Inc. customers, and otherwise comply with the Business Divorce Agreement.

WHEREFORE, Counterclaimants Daren Daly and All Paving, Inc. demand that this Court enter judgment against Counterclaim Defendants Patrick Daly and All Paving & Sealcoating and requiring the specific performance of their obligations under the parties' Business Divorce Agreement, and for such other and further relief as this Court deems just and proper.

<div align="center">

**COUNT II**
**BREACH OF BUSINESS DIVORCE AGREEMENT AGAINST PATRICK DALY**

</div>

81.     Counterclaimant Daren Daly and All Paving, Inc. re-allege the allegations in paragraphs 1 through 80 above as if set forth fully herein, except that this count in the alternative seeks damages for breach of contract rather than specific performance. This is an action for damages in excess of $30,000.00, exclusive of interest, costs and attorneys' fees and within the jurisdiction of this Court.

82.     In 2017 Daren Daly and Daren Daly on behalf of All Paving, Inc.  and Patrick Daly and Patrick Daly on behalf of All Paving & Sealcoating entered into the Business Divorce Agreement whereby Patrick Daly and All Paving & Sealcoating, *inter alia*, agreed to relinquish

any interest or involvement in All Paving, Inc. and have no further affiliation or involvement with All Paving, Inc.

83.    Patrick Daly and All Paving & Sealcoating materially breached the terms of the Business Divorce Agreement.

84.    At all times All Paving, Inc. was an intended beneficiary of the Business Divorce Agreement.

85.    As a direct and proximate result of Patrick's breach of the Business Divorce Agreement, Counterclaimant All Paving, Inc. has suffered damages, including loss profits and damage to its good will.

WHEREFORE, Counterclaimants Daren Daly and All Paving, Inc. demand a judgment for compensatory damages against Counter Defendant Patrick Daly and Counter Defendant 3D Paving, including prejudgment interest and its costs, and such further relief as this Court deems just and proper.

**COUNT III**
**TORTIOUS INTERFERENCE AGAINST PATRICK DALY,**
**ELIZABETH DALY AND ALL PAVING & SEALCOATING, LLC**

86.    Counterclaimant All Paving, Inc. re-allege the allegations in paragraphs 1 through 51 above as if set forth more fully herein, except that this count is a claim for tortious interference.

87.    This is an action for compensatory damages for tortious interference with business relationships within the jurisdiction of this court.

88.    Patrick and All Paving & Sealcoating have tortiously interfered with All Paving, Inc.'s advantageous business relations with All Paving, Inc.'s customers by falsely informing All Paving, Inc.'s customers that Daren Daly was purportedly operating All Paving, Inc. without a license and insurance.

89.    Patrick Daly and All Paving & Sealcoating have tortiously interfered with All

44

Paving, Inc.'s advantageous business relations with All Paving, Inc.'s customers by falsely informing All Paving, Inc.'s customers that Patrick Daly owns All Paving, Inc.

90.     Patrick Daly and All Paving & Sealcoating have tortiously interfered with All Paving, Inc.'s and Daren's advantageous business relations with All Paving, Inc.'s customers by improperly diverting customer payments for work performed by All Paving, Inc. to All Paving & Sealcoating.

91.     Patrick Daly was acting at all times as the agent of Elizabeth Daly and All Paving & Sealcoating, and thereafter as 3D Paving, with their knowledge, acquiescence, condonation, ratification and consent.

92.     The actions of Counterclaim Defendants were both unjustified and unprivileged and were done with malice.

WHEREFORE, Counterclaimant All Paving, Inc. demands a judgment against Counterclaim Defendants Patrick Daly, Elizabeth Daly, and All Paving & Sealcoating for compensatory damages together with costs, and any further relief this Court deems just and proper.

## COUNT IV
## BUSINESS DISPARAGEMENT

93.     Counterclaimant All Paving, Inc. re-allege the allegations in paragraphs 1 through 51, above as if set forth fully herein, except that this count is a claim for business disparagement.

94.     Counterclaim Defendants have engaged in and continue to engage in, at a minimum, the following acts:

a.     Disparaging Daren Daly and All Paving, Inc. to customers;

b.     Holding themselves out improperly as the majority owners and officers of All Paving, Inc.;

c.     Soliciting and attempting to solicit All Paving, Inc. customers;

d.     Notifying All Paving, Inc. customers that "All Paving" changed its name to 3-D Paving & Sealcoating in an effort to purposefully confuse customers;

e.     Attempting to poach All Paving, Inc. employees;

f.     Improperly opening and using the PNC Account in All Paving, Inc.'s name;

g.     Misappropriating monies belonging to All Paving, Inc.;

h.     Improperly and impermissibly amending All Paving, Inc. corporate documents without authority to do so;

i.     Publishing false statements with the Florida Department of State, Division of Corporations; and

j.     Interfering with Counter-Plaintiff All Paving, Inc.'s business relationships and agreements.

WHEREFORE, Counterclaimant All Paving, Inc. demands a judgment for damages against Counterclaim Defendants Patrick Daly, Elizabeth Daly, and All Paving & Sealcoating n/k/a 3D Paving for compensatory damages together with attorneys' fees, costs, and any further relief this Court deems just and proper.

## COUNT V
## (CONVERSION)

95.     Counterclaimant All Paving, Inc. sues All Paving & Sealcoating, Patrick Daly and Elizabeth Daly for conversion and re-allege the allegations in paragraphs 1 through 51 *supra* as if set forth fully herein

96.     Counterclaim Defendants Patrick Daly and All Paving & Sealcoating have converted customer business check payments specifically identifiable and earmarked for Counterclaimant All Paving, Inc. for work performed by All Paving, Inc. for Counterclaim Defendants' Patrick Daly and All Paving & Sealcoating, LLC exclusive control and benefit.

97.     Patrick Daly was acting at all times as the agent of Elizabeth Daly and All Paving & Sealcoating, LLC with their knowledge, acquiescence, condonation, ratification and consent.

WHEREFORE, Counterclaimant, All Paving, Inc., demands a judgment for compensatory damages against Counterclaim Defendants Patrick Daly, Elizabeth Daly, and All Paving &

Sealcoating, plus prejudgment interest, costs and attorneys' fees, and such other relief as this court deems just and proper.

## COUNT VI
## (NEGLIGENCE BY PATRICK DALY)

98.     Counterclaimant All Paving, Inc. re-allege the allegations in paragraphs 1 through 51 *supra* as if set forth fully herein, except that this count is a claim for negligence against Counterclaim Defendant Patrick Daly.

99.     Patrick owed a duty of care and loyalty while he was an officer of All Paving, Inc. not to harm All Paving, Inc.

100.     Counterclaim Defendant Patrick Daly has negligently sought to cause damages to Counterclaimants by breaching their duties to Counterclaimants as more fully alleged herein.

101.     Patrick negligently or recklessly breached that duty which was a proximate cause of harm to All Paving, Inc.

WHEREFORE, Counterclaimant All Paving, Inc. demand a judgment for compensatory damages against Counterclaim Defendant Patrick Daly for compensatory damages, costs, and such other relief as this court deems just and proper.

## COUNT VII
## (NEGLIGENCE BY ALL PAVING & SEALCATING, LLC)

102.     Counterclaimant All Paving, Inc. re-allege the allegations in paragraphs 1 through 51 above as if set forth fully herein, except that this count is a claim for negligence against All Paving & Sealcoating.

103.     Counterclaim Defendant All Paving & Sealcoating owed a duty to Counterclaimant All Paving, Inc. not to engage in conduct that was reasonably foreseeable to cause damages to Counterclaimant All Paving, Inc.

104.     Counterclaim Defendant All Paving & Sealcoating negligently or recklessly

breached that duty which was a proximate cause of harm to All Paving, Inc., as more fully set forth *supra*.

WHEREFORE, Counterclaimant All Paving, Inc. demands a judgment for compensatory damages, against Counterclaim Defendant All Paving & Sealcoating, its costs, and such other relief as this court deems just and proper.

## COUNT VIII
## (VIOLATION OF FLORIDA'S CIVIL REMEDIES FOR CRIMINAL PRACTICES)

105.    Counterclaimant All Paving, Inc. re-allege the allegations in paragraphs 1 through 51 and 95-97 *supra,* as if set forth fully herein, except that this count alleges an independent claim for violation of Florida's Civil Remedies for Criminal Practices Act against Counterclaim Defendants 3D Paving and Patrick Daly.

106.    Counterclaim Defendants 3D Paving and Patrick Daly have undertaken a pattern of criminal behavior in violation of Fla. Stat. §772.103, which provides in pertinent part:

It is unlawful for any person:

(1)    Who has with criminal intent received any proceeds derived, directly or indirectly, from a pattern of criminal activity or through the collection of an unlawful debt to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise.

(2)    Through a pattern of criminal activity or through the collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property.

(3)    Employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity or the collection of an unlawful debt.

(4)    To conspire or endeavor to violate any of the provisions of subsection (1), subsection (2), or subsection (3).

107.    Fla. Stat. §772.102(1) defines a "criminal activity" to include violations of Chapter 774 (assault and battery), 812 (theft), chapter 817 (fraudulent practices), chapter 831 (forgery), and Fla. Stat. § 836.05 (extortion).

48

108.    Fla. Stat. §772.102(4) defines a "pattern of criminal activity" to mean:

…engaging in at least two incidents of criminal activity that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents; provided that the last of such incidents occurred within 5 years after a prior incident of criminal activity. For the purposes of this chapter, the term "pattern of criminal activity" shall not include two or more incidents of fraudulent conduct arising out of a single contract or transaction against one or more related persons.

109.    Counterclaim Defendants Patrick Daly and 3-D Paving f/k/a All Paving & Sealcoating have engaged in at least two incidents of criminal activity within five years, to wit:

(a)    On or about March 19, 2021, Patrick Daly, individually and as an agent of 3-D Paving violated Fla. Stat. §836.05 (extortion), which provides, "Threats; extortion.—Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084." On that date: Patrick Daly, individually and as an agent of 3D-Paving transmitted a text message, a copy of which is attached hereto as Exhibit "J" to Daren Daly threatening to injure his reputation and expose him to disgrace if All Paving, Inc. under the control of Daren Daly did not agree to pay 3-D Paving an exorbitant amount of money it had demanded in order to resolve the litigation with All Paving, Inc.

(b)    In the summer of 2017 Patrick and Daly, individually and on behalf of 3-D Paving stole the following pieces of equipment owned and titled in the name of All Paving, Inc. and owned by All Paving, Inc., which they still wrongfully retain:

(1) 2017 Rampant Trailer Vin No. 5SPTD3521HW200402;

(2) 2016 Better Built Trailer Vin No. 4MNDB2025G1001199, and

(3) 2017 Homemade Trailer Vin No. NOVIN020115946

Hereinafter referred to collectively as "the trailers". Defendants' original theft and continued retention and use of the trailers constitutes a violation of Fla. Stat. §812.014, which provides,

Theft.—

(1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:

    (a)   Deprive the other person of a right to the property or a benefit from the property.

    (b)   Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

The trailers were thereafter used by 3D Paving and have not been returned, despite demand to All

Paving, Inc.

    (c)  On or about 4, 2017, Patrick Daly as purported "vice-president" of All Paving, Inc. surreptitiously and without the knowledge of Counterclaimants opened a bank account at PNC Bank pursuant to attached Exhibit "K" that a corporate resolution authorizing the account was approved by the All Paving, Inc. Board of Directors. Patrick Daly's purpose of opening the bank account was to fraudulently divert customer payments due All Paving, Inc. to 3D Paving. On or about July 26, 2017, Patrick Daly deposited a check into a 3-D Paving account at 3D Paving bank account at BBT Bank. in the amount of $278,576.72. A copy of the check is attached hereto as Exhibit "L". The funds represented by the check were funds belonging to and due All Paving, Inc., but which were diverted to 3-D Paving pursuant to a scheme created by Defendants wherein a fraudulent bank account was created at PNC Bank in April 2017 in order to divert and receive customer deposits due All Paving, Inc. for work performed by All Paving, Inc. and then later transfer the funds to a bank account of 3-D Paving. All Paving, Inc. never received the funds, which were thereafter used solely for the subsequent benefit of 3-D Paving, a marketplace competitor to All Paving, Inc.;

The proceeds from the July 26, 2017 check were thereafter invested into 3D Paving and used to

pursue the scheme to destroy All Paving, Inc. in the marketplace.

    (d)  Likewise in July and August 2017, funds received from the fraudulent PNC bank account were used and invested as litigation expenses for 3D Paving in order to carry-out the aforementioned scheme;

    (e)  In March or April 2017 at 10394 W. Sample Road, Suite 201, Coral Springs, Florida, Patrick Daly committed the crime of assault by threatening to shoot Daren Daly with a gun as a means of intimidation in order to resolve the dispute between All Paving, Inc. and 3-D Paving on unfair terms and cause it financial harm.

    110.    Counterclaim Defendants Patrick Daly and 3-D Paving maliciously have

committed two or more incidents of criminal activity within a period of five (5) years, which was

and is a continuing endeavor and enterprise intended maliciously to cause harm to All Paving, Inc. in order to destroy All Paving, Inc. for the benefit of its marketplace competitor, 3-D Paving, under the control of the Daly Counterclaim Defendants. The intent of Patrick Daly and 3-D Paving in committing the crimes set forth in ¶ 109 was to coerce All Paving, Inc. to pay unreasonably large sums of money to them so that All Paving, Inc. would be forced to close its business and thus ultimately benefit 3-D Paving, its competitor. Furthermore, All Paving, Inc. has been financially harmed by the Counterclaim Defendants' retention of the trailers and the theft and retention of $278,576.72 and by the acts set forth in ¶109.

111.    Defendants have with criminal intent received proceeds derived, directly or indirectly, from a pattern of criminal activity or through the collection of an unlawful debt to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise.

112.    The threats also constitute a violation of Fla. Stat. §772.11(1) entitling Counterclaimant All Paving, Inc. to treble damages. On June 15, 2018, Counterclaim Defendants were provided a written demand, a copy of which is attached hereto as Exhibit "M", as required by Fla. Stat. §772.11, to which Counterclaim Defendants have not complied.

113.    Counterclaimant All Paving, Inc. has incurred substantial damages legally caused by the criminal violations and scheme alleged, including lost profits, remediation damages, and loss due to theft.

WHEREFORE, Counterclaimant All Paving, Inc. demand a judgment for damages against Counterclaim Defendants 3-D Paving and Patrick Daly for compensatory damages, treble compensatory damages, costs, attorneys' fees, and such other relief as this court deems just and proper.

## COUNT IX
## (CONSPIRACY TO VIOLATE FLORIDA'S CIVIL
## REMEDIES FOR CRIMINAL PRACTICES)

114.    Counterclaimant All Paving, Inc. re-allege the allegations in paragraphs 1 through 51, and 105-113 *supra*, as if set forth more fully herein, except that this count is an independent claim for conspiracy against Counterclaim Defendant Elizabeth Daly.

115.    The facts alleged above show that Elizabeth Daly agreed and endeavored in active concert and conspiracy with Patrick Daly and 3D Paving to violate Fla. Stat. §772.103 and has rendered substantial assistance, agreement or ratification to their actions set forth in Count VIII herein. Counterclaim Defendants Elizabeth Daly and Patrick Daly had an independent and malicious personal stake in conspiring to violate Fla. Stat. §772.103 in order to destroy All Paving, Inc. as a marketplace competitor with 3D Paving. Counterclaim Defendant Elizabeth Daly was aware of, condoned, and ratified all of Patrick Daly's criminal activities alleged in ¶109 and provided substantial assistance to him.

116.    Fla. Stat. §772.103(4) specifically prohibits conspiracy.

117.    As a direct and proximate result of this malicious, intentional, and tortious conduct by Counterclaim Defendants, Counterclaimant All Paving, Inc., has sustained substantial financial damages.

WHEREFORE, Counterclaimant All Paving, Inc. demand a judgment for damages against Counterclaim Defendant Elizabeth Daly for compensatory damages, treble compensatory damages, costs, attorneys' fees, and such other relief as this court deems just and proper.

## COUNT X
## (AIDING AND ABETTING VIOLATION FLORIDA'S CIVIL
## REMEDIES FOR CRIMINAL PRACTICES)

118.    Counterclaimant All Paving, Inc. re-alleges the allegations in paragraphs 1 through 51 and 105-115 *supra*, as if set forth fully herein, except that this count is an independent claim for

aiding and abetting a violation of Fla. Sta. §772.103.

117.     As a direct and proximate result of this malicious, intentional, and tortious conduct by Patrick Daly and 3D Paving, Counterclaimant All Paving, Inc., has sustained substantial damage, and Counterclaim Defendant Elizabeth Daly has substantially aided and abetted Patrick Daly and 3-D Paving in the violations set forth in Count VIII herein.   Counterclaim Defendant has testified in this litigation that she was aware of the fraudulent PNC bank scheme that was implemented with her consent and ratification. Counterclaim Defendant Elizabeth Daly had an independent and malicious personal stake in conspiring to violate Fla. Stat. §772.103 in order to destroy All Paving, Inc. for the benefit of a marketplace competitor.

WHEREFORE, Counterclaimant All Paving, Inc. demand a judgment for damages against Counterclaim Defendant Elizabeth Daly for compensatory damages, treble compensatory damages, costs, attorneys' fees, and such other relief as this court deems just and equitable.

## COUNT XI (RESTITUTION FOR UNJUST ENRICHMENT

118.     Counterclaimant All Paving, Inc. realleges and incorporates by reference paragraphs 1-51 *supra*.

119.     This is an action for restitution against Counterclaim Defendants Patrick Daly, Elizabeth Daly and All Paving & Sealcoating a/k/a 3D Paving based on unjust enrichment of Counterclaim Defendants.

120.     All Paving, Inc. conferred benefits on Counterclaim Defendants.

121.      Counterclaim Defendants had knowledge of the benefits.

122.     The Counterclaim Defendants accepted or retained benefits conferred.

123.     The circumstances are such that it would be inequitable for the Counterclaim Defendants to retain the benefits without disgorgement or paying fair value for the benefits received.

WHEREFORE, Counterclaimant All Paving, Inc. demands restitution and disgorgement

against Counterclaim Defendants, costs, and such other relief as this court deems just and equitable.

## COUNT XII (COMMON LAW UNFAIR COMPETION)

124.    This is an action for damages by Counterclaimant All Paving, Inc. against Counterclaim Defendant 3-D Paving for common law unfair competition.  Counterclaimant All Paving, Inc. incorporates paragraphs 1-51, 88, 89, and 94 *supra*, as if more fully alleged herein.

125.    Counterclaimant All Paving, Inc. and Counterclaim Defendant 3D paving are direct competitors in the same geographical market and compete for the same pool of customers.  In the summer of 2017, Patrick Daly, individually and on behalf of 3D Paving, sent a letter to Mr. Maxwell of Ranger Construction acknowledging and ratifying the Business Divorce and informing Ranger Construction that All Paving, Inc. and 3D Paving had recently split into two separate companies. See attached Exhibit "N".

126.    However, as alleged *supra*, contrary to its representations that ALL Paving, Inc. and 3D Paving were separate companies and marketplace competitors, Counterclaim Defendant 3D Paving has engaged in deceptive and fraudulent conduct that has caused customer confusion, including deceptive and misleading marketing, deceptive and misleading correspondence to paving industry customers and deceptive and misleading direct contact with paving industry customers.  3D Paving, by and through its president Patrick Daly, contacted a representative of Ranger Construction, Beatriz Ramirez, a customer of All Paving, Inc. in the summer of 2017 misrepresenting All Paving, Inc.'s license status and ability to conduct business, and disparaging All Paving. Inc. and its officer, Daren Daly, in order to obtain business for 3D Paving. Upon information and belief, 3D Paving by and through Patrick Daly has contacted other such customers and prospective customers in order to unfairly compete. 3D Paving has promulgated false and misleading blast emails as alleged *supra*.

127.    Counterclaimant All Paving, Inc. has incurred substantial financial damages

including lost profits and remediation damages caused by the unfair competition.

WHEREFORE, Counterclaimant All Paving, Inc. demands a judgment for compensatory damages, injunction, and costs against Counterclaim Defendant 3D Paving, and such other relief as this court deems just equitable.

## COUNT XIII
## (CONSPIRACY TO COMMIT COMMON LAW UNFAIR COMPETION)

128.    This is a claim by Counterclaimant All Paving, Inc. for conspiracy against Counterclaim Defendants Patrick Daly and Elizabeth Daly for conspiracy to commit unfair competition. Counterclaimant incorporates by reference paragraphs 1-51 and 137-139, *supra*.

129.    The facts alleged above show that Elizabeth Daly and Patrick Daly agreed and endeavored in active concert and conspiracy with 3D Paving to commit unfair competition as alleged in Count XII and have rendered substantial assistance, agreement or ratification to their actions set forth in Count XII herein.  Counterclaim Defendants Elizabeth Daly and Patrick Daly had an independent and malicious personal stake conspiring to commit unfair competition in order to destroy All Paving, Inc.

130.    As a direct and proximate result of this intentional, and tortious conduct by Counterclaim Defendants, Counterclaimant All Paving, Inc., has sustained substantial damages, including lost profits and harm to its reputation.

WHEREFORE, Counterclaimant All Paving, Inc. demands a judgment for compensatory damages, injunction, and costs against Counterclaim Defendants Patrick Daly and Elizabeth Daly, and such other relief as this court deems just and equitable.

## COUNT XIV
## (AIDING AND ABETTING COMMON LAW UNFAIR COMPETITION)

131.    This is a claim by Counterclaimant All Paving, Inc. for adding and abetting unfair competition against Counterclaim Defendants Patrick Daly and Elizabeth Daly. Counterclaimant incorporates by reference and realleges paragraphs 1-51 and 137-39, *supra*.

132.    The facts alleged above show that Elizabeth Daly and Patrick Daly agreed and endeavored to aid and abet 3D Paving in its unfair competition as alleged in Count XII and have rendered substantial assistance, agreement or ratification to their actions set forth in Count XII herein.   Counterclaim Defendants Elizabeth Daly and Patrick Daly had an independent and malicious personal stake to aid and abet 3D Paving's unfair competition in order to destroy All Paving, Inc.

133.    As a direct and proximate result of this intentional, and tortious conduct by Counterclaim Defendants, Counterclaimant All Paving, Inc., has sustained substantial financial damages.

WHEREFORE, Counterclaimant All Paving, Inc. demands a judgment for compensatory damages, injunction, and costs against Counterclaim Defendants Patrick Daly and Elizabeth Daly, and such other relief as this court deems just and equitable.

<div align="center">

**JURY DEMAND**

</div>

Counterclaimants demand a jury trial on all issues triable by jury as a matter of right.

<div align="center">

**CERTIFICATE OF SERVICE**

</div>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by e-mail via the Florida Courts E-Filing Portal pursuant to Fla. R. Jud. Admin. 2.516(b)(1) to the below named person(s) on this 8th day of July 2021:

Bruce A. Goodman, Esq.
Bruce A. Goodman, P.A.
*Counsel for Plaintiffs*
5531 N. University Drive, Suite 101
Coral Springs, FL 33067
Phone (954) 919-6000
Facsimile (754) 222-5122
E-mail(s):    bruce@bgoodmanlaw.com
              melissa@bgoodmanlaw.com

THE SOTO LAW GROUP
*Attorneys for Defendants, DAREN C. DALY*
*and JAMIE SCHINDLER, and Counter-*
*Plaintiffs, DAREN C. DALY and ALL*
*PAVING, INC.*
Coastal Tower, Suite 400
2400 East Commercial Blvd.
Fort Lauderdale, FL  33308
Phone: (954) 567-1776
Facsimile: (954) 567-1778
Primary: john@sotolawgroup.com
Secondary: rebecca@sotolawgroup.com
Secondary: jkelly@businesslitigation.com

By: /s/ *John P. Kelly*
    JOHN P. KELLY
    Florida Bar No. 284289

# EXHIBIT "A"

## LIMITED LIABILITY PARTNERSHIP AGREEMENT
### OF
### <u>All Paving and Sealcoating -Located at 6714 NW 20th Avenue, Fort Lauderdale Florida 33309</u>

**THIS AGREEMENT** is effective as of the 8th day of May, 2013 ("Effective Date"), and is by, between and among **Patrick Daly,** a Florida Licensed Paving Contractor, ("Patrick"), and **Robert Holland**, a Florida resident, ("Bob"), collectively, the foregoing entities being the "Partners" and individually a "Partner."

### R E C I T A L S :

WHEREAS, the parties wish to form a Florida Limited Liability Partnership for the sole purpose of sharing revenue and expenses of the All Paving and Sealcoating office located at 6714 NW 20th Avenue, Fort Lauderdale, Florida 33309 and the parties wish to set forth their duties, obligations and rights with regard to same;

NOW, THEREFORE, in consideration of the premises, mutual promises, covenants, terms and conditions contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  <u>FORMATION</u>.   The parties hereby form a limited liability partnership, pursuant to the laws of the State of Florida ("Partnership").   The business of the Partnership shall be conducted under the name of **All Paving and Sealcoating located at 6714 NW 20th Avenue, Fort Lauderdale, Florida 33309**.

2.  <u>TERM</u>.  The Partnership shall commence on the Effective Date and shall continue until December 31, 2063 unless sooner terminated as provided herein.

3.  <u>PRINCIPAL PLACE OF BUSINESS</u>.  The principal place of business of the Partnership shall be located at 6714 NW 20th Avenue Fort Lauderdale, FL 33309.

The principal place of business of the Partnership, and may change to any other location in Broward County, by unanimous determination of the Partners.

4.    <u>PURPOSE AND POWERS</u>.  The purpose of the Partnership shall be the payment of costs and collection of any revenue geared to the operation of the All Paving and Sealcoating located at 6714 NW 20th Avenue, Fort Lauderdale, Florida 33309.  To further such purpose, the Partnership shall have the power to possess and lease any Real Property and perform contracts and obligations and enter into leases related to the All Paving and Sealcoating, including, but not limited to, rent, maintenance, utilities, insurance, reception area costs, common area supplies, and all other costs for office space all related to All Paving and Sealcoating; provided, however, the written consent of all Partners shall be necessary for the Partnership to carry on any such activities.

5.    <u>EXPENSES AND REVENUE OF PARTNERS</u>.

a.    <u>Expenses</u>.  Each Partner shall be obligated for an equal share of the expenses related to the operation of All Paving and Sealcoating located at 6714 NW 20th Avenue, Fort Lauderdale, Florida 33309 which shall include, but not be limited to, rent, utility expenses, wages, insurance, reception area costs, overhead and common industry supplies.

b.    <u>Revenue</u>. The Partners agree to share Net Profits according to an Eighty-Five to Fifteen split.  Patrick Daly will be entitled to the Eighty-Five (85%) percentage share while Robert Holland will be entitled to the Fifteen (15%) percentage share of the All Paving and Sealcoating Office located at 6714 NW 20th Avenue, Fort Lauderdale, Florida 33309.

6.     <u>FISCAL MATTERS</u>.

a.     <u>Fiscal Year</u>.   The fiscal year end of the Partnership shall be December 31st, or as otherwise determined by unanimous vote or consent of the Partners.

b.     <u>Books and Records</u>.  Proper books and records shall be kept with reference to all Partnership transactions, and each Partner shall at all reasonable times during business hours have access to same.  The Partnership shall cause quarterly and annual financial statements of the Partnership to be prepared and made available to the Partners.  Such statements shall be unaudited.  All expenses incurred in maintaining the books and records, including accounting services performed by certified public accountant(s) and preparation of Partnership income tax returns, shall be borne by the Partnership.

c.     <u>Bank Accounts</u>.  All of the funds of the Partnership shall be deposited in its name in an account or accounts maintained at such financial institution or institutions designated by the Partners.

d.     <u>Working Capital Needs of the Partnership</u>.  To the extent that the Partnership's Cash Flow is insufficient to meet all the expenses and/or obligations of the Partnership (as set forth above), each Partner agrees to contribute one-half (1/2) of any deficiency; provided, however, if any Partner fails to completely fund its one-half (1/2) share of such deficiency, then the other Partner may loan such unfunded amount to the Partnership for thirty (30) days and such loan ("Deficit Loan"), unless otherwise agreed by the Partners, shall bear interest at the rate of five (5%) percent per annum.  All of such loans shall be repaid prior to any distribution of Cash Flow or payment of any compensation to the Partners.

3

8.    <u>MANAGEMENT OF PARTNERSHIP AFFAIRS</u>.

a.    <u>Control</u>.  Control of the Partnership and all of its affairs and the management and conduct of the Partnership business, investments and activities shall be with the Partners.

b.    <u>Personnel</u>.    The Partnership may employ such secretarial, administrative, labor and estimating personnel as the Partners determine, by unanimous vote, is necessary for the proper and efficient conduct of the Partnership and its business.

d.    <u>Partnership Duties</u>.    The Partnership shall be in charge of maintenance of books and records, maintenance of client files, billing clients, leasing and purchasing of equipment, providing for equipment maintenance and repair, ordering, stocking, accounting and maintaining an inventory of supplies, and otherwise executing any and all documents including, but not limited to, contracts, evidence of indebtedness, security agreements and financing statements, as the Partners shall consider to be necessary and expedient to carry out and effectuate the purposes of the Partnership.

e.    <u>Prohibited Actions</u>.    Except as otherwise provided in this Agreement, no Partner, without the unanimous authorization by or written consent of the Partners, shall have authority to:

(1)    do any act in contravention of this Agreement;

(2)    do any act which would make it impossible to carry on the business of the Partnership;

(3)    possess Partnership property or assign the right of the Partnership or its Partners in specific Partnership property for other than a Partnership

4

purpose;

   (4) on behalf of the Partnership, make, execute or deliver any lease of real property, personal property or the acquisition or purchase of any real or personal property other than those items of personal property purchased in the ordinary course of business, any general assignment for the benefit of creditors, or any bond, promissory notes, mortgage, guarantee, indemnity bond or surety bond;

   (5) assign, transfer, pledge, compromise or release any claim of the Partnership (provided, however, each Partner is permitted to reasonably reduce any client bill for any reason whatsoever), or arbitrate or consent to the arbitration of any of its disputes or controversies;

   (6) make, execute or deliver any deed, long term ground lease or contract to sell, all or any part of the Partnership property;

   (7) confess a judgment against the Partnership;

   (8) amend or otherwise change this Agreement so as to modify the rights or obligations of the Partners as set forth herein;

   (9) create any personal liability for any Partner other than that personal liability to which any Partner may have agreed to in writing;

   (10) admit a person as Partner, except as otherwise provided herein; or

   (11) Patrick Daly reserves the right to transfer his partnership interest to his heirs, Robert Holland must provide Patrick Daly the first right of refusal on Robert Holland percentage of the partnership otherwise any transfer is void in the Partnership.

   f. <u>Meetings and Written Consents</u>. The Partners may hold

5

Partnership meetings at such places and times, and with such formalities, as selected by the Partners, except as may otherwise be required by law. The Partners shall keep minutes of all the meetings, and the minutes, as well as any and all written consents of the Partners, shall be placed in a minute book for the Partnership.

9. <u>OWNERSHIP OF ASSETS</u>. The Partners agree and acknowledge that it is not intended that any real or tangible personal property now owned or hereafter acquired by the individual Partners and utilized by the Partnership or intended to be utilized by the Partnership, if any, is intended to be transferred into the Partnership's name. Notwithstanding the foregoing, real and tangible personal property, including improvements placed or located thereon, to be utilized by the Partnership may be acquired by the Partnership after the date hereof in the Partnership's name and shall be owned by the Partnership, if agreed by unanimous vote of the Partners. Each Partner hereby expressly waives the right to require partition of any Partnership property or any part thereof.

10. <u>RESTRICTION ON ENCUMBRANCES</u>. No Partnership interest shall be pledged, mortgaged, encumbered, hypothecated or otherwise disposed of in any way without the unanimous written consent of the Partners, unless provided otherwise herein.

11. <u>VOLUNTARY LIQUIDATION OF PARTNERSHIP</u>. This Partnership agreement may be terminated by any of the Partners.

12. <u>COVENANT NOT-TO-COMPETE</u>. There shall be no covenant not to compete upon termination of this Agreement.

13. <u>MISCELLANEOUS PROVISIONS</u>.

    a. <u>Amendments</u>. The provisions of this Agreement may not be

6

amended, supplemented, waived or changed orally, but only by a writing signed by the party as to whom enforcement of any such amendment, supplement, waiver or modification is sought and making specific reference to this Agreement.

b.    <u>Assignments</u>.    No party shall assign his or its rights and/or obligations hereunder without the prior written consent of the other parties.

c.    <u>Attorneys' Fees</u>.  If any legal action or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with any provisions of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys' fees and expenses, court costs and all expenses even if not taxable as court costs (including, but not limited to, all attorneys' fees and expenses incident to any appeals), incurred in that action or proceeding, in addition to any other relief to which such party or parties may be entitled.

d.    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Once each party to this Agreement has executed a copy of this Agreement, the Agreement shall be considered fully executed and effective, notwithstanding that all parties have not executed the same copy hereof.

e.    <u>Entire Agreement</u>. This    Agreement    represents    the    entire understanding and agreement between the parties with respect to the subject matter hereof, and supersedes all other negotiations, understandings and representations (if any) made by and between such parties.

f.    <u>Notices</u>.  All notices, requests, consents and other communications required or permitted under this Agreement shall be in writing (including telecopy or

7

facsimile communication) and shall be (as elected by the person giving such notice) hand delivered by messenger or courier service, or mailed (airmail if international) by registered or certified mail (postage prepaid), return receipt requested, addressed to such address as any party may designate by notice complying with the terms of this Section.  Each such notice shall be deemed delivered (a) on the date delivered if by personal delivery; (b) on the date of transmission with confirmed answer back if by telecopy or facsimile; and (c) on the date upon which the return receipt is signed or delivery is refused or the notice is designated by the postal authorities as not deliverable, as the case may be, if mailed.

g.      Venue and Jurisdiction.  Any suit, action or other legal proceeding arising out of or relating to this Agreement shall be brought in a court of the State of Florida, Broward County.

h.      Waiver.  The failure or delay of any party at any time to require performance by another party of any provision of this Agreement, even if known, shall not affect the rights of such party to require performance of that provision or to exercise any right, power or remedy hereunder, and any waiver by any party of any breach of any provision of this Agreement should not be construed as a waiver of the provision itself, or a waiver of any right, power or remedy under this Agreement.  No notice to or demand on any party in any case shall, of itself, entitle such party to any other or further notice or demand in similar or other circumstances.

**IN WITNESS WHEREOF**, the parties to this Agreement have executed this Agreement as of the date first written above.

WITNESSES:                              **Patrick Daly,**
                                        **a Florida resident, Partner**

_____  08/19/13              By: _____
                                        Patrick Daly, President

_____                        Date: _____

                    (SIGNATURES CONTINUE ON THE FOLLOWING PAGE)

                                        **Robert Holland,**
                                        **a Florida resident, Partner**

_____                _____
                                        Robert Holland, Vice President

_____                Date: _____

9

# EXHIBIT "B"

## AGREEMENT TO TERMINATE LIMITED LIABILITY PARTNERSHIP AGREEMENT OF ALL PAVING AND SEALCOATING AND TO TRANSFER ROBERT HOLLAND'S INTEREST IN THE COMPANY TO PATRICK DALY

THIS AGREEMENT dated the __14__ day of January, 2019 is made and entered into by and among ROBERT HOLLAND ("BOB"), PATRICK DALY ("PATRICK"), ELIZABETH DALY ("ELIZABETH") and ALL PAVING & SEALCOATING LLC ("COMPANY") (collectively, the "Parties").

WHEREAS, BOB and PATRICK previously entered into a Limited Liability Partnership Agreement of All Paving And Sealcoating dated May 8, 2013 and signed on August 19, 2013 ("Partnership Agreement"); and

WHEREAS, the Parties are entering into this Agreement in order to terminate the Partnership Agreement and transfer all of BOB's interest in the Company to PATRICK, █████████████ ██████████████████████████

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt of which is hereby acknowledge, the Parties intending to be legally bound agree as follows:

1.    The foregoing recitations are incorporated herein.

2.    Effective January 1, 2019, the Partnership Agreement is terminated and all shares and interests of BOB in the COMPANY (his entire fifteen (15%) percent) are transferred to PATRICK, such that as of January 1, 2019, PATRICK shall have a forty-nine (49%) percent interest in the COMPANY, and ELIZABETH shall continue to have a fifty-one (51%) percent interest in the COMPANY.

3.    BOB shall receive a total of $█████████ for the transfer of his interest in the COMPANY, and has previously received $████████ in payment of same.   The remaining

$██████ shall be paid by PATRICK to BOB no later than March 31, 2019.

4.    Any and all loans and advances previously made to BOB are being resolved by this Agreement, and BOB is not indebted to the COMPANY, PATRICK and ELIZABETH in any respect.

5.    ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████

6.    ████████████████████████████████████████████
████████████████████████████████████████████
███████

7.    ████████████████████████████████████████████
██████████████

8.    Except for PATRICK's obligation to pay BOB the $██████ due him pursuant to paragraph 3 above, and the COMPANY's obligations to BOB pursuant to paragraphs 5 and 6 above, the COMPANY, PATRICK, and ELIZABETH are not indebted or obligated to pay BOB for any loans and advances, or for any past, present or future distributions of profits arising from BOB's ownership interest in the COMPANY.  Except for the obligations hereunder, BOB releases any claims against the COMPANY, PATRICK and ELIZABETH arising from BOB's prior ownership interest in the COMPANY.

9.    BOB shall not at any time disparage, defame, discredit or portray in a negative light the COMPANY, PATRICK or ELIZABETH, or engage in any activity which would have the effect

of disparaging, defaming, or discrediting the COMPANY, PATRICK, ELIZABETH, or the COMPANY's members, managers, affiliates, officers, directors, employees or agents, in any way. BOB shall not disclose to anyone any information regarding the COMPANY which is non-public, confidential, or proprietary.

THE PARTIES have executed this Agreement as of the date indicated above.

ROBERT HOLLAND

_____
Date

ALL PAVING & SEALCOATING LLC (MG+MR)

By: _____

Date: 1-14-19

PATRICK DALY
1-14-19
Date

ELIZABETH DALY
1/14/19
Date

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

## ASSIGNMENT OF MEMBERSHIP INTERESTS

ROBERT HOLLAND (hereinafter referred to as "Assignor") hereby assigns, sets over and transfers to PATRICK DALY (hereinafter referred to as "Assignee"), effective January 1, 2019, all of his membership interests in ALL PAVING & SEALCOATING LLC (consisting of a 15% interest in said Company), leaving Assignor without an interest in ALL PAVING & SEALCOATING LLC, and Assignee hereby accepts said assignment.

TO HAVE AND TO HOLD the same unto the said Assignee, his respective successors and assigns forever; and Assignor does for himself and his successors and assigns, covenants and agrees with said Assignee to specifically warrant and defend title to the said membership interests assigned hereby unto the said Assignee, his successors and assigns, against any and all claims thereto by whomsoever made by or through the Assignor; and Assignor does, for himself, and his successors and assigns, warrant and represent to the Assignee that the title conveyed is good, his transfer is rightful; that no consent or approval by any other person or entity is required for the valid assignment by the Assignor to the Assignee of the membership interests referenced herein; and that the membership interests are, have been, and shall be delivered free and clear from any security interest or other lien or encumbrance; and

Assignor does, for himself, and his successors and assigns, warrant and represent to the Assignee that there are no attachments, executions or other writs of process issued against the membership interests conveyed hereunder; that he has not filed any petition in bankruptcy nor has any petition in bankruptcy been filed against him; and that he has not been adjudicated a bankrupt; and Assignor does, for himself, and his successors, and assigns, warrant that he will execute any such further assurances of the foregoing warranties and representations as may be requisite.

Assignor:

_____
ROBERT HOLLAND

_____
Date

Assignee:

_____
PATRICK DALY

1-14-19
Date

# EXHIBIT "C"

# 3-D Paving & Sealcoating

## BALANCE SHEET

### As of December 31, 2017

| | TOTAL |
|---|---|
| **ASSETS** | |
| Current Assets | |
| Bank Accounts | |
| 10000 BB&T - Operating ▮ | 4,336.29 |
| 10005 BB&T - Payroll ▮ | 11,812.24 |
| 10010 BB&T - Savings ▮ | 213,665.13 |
| 10025 Petty Cash | 0.00 |
| **Total Bank Accounts** | **$229,813.66** |
| Accounts Receivable | |
| 11000 Accounts Receivable | 0.00 |
| **Total Accounts Receivable** | **$0.00** |
| Other Current Assets | |
| 11005 Deferred Interest | 0.00 |
| 11025 Employee Cash Advances | 6,961.73 |
| 11040 Prepaid Insurance | 0.00 |
| 11050 Robert Holland - Loan | 15,000.00 |
| 12000 Undeposited Funds | 0.00 |
| Deferred Interest (2013 Ford) | 0.00 |
| Deferred Interest (2016 Isuzu NQR Crew) | 0.00 |
| Deferred Interest (Corolla) | 0.00 |
| Deferred Interest (Komatsu) | 0.00 |
| Exchange | 0.00 |
| Uncategorized Asset | 0.00 |
| **Total Other Current Assets** | **$21,961.73** |
| **Total Current Assets** | **$251,775.39** |
| Fixed Assets | |
| 15000 Machinery and Equipment | 556,869.92 |
| 15005 Furniture & Office Equipment | 27,442.75 |
| 15010 Trailers | 67,916.82 |
| 15015 Vehicles | 488,401.18 |
| 15020 y-All Paving, Inc. Fixed Assets | 0.00 |
| 17000 z-Accumulated Depreciation | -320,105.81 |
| **Total Fixed Assets** | **$820,524.86** |
| Other Assets | |
| 17050 Due To /From All Paving INC | 0.00 |
| **Total Other Assets** | **$0.00** |
| **TOTAL ASSETS** | **$1,072,300.25** |
| **LIABILITIES AND EQUITY** | |
| Liabilities | |
| Current Liabilities | |
| Accounts Payable | |
| 20000 Accounts Payable | 422.90 |

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

| | TOTAL |
|---|---|
| **Total Accounts Payable** | **$422.90** |
| Credit Cards | |
| 20005 American Express ██████ | 12,817.67 |
| 20010 Capital One Business ████ | 9,380.57 |
| BBT Card ████ | 0.00 |
| Capital One ███ | 0.00 |
| **Total Credit Cards** | **$22,198.24** |
| Other Current Liabilities | |
| 24000 Payroll Liabilities | 25.73 |
| 24010 Deposits | 63,906.10 |
| Current Portion of Long Term Debt | 0.00 |
| **Total Other Current Liabilities** | **$63,931.83** |
| **Total Current Liabilities** | **$86,552.97** |
| Long-Term Liabilities | |
| 24015 Ally - ($1,005.14) 2018 Isuzu NQR - Acct.4875 | 48,795.08 |
| 24020 Ally - ($1000.00) Asphalt Truck Acct. 0036 | 1,926.79 |
| 24025 Ally - 2018( $1.006.00)  Isuzu NQR - Acct. 3052 | 48,749.16 |
| 24030 Ally- ($1050.00) Concrete Truck Acct. 6681 | 2,238.79 |
| 24035 Bank of America - ($400.00) 2013 Ford  F-250 | 14,893.10 |
| 24050 CAT  - ($743.54) 242 D Skid Steer | 10,409.66 |
| 24055 CAT -  ($1,539.79)  262 D Skid Steer | 92,380.40 |
| 24065 CAT - ($4,525.40) Leeboy $4,313.30 + $212.10 Insurance | 166,297.34 |
| 24080 John Deere  - ($1,775.57) Excavator Acct. 7222 | 59,907.82 |
| 24085 Stearns - ($411.71)  CAT Roller Acct. 8001 | 11,116.17 |
| 24090 TD Bank Acct. 2459 ($614.26) Ford F-250 | 31,244.74 |
| 24095 Toyota  ($345.19) Acct.8771 2016 Tacoma | 16,557.95 |
| 24100 Toyota  ($325.51)  Acct. 9387 2015 Corolla | 13,337.19 |
| 24110 Wells Fargo  - ($244.33) Acct. 3002  Vermeer Trencher | 12,193.12 |
| 24125 Wells Fargo - ($347.36) Vermeer Stump Grinder | 17,368.00 |
| NORTRAX - Bomag ($680.50) | 0.00 |
| y-Notes Payable for All Paving, Inc. | |
| Ally Bank ($959.66 ) | 0.00 |
| Bank of America ($448.15) | 0.00 |
| Caterpillar Financial Services ($2,555.71) | 0.00 |
| Komatsu Financial ($1094.42) | 0.00 |

|  | TOTAL |
|---|---|
| Total y-Notes Payable for All Paving, Inc. | 0.00 |
| **Total Long-Term Liabilities** | **$547,415.31** |
| **Total Liabilities** | **$633,968.28** |
| Equity | |
| 30000 Members Capital Contribution | 0.00 |
| 30700 Members Draw | -244,740.00 |
| 32000 Members Equity | 301,031.71 |
| Net Income | 382,040.26 |
| **Total Equity** | **$438,331.97** |
| **TOTAL LIABILITIES AND EQUITY** | **$1,072,300.25** |

# EXHIBIT "D"

April 14, 2017


Bank United

2895 N University Dr.

Coral Springs, FL 33071


RE: All Paving Inc Bank Accounts ███████████


Dear Sirs,


Please close the accounts listed below. Proceeds in these accounts are to be
wired and distributed according the disbursement schedule below. Reject any
further requests for transactions in these accounts.

Account #

Checking Account: ██
Checking Account: ██
Checking Account: ██
Checking Account: ██

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

Please transfer the amounts indicated to the accounts described in the attached exhibit.

Balance to Be Distributed
as Follows:

**Wire Transfer #1**                                    Routing    Account

2016 Payroll Adjustment                 110,713.24   263191387   ▮▮▮▮

2017 Payroll 1/1-3/17                    156,746.11   263191387   ▮▮▮▮

2016 Patrick Daly Salary                 46,200.00   263191387   ▮▮▮▮

*[handwritten: Not to get bill paid]*

Subtotal to LLC BB&T

Account                    313,659.35

**Wire Transfer # 2**                                   Routing    Account

2016 Patrick Daly Salary                  28,800.00   267077627   ▮▮▮▮

2016-17 Qualifying Fee                    31,000.00   267077627   ▮▮▮▮

Subtotal to Patrick Daly
Account                    $59,800.00    *[handwritten: Not to get bill paid]*

**Wire Transfer # 3**

Balance Forward After Distributions to Suntrust        Routing    Account

Account                                               063102152   ▮▮▮▮

Please provide written confirmation that the account is closed.

If you have any questions, please contact me at the phone number below.

2

Thank you,

Daren Daly
10248 NW 62nd Ct; Parkland, FL 33076 ╳
███████6381

STATE OF FLORIDA

BEFORE ME, the undersigned, personally appeared ___Daren Daly___ of
ALL PAVING who is personally known to me or presented
FDL/████████C832-68 as identification, and who is known to me to be the
person described in and who executed the foregoing instrument, and
acknowledged to me that he/she executed said instrument in the capacity and
for the purpose therein expressed.

Signature of Notary:

Printed Name of Notary:
(N___)
CHRISTIANA FELIX
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF154448
Expires 9/30/2018

Patrick Daly
8919 NW 20th Manor; Coral Springs, FL 33071
███████9502

STATE OF FLORIDA

BEFORE ME, the undersigned, personally appeared ___Patrick Daly___ of
ALL PAVING who is personally known to me or presented ___FL Drivers___
███████2800 as identification, and who is known to me to be the
person described in and who executed the foregoing instrument, and
acknowledged to me that he/she executed said instrument in the capacity and
for the purpose therein expressed.

Signature of Notary:

Printed Name of Notary:
(NOT___)
CHRISTIANA FELIX
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF154448
Expires 9/30/2018

3

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

Elizabeth Daly

8919 NW 20th Manor; Coral Springs, FL 33071

██████6059

STATE OF FLORIDA

BEFORE ME, the undersigned, personally appeared _Elizabeth Daly_ of ALL PAVING who is personally known to me or presented FL DRIVERS LIC ██████████8660 as identification, and who is known to me to be the person described in and who executed the foregoing instrument, and acknowledged to me that he/she executed said instrument in the capacity and for the purpose therein expressed.

Signature of Notary:

Printed Name of Notary: _Christiana Felix_

CHRISTIANA FELIX
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF154448
Expires 9/30/2018

# EXHIBIT "E"

# Electronic Articles of Incorporation
## For

ALL PAVING, INC.

P13000077541
FILED
**September 19, 2013**
**Sec. Of State**
jbryan

The undersigned incorporator, for the purpose of forming a Florida profit corporation, hereby adopts the following Articles of Incorporation:

## Article I

The name of the corporation is:

ALL PAVING, INC.

## Article II

The principal place of business address:

8439 NW 20TH PLACE
CORAL SPRINGS, FL.   33071

The mailing address of the corporation is:

8439 NW 20TH PLACE
CORAL SPRINGS, FL.   33071

## Article III

The purpose for which this corporation is organized is:

ANY AND ALL LAWFUL BUSINESS.

## Article IV

The number of shares the corporation is authorized to issue is:

100

## Article V

The name and Florida street address of the registered agent is:

DAREN C DALY
8439 NW 20TH PLACE
CORAL SPRINGS, FL.   33071

I certify that I am familiar with and accept the responsibilities of registered agent.

Registered Agent Signature:   DAREN DALY

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

P13000077541
FILED
September 19, 2013
Sec. Of State
jbryan

## Article VI

The name and address of the incorporator is:

DAREN DALY
8439 NW 20TH PLACE

CORAL SPRINGS, FL 33071

Electronic Signature of Incorporator:   DAREN DALY

I am the incorporator submitting these Articles of Incorporation and affirm that the facts stated herein are true.  I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S.  I understand the requirement to file an annual report between January 1st and May 1st in the calendar year following formation of this corporation and every year thereafter to maintain "active" status.

## Article VII

The initial officer(s) and/or director(s) of the corporation is/are:

Title:  P
JAMIE A SCHINDLER
8439 NW 20TH PLACE
CORAL SPRINGS, FL.  33071

Title:  VP
DAREN  DALY
8439 NW 20TH PLACE
CORAL SPRINGS, FL.  33071

Title:  VP
PATRICK  DALY
8919 NW 20TH MANOR
CORAL SPRINGS, FL.  33071

## Article VIII

The effective date for this corporation shall be:

09/19/2013

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

# EXHIBIT "F"

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

## All Paving Corporate Information

| List Name | Information to Fill Out |
|---|---|
| Firm Name | All Paving, Inc. |
| Business Organization | Corporation |
| Business Address | 8439 NW 20th Place, Coral Springs, FL 33071 |
| County | Broward |
| Phone | [redacted]-2053 |
| Fax | [redacted]-1380 |
| Type of Business | Construction Contractual Referrals |
| Date of Business Incorp. | 9/19/2013 |
| Federal Tax #/ EIN Number | [redacted]4275 |
| Corporation Papers State | Florida |
| Email information | i[redacted]@all-paving.com |
| Website | www.all-paving.com |
| Principal Name | Jamie Schindler |
| Physical Residential Address | 8439 NW 20th Pl., Coral Springs, FL 33071 |
| Jamie's DOB | 11/1/1986 |
| Patrick's Contractor License # | CC # 12-3B-17856-X |
| Patrick's Date of Birth | 7/11/1966 |
| Jamie's Social Security ### | [redacted] |
| DUNS Number | |
| NAICS Designation | 237310, 238990 |
| SBA CCR Listed | Yes |
| | |
| System for Award Management (SAM) Username | All Paving |
| SAM email | Daren@allpavingandsealcoating.com |
| SAM Passord | [redacted] |
| CAGE Code | |
| 8 (A) Certification Number | |
| 8 (a) Expiration Date | |
| SDB Certification Number | |
| SDB Expiration Date | |
| Woman Own Enterprise Cert. Number | |
| Certification Type | |
| Certifying Agency | |
| Expiration Date | |
| Owner 1 | Jamie - 80% |
| Owner 2 | Daren - 10% |
| Owner 3 | Patrick - 10% |
| Legal Structure | Corporation |
| Business Type | Service Provider |
| Geographical Sesrvice Area | Local, Regional, and National |
| State registred to collect tax | Florida |
| Year Business established | 2013 |
| Number of Employees | 3 |
| Commodity | Construction Contractual Referrals |
| Business specialty | All Paving is service company focused on connecting businesses with third-party contractors to ease the bidding and subcontracting process. Specifically, we handle bidding, subcontracting and contract proposals f |
| What does company add? | Our company can reduce expenses and streamline the bidding and subcontracting process for all parking lot, curbing, ADA Compliance and paving issues by structuring unique, individualized property audits with a |
| Describe product to end-user | Our product/service end-user is the target corporation. We provide a service to reduce costs of parking lot issues by streamlining and anticipating the bidding process. |
| Competitive Advantage | Our competitive advantage of leveraging and knowing the paving market by not just asking several companies to submit a bid, and going with the cheapest one. But we know what each project should cost, why sep |
| Annual Sales | 0 |

# EXHIBIT "G"

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

ALL PAVING, INC., a Florida corporation;
ALL PAVING & SEALCOATING LLC, a
Florida limited liability company; PATRICK
DALY and ELIZABETH DALY,

CASE NO: CACE 17-014794 (03)

      Plaintiffs,

v.

DAREN C. DALY and JAMIE A. SCHINDLER,

      Defendants.

_____/

## NOTICE OF FILING AFFIDAVIT

Defendants, DAREN C. DALY and JAMIE A. SCHNIDLER, by and through their undersigned counsel, hereby gives notice of filing the Affidavit of Daren C. Daly dated December 2, 2019.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by e-mail via the Florida Courts E-Filing Portal pursuant to Fla. R. Jud. Admin. 2.516(b)(1) to the below named person(s) on this 2nd day of December, 2019:

Bruce A. Goodman, Esq.
Bruce A. Goodman, P.A.
*Counsel for Plaintiffs*
5531 N. University Drive, Suite 101
Coral Springs, FL 33067
Phone (954) 919-6000
Facsimile (754) 222-5122
E-mail(s):    bruce@bgoodmanlaw.com
            melissa@bgoodmanlaw.com

Jeffrey E. Streitfeld
Special Magistrate
101 NE 3rd Avenue, Suite 1500
Fort Lauderdale, FL 33301
Email(s):    jstreitfeldlaw@gmail.com

THE SOTO LAW GROUP
*Attorneys for Defendants*
Coastal Tower, Suite 400
2400 East Commercial Blvd.
Fort Lauderdale, FL  33308
Phone: (954) 567-1776
Facsimile: (954) 567-1778
Primary: john@sotolawgroup.com
Secondary: rebecca@sotolawgroup.com
Secondary: jkelly@businesslitigation.com

By: /s/ *John P. Kelly*
       JOHN P. KELLY
       Florida Bar No. 284289

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

ALL PAVING, INC., a Florida corporation;
ALL PAVING & SEALCOATING LLC, a
Florida limited liability company; PATRICK
DALY and ELIZABETH DALY,

CASE NO: CACE 17-014794 (03)

      Plaintiffs,

v.

DAREN C. DALY and JAMIE A. SCHINDLER,

      Defendants.

_____/

## AFFIDAVIT OF DAREN DALY

I, Daren Daly, having been duly sworn, hereby deposes and states on personal knowledge as

follows:

1. This affidavit encapsulates my prior deposition testimony and the admissions by the Daly Plaintiffs in this litigation. It is being filed in rebuttal to the affidavits filed by the Plaintiffs on or about November 19, 2019.

2. I am the owner and in sole control of All Paving, Inc.

3. I am the sole incorporator of All Paving, Inc. on September 19, 2013, as confirmed by the records of the Florida Secretary of State. Plaintiffs admit this.

4. Upon my incorporation of All Paving Inc., I obtained a federal tax identification number with the IRS.

5. I incorporated the corporation with the intention to provide Jamie Schindler with 80% of the All Paving, Inc. corporate shares, Patrick Daly with 10% of the All Paving, Inc. corporate shares and myself with 10% of the All Paving, Inc. corporate shares. I created an excel spreadsheet at the time showing my intent with this distribution of corporate share ownership. The metadata on the excel sheet cites this.

6. In fall 2015 All Paving, Inc. commenced business operations in the marketplace with the understanding that I was the CEO and COO in control of all business conducted by All Paving, Inc. and with the mission to develop an autonomous company with a different business plan than All Paving & Sealcoating, LLC. Both companies would benefit from a

sharing of expenses.  Since inception I have been in control of All Paving Inc running the projects, sales, taxes, operations, marketing, planning, legal items and hiring/firing.

7.  All Paving, Inc., under my control, and All Paving & Sealcoating, LLC, under Patrick Daly's control, had shared business operations between fall 2015 and April 2017 whereby each company shared marketing, payroll, and equipment, among other business expenses. The expenses were reconciled by Steven Berkman a/k/a Steven Joseph (Plaintiffs' office manager and bookkeeper who continued in the employ of 3-D Paving after May 2017).

8.  This arrangement benefited both companies. In fact, as reflected on the financials of both companies, each company had substantial growth.

9.  All revenue ever earned by All Paving, Inc. has been reported on federal income tax returns filed by All Paving, Inc., under my signature and with the federal tax identification number I obtained in 2013.

10. Elizabeth Daly agreed in 2015 and 2016 to provide equipment financing guaranties to All Paving, Inc.  As Steve Berkman a/k/a Steven Joseph has deposed, this was done to enhance Elizabeth Daly and All Paving & Sealcoating, LLC's efforts to obtain woman-owned disadvantaged business certification for All Paving & Sealcoating, LLC. All Paving, Inc. never applied for disadvantaged business certification. Use of this guaranteed equipment was shared by both companies. Following the spring 2017 divorce between All Paving, Inc. and All Paving & Sealcoating, LLC n/k/a 3-D Paving, instituted by the Daly Plaintiffs, neither Patrick Daly nor Elizabeth Daly has any liability on personal guaranties or any other liability to third parties vendors or financial institutions relating to All Paving, Inc.

11. An operating account was opened at Bank United for All Paving, Inc. in September 2015 with me Elizabeth Daly and Patrick Daly as co-signatures on the account. This was requested by the Daly Plaintiffs because they would be on equipment guaranties.  It is factually incorrect for Elizabeth Daly to state that all Bank United documents were prepared and executed simultaneously in the presence of each other. Rather, I was presented documents to sign that had been previously prepared. I did not see or agree to any bank-created "beneficial ownership" documents purporting to acknowledge that Elizabeth Daly was a 75% owner of All Paving, Inc. pursuant to a prior Board of Directors resolution—which of course never occurred and does not exist. In fact, I had left the bank only seeing the pages I had to sign because the paperwork was going to take a while. I was not given a copy of the beneficial ownership certification, nor did I sign a beneficial ownership certification.

12. I was always the principal contact with Bank United on the All Paving, Inc. Bank United bank account, as acknowledged by Bank United in recent depositions. I alone ultimately opened other All Paving, Inc. bank accounts at this bank and other banks.

13. As admitted in her deposition, Elizabeth Daly was never transferred any stock in All Paving, Inc. by either Jamie Schindler or me at any time. Likewise, Patrick Daly was never

transferred any stock in All Paving, Inc. in addition to the 10% acquired at the time of incorporation.

14. Jaimie Schindler relinquished her All Paving, Inc. stock to me in January 2016 when she became employed by the federal government. That was later memorialized in a written assignment.

15. In their August and September 2019 depositions, Elizabeth Daly and Patrick Daly have deposed that in September or October 2015 Patrick Daly "gave" me 15% of All Paving, Inc. stock and Elizabeth Daly 75% of the All Paving, Inc. stock (after having presumably somehow magically previously obtained 100% of the All Paving, Inc. stock from me and Jamie Schindler.) This position is inconsistent with their present claims, illogical and belied by the facts. I could not give any such stock to Patrick Daly because I only had a 10% interest. Likewise, I could not give Jamie Schindler's stock to Patrick Daly. There is absolutely no evidence whatsoever reflecting the transfer and delivery of All Paving, Inc. stock to either  Patrick Daly or Elizabeth Daly at any time. Rather, this is a figment of their imaginations.

16. Between late 2016 and May 22, 2017, Patrick Daly voluntarily instituted  along with All Paving and Sealcoating LLC a covertly-planned divorce from All Paving, Inc.  Since this planned divorce I have continued to run All Paving, Inc. as I did before handling the hiring and firing of employees, supervision of employees, management, customer relations, and business development. I personally procured well over 90% of the business for All Paving, Inc. since day one.

17. Elizabeth Daly never owned or controlled any paving business. She had no training or experience in the paving business, as determined by the federal government in 2016. At all pertinent times she was a full-time salaried worker with a home health care company and an occasional voluntary clerical worker for All Paving & Sealcoating, LLC. The All Paving and Sealcoating LLC partnership agreement shows the true owners of All Paving and Sealcoating LLC—Patrick Daly and Robert Holland.

18. In late 2016 the Daly Plaintiffs informed me that they wanted  to place Elizabeth Daly on the payroll of All Paving, Inc. for "workers' compensation" purposes. I objected, which led to the beginning of the end of the shared business operations between All Paving, Inc. and All Paving & Sealcoating, LLC. Elizabeth Daly threatened to shut down the All Paving, Inc. bank account at Bank United; I took remedial action to protect All Paving, Inc.

19. Unbeknownst to me, and as admitted by the Plaintiffs  and Steven Berkman a/k/a Steven Joseph in their depositions, in March 2017 Patrick Daly, Elizabeth Daly, Steven Joseph and Keith Daly worked together to obtain a domain name, 3-D Paving.com with the intent to divorce their operations from All Paving, Inc.

20. On May 22, 2019 the Plaintiffs filed a fictitious name registration for "3-D Paving and Sealcoating" with the Florida Secretary of State, thus abandoning their right to use "All

3

Paving" in the marketplace, which previously was a fictitious name used by both my company, All Paving, Inc., and by All Paving & Sealcoating, LLC, as part of the shared business operations.

21. On April 14, 2017 I entered into an agreement with the Daly plaintiffs at Bank United with respect to a reconciliation between the two companies. Pursuant to the reconciliation between the companies, on April 14, 2017 $313,659.35 was wired to All Paving & Sealcoating, LLC and $59,800.00 to Patrick Daly. A six-figure balance in the Bank United accounts was held without restriction by All Paving, Inc. under my exclusive control. Since this date to current I have been under exclusive control of all All Paving Inc funds and payments.

22. Unbeknownst to me, Patrick Daly had opened an account at PNC Bank on or about April 7, 2017 in the name of All Paving, Inc. and proceeded over the next several months to divert over $300,000.00 of customer revenue that would otherwise have been due All Paving, Inc. during the shared business operations, to All Paving & Sealcoating or himself. None of these monies that were paid by customers where All Paving, Inc. had performed the work in any way inured to the benefit of All Paving, Inc. Rather the payments were diverted to 3-D Paving and Patrick Daly. I did not agree to this diversion of funds done without my knowledge. I eventually had the fraudulent account shut down by PNC Bank, but only after the theft had occurred. I have demanded a repayment of these funds to All Paving, Inc., which was refused. A lawsuit was filed in Broward County to recover these funds.

23. Patrick Daly was never a licensed qualifier for All Paving, Inc. During the roughly 18-month shared business operations period, All Paving, Inc. with Patrick Daly's permission would use Patrick Daly's All Paving & Sealcoating license or another contractor's license to qualify jobs—a common practice in the industry. Patrick Daly received –as agreed-- $58,300.00 as part of the Bank United final reconciliation to compensate him for use of his All Paving & Sealcoating, LLC license. However, the only person who has ever been a licensed qualifier for All Paving, Inc. is me.

24. The Daly Plaintiffs without prior notice to me moved out of the share offices of All Paving & Sealcoating, LLC and All Paving, Inc. on or about May 22, 2017. They took files, equipment and employees that they deemed theirs to launch 3-D Paving. That was also the day that they acquired the fictitious name "3-D Paving" and by law abandoned their right to use "All Paving" in their business operations. The Daly Plaintiffs proceeded to disseminate mass mailings and customer correspondence informing the marketplace that they had divorced themselves from my company and were launching 3-D Paving.

25. The obvious scheme by the Daly Plaintiffs was a conspiracy to cause All Paving, Inc to fail.

26. Having failed with their spiteful scheme, in July 2017 the Daly Plaintiffs concocted phony documents purporting to establish that they were directors and majority shareholders of

All Paving, Inc. solely in order to also launch this frivolous lawsuit. These documents are completely *ultra vires* under the Florida Business Corporation Act because only I as the incorporator could complete the organization of the corporation pursuant to Fla. Stat. §607.0205(1)(b).

27. In fact, the Daly Plaintiffs have admitted in their 2019 depositions that they are not directors.

28. Pursuant to Fla. Stat. §607.0205(1)(b), on July 3, 2019 I completed the corporate organization, appointed a director, issued stock and a corporate book that properly confirmed, adopted and ratified the valid corporate action of All Paving, Inc. retroactive to the date of incorporation.

29. Neither Patrick Daly nor Elizabeth Daly has had any involvement whatsoever in All Paving, Inc. since at least May 22, 2017; rather their efforts have been devoted to competing with All Paving, Inc. in the marketplace as 3-D Paving, including business disparagement and theft of funds through a diversion scheme. Meanwhile, I continue in full and unfettered control and ownership of All Paving, Inc.

30. Elizabeth Daly was never in control of, or running in any manner All Paving and Sealcoating LLC, let alone All Paving Inc.

31. I obtained the domain name All Paving.com from a third party in February 2016. I asked Patrick Daly whether he was interested in purchasing the domain name for All Paving & Sealcoating , LLC, and he declined. I purchased for my own account and not as an agent or nominee for All Paving & Sealcoating, LLC. The domain name was in a Go Daddy account previously obtained by Patrick Daly, who had allowed me to store numerous other domain names I had obtained over the years.

32. I subsequently agreed to allow the joint use of the domain name by both companies as part of the joint marketing operations. At no time did I transfer the domain name to Patrick Daly or All Paving & Sealcoating, LLC. As part of the business divorce that occurred in spring 2017, it was understood that only All Paving, Inc. would be using the domain name in its business operations. In fact, 3-D Paving f/k/a All Paving & Sealcoating, LLC had acquired a domain name, 3-D Paving, for its exclusive use.

33. In March 2017 it was agreed as part of the business divorce that All Paving & Sealcoating, LLC's use of All Paving.com would be phased out. On or March 15, 2017, I received notice from Go Daddy that the allpaving.com domain name was moved out of Go Daddy account. As a result, the company emails are shut down.

34. On March 16, 2017 Patrick Daly stated that it was a mistake and that they intended to take All Paving & Sealcoating.com out of the Go Daddy account and not All Paving.com as they knew that I owned the All Paving.com domain name. Patrick Daly then stated that now that they did get the All Paving.com domain name, he was using it as "leverage"

to get me to follow through on getting the All Paving, Inc. equipment refinanced and their liability as guarantors removed.

35. I did not fraudulently alter any documents relating to All Paving.com. In spring 2017 I discovered that the unexecuted domain name purchase agreement created by the seller had incorrectly listed All Paving & Sealcoating, LLC rather than All Paving, Inc., I corrected the error in the documentation sent to Go Daddy. I also at Go Daddy's request send federal tax information pertaining to All Paving, Inc. to Go Daddy. Go Daddy made its own internal decision as to ownership and control of the allpaving.com domain name. On or about March 24, 2017, Go Daddy returned the domain name back to my Go Daddy account and the emails accounts were restored.

36. On or about March 28, 2017, Patrick told the Defendants in a phone call that he wanted nothing to do with me or All Paving, Inc. going forward. This was done after a decision was made by the Plaintiffs to launch 3-D Paving without my knowledge. Patrick Daly wanted me to write him reimbursement checks to All Paving & Sealcoating, LLC for 2016 and beginning of 2017 and compensation checks to him for 2016 and remove any liability on equipment financing for him and Elizabeth Daly. In return, the Plaintiffs would turn over to Daren all the checks written to All Paving, Inc. customers and relinquishment any claim to All Paving, Inc.

37. On June 6, 2017, in a conference call Patrick Daly stated that he was reneging on the April 14, 2017 agreement and was instead holding All Paving, Inc. hostage by holding over $250,000.00 in a PNC bank account as "collateral" for Daren to get All Paving, Inc. equipment refinanced.

Further Affiant sayeth naught.

_____
Daren Daly

SUBSCRIBED AND SWORN TO
before me on this ____2____ day of December 2019

_____
Notary Public

My commission expires: 6/21/2021

Mary Jo Villalobos
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG117433
Expires 6/21/2021

6

# EXHIBIT "H"

## ASSIGNMENT SEPARATE FROM STOCK CERTIFICATE

The undersigned, Jamie A. Schindler, for and in consideration of the sum of Ten Dollars and 00/100 ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby sell, assign and transfer unto Daren C. Daly, all shares of the common stock of All Paving, Inc., a Florida corporation (hereinafter referred to as the "Corporation"), constituting 80% of its outstanding capital shares, standing in her name, and hereby directs the Corporation to transfer said stock on the books of the Corporation.

This transfer constitutes a complete renouncement of any and all interest which the undersigned has in the Corporation.

The undersigned hereby covenants that she is the lawful owner of the stock interest being transferred hereby, and the interest being assigned hereby is free from all liens and encumbrances, and that she has good right to transfer the same, and she will warrant and defend the same against the lawful claims and demands of all third persons whomsoever.

This action taken as of the 15th day of January, 2016.

_____
Jamie A. Schindler

PLAINTIFF'S DD
EXHIBIT NO.
FOR IDENTIFICATION
PENGAD 800-631-6989
DATE: 6-10-18  RPTR SG

# EXHIBIT "I"



Tim Maxwell <tim@allpaving.com>

## All Paving & Sealcoating is now 3-D!
1 message

3-D Paving & Sealcoating <info@3-dpaving.com>                    Mon, Jun 5, 2017 at 3:25 PM
Reply-To: 3-D Paving & Sealcoating <info@3-dpaving.com>
To: Tim@allpaving.com



## *Same Great Service, Brand New Look!*



### PAVING & SEALCOATING
### OUR WORK STANDS OUT

## For All Your Parking Lot and Roadway Needs!

**All Paving & Sealcoating, LLC** has re-branded itself as **3-D Paving & Sealcoating!** We're still providing the same great service you've come to expect, just under a brand new banner!

Our Phone Number (**1-855-735 ROAD [7623]**), Tax-ID, and License number haven't changed, just our name and logo. Any existing signed contract will still be performed, and any proposal sent in the last 90 days will continue to be honored.

For questions about your *current or new project*, contact your estimator:

Bob Holland (Bob@3-DPaving.com)

Keith Daly (Keith@3-DPaving.com

7/25/2017                    All Paving Mail - All Paving & Sealcoating is now BO!

Case 22-15694-SMC    Doc 69    Filed 10/24/22    Page 113 of 127

Steven Joseph (Steven@3-DPaving.com)
For questions about your **permit**, you can contact:
Silvana McLean (Silvana@3-DPaving.com)
And for questions about **billing**, you can contact:
Linda K. Thorsen (Linda@3-DPaving.com)


We look forward to your continued business and can't wait to hear from you again!



3-D Paving & Sealcoat

Add us to your address book

# EXHIBIT "J"

‹   **Dad**   📞  🔍  ⋮
+19547039502

(1) This drags on
for another 2 years
which it will, you
miss out on these
guys

───────────────

**View all**                    ›

4:29 PM

Saturday, November 28, 2020

See text directly
above ^^^^ from two
years ago. Ditto it
again.

5:41 PM

Friday, March 19, 2021

Jamie and her
family will be
devastated when
they see those
texts and pictures...

12:21 PM

NOT AN OFFICIAL COPY

# EXHIBIT "K"

## Certified Copy of Resolutions/
## Authorizations For Accounts And Loans



(Corporations, Partnerships, Unincorporated Associations, Sole Proprietorships & Other Organizations)

PNC Bank National Association ("Bank")

| Customer Name | | |
|---|---|---|
| ALL PAVING INC DBA<br>ALL PAVING | ("Customer") | Taxpayer I.D. Number (TIN)<br>▉▉4275 |

Address
8919 NW 20TH MNR
CORAL SPRINGS FL 330716181

Type of Organization (Please Check one)          Resolution for ALL PAVING INC

☑ **Corporation.** The Customer is a corporation, and the undersigned Secretary of the Customer certifies that the following is a true copy of resolutions adopted by the Board of Directors of the Customer pursuant to a notice and the articles of incorporation and regulations or by-laws of the Customer and at which a quorum was present, or adopted without a meeting the written approval of all of the directors of the Customer.

☐ **Partnership.** The Customer is a partnership, and the undersigned, a general partner of such partnership, certifies that the following is a resolution adopted by all of the general partners of such partnership.

☐ **Unincorporated Association.** The Customer is an unincorporated association, and the undersigned Secretary of the Customer certifies that the following is a true copy of resolutions adopted by the Members, Trustees, Executive Committee, Board of Directors, etc. of the Customer pursuant to, and in compliance with, its organizational documents.

☐ **Sole Proprietorship.** The Customer is a sole proprietorship owned by doing business under the Customer's name specified above, and the undersigned hereby adopts the following resolutions and agrees that such resolutions are fully binding on such sole proprietor personally and upon the personal assets and property of such sole proprietor.

☐ **Other.** Please complete the Unincorporated Associations & Other Organizations section on the reverse side.

**Resolutions:**

1. **Depository.** Resolved that the Bank is designated a depository of the Customer, and the Bank is authorized to accept for deposit to the credit of any account of the Customer any monies, checks, drafts, notes, acceptances or other evidences of indebtedness delivered to the Bank for deposit, whether or not endorsed, and any endorsement thereon by whomsoever affixed whether by stamp, mechanical or other signature shall be deemed the endorsement of the Customer.

2. **Withdrawals and Transfers.** Resolved that the Bank is authorized to make payments from the account(s) of Customer according to any check, draft, bill of exchange, acceptance or other written instrument or direction signed by any one of the following individuals, officers or designated agents, and that such designated individuals may also otherwise transfer, or enter into agreements with Bank concerning the transfer, of funds from Customer's account(s), whether by telephone, telegraph, computer or any other manner:

VICE PRESIDENT
_____  _____  _____

_____  _____  _____

The Bank may accept, pay and/or apply any check, draft, charge, instrument or other order for the payment of money drawn on such accounts, or payable to the Customer that has been endorsed by any of the authorized signatories listed, or perform any transfer of funds, and any or all of such actions may be done:

    (i)    without regard to the application of the same

    (ii)   without regard to the size of the same

    (iii)  without regard as to the payee thereof or whether sums are paid or payable in cash to or by credit to any of the persons listed above or on account of any of the persons listed above, or any other person or entity, and regardless of whether such funds are used in whole or in part for the personal account or benefit, or in payment of the individual obligations of, any individual obligations of any such persons to the Bank

    (iv)  without regard to the disposition or purpose of same

    (v)   as allowed by applicable law.

In addition but not by way of limitation, the Bank may take checks, drafts or other items payable to "cash", the Bank or the Customer, and pay the sums represented by such items in cash to any person presenting such items or credit such items to the account or obligations of any person presenting such items or any other person or entity as directed by any such person.

3. **Products and Services.** Resolved that any of the persons listed in Section 2 above are authorized to enter into contracts and agreements, written or verbal, for any products or services now or in the future offered by the Bank, including but not limited to (i) cash management services, (ii) purchases or sales of foreign exchange, securities or other financial products, (iii) computer/internet-based products and services, (iv) wire transfer of funds from or to the accounts of the Customer at the Bank, and (v) ACH transactions, and the Bank may charge any accounts of the Customer at the Bank for such products or services.

4. **Loans and Extensions of Credit.** Resolved that any *one* of the following:

VICE PRESIDENT

_____    _____    _____

_____    _____    _____

are hereby authorized (i) to effect loans, advances and renewals at any time for the Customer from the Bank; (ii) to sign and deliver any notes (with or without warrant of attorney to confess judgment) and evidences of indebtedness of the Customer; (iii) to request the Bank to issue letters of credit and to sign and deliver to the bank any agreements on behalf of the Customer to reimburse the Bank for all payments made and expenses incurred by it under such letters of credit and drafts drawn pursuant thereto; (iv) to sign and deliver any instruments or documents on behalf of the Customer guaranteeing, endorsing or securing the payment of any debts or obligations of any person, form or corporation to the Bank; (v) to pledge, assign, transfer, mortgage, grant a security interest in or otherwise hypothecate to the Bank any stock, securities, commercial paper, warehouse receipts and other documents of title, bills, accounts receivable, contract rights, inventory, equipment, real property, and any other investments or property of the Customer, real or personal, tangible or intangible as security for the payment of any and all loans, advances, indebtedness and other liabilities of the Customer to the Bank of every kind and description, direct or indirect, absolute and contingent, joint or several, whether as drawer, maker, endorsee, guarantor, surety or otherwise, and to execute on behalf of the Customer mortgages, pledges, security agreements, financing statements and other instruments or documents in connection therewith; and (vi) to sell or discount with the Bank any commercial paper, bills and other instruments and evidence of indebtedness, warehouse receipts and other documents of title, accounts, accounts receivable, contract rights, and other assets, tangible and intangible, at any time held by the Customer and for such purpose to endorse, assign, transfer and deliver the same to the Bank.

5. **Revolving Credits.** Resolved that in connection with any extension of credit obtained by any of the persons authorized in Section 4 above, that permit the Customer to effect multiple advances or draws under such credit, any of the persons listed in Sections 4 (Loans and Extensions of Credit) and 2 (Withdrawals and Endorsements) shall be authorized to make such advances or draws.

6. **Telephonic and Facsimile Requests.** Resolved that the Bank is authorized to take any action authorized hereunder based upon (i) the telephone request of any person purporting to be a person authorized to act hereunder, (ii) the signature of any person authorized to act hereunder that is delivered to the Bank by facsimile transmission, or (iii) the telex originated by any of such persons, tested in accordance with such testing procedures as may be established between the Customer and the Bank from time to time.

7. **General.** Resolved that a certified copy of these resolutions be delivered to the Bank; that the persons specified herein are vested with authority to act and may designate successor persons to act on behalf of Customer without further authority from the Customer or governing body; and that Bank may rely on the authority given by this resolution until actual receipt by the Bank of a certified copy of a new resolution modifying or revoking the foregoing resolution.

Executed this date of April 7, 2017

**CERTIFICATE**

**Corporations**
I, the undersigned, Secretary of ALL PAVING INC certify that as of this date the officers of this corporation are:

| | | |
|---|---|---|
| Chairman of the Board | _____ | Secretary | _____ |

| | | |
|---|---|---|
| President | _____ | Treasurer | _____ |

| | | |
|---|---|---|
| Vice President | *Patrick Daly* | Asst. Secretary | _____ |

IN WITNESS WHEREOF, I have hereunto subscribed my name on this date of _____

_____
Signature of Secretary

**Partnerships**

| | |
|---|---|
| By: _____ | By: _____ |
| Signature | Signature |

| | |
|---|---|
| Print Name: _____ | Print Name: _____ |
| Partner | Partner |

| | |
|---|---|
| By: _____ | By: _____ |
| Signature | Signature |

| | |
|---|---|
| Print Name: _____ | Print Name: _____ |
| Partner | Partner |

| | |
|---|---|
| By: _____ | By: _____ |
| Signature | Signature |

| | |
|---|---|
| Print Name: _____ | Print Name: _____ |
| Partner | Partner |

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

**Unincorporated Associations & Other Organizations (LLP, LLC, Professional Association, etc.)**

If you selected "Other", indicate the type of Organization:

_____

_____
Signature
Print Name: _____

_____
Signature
Print Name: _____

_____
Signature
Print Name: _____

_____
Signature
Print Name: _____

_____
Signature
Print Name: _____

_____
Signature
Print Name: _____

**Sole Proprietorship (Owner)**

_____
Signature

Print Name: _____

# EXHIBIT "L"

Front



**ALL PAVING INC DBA**
**ALL PAVING**
8919 NW 20TH MNR
CORAL SPRINGS, FL 33071-6161

1007

DATE _7-26-17_

PAY TO THE ORDER OF _All Paving and Sealcoating LLC_     $ _228,576.72_

_Two hundred and Twenty Eight thousand & five hundred Seventy Six_ 00/100 DOLLARS

**PNCBANK**

FOR _Reconciliation 5-5-17 / 6-30-17_

⑂0010007⑂

Back



This is an image/copy of a check you wrote or deposited.
Please refer to your available balance since this item may not be credited to or debited from your account at this time.

# EXHIBIT "M"

## NOTICE OF CIVIL THEFT AND
## DEMAND FOR TREBLE DAMAGES

June 15, 2018

Via Certified Mail Return Receipt Requested
Federal Express

All Paving & Sealcoating LLC
DBA 3-D Paving and Sealcoating
8919 N.W. 20th Manor
Coral Springs, Florida 33071

Patrick Daly
8919 N.W. 20th Manor
Coral Springs, Florida 33071

Elizabeth Daly
8919 N.W. 20th Manor
Coral Springs, Florida 33071

Robert Holland
6304 Walk Circle #10
Boca Raton, Florida 33433

Re:    Civil Theft/Conversion from Patrick Daly, Elizabeth Daly, Robert Holland, and
         All Paving & Sealcoating LLC DBA 3D Paving and Sealcoating

Dear Patrick, Robert, Elizabeth, and All Paving & Sealcoating LLC DBA 3D Paving and
Sealcoating,

It has come to our attention that Patrick Daly ("Patrick"), Robert Holland ("Bob"), and
Elizabeth Daly ("Elizabeth"), individually and/or on behalf of All Paving & Sealcoating LLC
("3-D Paving & Sealcoating"), improperly and impermissibly opened a bank account at PNC
Bank in the name of All Paving Inc. (the "PNC Bank Account"). We further understand that
Patrick, Bob, and Elizabeth, individually and/or on behalf of 3-D Paving & Sealcoating have
misappropriated funds belonging to All Paving Inc. and deposited those misappropriated funds
into the PNC Bank Account as well as 3-D Paving and Sealcoating BB&T Bank Account . The
total of the funds we have become aware of thus far that were taken by Patrick, Bob, Elizabeth,
and 3-D Paving & Sealcoating from All Paving Inc. and converted to their own use with the
intention of permanently depriving All Paving Inc. of their property is approximately Three
Hundred and Twenty-Five Thousand Dollars ($325,000.00). We have been further advised that
these misappropriated and converted funds were used to pay for expenses of Patrick, Elizabeth,
and 3-D Paving & Sealcoating and that the remaining balance of the funds was transferred to 3-D

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

Paving & Sealcoating's bank account at BB&T Bank.

 Pursuant to Fla. Stat. § 772.11, Patrick, Bob, Elizabeth, and 3-D Paving & Sealcoating are hereby notified that they have committed a civil theft of All Paving Inc.'s property, and are liable to All Paving Inc. for treble damages equal to three times the value of the converted property. Accordingly, demand is hereby made upon Patrick, Bob, Elizabeth, and 3-D Paving & Sealcoating to deliver payment to **All Paving Inc.** at **1700 N. Dixie Hwy, Suite #141, Boca Raton, FL 33432** within thirty, (30) days from your receipt of this letter, and for the benefit of **All Paving Inc.** in the amount of **Three Hundred and Twenty-Five Thousand Dollars ($325,000.00)**, which represents the minimum amount 3-D Paving & Sealcoating has deprived All Paving Inc. of its right to possess. Should you fail to make payment as herein demanded, this matter will be referred to our outside counsel to institute legal proceedings for the recovery of treble damages in the amount of Nine Hundred and Seventy-Five Thousand Dollars ($975,000.00), plus interest, costs, and attorney's fees, all as provided by statute and other applicable Florida law.

 I am enclosing a copy of Section 772.11 of the Florida Statutes for your reference and review. I urge you to send immediate payment to me of $325,000.00 no later than 30 days from your receipt of this letter. Please know this letter is being sent with a full reservation of rights to recover additional sums we believe to have been taken by 3-D Paving & Sealcoating from All Paving Inc. as we are still investigating the same.

 **PLEASE GOVERN YOURSELF ACCORDINGLY.**

Sincerely,

**Daren Daly, J.D., M.S**
C.O.O/President and Owner
All Paving Inc.

Encls.

Cc: Glenn Smith (Glenn.Smith@gmlaw.com)

2

# EXHIBIT "N"



# PAVING & SEALCOATING

## OUR WORK STANDS OUT

WWW.3-DPAVING.COM | 1-855-735-ROAD (7623) | 9315 W. SAMPLE RD. CORAL SPRINGS, FL 33065

Dear Mr. Maxwell,

My name is Patrick Daly, and I am the president and license-holder for All Paving & Sealcoating, LLC, DBA 3-D Paving & Sealcoating. I have been in the paving industry in South Florida for over 25 years, and in that time I have earned a reputation for high-quality work and competitive pricing. The loyalty I have garnered from my customers over the years enabled me to start my own company in 2012, and we successfully grew into one of the leaders in the full-service parking lot and roadway maintenance and construction industry.

When we were still operating under the All Paving name, our paving crew handled some overflow work for Ranger Construction, with Ranger providing the asphalt and All Paving providing the labor and equipment. These projects were very successful collaborations between Ranger and All Paving and included HOA work as well as DOT projects. Additionally, our concrete crew self-performed on a few projects for Ranger's residential division, again with great success.

All Paving recently split into two companies, All Paving Inc and All Paving & Sealcoating, LLC. All Paving & Sealcoating, LLC is doing business as 3-D Paving & Sealcoating to avoid any confusion. Except for the name and logo, nothing has changed at 3-D Paving, especially the quality of work. Our entire paving crew (including foreman Ruben Montenegro) as well as our entire concrete crew has stayed on with me, and we would love to continue working with Ranger Construction under our new banner. 3-D Paving & Sealcoating is also a WBENC-certified WBE, and a Broward County-certified SBE and CBE which can aid in the bidding of some earmarked diversity projects.

It is my sincere hope that Ranger Construction and 3-D Paving & Sealcoating can have a mutually beneficial relationship coexisting as allies and not competitors. I look forward to discussing any potential opportunities with you in the future, and am happy to answer any questions you may have or address any concerns. My cell number is 954-703-9502 and my e-mail address is Patrick@3-DPaving.com. Thank you for your time and consideration on this matter.

Sincerely,

Patrick Daly, President

NOT AN OFFICIAL COPY. PHOTOCOPY OF FRESH LIGHT OF AN ORIGINAL COPY




WWW.3-DPAVING.COM
INFO@3-DPAVING.COM



