## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

In re:                                          Case No.: 22-15694-SMG

DAREN C. DALY,
                                                Chapter 11 (Sub V)

      Debtor

_____/

### DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 364 AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION UNSECURED FINANCING AND GRANTING RELATED RELIEF

DAREN C. DALY, as the debtor and debtor-in-possession in the above-captioned bankruptcy case (the "Debtor"), files this *Motion for Entry of An Order Pursuant To 11 U.S.C. §364 Authorizing The Debtor To Obtain Post-petition Unsecured Financing And Granting Related Relief*, and in support hereof states as follows:

### JURISDICTION

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

**A.**    **General Background**

4.      On July 26, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy case (this "Case"). The Debtor is authorized to continue operating its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      The Debtor is an individual, who is the owner of All Paving, Inc. and Resurface Industries, LLC. Through these entities the Debtor provides roadway solutions, including paving, concrete overlay, sealcoating and related services to municipalities and commercial customers.  The Debtor operates in multiple counties in Florida with offices at 23123 N. State Road 7, Suite 250, Boca Raton, FL 33428.

6.      The Debtor is operating his business and managing his affairs as a debtor-in-possession pursuant to section 1184 of the Bankruptcy Code.

7.      The Debtor's businesses are dependent on his paving license, skill, bonding, relationships, and personal services.

8.      On July 27, 2022, the United States Trustee filed notice of the appointment Tarek Kiem to serve as Subchapter V Trustee in this case [ECF No. 11].

9.      On October 24, 2022, the Debtor filed his Subchapter 11 Plan of Reorganization (the "Plan") [ECF No. 70].

10.      In the Plan, the Debtor proposes to his disposable income resulting from his salary from All Paving, Inc. and a loan from Resurface Industries, LLC to fund a nearly 100% distribution on allowed claims.

11.      The Debtor requires access to cash beyond his available salary-based income in order to advance the Plan, including to pay necessary administrative expenses.

**RELIEF REQUESTED**

12.      By this motion, the Debtor seeks entry of an order—

A.  Authorizing the Debtor to (i) obtain post-petition, unsecured debtor-in-possession financing in an aggregate principal amount of up to $100,000 (the "DIP Facility") pursuant to the terms and conditions of the Interim Order and the DIP Credit Agreement (as defined below) by and between the Debtor, as borrower, and Resurface Industries, LLC (the "Lender"), and (ii) incur the obligations under the DIP Credit Agreement (the "DIP Obligations") and any related agreements, documents, certificates and

instruments delivered or executed from time to time in connection therewith, as amended, restated, or otherwise modified from time to time in accordance with the terms thereof and hereof, collectively, the "DIP Documents");

B.   Authorizing the Debtor to execute and enter into the DIP Documents and to perform their respective obligations thereunder and such other and further acts as may be required in connection with the DIP Documents as such amounts become due and payable;

C.   Authorizing the Debtor to give administrative priority status to the amounts borrowed in accordance with §§ 503(a) and 507(a)(2) of the Bankruptcy Code.

**<u>BASIS FOR RELIEF</u>**

**The Proposed Financing**

13.     The Debtor derives a relatively substantial salary from his employment at All Paving, Inc., the disposable income from which he intends to maximize for the benefit of his creditors. Unfortunately, the Debtor's salary alone is insufficient to fund the Plan.

14.     To fund his obligations in this reorganization, Resurfacing Industries, LLC has agreed to extend financing to the Debtor on an unsecured basis on terms that are believed to be much more competitive than any financing available in the traditional markets. This financing would be interest-free, not subject to any fees or charges, and accessible to the Debtor immediately. Resurfacing Industries, LLC's rights in connection with this financing will be protected by an administrative claim.

15.     A form of agreement memorializing these terms is attached hereto as **Exhibit A** (the "DIP Credit Agreement").

16.     Given the amount in question and the favorable terms offered by Resurfacing Industries, LLC, the Debtor is confident that he would be unable to match, much less beat, such terms through financing from an outside lender. It is axiomatic that institutional lenders would seek a reasonable rate of interest as compensation for the value and risk of a loan, and most lenders

3

would be expected to require the Debtor to pay fees and other charges. Because the proposed financing by Resurfacing Industries, LLC does not require the payment of fees or charges, the Debtor has not attempted to shop the loan around.

17.    Consistent with the disclosure requirements of Fed. R. Bankr. P. 4001 and Local Rule 4001-3, the following table summarizes the significant terms of the DIP Facility and the Interim Order:

### Summary of Relevant Provisions

| Material Terms | DIP Facility |
|---|---|
| • Borrower | Daren C. Daly |
| • Lender | Resurface Industries, LLC |
| • Purpose and Limitation of Use of Proceeds | Proceeds of the loans shall be used to fund the Debtor's post-petition obligations in accordance with the budget attached to the proposed order as Exhibit B. |
| • Security | None |
| • Interest Rate | None |
| • Maturity | Unless otherwise agreed by Resurface Industries, LLC, the DIP Financing shall be repayable upon the earliest of (a) 5 days after a written demand for repayment is filed by Resurface Industries, LLC with the Court and served upon the Debtor and the Debtor's attorney, (b) entry of an order dismissing this case or converting this case to a case under Chapter 7, and (c) the occurrence of the effective date under a confirmed plan in this case. |
| • Fees | None |
| • Conditions Precedent to Lending | None |
| • Priority of Claims | The obligations under the DIP Facility will constitute administrative claims, pari passu with other administrative claims in |

| | |
|---|---|
| | this case except voluntarily subordinated to any claims of the Debtor's professionals. |
| • Provisions Granting Cross collateralizing | None |
| • Provisions or findings of fact that bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and the creditors' committee, if formed, at least sixty (60) days from the date of its formation to investigate such matters | The proposed relief includes a provision waiving claims against Resurface Industries, LLC except for actions brought within 45 days after entry of the Final Order, along with certain protections to Resurface Industries, LLC in the event any such actions may be brought. |
| • Provisions that seek to waive, without notice, whatever rights the estate may have under 11 U.S.C. § 506(c) | None |
| • Provisions that immediately grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548 and 549 | None |
| • Provisions that deem prepetition secured debt to be post-petition debt or that use post-petition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in 11 U.S.C. § 552(b) | None |
| • Provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the debtor with respect to a professional fee carve-out | None |
| • Provisions that prime any secured lien without the consent of that lienor. | None |
| • Provisions that seek to affect the Court's power to consider the | None |

| equities of the case under 11 U.S.C. § 552(b)(1) | |
| --- | --- |

18.     Given the current state of the Debtor's financial affairs, the Debtor does not believe that he could possibly obtain financing on better terms.

19.     The Debtor qualifies for relief under § 364 of the Bankruptcy Code, which provides, in relevant part—

> (b) The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

11 U.S.C. § 364(b).

**A.    Alternative Financing Is Not Available to the Debtor.**

20.      While the Debtor has not shopped for any other loan, the Debtor respectfully submits that he could not possibly obtain financing on terms more favorable than the DIP Facility. The economic reality is that no potential lender would loan money to the Debtor to pay administrative claims without requiring security, interest, and fees. The Debtor does not believe that he has assets that would provide the security and liquidity to a third-party lender in order to obtain the financing provided in the DIP Facility. Most lenders use fees and charges to generate their profit, and this loan has none of those. Furthermore, in light of the economics of this case, most lenders require a more substantial borrowing than the amounts the Debtor is seeking in financing, in order for lenders to justify the risk and value of advances to be made. Accordingly, the Debtor respectfully submits that the DIP Facility is the best available post-petition financing for the Debtor.

**B.    The Terms of the DIP Facility are Fair, Reasonable, and Adequate under the Circumstances.**

21.    In considering whether the terms of post-petition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and potential lender. *In re Farmland Indus., Inc*., 294 B.R. 855, 886 (Bankr. W.D. Mo. 20013); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*, 65 B.R. 358, 365 (W.D. Mich. 1986) (a debtor may have to enter into hard bargains to acquire funds).

22.    The Debtor has put forth a viable Plan, but which requires financing to support his reorganization. The terms of the DIP Facility are not only fair but represent the most cost effective solution for meeting these ongoing obligations until such time as the Debtor may sell or reorganize available assets. The relief sought is appropriate, reasonable, and in the best interests of the Debtor, its estate, and his creditors.

**C.    Entering into the DIP Facility Reflects the Debtors' Reasonable Business Judgment and Is Consistent with the Entire Fairness Doctrine**.

23.    Courts ordinarily view a debtor's proposed DIP loan under the business-judgment rule. *See, e.g., In re Simasko Prod. Co*., 47 B.R. 444, 449 (D. Colo. 1985) ("business judgments should be left to the board room and not to this Court"); *In re Lifeguard Indus., Inc*., 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same); *In re Curlew Valley Assocs*., 14 B.R. 506, 511-13 (Bankr. D. Utah 1981) (courts generally will not second-guess a debtor's business decisions where those decisions constitute "a business judgment made in good faith, upon a reasonable basis, and within the scope of its authority under the Code"); *In re Weaver Oil Co., Inc*., 2008 WL 8202063, at *2 (Bankr. N.D. Fla. 2008) ("Under the "business judgment rule," the Bankruptcy Court recognizes that it is "no more equipped to make subjective business decisions for insolvent businesses than [the Court is] for solvent businesses," and the formulation of the business judgment rule in

7

corporate litigation is also the appropriate formulation of the business judgment rule in the Bankruptcy Court"). "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985)

24.     Consistent with this authority, the Debtor's decision to enter into the DIP Facility is the culmination of the Debtor's good faith efforts to procure the best available financing under the circumstances. Here, in the exercise of his business judgment, the Debtor has determined that entry into the DIP Facility is necessary to preserve the assets of his estate and is in the best interests of creditors.

25.     In a transaction between the estate and an insider of the debtor, however, courts may use the more rigorous standard of the entire fairness doctrine. *See In re Los Angeles Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011). This test requires the Debtor to show proof of fair dealing and fair price and terms. *Id.* (citing *Moran v. Household Int'l, Inc.*, 500 A.2d 1346 (Del. Supr.1985)). Even under this more stringent standard, the Debtor is confident that the terms and price are fair and that there has been no unfair dealing. Because the proposed financing will impose virtually no expense to the estate, it is difficult to fathom that any other source of financing could match the proposed terms, much less improve upon them.

26.     The DIP Facility does not purport to prime other liens or security interests in the Debtor's assets.

27.     Under the authorities cited herein the Court may properly grant the relief requested.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order: (a) authorizing the Debtor to obtain post-petition financing in accordance with the terms of the DIP

Credit Agreement and the proposed order submitted herewith, and (b) granting the Debtor such other and further relief as the Court may deem proper.

Dated this 23rd day of November, 2022.

Respectfully submitted,

**DGIM Law, PLLC**
*Counsel for the Debtor, Daren C. Daly*
2875 NE 191st Street, Suite 705
Aventura, FL 33180
Phone: (305) 763-8708

*/s/ Monique D. Hayes*
Isaac Marcushamer, Esq.
Florida Bar No. 0060373
isaac@dgimlaw.com
Monique D. Hayes, Esq.
Florida Bar No. 0841573
monique@dgimlaw.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that, on this November 23, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that a true and correct copy of the foregoing was served via CM/ECF electronic transmission upon those parties who are registered to receive notifications in this matter, and via U.S. Mail to parties who are not registered, as shown below.

By: *<u>/s/ Monique D. Hayes</u>*
       Monique D. Hayes, Esq.

# EXHIBIT A

## POST-PETITION CREDIT AGREEMENT

THIS POST-PETITION CREDIT AGREEMENT, dated as of November __, 2022 (this "Agreement"), is by and between Daren C. Daly an individual residing in _____, Florida ("Borrower" or the "Debtor") who is the debtor-in-possession in a Chapter 11 bankruptcy case, Case No. 22-15694-SMG (the "Case"), in the United States Bankruptcy Court for the Southern District of Florida, and Resurface Industries, LLC, a Florida limited liability company (the "Lender")

## RECITALS

A.      Borrower requires financing in order to satisfy his cash needs after the commencement of the Case.

B.      Subject to the terms hereof, and to the entry by the Court of an order approving the extension of post-petition financing to Borrower, Lender is willing to extend financing to Borrower.

C.      This financing is necessary to preserve the Borrower's assets for the benefit of creditors and Borrower's bankruptcy estate.

D.      Capitalized terms used herein but not defined above have the meanings assigned in Section 7.1 hereof.

## AGREEMENT

Now, therefore, in consideration of the foregoing recitals, which are incorporated herein by reference, and for additional consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## ARTICLE 1

## EXTENSION OF CREDIT

**1.1 Loan.**

Subject to Borrower's compliance with the terms and provisions of this Agreement, and after entry of an interim or final DIP Order, Lender shall make a Loan (the "Loan") in an amount not in excess of ONE HUNDRED THOUSAND DOLLARS ($100,00.00) (the "Loan Amount") available to Borrower until the Maturity Date or until such earlier date as the Loan may become due and payable under the terms hereof. Lender shall transfer proceeds to Borrower upon request made by Borrower to Lender (a "Disbursement Request"), and the Proceeds shall be used solely for the purposes set forth in the Budget or as otherwise permitted by the Bankruptcy Court.

**1.2 Borrowing under the Loan.**

Borrower may obtain an advance under the Loan provided that: (i) no Event of Default has occurred hereunder (except as waived by Lender), and (ii) after giving effect to such advance, the amount of the Obligations would not exceed the Maximum Availability. In order to obtain an

advance, the Debtor and Lender shall create a funding memorandum (a "Funding Request") stating or describing the amount(s) to be borrowed and the payee(s) to which such monies will be delivered.

So long as the Funding Request is consistent with the Budget (or as otherwise authorized by Order of the Bankruptcy Court) Lender shall advance the funds to the Debtor within two business days after the Funding Request is created, and such funds shall be deposited into the Debtor's debtor-in-possession bank account. The Debtor shall use the funds borrowed in accordance with the Bankruptcy Court Order only for the purposes set forth in the Budget or any order of the Bankruptcy Court, and only in the amounts authorized therein (subject to a 15% variance).

Any amounts advanced by the Lender but not used for the purposes set forth herein shall be repaid to the Lender, subject to the following exceptions:

(i) if, in connection with any month(s), Borrower shall create one or more Funding Requests which, in the aggregate, total less than the amount appearing on the Budget for any specific line item, then Borrower may (but shall not be required) nevertheless include in another Funding Request up to the full budgeted amount for that line item in that month, so long as the advance is used to pay other line items on the Budget whose expense exceeds the budgeted amount; and

(ii) if, in connection with any month(s), Borrower shall create one or more Funding Requests which, in the aggregate, total less than the amount appearing on the Budget for that specific month, then Borrower may (but shall not be required) nevertheless carry over the unfunded amount into subsequent months and include all or any part of such amount in another Funding Request, so long as the advance is used to pay other line items on the Budget whose expense exceeds the budgeted amount.

## 1.3 Repayment of Financing; Demand Loan.

The Lender may, at any time and at its sole discretion, terminate the Loan (the date of any such termination, the "Termination Date") and declare all amounts due under the Loan (the "Obligations") to be immediately due and payable, effective five (5) business days after notice of such termination has been filed with the Court and served upon the Debtor, counsel for the Debtor, any trustee appointed in connection with this case (or such trustee's counsel if any), counsel for the United States Trustee, and other parties entitled to notice in this case. Lender shall have no further obligation to make new advances on the Loan once the Termination Date has occurred.

## 1.4 Interest and Fees.

Provided that no Event of Default has occurred, no interest shall be payable on the outstanding principal balance of the Loan. On and after an Event of Default has occurred, interest shall accrue at the Default Rate. Borrower shall pay Lender interest accrued and unpaid on the Maturity Date. No other fees or charges shall come due.

## 1.5 Evidence of Indebtedness.

No further evidence of Borrower's Obligations to Lender shall be necessary, and this Agreement shall serve as the promissory note and security agreement pursuant to which the Obligations may be enforced.

**1.6 Waiver of Notice, Demand or Presentment.**

Borrower hereby waives, to the maximum extent allowed by law, any requirement that Lender provide Borrower demand, presentment, protest or any notice whatsoever in respect of Borrower's obligation to pay Lender the Obligations on or after the first to occur of the Maturity Date or a Termination Date.

## ARTICLE 2

## CONDITIONS

**2.1 Closing Conditions.**

The obligation of Lender to enter into this Agreement and to fund any advance shall be subject to the prior satisfaction of the following conditions:

(a) Executed Credit Documents. Receipt by Lender or its counsel of duly executed copies of this Agreement and such other documents and instruments as Lender may reasonably request.

(b) DIP Order. The Bankruptcy Court shall have entered an order in form and substance acceptable to Lender which order incorporates this Agreement and is in no way inconsistent herewith, approving the Loan (the "DIP Order").

Without limiting the foregoing in any way, the DIP Order will include, among other things, the following provisions:

> except as otherwise expressly agreed by Lender, advances under the Loan may not be used to create, to support, or provide evidence of any claim against the Lender

**2.2 Conditions for Advances.**

The obligation of Lender to make any advance under the Loan shall be subject to the following conditions as of the date on which such advance is required to be made hereunder, except as Lender shall consent otherwise (and so consenting as to any particular advance(s) shall not waive any condition regarding other advances):

(i)     no Event of Default shall have occurred;

(ii)    such advance is in accordance with the Budget (subject to a 15% variance);

(iii)   the Obligations, after giving effect to the proposed advance, will not exceed the Maximum Availability; and

(iv)    Borrower shall be in compliance with the representations and warranties as of the date of such advance.

3

Notwithstanding the foregoing or any other provision hereunder, if Lender makes any advance(s) under the Loan believing in good faith that all of the foregoing conditions have been met, Lender shall be entitled to all of the protections hereunder and under the DIP Order in connection with enforcement and repayment of such advance(s).

## ARTICLE 3

## REPRESENTATIONS AND WARRANTIES

### 3.1 Borrower Representations and Warranties.

Borrower represents and warrants to Lender, and acknowledges that Lender has relied upon such representations and warranties, and Lender represents and warrants to Borrower, that: (i) he has full power and authority, and has taken all action necessary to execute and deliver this Agreement, and all documents required to be executed and delivered by it hereunder, and to fulfill its obligations hereunder and thereunder, and to consummate the transactions contemplated hereby and thereby; (ii) the making and performance by it of this Agreement, and all documents required to be executed by it hereunder, and to fulfill its obligations hereunder and thereunder, does not and will not violate any law or regulation of the jurisdiction under which it exists, any other law or regulation applicable to it or any other agreement to which it is a party or by which it is bound; (iii) this Agreement, and all documents required to be executed by it hereunder have been duly executed and delivered by it and constitute its legal, valid and binding obligations, enforceable in accordance with the respective terms hereunder or thereunder; and (iv) all approvals, authorizations or other actions by, or filings with, any governmental authority necessary for the validity or enforceability of its obligations under this Agreement, and all documents required to be executed and delivered by it hereunder have been obtained.

## ARTICLE 4

## BORROWER'S COVENANTS

### 4.1 Affirmative Covenants of Borrower.

So long as any Obligation remains unsatisfied, Borrower covenants that it shall timely perform the following obligations:

(a) Compliance with Law. Borrower shall materially and substantially comply with applicable provisions of federal, state and local laws applicable to Borrower and its business.

(b) Compliance with Bankruptcy Code. Borrower shall materially and substantially comply with the provisions of Chapter 11 and all other applicable provisions of the Bankruptcy Code as well as any applicable orders of the Court.

(c) Payment of Post-Petition Taxes and Indebtedness. Borrower shall pay, as and when due or as may be ordered by the Court, all post-petition taxes, post-petition indebtedness, and the allowed fees and expenses of its post-petition professionals, incurred by or chargeable against Borrower; provided, however, that Borrower shall not be required to pay any post-petition indebtedness as and when due if: (i) such

indebtedness is not entitled to payment as an administrative expense in the Case under the provisions of § 503(b)(1)(A) of the Bankruptcy Code; or (ii) Borrower, in good faith and with due diligence, contests the amount or validity of such indebtedness, and Borrower promptly notifies Lender of such indebtedness and details regarding the dispute (Borrower shall nevertheless pay the undisputed portion of such indebtedness).

(d) Financial Reporting. Lender shall have the right to require Borrower to provide financial reports, statements, budgets, and cash flow projections as required by Lender. Lender shall have the right to conduct inspections of the books and records of the Borrower upon reasonable notice.

## ARTICLE 5

## DEFAULT

**5.1 Events of Default.**

The occurrence of any of the following shall constitute an Event of Default under this Agreement:

(a) Failure to Make Payment. Borrower shall fail to pay Lender any amount, in full, when due hereunder.

(b) Breach of Covenants. Borrower shall fail to comply with its obligations set forth in the covenants set forth in Section 3.1.

(c) Representations and Warranties. Lender discovers or is notified that any representation and/or warranty set forth in Section 3.1 hereof was untrue as of the date such representation or warranty was made by Borrower.

(d) Occurrence of a Default under Financing Order. The occurrence of an Event of Default as stated in a DIP Order entered by the Court.

(e) Misuse of Funds. The use by Borrower of any funds advanced under the Loan for purposes of not set forth in the Budget;

(f) Dismissal or Conversion of Case. Entry of an order dismissing the Case or converting the Case to a case under Chapter 7 of the Bankruptcy Code; or

(g) Appointment of Trustee. Entry of an order appointing a trustee in the Case.

**5.2 Rights and Remedies.**

Immediately upon the occurrence of an Event of Default, Lender may, in its sole discretion,

exercise any one or more of the following rights and remedies:

(a) Termination of Advances. Lender shall have no obligation to fund any further advances to Borrower under the Loan, and may, in its sole discretion, elect to not honor any request received from Borrower.

(b) Acceleration of Maturity. Lender may, in its sole discretion, declare that the entire unpaid balance of the loan is due immediately.

**5.3 Remedies Cumulative.**

The rights and remedies available to Lender hereunder or under applicable law are cumulative and may be exercised from time to time, in Lender's sole discretion, on and after the occurrence of an Event of Default.

**5.4 No Waiver.**

Lender's election not to declare an Event of Default or to exercise any right or remedy hereunder on or after the occurrence of an Event of Default shall not be a waiver of such Event of Default or a waiver of any of Lender's rights and remedies. In that regard, no waiver of an Event of Default shall be binding on Lender unless such waiver is in writing and signed by Lender.

**5.5 Borrower's Waiver of Notice.**

Except as otherwise provided herein, Borrower hereby waives any rights it may have to require Lender to provide Borrower with demand, presentment or any other notice whatsoever, after the occurrence of an Event of Default, with respect to (i) the Obligations or (ii) the Lender's exercise of any right or remedy granted hereunder or under applicable law.

## ARTICLE 6

## MISCELLANEOUS PROVISIONS

**6.1 Captions.**

Captions used herein, whether underlined or in bold, are for ease of reference only and shall not be referred to or relied upon when interpreting any provision of this Agreement.

**6.2 Choice of Law.**

This Agreement, and the enforcement of rights and remedies hereunder, shall be governed by the laws of the State of Florida, without giving effect to the choice of law provisions thereof.

**6.3 Waiver of Setoff Rights.**

As an inducement for Lender's agreement to extend credit to Borrower, Borrower hereby waives any and all rights of offset that it may have at any time in respect of any or all of the Obligations or the Lender.

**6.4 Entire Agreement; Modification of Agreement.**

This Agreement constitutes the full and final understanding between the parties hereto in respect of the subject matter hereof; and the terms of this Agreement may not be contradicted, amended or supplemented by any agreement or other writing, or any oral statement or agreement, made on or before the date of execution of this Agreement. This Agreement may not be modified or amended, in whole or in part, except by written agreement executed by the parties hereto and approved by entry of an order by the Court.

**6.5 Notice.**

Any notice, demand or request required or allowed to be given hereunder shall be deemed to have been received by the addressee of such notice, demand or receipt on the first Business Day following the date on which the other party sent such notice, demand or request by (1) first-class United States mail, postage pre-paid, and (2) either (a) overnight delivery by a nationally recognized overnight delivery service or (b) email, addressed as follows:

| | |
|---|---|
| If to Lender: | Resurface Industries, LLC |
| | 283 Catalonia Avenue |
| | SUITE 200 |
| | Coral Gables, FL 33134 |
| | |
| With Copy to: | PBYA Corporate Services, LLC |
| | 200 South Andrews Avenue, Suite 600 |
| | Fort Lauderdale, Fl 33301 |
| | Registered Agent |
| | |
| If you Borrower: | Daren C. Daly |
| | 10248 NW 62nd Court |
| | Parkland, FL 33076 |
| | |
| With Copy to: | Isaac M. Marcushamer, Esq. |
| | DGIM Law, PLLC |
| | 2875 NE 191 Street, Ste. 705 |
| | Aventura, FL 33180 |

**6.6 Counterparts.**

This Agreement may be executed in one or more counterparts, each of which shall be deemed to an executed original hereof and which, when together, shall be deemed to be but one and the same instrument.

**6.7 Conflicts with Other Documents and Instruments.**

The terms of this Agreement and any other document or instrument executed in connection herewith are intended to be consistent. As necessary, the provisions of any other document or instrument executed in connection herewith shall be harmonized with the provisions of this Agreement, which provisions shall control in the event of any inconsistency.

**6.8 Binding Effect; Successors.**

This Agreement is and shall be binding on, enforceable by, and inure to the benefit of the parties hereto and their respective successors, including, but not limited to, any Chapter 7 Trustee appointed in this case. This Agreement may not be assigned to any other person or entity by Borrower without Lender's prior written consent.

**6.9 Bankruptcy Court Approval**.

This Agreement is subject to and contingent upon the approval of the Court.

**ARTICLE 7**

**DEFINITIONS**

**7.1 Defined Terms.**

The following capitalized terms shall have the meanings set forth below:

"Bankruptcy Code" means title 11 of the United States Code, as amended or modified from time to time hereafter.

"Budget" means the budget attached to the DIP Order in form approved by Lender.

"Business Day" means any day of the week, Monday through Friday, excluding any such day that is a legal holiday recognized by federal law or the State of Florida.

"Court" or "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware or any other federal court exercising subject matter jurisdiction over the Case.

"Default Rate" means a 7.5% rate of interest per annum.

"Maturity Date" means the first to occur of (a) 5 days after a written demand for repayment is filed by Resurface Industries, LLC with the Court and served upon the Debtor, the Debtor's attorney, and parties entitled to notice in this case, (b) 30 days after an Event of Default hereunder, unless Lender waives such Event of Default in Lender's sole discretion, (c) entry of an order dismissing this case or converting this case to a case under Chapter 7, and (d) the occurrence of the effective date under a confirmed plan in this case.

"Maximum Availability" means the Loan Amount, plus such further amounts as Lender shall agree, subject to approval of the Court.

"Obligations" means all indebtedness, obligation and liability of Borrower to Lender under this Agreement.

"Petition Date" means the date on which Borrower filed its petition, seeking relief under Chapter 11 of the Bankruptcy Code, with the Court.

**7.2 Herein; hereof.**

Words such as "hereof, "herein," "hereto," "herewith" and "hereunder" signify reference to this Agreement as a whole, and not to any specific Article or Section of this Agreement.

**7.3 Singular and Plural.**

Any word defined in the plural in this Agreement shall be deemed to include the singular, and any word defined in the singular in this Agreement shall be deemed to include the plural.

**7.4 Including.**

The word "including" is not limiting, and may be interpreted as "including but not limited to."

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed and delivered as of the date first set forth above.

BORROWER:

_____

Daren C. Daly

LENDER:

RESURFACE INDUSTRIES, LLC

By: _____
Printed Name: _____
Title: _____

**EXHIBIT A**

**IN RE DAREN C. DALY**
**Case No. 22-15694-SMG**

**DEBTOR-IN-POSSESSION LOAN BUDGET**

|  | Distribution Date and Amount | Authorized Use |
|---|---|---|
| 1. | December 1, 2022 $25,000 | Authorized Administrative Expenses |
| 2. | January 1, 2023 $25,000 | Authorized Administrative Expenses |
| 3. | February 1, 2023 $25,000 | Authorized Administrative Expenses |
| 4. | March 1, 2023 $25,000 | Authorized Administrative Expenses |

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                                    Chapter 11 (Sub V)

DAREN C. DALY,                                            Case No.: 22-15694-SMG

     Debtor.
_____/

**ORDER GRANTING DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT
TO 11 U.S.C. § 364 AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
UNSECURED FINANCING AND GRANTING RELATED RELIEF**

THIS MATTER having come before the Court on December __, 2022, at 2:30 p.m. upon

the *Debtor's Motion for Entry of an Order Pursuant to* 11 U.S.C. § 364 Authorizing the Debtor to

<u>Obtain Post-Petition Unsecured Financing and Granting Related Relief</u> (the "Motion")[1] [ECF No. __]. The Court, having reviewed and considered the Motion and the form of DIP Credit Agreement attached to the Motion (the "DIP Credit Agreement"), and the evidence offered at any hearing(s) held on the Motion, notice of which having been proper in accordance with Fed. R. Bankr. P. 2002, 4001, and 9014; and any objections to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court, having heard arguments of counsel and being fully apprised of the premises, makes the following findings:

    A.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334;

    B.  Venue is proper in this district pursuant to 28 U.S.C. § 1409;

    C.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2);

    D.  Notice of the Motion was sufficient under the circumstances;

    E.  The relief requested in the Motion is in the best interests of the Debtor, his estate, and his creditors; the Court having considered the Motion and the form of DIP Credit Agreement attached to the Motion (the "DIP Credit Agreement;

    F.  The terms of the DIP Credit Agreement are reasonable, entirely fair to, and in the best interests of, the Debtor, his estate, and his creditors, and are essential for the continued maintenance of the Debtor's assets;

    G.  It appears that the Debtor is unable to obtain unsecured credit for the money borrowed on better terms than those provided under the DIP Credit Agreement;

It is HEREBY,

    ORDERED, as follows:

---

[1] Capitalized terms not otherwise defined herein have the same meanings ascribed to them in the Motion.

1.      The Motion is GRANTED.

2.      The Debtor is authorized to enter into the DIP Credit Agreement attached as Exhibit A to the Motion, and the terms of the DIP Credit Agreement shall govern, subject to the terms of this order. The Debtor shall be entitled to borrow up to $100,000, subject to the budget attached hereto as Exhibit A (as amended from time to time, the "Budget"); provided that the Debtor may vary from the terms of the Budget by up to 15% in its sole discretion based upon the needs of the estate. The Debtor may borrow up to $100,000 in accordance with this order, without prejudice to the Debtor's right to request authority to borrow further amounts. The amounts borrowed hereunder in the aggregate shall be referred to as the "Post-petition Financing."

3.      In order to borrow funds hereunder, the Debtor and the DIP Lender shall create a funding memorandum (a "Funding Request") stating or describing the amount(s) to be borrowed and the payee(s) to which such monies will be delivered. So long as the Funding Request is consistent with the Budget (or as otherwise authorized by this order) the DIP Lender shall advance the funds to the Debtor within two business days after the Funding Request is created, and such funds shall be deposited into the Debtor's debtor in possession bank account. The Debtor shall use the funds borrowed in accordance with this order only for the purposes set forth herein and only in the amounts authorized herein. Any amounts advanced by the DIP Lender but not used for the purposes set forth herein shall be repaid to the DIP Lender, except as otherwise provided in the DIP Credit Agreement. The Debtor shall retain all executed Funding Requests until 90 days after the earliest of (i) the effective date under any confirmed plan in this case, (ii) conversion of this case to a case under Chapter 7 of the Bankruptcy Code, and (iii) dismissal of this case.

4.       In accordance with § 364(c)(1) and (c)(2) of the Bankruptcy Code, the DIP Lender shall have a claim against the Debtor's estate (the "DIP Claim") for any of the unpaid Obligations with the following protections:

    A.  The DIP Claim shall be entitled to administrative expense priority and shall be treated pari passu with all other administrative claims; except that the DIP Claim shall be subordinate to administrative claims of the Debtor's professionals and the Subchapter V Trustee's right to receive statutory fees.

5.       Except as otherwise expressly agreed by the DIP Lender, the Post-petition Financing may not be used to create, to support, or provide evidence of any claim against the DIP Lender.

6.       (A) The "Maturity Date" means the first to occur of (a) five (5) days after a written demand for repayment is filed by Resurface Industries, LLC with the Court and served upon the Debtor, the Debtor's attorney, and parties entitled to notice in this case, (b) entry of an order dismissing this case or converting this case to a case under Chapter 7, and (c) the occurrence of the effective date under a confirmed plan in this case.

(B) On or after the Maturity Date, the DIP Lender may terminate the Post-petition Financing (the date of any such termination, the "Termination Date") and declare amounts advanced under the Post-petition Financing (together with any interest thereon, the "Obligations") to be immediately due and payable, effective five (5) business days after notice of such declaration has been filed with the Court and served upon the Debtor, counsel for the Debtor, any trustee appointed in connection with this case (or such trustee's counsel if any), counsel for the United States Trustee, and other parties entitled to notice in this case.

4

(C) Notwithstanding any other provisions in this order to the contrary, the Debtor (or if converted, the Chapter 7 trustee) shall borrow, and the DIP Lender shall make advances, all sums required to pay professionals of the Debtor and statutory fees owed to the Subchapter V Trustee. This provision shall survive dismissal of the case and/or conversion to Chapter 7 of the Bankruptcy Code; provided that any claim arising in favor of the DIP Lender after conversion of the case shall be entitled to priority as a pre-conversion administrative claim

7.    The Debtor is authorized to perform all acts, and execute and comply with the terms of such other documents, instruments, and agreements as the DIP Lender may reasonably require, as evidence of and for the protection of the DIP Claim to effectuate the terms and conditions of this order. The Debtor and the DIP Lender are hereby authorized to implement any modifications of the Post-petition Financing which are not material and adverse to the Debtor or his estate without further order of this Court.

8.    The provisions of this order and any actions taken pursuant hereto shall survive entry of any order (a) confirming any plan in this case (and the Obligations shall not be discharged by the entry of any such order or pursuant to § 1141(d)(4) of the Bankruptcy Code); (b) converting this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; or (c) dismissing this Chapter 11 case. If an order is entered converting this case to a case under Chapter 7 of the Bankruptcy Code, the trustee shall create a Funding Request for all unpaid amounts due for pre-conversion compensation and out-of-pocket expenses owing to any professionals of the Debtor within 14 days after such amounts are approved by the Court in accordance with § 330 of the Bankruptcy Code, and the trustee may use the Post-petition Financing advanced on account of such Funding Request only for that purpose.

5

9.      The provisions of this order shall be binding upon and inure to the benefit of the Debtor, the Debtor's estate, the DIP Lender, and their respective successors and assigns, including but not limited to any trustee or other fiduciary hereafter appointed in these cases as a legal representative of the Debtor or his estate.

10.     Notwithstanding Fed. R. Bankr. P. 7062, the terms and conditions of this order shall: (a) be immediately enforceable pursuant to Fed. R. Bankr. P. 8005; and (b) not be stayed absent (1) an application by a party in interest for such stay in accordance with Fed. R. Bankr. P. 8005, and (2) entry of an order after hearing on notice to the Debtor, the DIP Lender, and the United States Trustee staying the effect hereof.

11.     This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the interpretation and/or enforcement of this order.

12.     The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this order.

# # #

Submitted by:
Monique D. Hayes, Esq.
Email: monique@dgimlaw.com
**DGIM Law, PLLC**
*Counsel for the Debtor Daren C. Daly*
2875 NE 191st Street, Suite 705
Aventura, FL 33180
Phone: (305) 763-8708

Copies furnished to:
Monique D. Hayes, Esq.

(Attorney Hayes is directed to serve a signed copy of this Order upon all interested parties and to file a Certificate of Service with the Court.)