TAGGED OPINION



**ORDERED in the Southern District of Florida on November 8, 2023.**

_____
**Scott M. Grossman, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

DAREN C. DALY,                                          Case No. 22-15694-SMG

     Debtor.                                          Chapter 11

_____/

PATRICK DALY, ELIZABETH DALY,
ALL PAVING AND SEALCOATING, LLC,
and PATRICK DALY AND ELIZABETH
DALY AS THE MAJORITY SHAREHOLDERS
OF ALL PAVING, INC.,

     Plaintiffs,

v.                                                      Adv. No. 22-1391-SMG

DAREN C. DALY,

     Defendant.

_____/

## MEMORANDUM OPINION[1]

The Bankruptcy Code contains special provisions for small businesses.[2] So does the Internal Revenue Code.[3] The Florida Business Corporation Act[4] ("FBCA") does not. The same corporate formation, organization, and governance rules that apply to a large company like Publix Supermarkets, Inc. also apply to a small family-owned paving business. Those rules provide, among other things, that ownership of a corporation is evidenced solely by shares of stock in the corporation. No unwritten agreements among principals, or representations to third parties about ownership percentages, have any relevance in determining ownership of stock in a corporation. When family members choose to do business as a corporation (instead of using a more flexible entity, like a limited liability company) – but fail to comply with statutory corporate formation, organization, and governance requirements – they do so at their own risk.

And when family disputes over ownership of a corporation devolve and must be resolved by a court, the court must look only to the law to resolve them. Here, the law dictates that ownership of a corporation is determined solely by ownership of shares of stock in that corporation – and not by anything else. In this case, Patrick and Elizabeth Daly, the parents of Debtor Daren Daly, contend that they own 87.5% of a small, family-owned paving business, All Paving, Inc. But after a 9-day trial with

---

[1] This memorandum opinion constitutes the Court's findings of fact and conclusions of law, as required by Federal Rule of Civil Procedure 52(a)(1), made applicable here by Federal Rules of Bankruptcy Procedure 7052 and 9014.

[2] *See, e.g.*, 11 U.S.C. §§ 1181-1195 (Small Business Debtor Reorganization).

[3] *See, e.g.*, 26 U.S.C. §§ 1361-1379 (Subchapter S).

[4] Fla. Stat. §§ 607.0101-613.

mostly irrelevant testimony about various purported agreements between family members and representations to third parties, the only relevant evidence – a corporate stock ledger and stock certificates – leads the Court to an easy conclusion: Daren[5] owns all 100 shares – representing 100% of the issued and outstanding stock – of All Paving, Inc.

Further, neither his parents (Patrick and Elizabeth), nor the separate limited liability company of which they own the majority of the equity (All Paving and Sealcoating, LLC), have proven any claim against Daren as of the date he filed for bankruptcy. And because they have failed to prove any claim against Daren, Daren's objection to their proof of claim must be sustained, and their claim disallowed. Finally, because they have failed to prove any claim against Daren, Daren does not owe them any debt that could be excepted from discharge under Bankruptcy Code sections 523(a)(2)(A), (a)(4), or (a)(6).[6] But even if there was some debt that Daren owed to his mother, father, or All Paving and Sealcoating, LLC, the evidence failed to establish that any such debt should be excepted from any discharge that might be granted to Daren in this bankruptcy case.

## I.    Background.

Patrick and Elizabeth Daly are an American success story – immigrants who through hard work and determination formed a successful paving business called All Paving and Sealcoating, LLC, of which they own 85% of the equity. They also raised

---

[5] Because they share a common surname, the Court will refer to Mr. Daren Daly as Daren or Daren Daly, Mr. Patrick Daly as Patrick or Patrick Daly, and Mrs. Elizabeth Daly as Elizabeth or Elizabeth Daly.

[6] 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and (a)(6).

three successful children – Keith, a paramedic and firefighter; Sinead, an attorney; and Daren, a former NCAA Division I college football kicker who aspired to coach in the NFL. When the NFL didn't pan out, Daren went to law school, hoping to become a sports agent. Although he graduated from Nova Southeastern University Law School, Daren did not pass the Florida Bar Examination, thus torpedoing his plans for a career as a sports agent. Instead, he went into the family business – working for his parents at All Paving and Sealcoating, LLC – where he learned the trade and made contacts in the industry.

At some point, a dispute arose between Daren and an older gentleman named Bob Holland. Bob Holland was the primary salesman for All Paving and Sealcoating, LLC, who in respect of that role, was given a 15% equity interest in All Paving and Sealcoating, LLC. When Daren began obtaining paving clients through his own marketing and relationships, he wanted a similar "deal" to the one given to Bob Holland. So Patrick decided to give Daren the same "deal" – a 15% interest in a new, separate company. But Patrick – being unsophisticated in the law – left it to Daren (a recent law school graduate), and Daren's law school friend, Joseph Fahrendorf, to form this new business.

For reasons that are not clear, despite the flexibility and significantly less formality associated with a limited liability company (like All Paving and Sealcoating, LLC), Daren decided to form this new business as a corporation. So on September 19, 2013, Daren incorporated All Paving, Inc., by filing Electronic Articles of Incorporation with the Florida Secretary of State. After filing the articles of

incorporation, however, Daren failed to undertake the next steps necessary to complete the organization of the company, including electing directors and issuing shares of stock. Regardless, sometime in 2015 Daren and his parents began operating as if All Paving, Inc. had been properly organized – even though it had never elected a board of directors or issued shares of stock to anyone. Not long thereafter, though, the family relationship soured, the business relationship deteriorated, and litigation ensued.

A.    <u>State Court Litigation</u>.

In 2017, Daren's parents – together with All Paving and Sealcoating, LLC and All Paving, Inc. (purportedly by his parents as alleged majority shareholders) – sued Daren in state court, alleging that they owned 87.5% of All Paving, Inc., and asserting a myriad of claims for damages against Daren and his fiancé, Jamie Schindler.[7] Ultimately, through their second amended complaint filed three and a half years into the litigation, they asserted thirteen claims against Daren and Jamie. But two of these claims were predicates for the eleven others: (1) a declaratory judgment as to ownership of All Paving, Inc., and (2) a declaratory judgment as to ownership of the "All Paving" trade name, trademark, and logo, and the allpaving.com domain name.[8]

---

[7] Daren and Jamie have been engaged for at least ten years and have six children together. Trial Transcript (ECF Nos. 137, 138, 158, 159, 160, 161, 162, 163, 164) ("TT") 1267:5-13; 1726:1-6.

[8] Issues relating to ownership of the domain name and trade name, trademark, and logo were relevant to certain issues the Court had to decide in this bankruptcy case. But with respect to the matters squarely before the Court in this adversary proceeding and the related contested matters, the Court only had to determine who owned the stock of All Paving, Inc. Thus, the Court makes no determination as to ownership of the "All Paving" trade name, trademark, or logo, or the allpaving.com domain name.

5

B.    <u>Bankruptcy Case</u>.

On July 26, 2022 – after more than five years of litigation with his parents in state court – Daren filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, electing to proceed under Subchapter V (which contains special provisions for eligible small business debtors).[9] Daren asserts in this bankruptcy case that he owns 100% of the stock of All Paving, Inc., and stated that he filed for bankruptcy due to mounting debts associated with his business operations and the state court litigation with his parents.[10]

Patrick and Elizabeth, together with All Paving and Sealcoating, LLC, filed a $4,051,277.41 proof of claim in Daren's bankruptcy case, based on the claims they asserted against him in state court.[11] Daren objected[12] to their proof of claim and then filed a plan of reorganization[13] under subchapter V of chapter 11 of the Bankruptcy Code. And Patrick, Elizabeth, All Paving and Sealcoating, LLC, and Patrick and Elizabeth (purportedly) as majority shareholders of All Paving, Inc., all filed a complaint against Daren seeking a determination that debts he allegedly owed them were excepted from any discharge that he might receive.

---

[9] Individuals, like Daren, can be small business debtors under subchapter V. *See* 11 U.S.C. §§ 101(41); 1182(1).

[10] ECF No. 17, Main Case, at ¶ 5.

[11] Claim No. 13-1, Main Case. They attached to the proof of claim a copy of the second amended complaint filed in the state court.

[12] ECF No. 69, Main Case.

[13] ECF No. 70, Main Case.

After the Court dismissed certain of the nondischargeability claims brought by All Paving and Sealcoating, LLC and All Paving, Inc.,[14] the following claims and plaintiffs remained in the adversary proceeding:

- Count I – by Patrick and Elizabeth, a determination that a debt for money, property, or services obtained by false pretenses, a false representation, or actual fraud is excepted from discharge under 11 U.S.C. § 523(a)(2)(A);

- Count II – by Patrick, Elizabeth, and All Paving, Inc., a determination that a debt for embezzlement is excepted from discharge under 11 U.S.C. § 523(a)(4);[15] and

- Count III – by Patrick, Elizabeth, and All Paving and Sealcoating, LLC, a determination that a debt for willful and malicious injury to another entity or property of another entity is excepted from discharge under 11 U.S.C. § 523(a)(6).

To prevail on any of these claims, however, the Court must first find that Patrick and Elizabeth – not Daren – are the majority owners of All Paving, Inc., and that Patrick, Elizabeth, and All Paving, Inc., together with All Paving and Sealcoating, LLC, have any claims at all against Daren. Because a determination of ownership of All Paving, Inc. was a necessary predicate to consideration of his plan of reorganization as well, and because the claims asserted in the proof of claim and in the complaint to determine dischargeabilty were all inter-related, the Court abated any plan-related deadlines so that these predicate issues could be resolved first.

---

[14] ECF No. 106; *In re Daly*, 2023 WL 2394360 (Bankr. S.D. Fla. 2023).

[15] In dismissing All Paving and Sealcoating, LLC's claim for nondischargeability under section 523(a)(4), the Court noted that the plaintiffs "receded" from any allegations of nondischargeability due to breach of fiduciary duty, and that they were proceeding only on the embezzlement claim. *Id.* at *3.

C.    <u>Disputed Issues</u>.

The Court tried these disputes over nine separate days between April and June

2023, to determine three primary issues:

1.    Under Bankruptcy Code section 541(a), how much stock in All Paving, Inc. is property of Daren's bankruptcy estate?

2.    Under Bankruptcy Code section 502(b), in what amount, if any, should the $4,051,277.41 proof of claim by Patrick, Elizabeth, and All Paving and Sealcoating, LLC against Daren's estate be allowed?

3.    Under Bankruptcy Code section 523(a), should any debt that Daren owes to his parents, All Paving and Sealcoating, LLC, or All Paving, Inc., be excepted from any bankruptcy discharge he might receive?

## II.    Legal Standards and Burdens of Proof.

A.    <u>Jurisdiction and Adjudicatory Authority</u>.

The Court has subject matter jurisdiction under 28 U.S.C. § 1334(b). All three

of the disputes before the Court are core proceedings under 28 U.S.C. § 157(b)(2)(A)

(matters concerning the administration of the estate), (B) (allowance or disallowance

of claims against the estate), (I) (determinations of dischargeability of particular

debts), (L) (confirmation of plans),[16] and (O) (other proceedings affecting the

liquidation of the assets of the estate or the adjustment of the debtor-creditor

relationship), which the Court has authority to hear and determine under 28 U.S.C.

§ 157(b)(1) and the general order of reference from the United States District Court

---

[16] Daren has filed a chapter 11 plan (Main Case, ECF No. 70), but it cannot be set for confirmation until this Court first determines who owns the stock in All Paving, Inc. (Main Case, ECF No. 80). Adjudication of this issue is relevant to several aspects of the plan, and depending on the Court's ruling, may require Daren to amend his plan. As such, determination of ownership of All Paving, Inc. stock is also a core proceeding under section 157(b)(2)(L).

for the Southern District of Florida.[17] All parties have consented to entry of final orders or judgments by this Court.[18] Venue is proper under 28 U.S.C. § 1409(a).

B.    Ownership of All Paving, Inc. Stock.

The first issue the Court must determine is who owns All Paving, Inc. Stated more precisely, who owns *the stock* of All Paving, Inc.? Or put into bankruptcy context, how many shares of stock in All Paving, Inc., are property of Daren's bankruptcy estate under Bankruptcy Code section 541(a)?

Under section 541(a), property of a bankruptcy estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case."[19] Whether a debtor's interest constitutes property of the estate is a question of federal law, but "the nature and existence of the debtor's right to property is determined by looking at state law."[20] In this case, Florida state law determines who owns the stock of All Paving, Inc., because All Paving, Inc. is a Florida corporation. Under Florida law, corporate records constitute prima facie evidence of stock ownership.[21] Here, as discussed below, All Paving, Inc.'s corporate stock ledger[22] shows that Daren owned

---

[17] S.D. Fla. Local Rule 87.2(a).

[18] *See Order Setting Sched. Conf. and Establishing Procedures and Deadlines* (ECF No. 4, ¶ 3).

[19] 11 U.S.C. § 541(a)(1).

[20] *In re Kalter*, 292 F.3d 1350, 1353 (11th Cir. 2002) (cleaned up) (citing *Lewis v. Charles R. Hall Motors, Inc. (In re Lewis)*, 137 F.3d 1280, 1283 (11th Cir. 1998)); *see also Butner v. U.S.*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law.").

[21] *Sackett v. Shahid*, 722 So. 2d 273, 275 (Fla. 1st DCA 1998) ("corporate records provide a prima facie evidentiary basis for determining ownership of corporate stock.") (citing *DLH, Inc. v. Russ*, 566 N.W.2d 60, 72–73 (Minn. 1997); *Matter of Steward*, 229 A.D. 2d 500, 501 (N.Y. App. Div. 1996); *Cosgriff v. Schneiter*, 600 P.2d 540 (Utah 1979)); *Berlin v. Pecora*, 968 So. 2d 47, 50 (Fla. 4th DCA 2007) (same); *cf. Matter of Estate of Thomas*, 179 A.D. 3d 98, 102–03 (N.Y. App. Div. 2019) ("the books of a corporation are prima facie evidence of stock ownership"); *Gill v. Regency Holdings, LLC*, 2023 WL 4607070, at *10 (Del. Ch. 2023), *report and recommendation adopted*, 2023 WL 4761810 (Del. Ch. 2023) (stock ledger is prima facie evidence of stock ownership) (citing *Pogue v. Hybrid Energy, Inc.*, 2016 WL 4154253, at *3 (Del. Ch. 2016)).

[22] Pl.'s Ex. 32.

all 100 shares of its common stock as of the petition date. Thus, his parents had the burden to prove otherwise.[23]

C.    Objection to Claim.

Under Bankruptcy Code section 502(a), a properly and timely filed proof of claim is deemed allowed, unless a party in interest objects.[24] If a party objects, the Court is then required to determine the amount of the claim and allow the claim in the amount determined (subject to certain exceptions not applicable here).[25] Under Federal Rule of Bankruptcy Procedure 3001(f), a properly filed proof of claim constitutes "prima facie evidence of the validity and amount of the claim."[26] When an objection to a proof of claim is filed, "the burden then shifts to the objecting party to come forward with enough substantiations to overcome the claimant's prima facie case."[27] "If the objecting party overcomes the prima facie case, then the burden of proof falls to the party that would bear the burden outside of bankruptcy."[28] Here, Daren has come forward with enough substantiations to overcome the prima facie validity of the proof of claim filed by Patrick, Elizabeth, and All Paving and Sealcoating, LLC. Thus, the burden of proof falls back on his parents and All Paving and Sealcoating, LLC – who would bear the burden outside of bankruptcy – to prove that Daren owes them $4,051,277.41. Specifically, because their proof of claim is

---

[23] *Sackett*, 722 So.2d at 275-76.

[24] 11 U.S.C. § 502(a).

[25] 11 U.S.C. § 502(b).

[26] Fed. R. Bankr. P. 3001(f).

[27] *In re Walston*, 606 F. App'x 543, 546 (11th Cir. 2015) (cleaned up) (quoting *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 701 (5th Cir. 1977)); *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992).

[28] *Walston*, 606 F. App'x at 546 (citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000); 9 COLLIER ON BANKRUPTCY ¶ 3001.09[2] (16th ed. 2015)).

predicated on the assertion that Daren has unlawfully converted the stock of All Paving, Inc., under Florida law his parents "must show 'ownership of the subject property and . . . that the other party wrongfully asserted dominion over that property.'"[29] In addition – and, as discussed below, critically important in this case – "the plaintiff must show evidence of damage, not just liability."[30]

    D.   <u>Dischargeability</u>.

Courts generally construe exceptions to discharge liberally in favor of debtors.[31] Creditors challenging dischargeabilty have the burden to prove, by preponderance of the evidence, that their debt is not dischargeable.[32] Of course a predicate to this burden is establishing that they have any debt at all that may be subject to an exception from discharge. Here, there are three bases upon which dischargeabilty of debts are challenged: Bankruptcy Code sections 523(a)(2)(A), 523(a)(4), and 523(a)(6).

    1.   *Section 523(a)(2)(A)*.

Under Bankruptcy Code section 523(a)(2)(A), a debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, is excepted from discharge.[33]

---

[29] *Prou v. Giarla*, 62 F. Supp. 3d 1365, 1380 (S.D. Fla. 2014) (quoting *Mattocks v. Black Entm't Television*, 43 F. Supp. 3d 1311, 1321 (S.D. Fla. 2014)); *Edwards v. Landsman*, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011).

[30] *Prou*, 62 F. Supp. 3d at 1380 (quoting *Regions Bank v. Maroone Chevrolet, LLC*, 118 So. 3d 251, 257 (Fla. 3d DCA 2013)).

[31] *In re Miller*, 39 F.3d 301, 304 (11th Cir. 1994) (citing *In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987)); *see Bartenwerfer v. Buckley*, 598 U.S. 69, 77 (2023) (exceptions to discharge "should not extend beyond their stated terms").

[32] *Grogan v. Garner*, 498 U.S. 279, 287-88 (1991).

[33] 11 U.S.C. § 523(a)(2)(A).

"[G]enerally speaking, 'false pretenses' contemplates 'a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or a false and misleading understanding of a transaction, by which a creditor is wrongfully induced by a debtor to transfer property or extend credit to the debtor.'"[34] "A 'false representation,' for purposes of § 523(a)(2), is analogous to a common law fraudulent misrepresentation."[35] And "actual fraud consists of any deceit, artifice, trick, or design involving the direct and active operation of the mind, used to circumvent and cheat another."[36]

2. *Section 523(a)(4).*

Bankruptcy Code section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[37] As noted, Patrick and Elizabeth have "receded" from any allegations of breach of fiduciary duty,[38] and have not alleged larceny.[39] Thus, the only potential basis for nondischargeability under section 523(a)(4) is for embezzlement, which is the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come."[40]

---

[34] *In re Saks*, 2022 WL 18273866, at *6 (Bankr. M.D. Fla. 2022) (citing *Taylor v. Wood (In re Wood)*, 245 F. App'x 916, 918 (11th Cir. 2007)).
[35] *Id.* (citing *Warren v. Warren (In re Warren)*, 2022 WL 17481431, at *7 (Bankr. M.D. Fla. 2022)).
[36] *Id.* (citing *BMO Harris Bank v. Richert (In re Richert)*, 632 B.R. 877, 894 (Bankr. M.D. Fla. 2021)); *see generally Husky Int'l Elec., Inc. v. Ritz*, 578 U.S. 356, 360 (2016) (discussing the meaning of "actual fraud").
[37] 11 U.S.C. § 523(a)(4).
[38] *Daly*, 2023 WL 2394360, at *3.
[39] Am. Compl. (ECF No. 24).
[40] *In re Keitel*, 2018 WL 9597494, at *3 (Bankr. S.D. Fla. 2018) (quoting *Moore v. U.S.*, 160 U.S. 268, 269 (1895)).

3.      *Section 523(a)(6).*

Bankruptcy Code section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity."[41] "An injury alleged as the basis for a non-dischargeable claim under section 523(a)(6) must be both willful and malicious."[42] "In order to prove willfulness under section 523(a)(6), a plaintiff must prove that the debtor acted intentionally; proof that the injury resulted from reckless or negligent conduct is not sufficient."[43] "A debtor acts willfully when the debtor either intended the injury that resulted or the debtor acted intentionally and the act in question was certain or substantially certain to result in the injury."[44]

## III.    **Findings of Fact.**[45]

A.    Daren Daly Owned 100% of the Issued and Outstanding Stock of All Paving, Inc. as of His Bankruptcy Petition Date.

All Paving, Inc. was incorporated on September 19, 2013, when Daren Daly – as sole incorporator – filed Electronic Articles of Incorporation with the Florida Secretary of State.[46] The articles of incorporation authorized 100 shares of stock in the corporation.[47] The articles did not name any initial directors, but they did list as

---

[41] 11 U.S.C. § 523(a)(6).

[42] *Keitel*, 2018 WL 9597494, at *4 (citing *Stewart Tilghman Fox & Bianchi, P.A. v. Kane (In re Kane)*, 470 B.R. 902, 939 (Bankr. S.D. Fla. 2012)).

[43] *Id.* (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)).

[44] *Id.* (citing *Thomas v. Loveless (In re Thomas)*, 288 F. App'x 547, 549 (11th Cir. 2008)).

[45] To the extent any of these findings of fact are determined to constitute conclusions of law, they are adopted as such. And to the extent any of these findings of fact are determined to constitute mixed questions of law and fact, an appellate court should consider them under the standard set forth in *U.S. Bank Nat. Ass'n ex rel. CW Capital Asset Mgmt. LLC v. Village at Lakeridge, LLC*, 138 S. Ct. 960, 967 (2018) ("the standard of review for a mixed question all depends—on whether answering it entails primarily legal or factual work.").

[46] Pl.'s Ex. 32 (ECF No. 77-32, at 3-4).

[47] *Id.*

officers Jamie Schindler (president), Daren Daly (vice president), and Patrick Daly (vice president).[48] The articles of incorporation did not reserve to its shareholders the power to issue shares of stock. After incorporation, Daren (as sole incorporator) initially failed to hold an organizational meeting, as required by Florida Statutes section 607.0205, to complete the organization of the corporation and elect directors.

Although they introduced hours of testimony and dozens of exhibits showing various purported agreements between and among Daren and his parents as to the intended split of the ownership of All Paving, Inc. – along with numerous representations to third parties, including banks, equipment suppliers, and customers – that evidence was inconclusive at best, but nevertheless legally irrelevant. It was inconclusive because the percentage ownership splits were inconsistent, ranging anywhere from 12.5% to 15% to 35% for Daren (with different corresponding percentages for his parents, sometimes including Elizabeth, sometimes not) at various times. But it was nevertheless irrelevant because all of those "agreements" and representations to third parties predated the actual issuance of any shares of stock by All Paving, Inc. Until All Paving, Inc. had actually issued shares of stock to its shareholders, it had no shareholders, notwithstanding any purported agreements among or representations by Daren, Patrick, or Elizabeth to the contrary.

It was not until July 3, 2019 – nearly six years after incorporation – when Daren, as sole incorporator, finally held an organizational meeting and elected

---

[48] *Id.*

14

himself as sole director of All Paving, Inc., by written consent.[49] The board (consisting solely of Daren), then adopted bylaws in accordance with Florida Statutes section 607.0206.[50] These bylaws provided for issuance of certificates evidencing ownership of shares of stock in All Paving, Inc. "to those entitled to them by transfer or otherwise."[51] At the organizational meeting, Jamie Schindler was named President of All Paving, Inc., and Daren was named Secretary and Treasurer.[52] The board then approved the form of stock certificates.[53] By undated resolution signed by Daren as sole director, it was then noted that in 2016 Jamie Schindler resigned as President, whereupon the Board of Directors appointed Daren as president, effective as of Jamie Schindler's resignation.[54]

Both Daren and his parents furnished competing stock ledgers and stock certificates for All Paving, Inc.,[55] which both sides have accused the other of fabricating and backdating. It was certainly evident that neither set of corporate records were prepared at or around the time All Paving, Inc. was incorporated in September 2013. Both sets were clearly created well after the fact, and after litigation had ensued. But only the stock ledger and stock certificates furnished by Daren resulted from proper corporate action and with proper authority under Florida law

---

[49] *Id.* at 30-33; *see* Fla. Stat. § 607.0205(2) ("Action required or permitted by this chapter to be taken by incorporators or directors at an organizational meeting may be taken without a meeting if the action taken is evidenced by one or more written consents describing the action taken and signed by each incorporator or director.").
[50] Pl.'s Ex. 32, at 32.
[51] *Id.* at 25.
[52] *Id.* at 32.
[53] *Id.*
[54] *Id.* at 34.
[55] Pl.'s Ex. 32; Pl.'s Ex. 33 (ECF No. 77-33).

(albeit retroactively six years after incorporation). That stock ledger shows the following:[56]



According to the stock ledger, effective as of September 19, 2013, Jamie Schindler was issued 80 shares of stock in All Paving, Inc., represented by Certificate Number 1.[57] But in January 2016, she transferred those 80 shares to Daren Daly.[58] The ledger then shows that also on September 19, 2013, All Paving, Inc. issued 10 shares of stock to Daren Daly, represented by Certificate Number 2.[59] And it shows that Patrick Daly had been issued 10 shares of All Paving, Inc. stock, represented by Certificate Number 3, but with no date as to its issuance.[60] Further across the ledger, however, it shows that in April of 2017, those shares were cancelled by All Paving,

---

[56] The Court is a big proponent of using technology, particularly to exchange, present, and display evidence. And the Court appreciates how modern electronic discovery is produced and shared. But sometimes it can be helpful to preserve the original form and format of certain oversized documents – even if to be exchanged and displayed electronically – rather than converting every document to a single letter-sized .pdf page. Here, after spending significant time reviewing pages 84 and 85 of Plaintiffs' Exhibit 32 (ECF No. 77-32, at 84-85), it eventually became clear that these were two facing pages from a physical stock ledger book, intended to be lined up together and viewed as a whole across both open pages, as ultimately displayed above.

[57] Pl.'s Ex. 32, at 76-77 (Certificate No. 1), 84-85 (stock ledger).

[58] *Id.*

[59] *Id.*, at 78-79 (Certificate No. 2), 84-85 (stock ledger).

[60] *Id.*, at 82-83 (Certificate No. 3), 84-85 (stock ledger).

16

Inc.[61] Then 10 new shares, represented by Certificate Number 4, were issued to Daren in April 2017.[62]

The April 2017 time frame is significant. In late March 2017, Daren and Patrick began taking a series of steps to disentangle their business relationships and separate the All Paving and Sealcoating, LLC business from the All Paving, Inc. business. The parties dispute whether an enforceable contract was ever entered into, but the evidence supported a finding that there was a valid contract between Patrick and Daren to separate their businesses, which contract had been largely – if not fully – performed. This evidence included a March 23, 2017 email from Jamie Schindler to Patrick with a draft contract containing a proposal to separate the businesses,[63] and an April 14, 2017 letter of direction to BankUnited[64] in furtherance of that proposal. This letter of direction was signed and notarized by Patrick, Elizabeth, and Daren, and provided instructions for three separate wire transfers: (1) one for $313,659.35 to an All Paving and Sealcoating, LLC bank account for reimbursement of labor costs and a portion of Patrick's salary;[65] (2) one to Patrick individually, for $59,800.00 in respect of his 2016 salary and a 2016-17 "Qualifying Fee" (for being the individual licensed by government authorities responsible for certain jobs);[66] and (3) one for the remaining balance of over $400,000.00 to an All Paving, Inc. account at SunTrust Bank over which Daren had signature authority.[67] Patrick admitted that the first

---

[61] *Id.* Certificate No. 3 also has the word "CANCELLED" written on the back of it.
[62] *Id.*, at 80-81 (Certificate No. 4), 84-85 (stock ledger).
[63] Def.'s Ex. 143.
[64] Def.'s Ex 100.
[65] *Id.*; TT 386:4-390:1.
[66] Def.'s Ex. 100; TT 391:23-392:9; 398:1-16; 399:13-17.
[67] Def.'s Ex. 100; TT 408:3-412:25.

wire was for "the monies that was owed from one entity [All Paving, Inc.] to the other [All Paving and Sealcoating, LLC]."[68] And he admitted that he authorized the last wire of over $400,000.00 to All Paving, Inc. so that "we could both move on," but with the proviso that "I would take care of it later down the line with a legal action or whatever I was going to do."[69] Although nothing in the draft contract Jamie Schindler emailed to Patrick on March 23, 2017, nor anything in the April 14, 2017 letter of direction to BankUnited, specifically addressed cancelation of any shares of stock in All Paving, Inc., cancelation of the 10 shares originally issued to Patrick (for which certificates had never previously been issued) during this same time period is consistent with the mutual efforts to separate the businesses.

All Paving, Inc.'s official corporate records[70] therefore establish that as of his July 26, 2022 bankruptcy petition date, Daren owned 100 shares of common stock in All Paving, Inc. (representing 100% of the issued and outstanding shares of stock in the company), which constitutes prima facie proof that he owns all the stock.[71] Although that prima facie evidence may be rebutted, none of the other evidence or testimony about agreements or conversations between Daren and his parents regarding ownership percentages (which varied at different times), as well as representations to third parties (which also varied at different times), rebutted that presumption. Given the prima facie validity of All Paving, Inc.'s corporate records, and the lack of competent evidence in accordance with the requirements of Florida

---

[68] TT 414:12-19.
[69] TT 416:8-25; 417:4-418:12.
[70] Pl.'s Ex. 32.
[71] *See* note 21, *supra.*

law from Patrick or Elizabeth that they were ever issued – and still owned as of Daren's petition date – any shares of stock in All Paving, Inc., leads the Court to find that Daren owned 100% of the issued and outstanding stock of All Paving, Inc., as of his petition date.

      B.     <u>Patrick, Elizabeth, and All Paving and Sealcoating, LLC Have Failed to Prove Any Claim Against Daren's Bankruptcy Estate</u>.

           1.     *Patrick, Elizabeth, and All Paving and Sealcoating, LLC Have No Claim Against Daren for the Value of All Paving, Inc. Stock or for "Disgorgement" of Funds from All Paving, Inc.*

Patrick, Elizabeth, and All Paving and Sealcoating, LLC's proof of claim No. 13-1 in the amount of $4,051,277.41 has two primary components: a portion attributable to the value of All Paving, Inc. as of December 31, 2017 they contend Daren wrongfully converted from them, and a portion for a "disgorgement" analysis, representing the amount of money Patrick and Elizabeth contend Daren improperly withdrew or caused to be withdrawn from All Paving, Inc. No portion of their proof of claim, however, included any damages for any claims by All Paving and Sealcoating, LLC against Daren. So while the proof of claim was filed by Patrick, Elizabeth, and All Paving and Sealcoating, LLC, the amount of the claim consisted entirely of (a) a claim by Patrick and Elizabeth for the value of the equity in All Paving, Inc. they contend Daren wrongfully converted from them, and (b) a claim by Patrick and Elizabeth, purportedly on behalf of All Paving, Inc., for funds allegedly improperly disbursed by Daren from All Paving, Inc.

At trial, Patrick and Elizabeth's expert witness broke these amounts down and testified that this claim was comprised of $2,007,051.38, which he computed to be for

87.5% of the value of All Paving, Inc. as of December 31, 2017, plus $2,044,226.03, which he computed to be for 87.5% of his $2,336,258.32 "disgorgement analysis."[72] But because the Court has determined that Daren is the proper owner of 100% of the stock of All Paving, Inc., Patrick and Elizabeth have no claim for any value of the company that they claim Daren stole from them.[73]

Likewise, because they do not own any stock in All Paving, Inc., they have no standing to assert any claims against Daren for disgorgement of any amounts they allege were improperly withdrawn from All Paving, Inc. Even on the merits, though, their expert's disgorgement analysis failed to substantiate any claim asserted. The disgorgement analysis consisted of their expert's computation of amounts withdrawn from All Paving, Inc. from 2017 through 2021, for which their expert did not have records to substantiate transactions. As pointed out at trial, though, in many instances their expert presumed that because Daren had not produced substantiating records, any unsubstantiated expenditures therefore must have been for an improper purpose. The expert acknowledged, however, that while there were some discovery disputes in state court over this missing information, Patrick and Elizabeth never brought this matter before the Bankruptcy Court to resolve.[74]

Thus, it is a stretch to conclude that any funds should be disgorged simply because an expert doesn't have the information to explain a transaction when his clients could have requested that information in this case. Had they requested it, and

---

[72] TT 643:12 – 646:8.
[73] Nor does All Paving and Sealcoating, LLC – which has never asserted any ownership interest in All Paving, Inc. – have any claim against Daren with respect to the value of All Paving, Inc.'s stock.
[74] TT 864:24 – 865:20.

then Daren failed to provide it, an adverse inference might be appropriate. But here, Patrick, Elizabeth, and their expert witness are asking the Court to draw an adverse inference simply because their expert didn't have the information. The Court declines to do that. Regardless, both through cross-examination of their expert witness,[75] as well as Daren's own testimony,[76] nearly all the allegedly improper distributions were adequately explained at trial. Patrick and Elizabeth have therefore failed to prove that Daren caused All Paving, Inc. to make any improper distributions, let alone that they suffered any injury as a result.

2. *There is No Evidence of Any Other Claims for Damages Against Daren.*

Aside from his calculations of the value of All Paving, Inc. and the amount allegedly improperly withdrawn from All Paving, Inc., Patrick and Elizabeth's expert witness candidly acknowledged that he did not calculate *any* other debt that Daren owed to Patrick, Elizabeth, or All Paving and Sealcoating, LLC.[77] Indeed, he admitted that his report does not even mention All Paving and Sealcoating, LLC, and that he did not review any financial documents related to All Paving and Sealcoating, LLC.[78] While there was substantial evidence and testimony about ownership and control of the domain name allpaving.com and the "All Paving" trademark, trade name, and logo, no component of the proof of claim – and no evidence at trial – supported any amount of damages in respect of this claim. Other than their claims that were

---

[75] TT 785:1-787:19; 847:12-23; 848:4-864:8; 866:2-868:3
[76] TT 1447:20-1464:23.
[77] TT 800:16 – 801:15.
[78] TT 801:6-15.

contingent on a determination that they owned 87.5% of the stock in All Paving, Inc., there was no other evidence at trial of *any* damages that Daren caused to Patrick, Elizabeth, or All Paving and Sealcoating, LLC, that would support any amount of a claim against Daren's bankruptcy estate.

It was clear from the evidence, though, that All Paving, Inc. was originally capitalized by Patrick, Elizabeth, and All Paving and Sealcoating, LLC – through cash advances, credit support, guaranties, goodwill, use of equipment, use of staff, use of office space, and other tangible and intangible support. But with the Court having found that Daren owns all of All Paving, Inc.'s stock, any contributions by Patrick, Elizabeth, or All Paving and Sealcoating, LLC, could only have been in the form of undocumented loans to All Paving, Inc. And to the extent any of those loans remain unpaid, claims for repayment would be claims against All Paving, Inc., but not against Daren. But whether All Paving, Inc. still owes a debt to Patrick, Elizabeth, or All Paving and Sealcoating, LLC, is not an issue this Court needs to resolve to determine who owns the stock of All Paving, Inc., how much (if anything) Daren owes his parents and All Paving and Sealcoating, LLC, and if he does owe them anything, whether those debts are dischargeable. Based on the evidence, the Court finds that Daren did not owe any debts to Patrick, Elizabeth, or All Paving and Sealcoating, LLC, as of his bankruptcy petition date.

    C.   <u>Daren Does Not Owe Any Non-Dischargeable Debts to Patrick, Elizabeth, or All Paving and Sealcoating, LLC.</u>

For the reasons discussed above, Patrick and Elizabeth failed to prove that Daren owes them any debt – let alone a debt for money, property, services, or an

extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud. Daren certainly took advantage of his parents' lack of legal sophistication and ultimately, he benefitted from his own ineptitude in setting up All Paving, Inc. But based on the legal requirements to establish a corporation, the Court has found that Daren owns 100% of the issued and outstanding stock of All Paving, Inc., and that he has no liability to his parents in respect of his acquisition of that stock. Thus, with no debt to his parents relating to Daren's ownership and control of All Paving, Inc., Patrick and Elizabeth have failed to prove that Daren owes them any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud.

While the facts do show a series of events, activities, or communications which, when considered collectively, might have created a false and misleading set of circumstances or a false and misleading understanding of a transaction by Patrick and Elizabeth, his parents nevertheless failed to prove that Daren wrongfully induced them to transfer property or extend credit *to him*.[79] The mistake they made was trusting Daren to properly incorporate All Paving, Inc., and then operating as if its organization had been completed, when it had not. But even if that was actionable against Daren, they failed to prove any damages, and therefore have no claim against him for a debt to the extent obtained by false pretenses. Nor did they prove that Daren

---

[79] *See Saks*, 2022 WL 18273866, at *6. And as noted, even if they were wrongfully induced by All Paving, Inc. to transfer property or extend credit to it, to the extent not settled in April 2017, those would be claims against All Paving, Inc., not Daren.

owes them any debt due to any false representations he made to them that caused them to transfer property or extend credit *to him*.[80] And they failed to prove that he owes them any debt resulting from deceit, artifice, trick, or design involving the direct and active operation of Daren's mind used to circumvent and cheat them.[81]

As for any debt that may be excepted from discharge for embezzlement, Patrick and Elizabeth failed to prove that Daren embezzled any money from them. To put a finer point on it, they failed to prove that Daren fraudulently appropriated any property entrusted by them *to him*.[82] They have also failed to prove that Daren embezzled any money from All Paving, Inc. But in any event, because the Court determined they do not own any stock of All Paving, Inc., they lack standing to bring this claim on its behalf.

Finally, Patrick, Elizabeth, and All Paving and Sealcoating, LLC have failed to prove that Daren owes any debt for a willful and malicious injury to any of them or their property. Specifically, while they did prove that Daren did and said some reprehensible things,[83] they failed to prove any injury as a result of his conduct. This includes any acts by Daren to control the domain name allpaving.com, such as changing the name of the purchaser on the domain purchase agreement from "All Paving and Sealcoating" to "All Paving, Inc." and impeding access by All Paving and Sealcoating, LLC's employees to their email accounts. Critically, though, neither

---

[80] *See id.*
[81] *See id.*
[82] *See Keitel*, 2018 WL 9597494, at *3.
[83] This includes physically threatening both his mother and Bob Holland, and calling his mother an unspeakable name. TT 928:9 – 930:11.

Patrick, Elizabeth, nor All Paving and Sealcoating, LLC have proven any injury from this conduct. With no injury, the Court cannot find any damages, and therefore no debt for any willful and malicious injury to Patrick, Elizabeth, or All Paving and Sealcoating, LLC, that could be excepted from discharge. Accordingly, Patrick, Elizabeth, and All Paving and Sealcoating, LLC have failed to prove that Daren owes any of them any debt, let alone one that should be excepted from discharge under Bankruptcy Code sections 523(a)(2)(A), (a)(4), or (a)(6).

## IV.    Conclusions of Law.[84]

The first step to establish a corporation under the FBCA[85] is for the incorporator to deliver articles of incorporation to the Florida Department of State.[86] That happened here on September 19, 2013, when Daren, as incorporator, filed the Electronic Articles of Incorporation for All Paving, Inc., with the Florida Department of State.[87] Under Florida Statutes section 607.0203, All Paving, Inc.'s corporate existence began on that date. After incorporation, though, there are still several organizational steps a corporation must take before it can have a functioning board of directors and issue stock. Without completing the organization, without electing directors to complete the organization, and without the articles of incorporation reserving to shareholders the right to issue stock, under Florida Statutes section

---

[84] To the extent any of these conclusions of law are determined to constitute findings of fact, they are adopted as such. And to the extent any of these conclusions of law are determined to constitute mixed questions of law and fact, an appellate court should consider them under the standard set forth in *Village at Lakeridge*, 138 S. Ct. at 967.

[85] Fla. Stat. §§ 607.0101-613.

[86] Fla. Stat. §§ 607.0201; 607.01401(16).

[87] Pl.'s Ex. 32.

607.0621, All Paving, Inc. could not yet issue any shares of stock. In this case those next steps were not taken until nearly six years later.

The next step required after incorporation is to hold an organizational meeting pursuant to Florida Statutes section 607.0205. Under this section, if initial directors were not named in the articles of incorporation (they were not here), then the incorporator is required to "hold an organizational meeting at the call of a majority of the incorporators."[88] The purpose of this meeting is to either elect directors and complete the corporation's organization, or to elect a board of directors who will complete the organization.[89] Here, because Daren was the only incorporator, only he could hold the organizational meeting.[90] Under Florida Statutes section 607.0205(2), which permits actions required to be taken at an organizational meeting to be taken without a meeting if evidenced by a written consent signed by each incorporator or director, Daren, as sole incorporator, was authorized to elect himself as the sole director of All Paving, Inc. by written consent.

It is a basic tenet of corporate law that a corporation acts through its board of directors.[91] And under Florida law, only a board of directors can authorize the

---

[88] Fla. Stat. § 607.0205(1)(b).

[89] *Id.*

[90] *See id.*

[91] *See* Fla. Stat. § 607.0801(2) ("All corporate powers shall be exercised by or under the authority of the board of directors of the corporation, and the business and affairs of the corporation shall be managed by or under the direction of, and subject to the oversight of, its board of directors, subject to any limitation set forth in the articles of incorporation or in an agreement authorized under s. 607.0732."); *see also Hullick v. Gibraltar Private Bank & Tr. Co.*, 279 So. 3d 809, 812–13 (Fla. 3d DCA 2019) ("Florida law has long considered a board of directors to be a corporation's management and has provided that the acts of a corporation's board of directors are the acts of the corporation itself.") (citing *Mease v. Warm Mineral Springs, Inc.*, 128 So. 2d 174, 179 (Fla. 2d DCA 1961) ("The board of directors of a corporation represents the corporate body, and the directors are entrusted with authority to conduct and manage the corporate affairs."); *Jacksonville Am. Pub. Co. v. Jacksonville Paper Co.*, 143

issuance of shares of stock, unless that power was reserved to the shareholders in the articles of incorporation.[92] Nothing in All Paving, Inc.'s articles of incorporation reserved to the shareholders the power to issue shares of stock. Accordingly, the power to issue shares of stock resided solely with the board of directors.[93]

Florida law also authorizes a board of directors to retroactively ratify actions,[94] which may relate back to the original act if the rights of third parties have not been affected in the interim.[95] Here, while Patrick and Elizabeth may argue that their rights were affected in the interim between incorporation of All Paving, Inc. and the retroactive issuance of shares, the fact is that until All Paving, Inc. completed its corporate organization, elected directors, and issued stock, Patrick and Elizabeth had

---

Fla. 835, 197 So. 672, 677 (1940) (corporation's business is "managed by a president, a board of directors . . . ."); *Schein v. Caesar's World, Inc.*, 491 F.2d 17, 20 (5th Cir. 1974) ("[I]t is to be noted that the management of corporate business is vested in the directors of a corporation . . . .") (applying Florida law); 19 C.J.S. CORPORATIONS § 538 ("A corporation's board of directors is the governing body of the corporation . . . the board . . . is vested with the control and management of the corporation, including the management of corporate business and affairs, the management of corporate property or assets, and litigation authority. All corporate power is vested in the board of directors . . . .")).

[92] Fla. Stat. § 607.0621(1).

[93] Fla. Stat. § 607.0621(2) ("The board of directors may authorize shares to be issued for consideration consisting of any tangible or intangible property or benefit to the corporation, including cash, promissory notes, services performed, promises to perform services evidenced by a written contract, or other securities of the corporation.").

[94] *Gentry-Futch Co. v. Gentry*, 106 So. 473, 479 (Fla. 1925) ("While a corporation cannot ratify absolutely void and ultra vires acts, it may, like an individual, ratify and [*sic*] act done on its behalf which it had the power to do or to authorize to be done in the first instance.") (citing FLETCHER ON CORP. vol. 4, p. 3378 *et seq.*; 14a C. J. 373–381; *State v. Fla. Cent. R. Co.*, 15 Fla. 690 (1876); *Nat'l Sur. Co. v. Williams*, 77 So. 212, 219 (Fla. 1917)); *First Telebanc Corp. v. First Union Corp.*, 2007 WL 9702557, at *9 (S.D. Fla. 2007) ("the law is clear that a board may ratify any act which it could have originally authorized.").

[95] *First Telebanc Corp.*, 2007 WL 9702557, at *10 (citing *Boyce v. Chem. Plastics, Inc.*, 175 F.2d 839, 842 (8th Cir. 1949)); *Cook v. Tullis*, 85 U.S. 332, 334 (1873) ("The ratification by one of the unauthorized act of another operates upon the act ratified precisely as though authority to do the act had been previously given, except where the rights of third parties have intervened between the act and the ratification. The retroactive efficacy of the ratification is only subject to this qualification, that intervening rights of third persons are not defeated by the ratification."); *see also* Fla. Stat. § 607.0821 (directors may act by written consent without a meeting, with such action "effective when the last director signs the consent and delivers the consent to the corporation, *unless the consent specifies a different effective date*.") (emphasis added).

no rights in and to All Paving, Inc., because they were not yet shareholders. Thus, when Daren – as incorporator – finally held an organizational meeting on July 3, 2019, and elected himself as director, it was an appropriate exercise of corporate authority under Florida law for him (as sole director) to retroactively ratify the issuance of shares of stock in All Paving, Inc. as of September 19, 2013.

Florida Statutes section 607.0732 does permit an agreement among shareholders to dispense with many requirements of the FBCA. But that section requires, among other things, that any such agreement be "[s]et forth or referenced in the articles of incorporation or bylaws and approved by all persons who are shareholders at the time of the agreement; or . . . [s]et forth in a written agreement that is signed by all persons who are shareholders at the time of the agreement and such written agreement is made known to the corporation."[96] No such agreement was set forth or referenced in the articles of incorporation or bylaws of All Paving, Inc., or in any other written agreement signed by all persons who were shareholders at the time of the agreement.

Indeed, the entire dispute in this case is centered on the fallacy that any of the Dalys owned any shares of stock in All Paving, Inc. at any time before All Paving, Inc. had completed its corporate organization and actually issued shares to its stockholders. Had Daren (who does have a law degree) or his friend Joseph Fahrendorf (who is a lawyer) properly completed the corporate organization of All Paving, Inc. (rather than just filing articles of incorporation and then proceeding as

---

[96] Fla. Stat. § 607.0732(2)(a).

if it had been properly organized), it would have been permissible for Daren and his parents to agree under Florida Statutes section 607.0732 in the articles of incorporation, the bylaws, or other writing, to various provisions of corporate governance otherwise inconsistent with the FBCA – including waiving many corporate formalities that otherwise would have to be followed. But because the organization wasn't completed until 2019, and because shares were not issued until then, no agreements between Daren and his parents otherwise inconsistent with the FBCA would have been effective under section 607.0732 before then (nor were any such agreements retroactively approved at that time).

A Florida corporation's ability to issue uncertificated shares of stock does not lead to any different result. Under Florida Statutes section 607.0626, a corporation may issue uncertificated shares of stock, unless its articles of incorporation or bylaws state otherwise.[97] But even then, the corporation must first have authorized the issuance of the shares.[98] And if so authorized, the corporation then must "[w]ithin a reasonable time after the issuance or transfer of shares without certificates," deliver to the shareholder a written statement of certain information that would be required on certificates if the shares had been certificated.[99]

Here, while certificated stock was not issued until 2019 (retroactively to 2013), there is no evidence that All Paving, Inc. ever issued any uncertificated shares of stock. That Patrick and Elizabeth have a belief to the contrary based on their intra-

---

[97] Fla. Stat. § 607.0626(1).
[98] *See* Fla. Stat. § 607.0621.
[99] Fla. Stat. 607.0626(2). This information includes the name of the corporation, the name of the person to whom the stock is issued, and the number and class of shares. Fla. Stat. § 607.0625(2).

family agreements with Daren does not make it so. Uncertificated shares can only be issued if authorized by the corporation.[100] But a corporation can only authorize them through action of its board. And its board can only act after directors are named or elected. Because a board was not elected until July 2019, it would have been impossible for All Paving, Inc. to have issued any uncertificated shares of stock before then. And while upon completing its corporate organization and electing directors it could then have issued uncertificated shares of stock retroactively, there is no evidence this was ever done. To the contrary, the evidence clearly shows that after belatedly completing its organization, All Paving, Inc. authorized issuance of 100 certificated shares of stock, all of which Daren now holds.

Notwithstanding these clear requirements of the FBCA, Patrick and Elizabeth argue – based on two old Florida District Court of Appeals decisions, *Etheredge v. Barrow*[101] and *Zinger v Gattis*[102] – that corporate formalities need not be followed in closely held corporations, and that the Court should ignore the clear requirements of the FBCA and instead consider testimony and evidence about agreements among the parties and representations to third parties (including banks, suppliers, and customers), to determine who owns the stock of All Paving, Inc. But both cases predated the July 1, 1990 effective date of the FBCA,[103] which was enacted in 1989[104]

---

[100] *See* Fla. Stat. § 607.0626.
[101] 102 So. 2d 660 (Fla. 2d DCA 1958).
[102] 382 So. 2d 379 (Fla. 5th DCA 1980).
[103] 1989 Fla. Sess. Law Serv. 89-154, § 168 (West).
[104] *Id.*

based on the 1984 Model Business Corporation Act.[105] To the extent those cases had any applicability before the FBCA, they no longer do.

As discussed, the FBCA does allow for shareholder agreements to contravene certain requirements of the FBCA,[106] but those agreements must either be set forth or referenced in the articles of incorporation or bylaws, or set forth in a separate written agreement signed by all persons who are shareholders at the time of the agreement.[107] To the extent *Etheredge* or *Zinger* stood for a common law proposition that corporate formalities need not always be followed in closely-held corporations, Florida Statutes section 607.0732 supersedes any such rule, and essentially serves the same purpose, albeit now with clearly defined parameters as to when and how it applies. As stated in *Sackett v. Shahid*,[108] a more recent Florida District Court of Appeal decision issued after the enactment of the FBCA:

> where a party controls a closely held corporation and desires to establish important rights and interests through the corporation, the following of so-called "corporate formalities" is important. In fact, large parts of the field of corporate law have to do with requirements which may appear to be mere formalities. Corporations come into existence and are accorded their characteristics because of formal acts. . . . As Federal Circuit Judge Richard A. Posner has observed, corporate law "is an area of law where formalities are important, as they are the method by which sophisticated businessmen make their contractual rights definite and limit the authority of courts to undo their deal." . . . As a result, a person

---

[105] *See Winner v. Cataldo*, 559 So. 2d 696, 697 (Fla. 3d DCA 1990) (noting that the FBCA is patterned on the Model Business Corporation Act); *Harry Rich Corp. v. Feinberg*, 518 So. 2d 377, 381 (Fla. 3d DCA 1987) (observing that Florida Statutes chapter 607 was modeled on the Model Business Corporation Act).

[106] Fla. Stat. § 607.0732.

[107] Fla. Stat. § 607.0732(2).

[108] 722 So.2d 273.

acting through a corporation disregards these formalities at his or her risk.[109]

Most, if not all, of the disputes between Daren and his parents could have been avoided had he properly proceeded with an organizational meeting after forming All Paving, Inc. in 2013, rather than waiting until 2019 after litigation had ensued. But because All Paving, Inc. did not complete its organization until July 2019 and did not (and could not) issue stock until then – and because a board of directors may ratify past actions retroactively – the Court concludes that the stock ledger provided by Daren is a proper corporate record, which reflects Daren's ownership of all 100 shares of its issued and outstanding stock as of his bankruptcy petition date. Although this stock ledger and the stock certificates were clearly prepared well after the fact, the Court would not characterize them as "fabricated" or even as being "backdated" (to the extent Patrick and Elizabeth use those terms pejoratively). They were simply ratified after the fact, and effective as of an earlier date, all of which is permitted under Florida law.[110]

Conversely, Patrick and Elizabeth's purported stock ledger and stock certificates were actually "fabricated," because a predicate to the issuance of stock in any corporation is that the board authorize shares to be issued, unless that power is reserved to the shareholders by the articles of incorporation.[111] Here, that power was not reserved to the shareholders by the articles of incorporation. Accordingly, until

---

[109] *Id.* at 276 (citing §§ 607.0202, 607.0203 and 607.0302, Fla. Stat. (1997); *Frandsen v. Jensen–Sundquist Agency, Inc.*, 802 F.2d 941, 947 (7th Cir. 1986)).
[110] *See* notes 94, 95, *supra.*
[111] Fla. Stat. § 607.0621.

All Paving, Inc. had a validly appointed board of directors, it could not issue any shares of stock. But All Paving, Inc. did not have a board of directors until the organizational meeting held on July 3, 2019 – nearly six years after it was incorporated. So, while shareholders may take certain actions by written consent without a meeting under Florida Statutes section 607.0704, any actions purportedly taken by Patrick and Elizabeth as majority shareholders[112] – including any purported issuance of stock – were all ultra vires, because they were not majority shareholders of All Paving, Inc. at any time, and did not have authority to take those actions. As explained, neither Patrick and Elizabeth, Daren, nor anyone else was or could have become a shareholder of All Paving, Inc. until an organizational meeting was held, directors were elected, and shares of stock were issued. That had not been done at the time Patrick and Elizabeth took any of these purported actions. So the premise upon which they relied to take them is false, and they had no right to take any such actions on behalf of All Paving, Inc.

Likewise, because they do not own any stock in All Paving, Inc., Patrick and Elizabeth lack standing to assert any claim against Daren on behalf of All Paving, Inc.[113]

---

[112] *See, e.g.*, Pl.'s Ex. 26 (June 29, 2017 purported Action by Written Consent of a Majority of Owners/Shareholders of All Paving, Inc.); Pl.'s Ex. 27 (June 29, 2017 purported Action by Written Consent of the Board of Directors of All Paving, Inc.).

[113] *See* Fla. Stat. § 607.0741 ("(1) A shareholder may not commence a derivative proceeding unless the shareholder is a shareholder at the time the action is commenced and: (a) Was a shareholder when the conduct giving rise to the action occurred; or (b) Whose status as a shareholder devolved on the person through transfer or by operation of law from one who was a shareholder when the conduct giving rise to the action occurred.").

Finally, for a debt to be excepted from a debtor's discharge, there must be a debt to begin with. But neither Patrick, Elizabeth, nor All Paving and Sealcoating, LLC, have proven any claim against Daren. Accordingly, he does not owe them any debts, let alone a debt that could be excepted from discharge.

## V.    Conclusion.

Doing business in the corporate form is a privilege. It comes with many advantages, not the least of which is limited liability. But those advantages come at a cost – compliance with corporate laws. That Daren (a law school graduate) abused his parents' trust and took advantage of their lack of sophistication in legal matters – not to mention their hard work, experience, and credit – as a springboard to his own business success, is unfortunate. But it does not amount to fraud. The way Daren went about forming All Paving, Inc. – with its lack of corporate governance for nearly six years and its belated retroactive approval of certain actions – while certainly not best practices, nevertheless eventually complied with Florida law. And under Florida law, Daren owned 100% of the issued and outstanding stock of All Paving, Inc. as of his bankruptcy petition date, which stock is therefore property of his bankruptcy estate under 11 U.S.C. § 541(a).

Patrick, Elizabeth, and All Paving and Sealcoating, LLC have failed to prove that Daren owed them any debt as of his bankruptcy petition date. Thus, under 11 U.S.C. § 502(b), Claim No. 13-1 in the amount of $4,051,277.41 filed by Patrick, Elizabeth, and All Paving and Sealcoating, LLC, will be disallowed in its entirety.

Finally, because they have failed to prove that Daren is liable to them for any debt – let alone a debt that might be excepted from discharge – judgment will be

entered against Patrick, Elizabeth, and All Paving and Sealcoating, LLC under 11 U.S.C. § 523(a), determining that they do not hold any debts against Daren that are excepted from discharge.

The Court will enter orders consistent with the foregoing in Daren's main bankruptcy case and will enter final judgment in his favor in this adversary proceeding.

### # # #

*Copies furnished to all parties of record via CM/ECF.*