**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:                                          Case No. 22-15694-BKC-SMG

DAREN C. DALY,                              Chapter 11 (Sub V)

      Debtor

_____/

**DEBTOR'S *SECOND[1] MODIFIED* SUBCHAPTER V PLAN OF REORGANIZATION**

**You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan.  To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.**

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN.  IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY THE DEADLINE ESTABLISHED BY THE COURT.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY TBD. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: U.S. BANKRUPTCY COURT, 299 E. BROWARD BLVD. #308, FT. LAUDERDALE, FL 33301.**

**Your rights may be affected by this Plan. You should consider discussing this document with an attorney**

                                      **DGIM Law, PLLC**
                                      *Counsel for the Debtor, Daren C. Daly*
                                      2875 NE 191st Street, Suite 705
                                      Aventura, FL 33180
                                      Phone: (305) 763-8708

                                        */s/ Monique D. Hayes*
                                        Isaac Marcushamer, Esq.
                                        Florida Bar No. 0060373
                                        isaac@dgimlaw.com
                                        Monique D. Hayes, Esq.
                                        Florida Bar No. 0841573
                                        monique@dgimlaw.com

---

[1] This modification only adds treatment for the student loans that the Debtor owes the U.S. Department of Education.

## TABLE OF CONTENTS

ARTICLE 1 BRIEF HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR
PURSUANT TO 11 U.S.C. SECTION 1190(1)(A) ........................................................1

    1.1 Nature of Debtor's Business ................................................................................1

    1.1.1 Filing of the Debtor's Chapter 11 Case .........................................................1

    1.3 Current and Historical Financial Conditions .....................................................1

    1.4 Events Leading to the Filing of the Bankruptcy Case ........................................1

    1.5 Significant Events During the Bankruptcy Case .................................................2

    1.6 Projected Recovery of Avoidable Transfers ......................................................2

ARTICLE 2 LIQUIDATION ANALYSIS PURSUANT TO 11 U.S.C. SECTION 1190(1)(B)....2

ARTICLE 3 PLAN IMPLEMENTATION AND FEASIBILITY.......................................3

    3.1 Projections for Implementation of Plan Pursuant to 11 U.S.C. Section 1190(1)(C) .....3

    3.2 Means for implementation of the Plan................................................................3

ARTICLE 4 CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS
UNDER THE PLAN....................................................................................................3

ADMINISTRATIVE CLAIMS ....................................................................................4

    4.1 Compensation of Debtor's Counsel ...................................................................4

    4.2 Compensation of Subchapter V Trustee ............................................................4

    4.3 Payment of Administrative Claims.....................................................................5

UNSECURED PRIORITY TAX CLAIMS....................................................................5

    4.4 Unsecured Priority Claims.................................................................................5

CLASSES OF CLAIMS TREATED UNDER THE PLAN .............................................5

    4.5 Classes of Claims and Treatment Under the Plan...............................................5

        A. Class 1- Broward County (Claim No. 2)....................................................5

B. Class 2- Americredit Financial Services, Inc. dba GM Financial (Claim No. 3)6

C. Class 3- General, Non-Priority, Unsecured Claims (Claim Nos. 4-6 together with Undisputed Scheduled Claims)...................................................6

D. Class 4- Business Guaranty Claims (Clam Nos. 1. 7, 8, 9, 10, 11 and 14 together with Scheduled Claims of the US Small Business Administration and Other Business Creditors ...............................................................................7

E. Class 5- The Soto Law Group, P.A. (Claim No. 12-1) ......................................7

F. Class 6- Patrick Daly and Elizabeth Daly (Claim No. 13) .................................7

ARTICLE 5- ALLOWANCE AND DISALLOWANCE OF CLAIMS ........................................8

5.1 Meeting of Disputed Claim........................................................................................8

5.2 Effect on Distribution ...............................................................................................8

ARTICLE 6- PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES 8

6.1 Executory Contracts and Unexpired Leases ..............................................................8

ARTICLE 7- EFFECT OF CONFIRMATION AND DISCHARGE OF DEBTOR ...................9

7.1 Binding Effect...........................................................................................................9

7.2 Plan Confirmed Under 11 U.S.C. Section 1191(a)....................................................9

7.3 Plan Confirmed Under 11 U.S.C. Section 1191(b)....................................................9

7.4 Exculpation ..............................................................................................................9

7.5 Injunction ...............................................................................................................10

7.6 Terms of Injunction of Stays...................................................................................11

ARTICLE 8- RESERVATION OF CERTAIN CAUSES OF ACTION......................................11

ARTICLE 9- TRUSTEE APPOINTED UNDER SUBCHAPTER V OF THE CHAPTER 11

TERMS AND COMPENSATION ...........................................................................................11

9.1 Term of Trustee under a Consensual Plan ...............................................................11

9.2 Term of Trustee under a Non-Consensual or Cramdown Plan..................................11

ARTICLE 10- UNCLAIMED DISTRIBUTIONS, AMENDMENT OF CLAIMS AND POSTPETITION INTEREST AND FEES ...................................................................12

ARTICLE 11- REMEDIES UPON DEFAULT BY DEBTOR ........................................13

ARTICLE 12- GENERAL PROVISIONS ....................................................................13

    12.1 Definitions and Rules of Construction ...............................................................13

    12.2 Tax Consequences of the Plan .........................................................................15

    12.3 Post Confirmation Management .......................................................................15

    12.4 Modification ....................................................................................................15

ARTICLE 13- CONCLUSION ...................................................................................15

Daren C. Daly, as the debtor and debtor-in-possession in the above-captioned bankruptcy case (the "Debtor"), having elected to file the above-captioned case under Subchapter V of Chapter 11 of the Bankruptcy Code, pursuant to sections 1189 and 1190 of the Bankruptcy Code, by and through undersigned counsel, respectfully files the following Plan of Reorganization:

## ARTICLE 1
## BRIEF HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR PURSUANT TO 11 U.S.C. § 1190(1)(A)

### 1.1. Nature of Debtor's Business

The Debtor is an individual, who is the 100% owner and operator of All Paving, Inc. and Resurface Industries, LLC. Through these entities the Debtor provides roadway solutions, including paving, concrete overlay, sealcoating and related services to municipalities and commercial customers. The Debtor's businesses operate in multiple counties in Florida. The principal office is located at 23123 N. State Road 7, Suite 250, Boca Raton, FL 33428. The Debtor's businesses are dependent on his business licenses, skill, relationships, and personal services.

The Debtor is a devout father and head-of-household. His family includes 6 minor children and his fiancé, who is a non-debtor and is not involved in the Debtor's businesses. As reflected in the Debtor's Schedules I and J, the Debtor income is used to satisfy the expenses of the family.

### 1.1.1. Filing of the Debtor's Chapter 11 Case

On July 26, 2022, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the Bankruptcy Court in Southern District of Florida, Fort Lauderdale Division.

### 1.3. Current and Historical Financial Conditions.

Since the start of this Bankruptcy Case the Debtor has filed his required Monthly Operating Reports. As reflected in the Monthly Operating Reports, the Debtor's current income is limited to salary-based income. The Debtor's income and expenses have been consistent over the past three years.

### 1.4. Events Leading to the Filing of the Bankruptcy Case.

Pre-petition, the Debtor was faced with mounting debts principally associated with his business operations and pending litigation in Broward County Circuit Court and the Fourth District Court of Appeal involving the Debtor's parents and related entities, including *All Paving, Inc. v. Daren C. Daly, et al.;* Case No. CACE 17-014794(09), *All Paving, Inc. v. All Paving & Sealcoating, LLC, et al.;* Case No. CACE 18-21093(08) and *All Paving & Sealcoating, LLC v.*

1

*Daren C. Daly, et al;* Appellate Case No. 4D22-1825. The debtor initiated this bankruptcy proceeding to reorganize his debts and resolve the litigation claims.

**1.5.    Significant Events During the Bankruptcy Case.**

During the Bankruptcy Case the following significant events have occurred:

- Retention of DGIM Law PLLC as bankruptcy counsel [ECF No. 5], approved by the Court [ECF No. 32].

- 341 Meeting of Creditors was held and concluded. [ECF No. 13].

- Patrick and Elizabeth Daly filed a Motion to Dismiss the Debtor's Chapter 11 Case [ECF No. 44], which was objected to by the Debtor [ECF No. 58], and denied by the Court [ECF No. 61]

- Patrick and Elizabeth Daly filed a Motion for Relief from the Automatic Stay [ECF No. 45], which was objected to by the Debtor [ECF No. 56], and denied by the Court [ECF No. 60]

- Patrick and Elizabeth Daly filed an Objection to the Debtor's Claim of Exemptions [ECF No. 51], which was sustained in part and resolved by the Court [ECF No. 63]

- The Debtor filed a number of claim objections which are pending before the Court [ECF Nos. 66, 67, 68, and 69]

- The Debtor successfully objected to the Claim of Patrick and Elizabeth Daly and All Paving and Seal Coating LLC [Claim 13-1] [ECF Nos. 190; 191].

- The Debtor successfully defeated the non-dischargeability action brought by Patrick and Elizabeht Daly and All Paving and Seal Coating LLC, *Daly et al. v. Daly*, 22-1391-SMG (the "Adversary") [Adversary ECF No. 185; 186][2]

**1.6.    Projected Recovery of Avoidable Transfers**

The Debtor does not anticipate recovering any avoidable transfers. The Debtor does not believe the estate holds any viable avoidance actions. The Debtor estimates the value of such actions to the estate to be $0.00.

## **ARTICLE 2**

## **LIQUIDATION ANALYSIS PURSUANT TO 11 U.S.C. §1190(1)(B)**

---

[2] Adversary ECF No. 185 and Main Case ECF No. 190 are collectively the "Ruling".

The Debtor's real and personal property are set forth in Schedule A/B [ECF No. 37].  A liquidation analysis is included by referenced and attached to the Plan as **Exhibit A**. The Debtor's value estimate for All Paving, Inc. and Resurface Industries, LLC is included by reference and attached to the Plan as **Exhibit A**.

## ARTICLE 3
## PLAN IMPLEMENTATION AND FEASIBILITY

### 3.1.    Projections For Implementation of Plan Pursuant To 11 U.S.C. § 1190(1)(C)

The Debtor projects that all plan payments will be funded by the Debtor's cash on hand, disposable income, and at the Debtor's option a loan, distributions, dividends, or indemnification obligations from the Debtor's businesses All Paving Inc. and/or Resurface Industries LLC. The Debtor projects that the disposable income resulting from his salary and the anticipated loan will be sufficient to fund his plan of reorganization. Additionally, All Paving Inc., has indemnification obligations to the Debtor, which may also be used to help fund the payments under the Plan. The Debtor's projection summary is included in **Exhibit A.** The Debtor reserves the right to seek authority to sell or otherwise dispose of exempt assets, if necessary, to fund his plan or reorganization. The confirmation order will specifically authorize the Debtor to take all actions necessary and legally permitted to implement the Plan in accordance with the foregoing.

### 3.2.    Means for Implementation of the Plan

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor.

The Debtor holds 100% of the membership interests in Resurface Industries, LLC. Furthermore, the Debtor holds 100% of the ownership interest (shares) in All Paving Inc., as determined by the Bankruptcy Court in the Ruling. Accordingly, the Debtor will have access to the profits of both companies along with the indemnification obligations from All Paving Inc. to him for his legal costs related to the ownership dispute. The Debtor will use these funds to pay his Administrative Creditors and his Priority Tax Claims. Any remaining funds more than the foregoing payments shall be held in reserve for Disputed claims as detailed in the Plan. Plan Payments to creditors during the life of the Plan will be funded from the Debtor's Disposable Income.

## ARTICLE 4
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

The Debtor's Plan must describe how its Creditors will be paid.  Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment.  For example, Administrative Expenses and Priority Tax Claims are not classified.

3

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled.  If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in impaired classes may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan

## ADMINISTRATIVE CLAIMS

**4.1.    Compensation of Debtor's Counsel**.

The Debtor has employed Isaac M. Marcushamer, Esq., and DGIM Law, PLLC ("DGIM") to represent him in this bankruptcy proceeding. The Debtor's counsel shall file a fee application consistent with the rules of this Court. Pre-petition, the Debtor paid Debtor's Counsel $68,143.00 prior to the filing of the bankruptcy. Of the $68,143.00 advance fee, $16,880.00 was utilized to satisfy fees incurred pre-petition and an additional $1,738.00 was utilized to satisfy pre-petition costs, including the filing fee. As reflected in the Modified Employment Application. DGIM has agreed to accept- subject to a final fee application- the sum of $400,000.00 for all work from the Petition Date through the dates covered by the 4th Interim fee application. DGIM has agreed to handle the appeal of the Ruling to the district court for a fixed fee of $18,000.00 with an additional fee of $5,000.00 if the district court orders oral argument. DGIM has agreed to handle confirmation (including if contested) and other related matters, for a fee not to exceed $30,000.00. The Debtor remains responsible for all court approved expenses. DGIM will file a final fee application for compensation to be heard with the other final fee applications in the case. The Debtor has agreed to apply the prepetition retainer against the already awarded interim fees and to make a payment of $100,000.00 towards the fees of DGIM. Any awarded by unpaid fees and any future fees that come due pursuant to the Modified Employment Application shall be paid in equal monthly installments of $10,000.00 starting on or before January 25, 2024, and continuing on the 25th of each month until all amounts are paid in full. The Debtor can prepay the amounts due at any time. The Modified Employment Application [ECF No.210] as approved by the Court [ECF No. 212] is adopted herein in full is made a part of this Plan and shall govern to the extent of any inconsistency between the language above and the Modified Employment Application [ECF No. 210].

**4.2.    Compensation of Subchapter V Trustee**.

Under section 330 of the Bankruptcy Code, the case-by-case Subchapter V Trustee shall be compensated for services and reimbursed for expenses.  However, the method of payment of the Subchapter V Trustee compensation depends on the provision under which the Plan is

confirmed. The Subchapter V Trustee compensation is estimated to be $50,000.00 through confirmation. The Subchapter V Trustee will apply to the Court for an award of compensation through the application process that is used by professionals. The Subchapter V Trustee will file a final fee application for compensation to be heard with the other final fee applications in the case. The Debtor shall pay the Subchapter V Trustee in full on the effective date or pursuant to an otherwise agreed upon payment plan.

If the Plan is confirmed on a consensual basis under section 1191(a) of the Bankruptcy Code, then the Subchapter V Trustee's service ends with substantial consummation of the Plan under section 1183(c)(1), and the Subchapter V Trustee may collect approved compensation for all services.

If the Plan is confirmed on a non-consensual basis under section 1191(b) of the Bankruptcy Code, then the Subchapter V Trustee will remain in place throughout the life of the Plan, and the Subchapter V Trustee may be entitled to additional compensation for services provided after confirmation. As such, the Subchapter V Trustee may file additional or supplemental fee applications throughout the life of the Plan.

**4.3.    Payment of Administrative Claims.**

If the Plan is confirmed under Section 1191(b), each administrative claimant shall be paid the full amount of their allowed administrative claim over 20-months in equal monthly installments commencing on the Effective Date unless the administrative claimant agrees to another treatment in writing.

If the Plan is confirmed under Section 1191(a), each administrative claim shall be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holders of the administrative claim and the Debtor.

<u>**UNSECURED PRIORITY TAX CLAIMS**</u>

**4.4.    Unsecured Priority Claims.**

No unsecured priority claims have been filed against the estate pursuant to 11 U.S.C. §507(a)(8). Nevertheless, to the extent such tax claims exist and are allowed as priority claims prior to the Effective Date, those claims will be paid in full plus applicable interest on the Effective Date.

<u>**CLASSES OF CLAIMS TREATED UNDER THE PLAN**</u>

**4.5.    Classes of Claims and Treatment Under the Plan**

**A.    CLASS 1 – Broward County (Claim No. 2)**

(a) Description: Broward County secured claim related to the Debtor's 2022 tax real estate tax obligation on his homestead.

5

(b) Treatment: Broward County shall have a claim against the Debtor in the amount of $10,323.48, and subject to an eighteen percent (18%) annual interest. This claim shall be paid in full on the Effective Date or when otherwise due, whichever is later. As such, the eighteen percent (18%) interest rate shall be inapplicable.

(c) Impairment: Class 1 is unimpaired.

**B.      CLASS 2 – Americredit Financial Services, Inc. dba GM Financial (Claim No. 3)**

(a) Description: GM Financial secured claim related to Debtor's family vehicle a 2020 Chevrolet Suburban.

(b) Treatment: GM Financial filed Proof of Claim No. 3 in the amount of $30,044.80, and subject to interest at a rate of three and ninety-nine hundredths (3.99%) per year. This claim will be paid in full in accordance with its terms. The Debtor shall reaffirm the debt obligation to GM Financial.

(c) Impairment: Class 2 is unimpaired.

**C.      CLASS 3 – General, Non-Priority, Unsecured Claims (Claim Nos. 4-6 together with Undisputed Scheduled Claims)**

(a)      Description: Class 3 consists of Class 3(a) which consists of the claims (Claim No. 4 and 5) of Capital One Bank and Class 3(b) which consists of the claim of Clayton Trial Lawyers, PLLC (Claim No. 6).

(b)      Treatment:

   a. If Class 3(a) or Class 3(b) elects to be paid on the Effective Date the Debtor shall pay 5% of the Claim as filed by the claimant on the Effective Date in full satisfaction of the Claim.
   b. If Class 3(a) does not elect the treatment in paragraph 3(a) above, then if the Debtor objects to the claim of Class 3(a) the Debtor shall pay the sum awarded, if any, by the Court pursuant to a final non-appealable order. Payment shall be due in equal sums, without interest, over the remaining Term of the Plan.
   c. If Class 3(b) does not elect the treatment in paragraph 3(a) above, then if the Debtor objects to the claim of Class 3(a) the Debtor shall pay the sum awarded, if any, by the American Arbitration Association by final non-appealable order. Payment shall be due in equal sums, without interest, over the remaining Term of the Plan.

(c) Impairment: Class 3 is impaired.

**D.      CLASS 4 – Business Guaranty Claims (Claim Nos. 1, 7, 8, 9, 10, 11, and 14 together with the Scheduled Claims of the US Small Business Administration and Other Business Creditors)**

(a) Description: Class 4 consists of disputed, secured[3] claims asserted against the Debtor and related to corporate obligations guaranteed by the Debtor. The claims in this class, as filed, total $354,169.14. Additional scheduled claims in this class total $2,000,000.00. The Debtor, in his capacity as guarantor, does not dispute the existence or validity of the claims in this class, but disputes the enforceability of each of the claims against the Debtor as the subject loans are not in default; the obligor on the debt, All Paving, Inc. is servicing the debt, and there is sufficient equity in the subject collateral to secure payment. Pursuant to the Order Sustaining the Debtor's Objection to Claim [ECF No. 106] Claim Nos. 1,7,8,9, and 10 have been disallowed. Pursuant to ECF No. 79 Claim No. 11 has been disallowed with treatment consistent herewith.  The Objection to Claim No. 14 remains pending [ECF No. 87].  Moreover, over the course of this case All Paving Inc., has paid off some of these obligations, nothing herein shall be construed to create an obligation of the Debtor that did not exist pursuant to the underlying documents.

(b) Treatment: The Debtor shall reaffirm his guaranty of the underlying business debts. Each business guaranty claim holder shall retain their lien interest in their collateral until paid in full. The Debtor has objected to the filed claims of the business guaranty holders as the respective loans are not in default and the claims are unenforceable against the Debtor or property of the Debtor's estate. A claim or interest in Class 4 shall be deemed "Disputed" until such claim or interest is deemed Allowed or Disallowed.

(c) Impairment: Class 4 is unimpaired.

**E.      CLASS 5 – The Soto Law Group, P.A. (Claim No. 12-1)**

(a) Description: Disputed secured and unsecured claim of The Soto Law Group, P.A. related to pre-petition legal services.

(b). Treatment: This claim shall be paid the sum of $100.00 in full satisfaction of its claim. The Debtor waives any right to reclaim any prepetition retainer from the claimant in this class.

(c) Impairment: Class 5 is impaired.

**F.      CLASS 6 – Patrick Daly and Elizabeth Daly (Claim No. 13)**

(a) Description: Class 6 consists of the disputed claims asserted by Patrick Daly and Elizabeth Daly related to their unsubstantiated claim of an interest in the Debtor's company All Paving, Inc.

(b) Treatment: This claim has been disallowed. No further treatment is necessary.

---

[3] The subject claims are not purported to be secured by property of the Debtor's estate. Instead, the claims are secured by property owned by the Debtor's company, All Paving, Inc.

However, because the claimants in this class have had their claim disallowed and are insiders of the Debtor, their vote shall not be considered for plan confirmation purposes pursuant to section 1129(a)(10) of the Bankruptcy Code.

G. CLASS 7- Non-dischargeable Claims of the U.S. Department of Education(a) Description: Disputed secured and unsecured claim of The Soto Law Group, P.A. related to pre-petition legal services.

(a). Description: Class 7 consists of the student loan claims that the Debtor owes to the U.S. Department of Education as serviced by Nalnet Inc.

(b). Treatment: This claim shall continue to be paid as per the Debtor's prepetition agreement with the U.S. Department of Education.

(c) Impairment: Class 7 is unimpaired.

## ARTICLE 5
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

**5.1.    Meaning of Disputed Claim**

A "disputed claim" is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:

> A.     A proof of claim has been field or deemed filed, and Debtor or another party in interest has filed an objection;

> or

> B.     The Debtor scheduled a claim and marked the claim disputed, contingent, or unliquidated in the schedules and the Debtor or other interested party has filed an objection.

**5.2.    Effect on Distribution.**

No distribution will be made, but all amounts that may be due under the Plan will be held in reserve on account of a disputed claim until such claim is allowed or disallowed by a final non-appealable order.

The Debtor shall retain the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

A claim that was scheduled as disputed, but with respect to which no proof of claim was filed shall be disallowed in its entirety upon confirmation of the Plan and no distribution shall be made on account of such claim.

## ARTICLE 6
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1.    Executory Contracts and Unexpired Leases**

A.    The Debtor assumes the following executory contracts and unexpired leases as of the Effective Date and this Plan shall also constitute a motion to assume:

> (i) The executory contracts with All Paving, Inc. with respect
> to the Debtor's employment; and
> (ii) The automobile finance agreement with Americredit
> Financial Services, Inc. dba GM Financial with respect to the
> Debtor's family vehicle.
> (iii) Any unfulfilled and remaining guaranties in Class 4.

B.    Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date, or that are subject of a pending motion to assume, and if applicable assign, Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

C.    A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than the later of: (i) 14 days after the date of the order confirming this Plan, or (ii) 14-days after the entry of the order granting the motion to reject.  Any such allowed claim shall be considered a general unsecured claim.

## ARTICLE 7
## EFFECT OF CONFIRMATION AND DISCHARGE OF DEBTOR

**7.1.    Binding Effect**.

The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former holders of Claims and Equity Interests, and their respective successors and assigns.

**7.2.    Plan Confirmed under 11 U.S.C §1191(a)**.

If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose  before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6).

**7.3.    Plan Confirmed under 11 U.S.C. §1191(b)**.

 If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of

the plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### 7.4.    Exculpation.

**Notwithstanding any provision contained in the Plan to the contrary, the Debtor, the Debtor's professionals, the Subchapter V Trustee, the Subchapter V Trustee's professionals, and any property of the foregoing (collectively, the "Exculpated Parties") shall not have or incur any liability to any entity for any pre-petition act taken or omitted to be taken in connection with, related to or arising from authorizing, preparing for or filing this bankruptcy, or any post-petition act taken or omitted to be taken in connection with, related to or arising from the formulation, negotiation, preparation, dissemination, implementation, administration of the Plan, the exhibits to the Plan, or any contract, instrument, or other agreement or document created or entered into in connection with the Plan, or any other post-petition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor, the bankruptcy case, or the confirmation or consummation of the Plan, including, but not limited to (i) any orders approving sales; (ii) formulating, preparing, disseminating, implementing, confirming, consummating, or administrating the Plan (including soliciting acceptances thereof); (iii) any contract, instrument, release or other agreement or document entered into or any action taken or not taken in connection with the Plan; or (iv) any distributions made pursuant to the Plan, except for acts constituting willful misconduct, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Notwithstanding the foregoing, for the avoidance of the doubt, this section does not (i) prevent or limit the ability of the Debtor to object to a Claim of an Exculpated Party on any basis other than matters exculpated herein, or (ii) prevent or limit the ability of the Debtor to object to, or defend against, on any basis (a) any Administrative Claim of an Exculpated Party for substantial contribution, or (b) any Administrative Claim of an Exculpated Party arising solely from the Exculpated Party's capacity as a director.**

### 7.5.    Injunction.

**The Confirmation Order shall provide, among other things, that all entities who have held, hold, or may hold Claims against the Debtor are, with respect to any such Claims, permanently, enjoined from and after the Confirmation Date from taking any of the following actions (other than actions to enforce any rights or obligations under the Plan): (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or any of their property; (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any encumbrance of any kind against the Debtor; (iii) asserting any right of setoff, directly or indirectly, against any obligation due the Debtor, or any of their property, except as contemplated or allowed by the Plan; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and (v) prosecuting or otherwise asserting any right, claim or cause of action against any Exculpated**

10

**Party, that has been exculpated pursuant to the Plan; provided, however, that the injunction provided herein above shall neither bar any entity from asserting any defense in an action commenced by or on behalf of the Debtor, nor prohibit any entity from asserting any right expressly preserved or contemplated by the Plan.**

**The Confirmation Order shall also provide, among other things, that all entities who have held, hold, or may hold Claims against the Debtor is permanently enjoined from and after the Confirmation Date from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any action or other proceeding of any kind with respect to any such Claim against the Debtor; (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor on account of any such Claim; and (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance or lien of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim; provided, however, that nothing contained in the Plan shall preclude (a) the IRS from pursuing an action against any entity, or (b) any governmental entity from pursuing a criminal action against any entity, then provided, further, that nothing in the Plan shall constitute a waiver of any rights or defenses of such persons with respect to such actions set forth in subsections (a) or (b) of this paragraph. All creditors, interest holders, and other parties with actual or constructive notice of this bankruptcy shall be bound by the injunctions set forth herein.**

**7.6.     Terms of Injunctions or Stays.**

**In any Plan confirmed pursuant to 11 USC 1191(a) or (b), property of the estate shall re-vest in the Debtor upon the Effective Date.  Unless otherwise provided in the Plan or an Order of the Court, all injunctions or stays provided for in the bankruptcy case pursuant to sections 105 or 362 of the Bankruptcy Code or otherwise in existence on the Confirmation Date, shall remain in full force and effect until the bankruptcy case is closed, except a bankruptcy case that is "conditionally closed" or "administratively closed" shall not be deemed to be closed for purposes of this section.**

**ARTICLE 8**
**RESERVATION OF CAUSES OF ACTION**

The Debtor shall retain the right to abandon, pursue or settle any, and all, claims and causes of action that existed prior to the filing of the Petition.

The Debtor, pursuant to his business judgment, shall retain the right to abandon, settle, sell or assert the claims in instances he has been harmed.   Any recovery shall be escrowed and distributed pursuant to the Confirmation Order with any net proceeds that would be payable to the Debtor being used to supplement any payments due to any party pursuant to this Plan until allowed claims are paid in full, with any further balance of the recovery being retained by the Debtor.

## ARTICLE 9
## TRUSTEE APPOINTED UNDER SUBCHAPTER V OF CHAPTER 11 TERM AND COMPENSATION

**9.1.    Term of Trustee under a Consensual Plan.**

If the Plan of the Debtor is confirmed under section 1191(a) of the Bankruptcy Code, the service of the trustee appointed under Subchapter V of Chapter 11 (the "Subchapter V Trustee" or "Trustee") in the case shall terminate when the Plan has been substantially consummated. As such, the Debtor shall make all payments under the Plan, including any deposits required by the Plan to be distributed on confirmation.

**9.2.    Term of Trustee under a Non-Consensual or Cramdown Plan.**

If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, except as otherwise provided in the Plan or in the order confirming the Plan, the Subchapter V Trustee shall make payments to creditors under the Plan. As such, the following provisions shall apply to all claims and disbursements made by the Subchapter V Trustee under the Plan:

i. The Debtor shall file with the Court as a supplement to the Plan, and provide notice to all creditors at or before confirmation, a list of all the creditors and their addresses as listed on the Schedules and/or Proof of Claim who will be receiving payments under the Plan, the total amount to be paid to each creditor under the Plan (inclusive of all allowed interest and fees) and the payment terms and schedule for each creditor under the Plan.

ii. The Debtor shall timely pay to the Trustee all funds needed to make payments to creditors under the Plan.

iii. Within two (2) weeks of receiving the funds from the Debtor to make the Plan payments, the Trustee will disburse the amounts collected from the Debtor, to the holders of allowed claims pursuant to the treatment in their respective classes and as indicated below:

a. All payments under the Plan will be made by the Trustee to the holder of each allowed claim at the address of such holder as listed on the Schedules and/or Proof of Claim, unless the Trustee has been notified in writing of a change of address.

b. Any payment required to be made under the Plan on a day other than a business day shall be made on the next succeeding business day.

## ARTICLE 10
## UNCLAIMED DISTRIBUTIONS, AMENDMENT OF CLAIMS AND POSTPETITION INTEREST AND FEES

The following provisions regarding unclaimed distributions, amendments of claims, post-petition interest and fees applies whether the Plan in confirmed on a consensual or nonconsensual basis.

12

i.  Any distributions of cash or other property under the Plan that is unclaimed for a period of six (6) months after such distribution was made shall constitute unclaimed property and any entitlement of any holder of any claim to such distribution shall be extinguished, forever barred, and shall be returned to the Debtor. Claimants shall not be permitted to amend or otherwise modify any claim after the later of the claims bar date or the confirmation date without leave of the Bankruptcy Court. Any amendment to a claim filed after the later of the claims bar date or the confirmation date shall be deemed disallowed in full and expunged without any action by the Trustee or the Debtor unless the claimholder has obtained prior Court authorization for the filing of such amendment.  The Trustee shall have no obligation to recognize any transfer of any claim after distributions have started.

ii.  Unless expressly provided in the Plan or confirmation order, post-petition interest and fees shall not accrue on or after the Petition Date on account of any claim.

## ARTICLE 11
## REMEDIES UPON DEFAULT BY DEBTOR

If the Debtor fails to timely make any Plan payment to the Trustee or a Creditor as required by the terms of this Plan, then Trustee and/or Creditor may file and serve a notice of delinquency upon the Debtor and the Debtor's attorney at the below listed notice address.  The Debtor shall have 45-days from the date of the notice of delinquency to make all payments due under the Plan, including any payments that become due within 45-day period.  If the Debtor is seeking to cure the delinquency in a modified Plan, the Debtor must file a motion to modify the confirmed Plan within 45 days of the date of the notice of delinquency.  If the Debtor is not current with Plan payments on the 45th day after the date of the notice of delinquency or has not filed a motion to modify within that time-period, the Trustee and/or Creditor will file and serve a report of non-compliance and may, thereafter, seek the appointment of a Chapter 11 trustee, dismissal or conversion of the case to Chapter 7.  Provided, however, that no creditor of the Debtor shall be permitted to seek relief from the Bankruptcy Court for any alleged breach of any executory contract, any such breach shall be addressed in accordance with non-bankruptcy law. The Debtor reserves the right to seek reinstatement or reconversion.

**Address for Notice of Delinquency**:

Daren C. Daly
10248 NW 2 Court
Pompano Beach, FL 33076

Copy to:

Monique D. Hayes, Esq.
Counsel for Debtor
2875 NE 191st Street, Ste. 705
Aventura, FL 33180
Email: monique@dgimlaw.com

13

## ARTICLE 12
## GENERAL PROVISONS

**12.1.    Definitions and Rules of Construction**

A.    The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented below.

B.    "Allowed" means a claim or interest that either was not subject to a dispute or was a claim or interest subject to dispute that was resolved by a withdrawal of an objection to claim or and order entered overruling an objection or approving a settlement of an objected to claim or interest becoming final and non-appealable.

C.    "Disallowed" means a claim or interest that was subject to a dispute where such dispute was resolved by the withdrawal of the claim or interest or an order entered sustaining or approving a settlement whereby the claim or interest amount is reduced to zero, becoming final and non-appealable.

D.    "Disposable Income" means the Debtor's net income less expenses as reflected in the Debtor's Schedules I and J, respectively (i.e. $3,317.16 per month).

E.    "Effective Date" of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order.  If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

F.    "Plan" shall mean this plan of reorganization in its entirety, together with all addenda, exhibits, schedules and other attachments hereto, in its present form or as it may be modified, amended or supplemented from time to time.

G.    "Priority Claim" shall mean a Claim entitled to priority under section 507(a)(3)-(7) of the Bankruptcy Code.

H.    "Priority Tax Claim" shall mean a Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

I.    Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

J.    "Term".  The Term of the plan shall be 3 years (36 months) from the Effective Date.

K.    Binding effect:  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

14

L.        Captions: The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

M.        Controlling effect: Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

N.        Retention of Jurisdiction:  The Bankruptcy Court shall retain jurisdiction to enforce the terms of this Plan after the Effective Date of the Plan.

**12.2.  Tax Consequences of the Plan.**

***Creditors concerned with how the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.***

The following are the anticipated tax consequences of the Plan: (1) tax consequences to the Debtor as a result of the Plan; (2) general tax consequences on creditors as a result of any discharge, and (3) the general tax consequences on creditors as a result of the receipt of Plan consideration after Confirmation.

**12.3.  Post Confirmation Management.**

The Debtor is an individual. Accordingly, he will continue to manage his own affairs post-confirmation.

**12.4  Modification.**

The Debtor shall be permitted to modify the Plan further consistent with 11 U.S.C. §1193.

<u>**ARTICLE 13**</u>
<u>**CONCLUSION**</u>

Under the Plan, most creditors of the Debtor will participate in some manner in the distribution to be made thereunder. The Debtor believes that the distributions contemplated in the Plan are fair and afford all Claimants equitable treatment.

**ACCORDINGLY, THE DEBTOR RECOMMENDS THAT ALL CLAIMANTS AND INTEREST HOLDERS VOTE TO ACCEPT THE PLAN.**

## **EXHIBIT A**

## **LIQUIDATION ANALYSIS**

**Daren C. Daly**
**Hypothetical Liquidation Analysis**
**Projected Liquidation Under Chapter 7**
**As of December 15, 2023**
**(unaudited)**

| Note Ref. | | Values $ | % | Payout |
|---|---|---|---|---|
| | **Assets (A)** | | | |
| 1 | Cash On Hand as of December 15, 2023 | $ 13,000.00 | | |
| 2 | Projected Debtor Contribution | $ - | | |
| 3 | Liquidation Value of Debtor's Interests in AllPaving Inc | $ 30,000.00 | | |
| 4 | Liquidation Value of Debtor's Interests in Resurface Industries | $ 275,000.00 | | |
| | | | | |
| | Gross Liquidation Proceeds Available for Admin and Priority Claims | $ 318,000.00 | | |
| | **Administrative Expenses (E)** | | | |
| 5 | Sub V Trustee Fees & Accumulated & Unpaid Ch. 11 Professional Fees | $ 498,000.00 | 100.00% | 253,564 |
| 5 | Ch. 7 Professional Fees | $ 50,000.00 | 100.00% | 50,000 |
| 6 | Chapter 7 Trustee fee | $ 12,000.00 | 100.00% | 12,000 |
| | | $ 560,000.00 | | |
| | **Claims (C)** | | | |
| 7 | Priority Claims | $ - | | |
| 8 | Priority Tax Claims | $ - | 0.00% | $ - |
| 9 | General Unsecured Claims | $ 264,950.29 | 0.92% | 2,436 |
| 10 | | $ - | | $ - |
| 11 | | | | $ - |
| 12 | | | | $ - |
| 13 | | $ - | | $ - |
| | | | | $ 318,000 |

**Daren C. Daly**
**Projected Distributions Under Chapter 11 Plan**
**As of December 15, 2023**
**(unaudited)**

| Note Ref. | | Values $ | % | Payout |
|---|---|---|---|---|
| | **Assets (A)** | | | |
| 14 | Cash On Hand as of December 15, 2023 | $ 13,000.00 | | |
| 15 | Projected Debtor Contribution | $679,548.40 | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| | Gross Liquidation Proceeds Available for Admin and Priority Claims | $692,548.40 | | |
| | **Administrative Expenses (E)** | | | |
| 22 | Trustee Fees | $ 50,000.00 | 100.00% | $ 50,000.00 |
| 23 | U.S. Trustee Fees | $ - | | $ - |
| 24 | Accumulated & Projected Professional Fees to Effective Date | $448,000.00 | 100.00% | $448,000.00 |
| | | $448,000.00 | | $ - |
| | **Claims (C)** | | | |
| 26 | Class 1 | $ 10,323.48 | 100.00% | $ - |
| 27 | Class 2 | $ 30,044.80 | 100.00% | $ 30,044.80 |
| 28 | Class 3 | $138,403.60 | 100.00% | $ 138,403.60 |
| 29 | Class 4 | $ - | 0.00% | $ - |
| 30 | Class 5 | $ 100.00 | 0.00% | $ 100.00 |
| 31 | Class 6 | $ - | 0.00% | $ - |
| 32 | | | | |
| | Amount Remaining to fund | | | $ 692,548.40 |
| | | | | $ 422,717.240 |

**Notes:**

3 Debtor's estimate of liquidation value of shares, could be much less.

4 Debtor's estimate of liquidation value of shares, could be much less.

6 Chapter 7 Trustee fee calculated as estimated pursuant to 11 U.S.C. 326 at below the statutory percentages.

**Notes:**

24 DCM has already been paid $244,436.00 as of December 15, 2023 per ECF 210

26 This Claim has already been paid.

27 This claims being paid pursuant to the prepetition agreement

28 This claims are still subject to claim objection and resolution as provided for in the

28 Plan. Debtor will pay the amount ordered by the appropriate tribunal

29 These claims are being reaffirmed

63 Should still be classified as unsecured.

64 Individual claims to be resolved in court.

| | *[A]* | | *[B]* | *[E=A-B]* | |
|---|---|---|---|---|---|
| Compensation Source | Year | Amount | Living Expenses | Available Cash | Available for Creditors |
| API and Resurface | 2024 | $ 400,000.00 | $ 270,000.00 | $ 150,000 | 150,000.00 |
| API and Resurface | 2025 | $ 420,000.00 | $ 283,500.00 | $ 136,500 | 136,500.00 |
| API and Resurface | 2026 | $ 441,000.00 | $ 297,675.00 | $ 143,325 | 143,325.00 |
| Total | | | | | 429,825.00 |

Notes
[A]    Debtor's Estimated Gross Income
[B]    Debtor's Estimated Expenses